**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARILYN KEEPSEAGLE, et al.,

                    Plaintiffs,

          v.

TOM VILSACK, Secretary, United States Department
of Agriculture,

                    Defendant.

Civil Action No. 1:99CV03119
(EGS)


Judge:     Emmet G. Sullivan
Magistrate Judge:   Alan Kay

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR AN AWARD OF
ATTORNEY'S FEES AND EXPENSES AND TO PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS REPRESENTATIVE INCENTIVE AWARDS**

**INTRODUCTION**

        Plaintiffs brought this case to seek money damages and injunctive relief to remedy what

they claim to have been discrimination by the United States Department of Agriculture against

Native American farmers in the provision of farm credit.  The settlement agreement currently

before the Court would provide a considerable amount of such relief.  The settlement agreement

also provides, with regard to attorneys fees, that:

> Plaintiffs will ask the Court to approve an award of attorneys' fees and costs to
> Class Counsel, payable as part of the common fund awarded to the Class, with the
> understanding that the Plaintiffs may seek, and the Court may award, such
> attorneys' fees and costs the total amount of which shall be at least 4% and not
> more than 8% of $760,000,000.  The Secretary reserves the right to respond to the
> petition for an award of attorneys' fees and expenses that the plaintiffs will file in
> connection with the settlement.

Under this provision, therefore, the award could be no less than $30.4 million and no more than

$60.8 million.  In Plaintiffs' Motion for an Award of Attorney's Fees and Expenses, Plaintiffs'

1

counsel now seek fees which constitute the high point of that range, but their filing reveals that the lodestar for their fees is well below even the bottom of the range, such that the bottom of the range allows for ample enhancement of the lodestar.  The amount now requested far exceeds what is reasonable to compensate counsel for their time on the case and would unreasonably decrease the amount of money available to the class members under the agreement.  Therefore, the Court should limit the award that it makes in this regard.

Plaintiffs' counsel seek a fee award in an amount not justified by prevailing case law. Defendant reserved the right to respond to the request for fees because the government has an interest in ensuring that the class reaps the full benefit of the settlement and that funds coming ultimately from federal coffers are not expended in an unnecessary or unreasonable manner. Plaintiffs' counsel have sought the maximum award available under the settlement agreement – a full eight percent of both the class fund and the available debt relief, or $60.8 million. Defendants hereby respectfully urge the Court to reduce the requested award to four percent of the total settlement, or $30.4 million.  Defendants' proposal adequately compensates class counsel for all time claimed and for all time that class counsel expect to expend in the future and includes a significant enhancement.

Similarly, Plaintiffs seek class representative incentive awards to be paid out of the settlement fund.  The settlement agreement includes a provision for payment of incentive awards to class representatives, and the government reserved the right to comment on the amount of the requests.  Like fees, these awards are paid out of the fund available for payment of class claims and not as an additional award.  Any award therefore reduces the amount available to pay other class members.  The government takes no position on the precise amount that should be awarded to class representatives in this matter, but asks the Court to recognize that the awards sought by

Plaintiffs are extraordinarily high as compared to other situations in which such awards have been made.

## ARGUMENT

**A.    THE COURT SHOULD AWARD $30.4 MILLION IN ATTORNEY'S FEES**

**1.    The Lodestar Method for Calculating a Reasonable Attorney's Fee Is Instructive In This Case, and Makes Clear That Plaintiffs' Fee Request Is Too High.**

The Equal Credit Opportunity Act, under which Plaintiffs sought a damages award in this case, contains a fee-shifting provision.  *See* 15 U.S.C.§ 1691e(d) ("In the case of any successful action under subsection (a), (b), or (c) of this section, the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection.").  The United States Supreme Court recently interpreted a similar fee-shifting provision.[1]  In *Perdue v. Kenny A*, the Court held that a lodestar figure (that is the product of reasonable hours and a reasonable hourly rate) calculated to determine a fee award under a fee-shifting statute could not be increased absent extraordinary circumstances. *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010). The lodestar holds a "strong presumption" as "adequate to induce a capable attorney to undertake representation." The Supreme Court's opinion emphasized that a court should add an enhancement to the base lodestar amount only in the rarest circumstances.  For example, enhancements are generally not allowed for exceptional skill, exceptional results, or extraordinary time spent on a case, all of which are factors subsumed in the lodestar.  *Id*. at 1672-74.  Any claim for an enhancement must

---

[1] As the Supreme Court has noted on more than one occasion, many of these federal fee-shifting statutes contain substantially identical language with respect to "reasonable fees" and are interpreted consistently. *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010); *Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598(2001).

be supported by specific evidence. *Id*. On the other hand, the Court *in dicta* expressed approval

for enhancements for exceptionally protracted litigation where attorneys paid large expenses

and/or went without pay for an unexpectedly long period of time, but noted that an award

containing such an enhancement would be appropriate only in a truly extraordinary case because

plaintiffs' lawyers normally expect to go without payment until resolution of cases involving fee-

shifting statutes. *Id*. at 1674. Moreover, "the amount of the enhancement must be calculated

using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by

applying a standard rate of interest to the qualifying outlays of expenses." *Id*. The Court

specifically rejected subjective methods for increasing a lodestar fee figure such as enhancing an

award by an arbitrary percentage.

Plaintiffs argue, in their Motion for an Award of Attorney's Fees and Expenses, that the

Court need not award fees at all under the fee-shifting provisions of the statute. Instead, they

argue, Plaintiffs' counsel can be entitled to a larger award under a "common fund" theory.

Under the common fund doctrine, attorneys in a class action in which a common fund is created

may be awarded a reasonable percentage of the common fund as compensation for their services.

The common benefit doctrine extends the common fund doctrine to lawsuits that produce

nonmonetary benefits. The Supreme Court has justified such awards as an exception to the

general rule that litigants bear their own fees, s*ee, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472

(1980). Courts evaluating a common fund recovery, however, have used a lodestar approach to

determine whether or not the proposed common fund recovery is reasonable. *See, e.g., Victor v.

Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 88 (2d Cir. 2010); *In re Gen.

Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).

Courts exercise great vigilance in scrutinizing common fund awards because the Court "must

'act as fiduciary for the beneficiaries (who are paying the fee) . . . because few if any, of the action's beneficiaries actually are before the court at the time the fees are set,' and because 'there is no adversary process that can be relied upon in the setting of a reasonable fee.'" *In re Dept. of Veterans Affairs Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009) (quoting *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 251 (1985)). As the court in *Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956 (N.D. Ill. 2002), explained:

> In a common fund case, however, "once the attorneys secure a settlement for the class, they petition the court for compensation from the same fund. Thus 'their role changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit.' The court becomes the fiduciary and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications."

*Id*. at 960 (quoting *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988)); *see Freeport Partners, L.L.C. v. Allbritton*, Dkt. No. Civ.A. 04-2030(GK), 2006 WL 627140 at \*7 (D.D.C. 2006) (recognizing "the Court's duty to protect the class"). Given the reasoning in more recent Supreme Court decisions, that the lodestar approach enjoys a "strong presumption" of reasonableness and should be enhanced only in truly extraordinary cases, *see Kenny A.*, 130 S. Ct. at 1669, the lodestar amount in a given case should constitute a substantial limit on awards, even in common fund cases.

Plaintiffs cite a number of class action cases in which common fund awards have been made. Almost none of these cases post-date *Kenny A.* Very few of these cases involve a government defendant or even a fee-shifting statute. Instead, as in *Boeing Co v. Van Gemert*, these cases have largely involved application of an exception to the rule that litigants bear their own expenses. Plaintiffs seem to rely heavily on *Swedish Hospital v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993), that approves the use of a "percentage of the fund" for calculating common fund

awards.  The case does not discuss any available fee-shifting statute and significantly predates *Kenny A.*

As Plaintiffs note, however, there are cases in which courts have approved a common fund award despite the availability of a fee-shifting statute.  In *Staton v. Boeing*, the Ninth Circuit surveyed the law and concluded that, hypothetically, a larger common fund award could be justified even where a fee-shifting statute was available.  *See Staton v. Boeing Corp.*, 327 F.3d 938 (9th Cir. 2000).  In that case, no actual common fund had been created, and thus the issue was not directly presented.  The court found that fees had not been properly justified under either theory.  *See also Brytus v. Spang & Co.*, 203 F.3d 238, 246-247 (3d Cir. 2000); *Florin v. Nationsbank*, 34 F.3d 560, 564 (7th Cir. 1994).[2]

Regardless of the applicability of a common fund theory to justify some award of attorneys' fees, the lodestar amount asserted by plaintiffs here shows that the fee which they request is unreasonable.  Plaintiffs have calculated their lodestar award, including expenses *and* projected future fees, at $26,533,940.48, which is significantly less than half of the claimed award of $60.8 million and which is some $3.5 million less than the minimum size of the fee award available under the settlement in this case.  The number for the actual time spent and expenses incurred by plaintiffs' counsel in this case is, by their own concession, only $16,246,882.80, or less than one third of the requested amount.[3]  Even allowing for the projection of future expenses and without analysis of the degree to which Plaintiffs' lodestar amount reflects the exercise of billing judgment or not, Plaintiff's claim for $60.8 million is out

---

[2] There is very limited relevant precedent post-dating *Perdue*, all of it from district courts in other circuits. As Plaintiffs note, these cases are split about *Perdue*'s relevance to common fund awards.  Several courts have ruled that although *Perdue* does not explicitly apply to or prohibit large common fund awards, its reasoning counsels against enhancements of lodestars, even in common fund cases.  *See Van Horn v. Nationwide Property and Cas. Ins. Co.*, 2010 WL 1751995 (N.D. Ohio 2010).

[3] The projected future fees of about $10 million are expected to cover class counsel's future responsibilities for the non-adversarial process, which will entail filing documents with an adjudicator.

of proportion to the asserted lodestar amount.[4]  Moreover, given that whatever fee is awarded by

the Court will reduce the size of the fund available to class members, it is crucial that the fees

awarded to counsel be strictly reasonable.  *See In re Dept. of Veterans Affairs Data Theft Litig.*,

653 F. Supp. 2d at 60.  Although the requested award is eight percent of the total settlement

including debt relief, it is closer to nine percent of the actual cash available to the class members,

thus further reducing the cash settlement available to Plaintiffs.  This Court should exercise its

fiduciary obligation to prevent any excessive recovery. *Warnell*, 205 F. Supp.2d at 960.

Plaintiffs' counsel suggest various justifications for the outsized award, including the

result they achieved and the protracted nature of the litigation, but those factors do not support

such a huge award.  As the Supreme Court noted in *Kenny A.*, a lodestar actually incorporates

concern for hours worked and for success.  If Plaintiffs' counsel believe that the protracted

nature of this litigation was much beyond what a class action might be expected to be, they have

not put forward specific evidence nor proposed a comprehensible and objective way of

calculating the time value of those costs.

Moreover, the Plaintiffs have not met their burden even in justifying the lodestar figure

which they seek to quadruple.  A lodestar is generally a reasonable number of hours at a

reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1982).  Ordinarily, the

Court and the parties make an effort to narrow the hours theoretically billed to a reasonable

number of hours.  As the D.C. Circuit has stated:

> Compiling raw totals of hours spent . . . does not complete the inquiry.  It does not
> follow that the amount of time actually expended is the amount of time

---

[4] Plaintiffs' papers indicate their willingness to make their billing records available *in camera,* but Plaintiffs bear a burden to justify whatever fees they request.  *See In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995); *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004).  They have demonstrated no justification for their decision to withhold their records from the Court, and have not justified providing only *ex parte* access to those records.  *See, e.g., Holbrook*, 305 F. Supp. 2d at 45; *Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 4 (D.D.C. 2006).

> reasonably expended.  In the private sector, "billing judgment" is an important
> component in fee setting.  It is no less important here.  Hours that are not properly
> billed to one's client also are not properly billed to one's adversary pursuant to
> statutory authority.  Thus, no compensation is due for nonproductive time.  For
> example, where three attorneys are present at a hearing when one would suffice,
> compensation should be denied for the excess time.

*Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).  The $16.2 million figure in past fees

and expenses has not been justified in any significant detail, but it seems likely to include time

and expenses that are not compensable.  A court should not award fees for "time spent in

duplicative, unorganized or otherwise unproductive effort."  *Jordan v. Department of Justice*,

691 F.2d 514, 518 (D.C. Cir. 1982).   It is no slight to Plaintiffs' counsel to suggest that the court

should exercise some additional judgment in assessing fees against the class.  Additionally, the

lodestar ordinarily does not include fees for unsuccessful claims.  *See Judicial Watch v. U.S.*

*Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006); *Nat'l Sec. Archive v. U.S. Dep't of*

*Defense*, 530 F. Supp. 2d 198, 204-205 (D.D.C. 2008).  Here, the parties spent substantial time

litigating Plaintiffs' APA claims, which were rejected by higher courts and eventually withdrawn

by Plaintiffs.  *See* Docket No. 454.  Plaintiffs asserted other claims that were ultimately

withdrawn, such as farm program claims and guaranteed loan claims.  *See, e.g.*, Docket No. 1

(asserting program claims later withdrawn in subsequent amended complaints); 454

(withdrawing guaranteed loan claims).  And Plaintiffs did not prevail on every motion they filed.

*See, e.g.*, Docket No. 437.  Moreover, Plaintiffs have not offered any objective standard for

assessing their projected future hours.

In addition, Plaintiffs have not justified their hourly rates under the *Laffey* matrix, which

provides an objective standard that is "presumptively reasonable" for assessing rates that take

into account attorney experience.  *See District of Columbia v. Jeppesen*, 686 F. Supp. 2d 37, 38

(D.D.C. 2010); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S.

546, 565 (1987) (noting that "the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (internal quotation marks omitted).  Moreover, class counsel seem to have calculated the lodestar based on their current hourly rates, not on the applicable rate at the time the fee was billed.  Normally, "[a]ttorneys' fees awarded against the United States government must be based on the prevailing market rates at the time the services were performed, rather than rates current at the time of the award."  *Nw. Coal. for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 66 (D.D.C. 1997) (citing *Library of Congress v. Shaw*, 478 U.S. 310 (1986) (emphasis in original)).  If current rather than historic rates are used in order to compensate class counsel for the delay in compensation, *see e.g., Bolden v. J & R Inc*., 135 F. Supp. 2d 177, 179 (D.D.C. 2001), then there is no need for additional enhancement to provide compensation for the lengthy litigation.

Finally, it does not appear that Plaintiffs have made an effort to limit past expenses to those reasonably incurred.  It is possible that Plaintiffs' billing records provide adequate support for the claimed expenditures, but it is difficult to imagine, for example, how money spent on "conferences" or "media services" is a reasonable and necessary litigation expense at that time, and none of the travel expenses are justified or described beyond "travel."  Nor have Plaintiffs provided a reasonable basis for evaluating their projected future expenses.

## 2.     The Court Should Approximate a Reasonable Lodestar and Award $30.4 Million

The settlement agreement in this case makes clear that the government does not intend to argue for a fee lower than $30.4 million.  That amount adequately compensates counsel for reasonable hours at a reasonable hourly rate and includes some significant enhancement.

Because that minimum amount is significantly higher than even the unreviewed lodestar claimed by Plaintiffs' counsel, the government requests that the Court set the fee at $30.4 million.

**B.      THE CLASS REPRESENTATIVE INCENTIVE AWARDS ARE UNUSUALLY LARGE AND SHOULD BE REDUCED**

This Court has recognized that granting an incentive award is about "[t]he propriety of allowing *modest* compensation to class representatives . . . ." *In re Lorazepam & Clorazepate Antitrust Litig.,* No. MDL 1290 (TFH), 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) (emphasis added) (quoting *Bogosian v. Gulf Oil Corp.,* 621 F. Supp. 27, 32 (E.D. Pa.1985)). Incentive awards are intended "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation," *In re Lorazepam,* 205 F.R.D. 369, 400 (D.D.C. 2002) (citations and internal quotation marks omitted), but they are neither universal nor always appropriate. A study published in 2006 found that "awards were granted in about 28 percent of settled class actions." Theodore Eisenberg & Geoffrey Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303 (2006). Incentive awards are not to be conferred reflexively, but are considered on the merits and circumstances in each case.

A court's scrutiny is heightened when the incentive payments are more than nominal and other class members will be made to pay them. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005). As approved representatives for a class, the named class representatives "represent not only themselves, but all members of the class, in a fiduciary capacity, and are obligated to do so fairly and adequately, and with due regard for the rights of those class members not present to negotiate for themselves." *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977); *accord In re Fine Paper Litigation*, 632 F.2d 1081, 1086 (3d Cir.1980). The fiduciary obligation

raises "concerns about whether the payment of any 'awards' can be reconciled with the punctilio of fairness the fiduciary owes to the beneficiary." *In re U.S. Bioscience Securities Litigation*, 155 F.R.D. 116, 120 (E.D. Pa. 1994). When "representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir.1983) (quoting *Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-42 (S.D.N.Y.1981), *aff'd*, 668 F.2d 654 (2d Cir.1982)).

Although the government does not dispute the propriety of class representative incentive payments in this instance, the proposed awards are well above the norm. Plaintiffs have proposed that six of the class representatives be paid $100,000, that Claryca Mandan be paid $200,000, and that the estates of the two deceased representatives be paid $75,000.[5] And these awards would be on top of whatever cash and debt relief awards the class representatives might get in their capacities as class members.

Plaintiffs correctly note that courts routinely award "incentive payments" to class representatives to compensate them for services performed on behalf of the class, and the parties have agreed that such awards are appropriate here. There is no objective standard for determining the appropriate size of such an award. Instead, "[i]n deciding whether to grant incentive awards and the amounts of such awards, courts consider factors such as 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation." *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8 -9 (D.D.C. 2008).

---

[5] Some of the class representatives are married couples in a single household. The Mandan household, for example, would be receiving $300,000 in incentive payments in addition to whatever they can claim as a household under the settlement agreement.

The awards sought here are very high as compared to awards in other cases in this district. *Radosti v. Envision EMI, LLC*, --- F. Supp. 2d ----, 2011 WL 159662 (D.D.C. 2011) (approving $2,500); *Wells*, 557 F. Supp. 2d at 9 (approving $10,000); *Equal Rights Center v. Washington Metropolitan Area Transit Authority*, 573 F. Supp. 2d 205, 214 (D.D.C. 2008) (approving $5,000 award); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.D.C. 2007) ($12,500); *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 124 (D.D.C. 2007) ($7,500); *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369 (D.D.C. 2002) ($25,000 and $10,000 for different class representatives).  The government has been unable to locate a published opinion approving an award in this Circuit that approaches even half of what the class representatives are seeking here.[6]

The 2006 UCLA study cited above found that in 28 percent of the cases conferring an incentive award, the average award per class representative was about $16,000, with the median payment per class representative being closer to $4,000.  53 *UCLA L. Rev.* at 1308. Other studies have yielded similar results. *See* Sherrie R. Savett, et al., *Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs*, 936 PLI/Corp. 321, 340 (1996) (listing 52 cases involving incentive award payments where the plaintiffs were awarded between $1,000 and $200,000, with over half of the awards falling between $5,000 and $10,000) (Ex. 3). A study conducted for the Federal Judicial Center in 1996 looked at four federal districts and found:

> The median amounts of all awards to class representatives in the four districts [studied] were $7,500 in two districts, $12,000 in the third, and $17,000 in the fourth. In many cases, there was more than one representative. The median award per representative in three courts was under $3,000 and in the fourth was $7,560. The median percentage of the total settlement that was awarded to class

---

[6] Plaintiffs attach an unpublished consent decree in which Judge Huvelle approved a payment to one class representative of $185,000.  The opinion includes no analysis of the settlement, nor of the proposed award. *See* Plaintiffs' Exhibit 1.

representatives was less than or equal to eleven thousandths of one percent (0.011%) in all four districts.

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* at 26 (1996) (figure citations omitted) (emphasis added).

There does not seem to be any basis for the extraordinary departure urged by Plaintiffs here. Although some of the class representatives could conceivably have done a great deal of work, it is certainly not itemized by expense or hardship, and most representatives seem to have primarily produced documents, sat for one deposition, and travelled to a limited number of meetings. While possibly representing time spent doing things other than what the class representatives would have wanted to do, those activities do not seem to justify $100,000 in incentive to undertake those tasks, and no reasonable hourly rate would yield such a result. Plaintiffs cite some outlier awards, primarily in unpublished opinions, that are closer to what they have sought. The only published opinion they cite is *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001), where the class representatives received a $300,000 incentive payment instead of an award under the settlement. Some of the unpublished orders similarly seem to involve payments in lieu of an award under the class settlement. None of these opinions engages in much analysis as to whether the award is justified, and even a brief perusal of the case law highlights the larger awards as outliers.

The requested incentive awards would provide the class representatives with the potential for double recovery at considerable expense to the other members of the class they represent. Accordingly, Defendants request that the Court carefully scrutinize the requested awards in accordance with the common practice of this Circuit and set whatever incentive awards are granted at levels lower than those requested by Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, the Court should limit a fee award to Plaintiffs' counsel to

$30.4 million, and should reduce the proposed class representative awards to an amount in

accordance with the prevailing law.

Respectfully Submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney
Civil Division, Room E4216
555 Fourth Street NW
Washington, DC  20530
Telephone:  (202) 514-7170


/s/ Amy E. Powell_____
Attorneys, Federal Programs Branch
Civil Division
20 Massachusetts Avenue NW, Room 7336
Washington, DC  20530
Telephone:  (202) 514-9836

Dated: March 18, 2011