IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARILYN KEEPSEAGLE, et al.,         )
                                    )
    Plaintiffs,                     )
                                    )
    v.                              )    Case No. 1:99-CV-3119 (EGS)
                                    )
TOM VILSACK, Secretary of Agriculture, )
                                    )
    Defendant.                      )
_____ )

## RESPONSE TO STATUS REPORT

Several years ago, the parties settled this case by entering into a class action settlement agreement approved by the Court.  Settlement Agreement, Oct. 22, 2010, Doc. No. 571; Order Granting Approval of Settlement, April 28, 2011, Doc. No. 606; Order Dismissing Case, April, 29, 2011, Doc. No. 607.   Defendant, the Secretary of Agriculture ("the Secretary" or "USDA"), fulfilled his primary obligation under the Agreement some time ago when the government paid $680 million to plaintiffs' counsel, with most of the money designated initially to pay meritorious claims filed by class members under a claims resolution process administered by plaintiffs' counsel and entities that they selected.  Now, as that claims process draws to a close, plaintiffs have proposed – in their most recent status report – an approach to using the money left in the settlement fund held and administered by plaintiffs' counsel that would entail an amendment to the Agreement.  *See* Status Report filed August 30, 2013, Dkt. No. 646.  While the USDA disagrees with plaintiffs' suggested amendment, it intends to continue discussions with plaintiffs regarding potential modifications of the agreement in an effort to settle on a mutually agreeable resolution.  The Agreement does not contemplate its amendment without the

1

parties' consent. The Court could facilitate this process by establishing a briefing schedule for plaintiffs to file whatever motion they might consider appropriate if no agreement is reached.

Plaintiffs have reported to the Court that around $380 million will be remaining after the last of the class members' claims have been resolved. Status Report at 3. According to the terms of the Settlement Agreement, the Claims Administrator shall deposit this amount in a *cy pres* fund, and "[c]lass counsel may designate Cy Pres Beneficiaries to receive equal shares of the Cy Pres Fund." Settlement Agreement § IX.F.7. Subject to Court approval,[1] class counsel may choose as Cy Pres Beneficiaries "*any* non-profit organization, other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services to Native American farmers between 1981" and [October 2010], with designations being "for the benefit of Native American farmers and ranchers." Settlement Agreement §§ II.I, IX.F.7 (emphasis added). Notwithstanding the flexibility accorded class counsel by the current Agreement as to the nature and identity of the entities that they may designate as beneficiaries, plaintiffs state in their Status Report that they "intend" to recommend to the Court, at some future date, that the Agreement be modified to enable them to create a brand new "large[ ] philanthropic organization" that will use remaining settlement funds for the "indefinite future." Status Report at 2. If the USDA does not agree to the foundation, plaintiffs suggest that they might file a Rule 60(b)(5) motion to change the terms of the Agreement to allow for its creation. Status Report at 6.

---

[1] Because plaintiffs are to seek Court approval for their designations, they would be obliged to move for approval, which would give USDA the opportunity, if it so chooses, to respond to their proposal even if they do not seek to modify the Agreement.

2

A threshold issue is the matter of how to amend the Agreement.  If the parties agree to an amendment, that should be enough.  Settlement Agreement § XIV.[2]  But the parties might not agree.  Preliminarily (and only preliminarily, as plaintiffs have not yet filed any motion relating to the use of the *cy pres* fund), plaintiffs suggest that Rule 60(b)(5) provides an avenue for revising the Agreement to permit the endowment of the proposed foundation.  Status Report at 6 n.4.  This suggestion appears to be flawed.  Rule 60(b)(5) permits Courts to "relieve a party . . . from a final judgment" if "applying it prospectively is no longer equitable."  But the judgment in this case does not incorporate the *cy pres* provisions that would need to be amended to facilitate the creation of the planned foundation (*e.g.*, the provision requiring that the funds go to an existing entity).  *See* Dkt. No. 607.  The Agreement requires that the Court approve plaintiffs' designations of *cy pres* beneficiaries, *see* Agreement § IX.F.7, but approving designations is different from setting the terms for the designations, which the Agreement does in other sections.  Settlement Agreement §§ II.I, IX.F.7.  And while the Agreement provides the Court with authority to supervise the distribution of the settlement funds, *id.* § XIII, the Court has already interpreted that provision to grant it a merely ministerial duty to enforce distribution required by the Agreement, rather than a broad-ranging power to amend the Agreement absent the parties' agreement.  Memo. and Order, Dec. 28, 2012, Doc. No. 633, at 4-6, 7-11.  Thus, no change to the final judgment that the Court could order would permit the creation of the foundation.  But even if the relevant provisions were part of the final judgment, relief under Rule 60(b)(5) likely would be inappropriate because, among other reasons, there is nothing "[in]equitable" about distributing the *cy pres* funds according to the existing Agreement.  *See United States v. Caterpillar*, 227 F. Supp. 2d 73, 86 (D.D.C. 2002) ("The standard for modifying a decree is

---

[2] In this regard, it is worth considering whether any amendment that might be agreed upon or otherwise ordered would be significant enough to require a new fairness hearing pursuant to Rule 23(e).

whether changed circumstances have made compliance with the decree substantially more onerous or detrimental to the public interest, not whether the public interest might be better served by a different approach."). To be sure, plaintiffs have not actually made a Rule 60(b)(5) motion and might never do so, and these observations are necessarily preliminary. If they do decide to press the issue, however, the USDA reserves the right to make all appropriate arguments, including ones omitted from this brief discussion.

And good reason exists to believe that the parties might not be able to agree to the sort of amendment that the plaintiffs propose: plaintiffs are proposing a modification that appears to be in tension with limits on the use of *cy pres* funds. The USDA has discussed with plaintiffs, and plans to continue to discuss, potential amendments to the Agreement that will permit different uses of the *cy pres* funds than are currently permitted. The Government met in person with class counsel to discuss many issues surrounding use of the *cy pres* funds. For example, the USDA may be willing (1) to expand the definition of Cy Pres Beneficiaries to include entities such as educational institutions and (2) to eliminate the requirement that the *cy pres* funds be distributed to beneficiaries in equal shares. These are just examples of changes that could be sufficiently narrow and appropriate. The USDA is open to other potential changes, including how best to structure the distribution of the funds.

But the USDA disagrees with the preliminary proposal to funnel all $380 million of the *cy pres* fund to an entity that both does not yet exist and that will use the money from this settlement for the "indefinite future," particularly when there are existing organizations that meet the current "cy pres" definition and other options that are more closely tied to the stated goal of the settlement. "Cy pres is shorthand for the old equitable doctrine '*cy près comme possible*' — French for 'as near as possible.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

While the doctrine originated in the area of wills, it now often comes into play in class actions when there are impediments to compensating absent class members. *Id.* But not all of the original meaning has been lost: The *cy pres* funds are to be used "as near as [is] possible" to compensate absent class members. That is, "a cy pres award must qualify as the next best distribution' to giving the funds directly to class members." *Id.* Awarding all of the funds to an organization that plans to spend the funds "indefinite[ly ]" is not the "next best distribution" to giving the funds to class members. The class members will not live indefinitely, and the settlement is designed to benefit them, not people 200 years from now. Moreover, the USDA questions whether there is any reliable mechanism for ensuring that the proposed organization would retain the same mission in 100 years that it would have at its founding. Questions about when a new foundation might be created under a *cy pres* provision of a class action settlement agreement remain open. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 822 (9th Cir. 2012), *cert. pending,* 82 USLW 3083 (Jul 26, 2013) (NO. 12A1112, 13-136). *See also Lane v. Facebook, Inc.,* 709 F.3d 791, 793-94 (9th Cir. 2013) (Smith, J., dissenting from denial of petition for rehearing).

The USDA remains hopeful that further discussions among the parties will yield a resolution of the *cy pres* issue, but recognizes that such a resolution might remain elusive. Defendant recommends that the Court afford the parties another sixty days to discuss this matter, but also that the Court set a briefing schedule for plaintiffs to file whatever motion they might consider appropriate at that time if no agreement is reached.

DATED:  September 17, 2013                                  Respectfully submitted,

                                                         STUART F. DELERY
                                                         Assistant Attorney General

        RONALD C. MACHEN JR
United States Attorney

JUDRY L. SUBAR,
DC Bar # 347518
Assistant Director
Federal Programs Branch

  /s/ Justin M. Sandberg
JUSTIN M. SANDBERG
(Ill. Bar No. 6278377)
Trial Attorney
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
20 Mass. Ave., NW, Rm. 7302
Washington, DC 20001
(202) 514-5838 phone
(202) 616-8202 fax