```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
MARILYN KEEPSEAGLE, et al.,   )
                              )
           Plaintiffs,        )
                              )
     v.                       ) Civil Action No. 99-3119 (EGS)
                              )
TOM VILSACK, Secretary,       )
United States Department      )
of Agriculture,               )
                              )
           Defendant.         )
_____)
```

## MEMORANDUM ORDER

Pending before the Court is a motion to intervene filed by Timothy LaBatte. *See* Mot. to Intervene ("Mot."), ECF No. 635. The motion seeks essentially the same relief that this Court denied in response to earlier requests for intervention by other individuals. *See* Memorandum Order, ECF No. 633. That is, the motion asks this Court to review a determination made by the Track B Neutral denying Mr. LaBatte's claim for failing to supply sufficient evidence of his entitlement to relief. This Court previously held that the plain language of the Settlement Agreement precludes the Court from reviewing similar determinations, and there is no relevant distinction between those determinations and the one Mr. LaBatte seeks to overturn. Accordingly, upon consideration of the motion, the responses and

reply thereto, the applicable law, and the entire record, the Court **DENIES** the motion to intervene.

## I. BACKGROUND

### A. The Settlement Agreement

Following over a decade of litigation, the parties reached a settlement in this case in 2011. In the Settlement Agreement, negotiated by the parties and approved by the Court, farmers seeking relief were required to submit claims packages by December 27, 2011. *See* Revised Settlement Agreement ("Agreement"), ECF No. 621-2 ¶ IX.A.1 (pp. 15–16). These packages were then reviewed by the Claims Administrator for timeliness and completeness. *See id.* ¶ IX.B.2 (p. 20).

All timely and complete claims packages were forwarded to the Track A or Track B Neutral in accordance with the claimant's election. *See id.* ¶ IX.B.4-9 (pp. 21–22). In the case of Track B claims, like Mr. LaBatte's, the Claims Administrator was first required to send the Class Member a written notice:

> [R]emind[ing] each Class Member of: (a) the definition of Track B Awards; (b) the Track B Cap; (c) the evidentiary requirements for Track B claims; and (d) the possibility that a Class Member's Track B Award will be reduced if the total of all Track B Awards exceeds the Track B Cap. Such notification shall also inform the Class Member that the Class Member may change his or her election to Track A by so notifying the Claims Administrator in writing within thirty . . . . days of the postmark of the notification.

2

*Id.* ¶ IX.B.6 (pp. 21-22). Next, the Claims Administrator was required to forward to the Track B Neutral any timely complete claim package. *See id.* ¶ IX.B.7 (p. 22).

The Track B Neutral then "determine[d] whether the Claimant has established, by a preponderance of the evidence and through documentary evidence admissible under the Federal Rules of Evidence," various elements necessary to prove his claim. *See id.* ¶ IX.D.1 (p.25). Certain of these elements could be proven "by a credible sworn statement based on personal knowledge by an individual who is not a member of the Claimant's family." *Id.* ¶ IX.D.2 (p. 26).

If the Track B Neutral determined that the Claimant had not proven his claim, the Neutral denied the claim. *See id.* ¶ IX.D.5 (p. 27). The Agreement isolates such decisions from review:

> The Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise. The Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process.

*Id.* ¶ IX.A.9 (p. 19).[1]

---

[1] "Claim Determination" is also defined as "the binding and *final* result of a Track A or a Track B adjudication and represents whether a Class Member is eligible to receive an award as a result of the Non-Judicial Claims Process and, if so, the amount of the award." *Id.* ¶ II.C (p. 1) (emphasis added).

**B.    The Denied Claim**

On December 23, 2011, Mr. LaBatte submitted a claim form to the Claims Administrator. *See* Claim Form, ECF No. 636-1 at 25–41. On April 27, 2012, the Claims Administrator sent Mr. LaBatte's attorney, Mr. Kaardal, the notice required by Paragraph IX.B.6 of the Agreement. *See* April 27, 2012 Letter, ECF No. 640-1 at 32. Mr. LaBatte submitted additional information on May 23, 2012, including a declaration from Mr. Kaardal, which recounted his attempts to obtain the information needed to prove Mr. LaBatte's claims. *See* May 23, 2012 Letter, ECF No. 640-1 at 34; Kaardal Decl., ECF No. 640-1 at 41–48. Mr. LaBatte asserts that he "did an exhaustive search for witnesses to support his claim" and found that many of those who could support his claim were deceased. *See* Mot. at 4. Ultimately, he located two individuals who could testify through declarations, Tim Lake and Russell Hawkins. *Id.* At the time Mr. Labatte sought to obtain signed declarations from these individuals, both were employees of the Bureau of Indian Affairs, an agency of the United States Department of the Interior. *See id.* at 5. Mr. Labatte claims that, "after informing BIA officials of their anticipated execution of their respective declarations," Mr. Lake and Mr. Hawkins "were directed or instructed not to sign the declarations." *Id.* (emphasis omitted).

On October 30, 2012, the Claims Administrator sent Mr. LaBatte a "'Track B' Claim Determination Form," which indicated that a Track B Neutral "has determined that your claim is DENIED." Final Determination, ECF No. 640-1 at 66. The letter listed the basis for the denial as Mr. LaBatte's "fail[ure] to satisfy the requirement of the Settlement Agreement, through a sworn statement, that named white farmers who are similarly situated to you received USDA loans or loan servicing that was denied to you." *Id.* The letter went to state that the declaration of attorney Kaardal:

> [R]uns afoul of the Settlement Agreement's requirement that evidence on this issue, and on the issue of whether you had filed a complaint of discrimination with USDA, has been established, 'by a credible sworn statement based on personal knowledge by an individual who is not a member of the Claimant's family.' . . . Since Mr. Kaardal's declaration makes clear that you obtained the information in the declaration from the two federal officials named, the Settlement Agreement's requirements have not been met. Further, the statements in that declaration purporting to establish that white farmers received a benefit (loans) that you were denied, lack the specificity necessary to establish that those benefits were, in fact received by the white farmers.

*Id.* at 66–67. The letter also noted that "[t]his Decision is final. It is not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court or any other party or body, judicial or otherwise." *Id.* (emphasis omitted).

5

### C. Procedural History

Any claim that the Agreement has been violated must be submitted to the opposing party "[b]efore seeking any order by the Court." Agreement ¶ V.B.7 (p. 42). This process applies only to "alleged violation[s] of the provisions of this Settlement Agreement *that are enforceable by the Court*." *Id.* (emphasis added). The party asserting a violation must serve written notice on the opposing party "that describes with particularity the term(s) of the Settlement Agreement that are alleged to have been violated, the specific errors or omissions upon which the alleged violation is based, and the corrective action sought." *Id.* If no response is sent within forty-five days, the party alleging a violation is permitted to move for enforcement of the Agreement. *See id.* ¶ V.B.8 (p. 42).

On November 26, 2012, Mr. Kaardal sent a letter to officials with the Departments of Justice and Agriculture, entitled "Notice of Violation of Settlement Agreement." *See* Notice of Violation, ECF No. 636-1 at 1. He asserted that the government instructed Mr. Lake and Mr. Hawkins not to sign affidavits in support of Mr. LaBatte's claim and that this violated the government's duty of good faith and fair dealing, and requested that he be awarded his claim under the Track B process. *See id.* at 1–5. He did not identify any provision of the Agreement as

6

having been violated. The Department of Agriculture did not respond to Mr. LaBatte's Notice of Violation.

Mr. LaBatte moved to intervene in this case on July 10, 2013. *See* Mot. He seeks to raise various legal claims, and seeks to sue the Secretary of Agriculture—the only defendant in this case—and to add as defendants the Secretary of the Interior, the Assistant Secretary for Indian Affairs, the U.S. Department of the Interior, the Bureau of Indian Affairs, and the Director of the Bureau of Indian Affairs. *See* Proposed Complaint in Intervention, ECF No. 635-1. On July 29, 2013, the defendant filed an opposition to the motion to intervene. *See* Def.'s Opp. to Mot. to Intervene ("Opp."), ECF No. 642. The plaintiffs filed their response to the motion to intervene on August 2, 2013. *See* Pls.' Response to Mot. to Intervene ("Pls.' Response"), ECF No. 643. On August 9, 2013, Mr. LaBatte filed his reply brief. *See* Reply in Supp. of Mot. to Intervene ("Reply"), ECF No. 644. The motion to intervene is now ripe for the Court's determination.

## II. DISCUSSION

"Federal courts are courts of limited jurisdiction" and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*. This case is no longer pending, having been settled in 2011, so Mr. LaBatte

7

relies on the Court's ancillary jurisdiction to justify his attempt to intervene. *See* Reply at 11-13.

Ancillary jurisdiction, however, is a relatively limited source of jurisdiction. It arises: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379-80. The first situation is inapplicable here because "the facts underlying [Mr. LaBatte's] dismissed claim . . . and those underlying [his] claim for breach of [the] settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together." *Id.* at 380. The underlying claim that formed the basis for this case—regarding discriminatory treatment by the Department of Agriculture—has nothing to do with Mr. LaBatte's claims that the government prevented individuals from signing declarations.

To the extent Mr. LaBatte can establish jurisdiction, it must arise under the second situation, where exercising jurisdiction is necessary to effectuate the Court's Order entering the settlement agreement. "[D]istrict courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related

8

order." *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002). Mr. LaBatte must therefore demonstrate that the Agreement provides for jurisdiction over his claim.[2]

He fails to do so. The Agreement sharply limits the circumstances under which the Court may exercise jurisdiction. *See* Agreement ¶ V.A–B (pp. 40–42). Mr. LaBatte invokes the Court's retention of jurisdiction "to supervise the distribution of the Fund and to ensure that Debt Relief Awards issued by the Track A and Track B Neutrals are applied by USDA." *Id.* ¶ V.A.7 (p. 40); *see* Reply at 4. As this Court previously held, that provision is limited by a more specific provision of the Agreement precluding the Court from reviewing any "Claim Determinations, and any other determinations made under th[e] Non-Judicial Claims Process." Agreement ¶ IX.A.9 (p. 19). This Court reconciled the two provisions by holding that "the Agreement may easily be read to foreclose judicial review of certain decisions as to who is entitled to receive an award, while permitting judicial supervision over distribution of the Fund . . . after those decisions have been made." Memorandum Order, ECF No. 633 at 8.

---

[2] Mr. LaBatte notes that courts regularly enforce settlement agreements, Mot. at 7–8, but the proposition that courts *may* retain jurisdiction to enforce a settlement agreement is not in dispute. The issue here is whether the specific circumstances under which this Court retained jurisdiction exist.

9

Mr. LaBatte has not demonstrated how his claim fits within this narrow jurisdiction. The relief he seeks is review of the Track B Neutral's determination of his claim. *See* Complaint-in-Intervention, ECF No. 635-1 at 57–59 (Prayer for Relief requesting, *inter alia*, "an injunction to prevent . . . [defendants] from . . . interfer[ing] in any way . . . with the processing of LaBatte's claim under Track B" and an order directing the Department of Agriculture "to process [Mr. LaBatte's] claim under the Track B process"). As both the government and Class Counsel acknowledge, however, this Court has already held that the Agreement expressly withholds jurisdiction to review such determinations. *See* Opp. at 4–5; Pls.' Response at 2. Indeed, "the plain language of the Settlement Agreement . . . explicitly precludes this Court's review" of determinations by a Track A or B Neutral that a Claimant "failed to satisfy the criteria for an award." Memorandum Order, ECF No. 633 at 1.

Mr. LaBatte's arguments to the contrary are unconvincing. He proposes that the government's actions rendered the process for distributing the Fund so infirm that there effectively was no process. *See* Reply at 4. The implication appears to be that the Track B Neutral was precluded from making a determination on Mr. LaBatte's claim. *See id*. This ignores the fact that Mr. LaBatte followed the Track B process and had his claim denied by the

10

Track B Neutral. *See* Final Determination, ECF No. 640-1 at 66. He may feel that the government's actions rendered that process inadequate, but the Track B Neutral nonetheless made a final determination that is made unreviewable by the Agreement.

Mr. LaBatte also devoted much attention to claims that the government has committed "spoliation of evidence" and "fraud on the court," but never explained how these allegations, if true, create jurisdiction. *See* Reply at 4-6. The Agreement prohibits review of decisions of a Track B Neutral and provides no exception for "spoliation of evidence" or "fraud on the court."

Finally, Mr. LaBatte's reliance on Paragraph IX.A.10 of the Agreement, which states that "the Secretary and/or the United States shall have no role in the Non-Judicial Claims Process," is similarly unhelpful. Mr. LaBatte claims that the government violated this provision by prohibiting Mr. Lake and Mr. Hawkins from signing declarations that he intended to use in submitting his claim. *See* Reply at 8-10. It is not clear, however, what basis Mr. LaBatte asserts for the Court's jurisdiction over this claim. For one, he appears to have failed to comply with the process for alleging a violation of Paragraph IX.A.10 because he made no mention of that paragraph in his notice of violation to the government. *See* Notice of Violation, ECF No. 636-1 at 1-5. In any event, Mr. LaBatte does not explain how the Court's limited jurisdiction "to supervise the distribution *of the Fund*"

conveys the ability to hear his claim that the government played an undue role "*in the Non-Judicial Claims Process*." Nor does he explain how exercising this jurisdiction would not contradict the Agreement's specific withholding of jurisdiction to review "Claim Determinations" or "any other determination made under this Non-Judicial Claims Process." Agreement ¶ IX.A.9 (p. 19). Ultimately, Mr. LaBatte asks the Court to exercise free-ranging jurisdiction over any action he feels conflicts with the agreement. Such jurisdiction is foreclosed by the Supreme Court's decision in *Kokkonen* and the specific jurisdictional provisions of the Agreement.

Accordingly, for the foregoing reasons, it is hereby **ORDERED** that Timothy LaBatte's motion to intervene is **DENIED**.

**SO ORDERED.**

**Signed:**  Emmet G. Sullivan
United States District Judge
July 14, 2014