**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARILYN KEEPSEAGLE, et al.,     ) | |
| ) | |
| Plaintiffs,     ) | |
| ) | Civil Action No. 1:99CV03119 |
| v.     ) | (EGS) |
| ) | |
| TOM VILSACK, Secretary, United States     ) | |
| Department of Agriculture,     ) | Judge: Emmet G. Sullivan |
| ) | Magistrate Judge: Alan Kay |
| ) | |
| Defendant.     ) | |
| ) | |

**PLAINTIFFS' RESPONSE TO THE COURT'S**
**ORDER REQUESTING BRIEFING ON NOTICE**

On October 20, 2014, the Court issued a Minute Order directing the parties to brief three

issues that the Court "intends to address" after deciding what were then pending motions to

intervene.  Plaintiffs respectfully submit the following response that addresses those three

questions.

**1.    Rule 23(e) Does Not Require Supplemental Notice to the Class or a Second**
**Fairness Hearing**

The Court first asks the parties to address "Whether the Court must direct notice to the

Class and hold a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e)."  October

20, 2014 Minute Order.  Rule 23(e) does not require supplemental notice under the

circumstances presented here, and as a result there is no reason to hold a second fairness hearing.

It is widely recognized that under Rule 23, supplemental notice "is only required where

the amendment to the settlement agreement would have a material adverse effect on the rights of

class members."  *In re Diet Drugs*, MDL No. 1203, 2010 U.S. Dist. LEXIS 66879, at *17 (E.D.

Pa. 2010) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, n.10

(D.N.J. 1997), *aff'd* 148 F.3d 283 (3d Cir. 1998)).

Thus, courts routinely decline to issue supplemental notice when a modification to a settlement agreement is not material, would not adversely affect the rights of class members, or would actually *expand* the rights of class members. *See, e.g.*, *Jones v. Gusman*, 296 F.R.D. 416, 467 (E.D. La. 2013) (holding that no supplemental notice was required as the modifications to agreement "did not impair the class members' rights even indirectly, and the modifications certainly did not constitute a material change with respect to the class members") (citing *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 175 n.10, 182 (3d Cir. 2013) (holding that supplemental notice is not required to inform class members of the specific cy pres recipients selected by the parties, when the original notice identified the possibility of a cy pres award), and *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (holding no additional notice needed where amendment "merely expanded the rights of class members")); *In re Diet Drugs*, 2010 U.S. Dist. LEXIS 66879, at *17-18 (no supplemental notice required where modification "provides many additional benefits").  In these cases, where no supplemental notice was required, it was likewise unnecessary to hold a second fairness hearing.

Courts consider a modification to materially and adversely affect the rights of class members – and thus require supplemental notice – when the modification would reduce the payments some class members would receive or take away other important rights, such as the right to opt-out.  *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, 226 F.R.D. 498, 501, 518 (E.D. Pa. 2005) (ordering supplemental notice where amendment "makes material changes to the Settlement Agreement in that it reduces payment amounts to certain eligible class members and extinguishes certain opt-out rights").

Here, the proposed amendment falls squarely on the side of not requiring supplemental

1939584.2

notice.  The proposed amendment will not adversely affect the rights of any Class Members in *any* way, let alone in a material way, as a modification to the procedures for distributing the cy pres funds will not affect the rights of Class Members to receive the payments permitted by the Settlement Agreement.

Under the Settlement Agreement, each Class Member who did not opt out had the opportunity to receive up to $50,000 (plus an additional 25% or $12,500 to pay income taxes) under Track A or up to $250,000 under Track B, and, if they succeeded in either track, to have all of their eligible Farm Service Agency debt forgiven.  The Settlement Agreement was clear, however, that each successful claimant under Track A would be limited to an award of no more than $50,000 plus 25% tax relief and each successful claimant under Track B would be limited to an award of $250,000 without tax relief.  *See* Settlement Agreement § IX.F.3.  Likewise, the Settlement Agreement was clear that any unclaimed funds would be distributed as cy pres awards to non-profit organizations that serve Native American farmers and ranchers, regardless of the amount of unclaimed funds that remained after the monetary relief was distributed to successful claimants.  Settlement Agreement § IX.F.7.

Like the Settlement Agreement, the detailed notice that was mailed to potential Class Members and the summary publication notice that was disseminated throughout the country made clear that there were specific limits on the amount of monetary relief that successful claimants could receive and that *all* unclaimed funds would be distributed to one or more non-profit organizations.  For example, Question 10 of the Detailed Notice described how much each person could receive under Track A and Track B, stating that Track A claimants "may get a payment up to $50,000 for your discrimination claim" and "will also be eligible to get an additional 25% of the amount which will be paid directly to the IRS," and stating that Track B

3

claimants "may get a payment up to $250,000 for your discrimination claim." Detailed Notice at

7, attached as Ex. 1.[1] The Detailed Notice was also clear that the unclaimed funds would be

distributed to eligible non-profit organizations, as the answer to Question 8 in the Notice stated

that "If any money remains in the Settlement Fund after all payments to class members and

expenses have been paid, then it will be donated to one or more organizations that have provided

agricultural, business assistance, or advocacy services to Native Americans." *Id.* at 6. The one-

page Publication Notice also stated the same information about caps on monetary relief and that

any unclaimed funds would be "donated to one or more organizations that help Native American

farmers and ranchers." Publication Notice, attached as Ex. 2.

     None of the rights of Class Members to receive monetary relief and debt relief under

Track A and Track B will be compromised or reduced by the proposed creation of a trust to

distribute the unclaimed funds. To date, each Class Member had an opportunity to file a timely

Track A or Track B claim, and all successful claimants have already received the monetary relief

to which they are entitled under the Settlement Agreement. As such, an amendment that changes

the procedures and timing for distributing the cy pres funds does not have an legally cognizable

impact on the rights of Class Members; those rights have already been exercised and fully

satisfied under the Settlement Agreement. Simply put, because the Class Members have

received all relief that the Settlement Agreement provided them, the proposed amendment cannot

adversely affect their rights as a matter of law. To the extent that Class Members may consider

---

[1] Before and after final approval, Class Counsel and the Settlement Administrator reiterated the limits on monetary relief to Class Members and other individuals who made inquiries or attended hundreds of public meetings held by Class Counsel. Moreover, when Class Members submitted claim forms under Track A and Track B, they acknowledged on the form that they "finally release USDA from any and all claims and causes of action that have been or could have been asserted against the Secretary by the proposed Class and the Class Members in the Case arising out of the conduct alleged therein." Keepseagle Claim Form at 3.

4

the distribution of the cy pres funds to be a right of individual Class Members under the Settlement Agreement, none of those rights will be impaired in any way. The proposed amendment will only change the procedures and timing for distributing the cy pres funds.

While the plaintiffs and Class Counsel recognize that some class members would prefer that the unclaimed funds be distributed as additional damages to those claimants who succeeded in their original claims, or to fund a second claims process, neither option was originally provided in the Settlement Agreement and the USDA has declined to agree to use the funds for either purpose. As such, the proposed changes to the cy pres provision do not affect the individual rights of any class member to receive relief provided by the Settlement Agreement, the terms of which they were previously provided extensive notice.

In sum, although the amount of cy pres funds available for distribution is higher than the Parties expected, the Settlement Agreement, notice, and other communications to Class Members have been unequivocal that any unclaimed funds would be distributed to eligible non-profit organizations, not to individual class members. Before final approval was entered, Class Members received "reasonable and adequate notice" about the Settlement pursuant to the Court-approved notice plan, which provided specific information about the amount of monetary relief that Class Members could receive and about the cy pres provisions. Order on Plaintiffs' Motion for Final Approval of Settlement, Dkt. No. 606 at 2 (Apr. 28, 2011). None of the rights of Class Members will be adversely affected by the Proposed Addendum. Accordingly, it is not necessary to require the parties to provide Class Members with formal, supplemental notice of the Proposed Addendum that merely affects the procedures and timing for the distribution of the cy pres funds that are available under the current version of the Settlement Agreement that this Court approved in April 2011.

1939584.2

Because supplemental notice is not required by Rule 23(e), it follows that there is no requirement to hold a formal fairness hearing before the Court may approve the amendment. *See supra* at 2.

**2.      Even Though Notice Is Not Required by Rule 23(e), the Court Still May Direct Issuance of Supplemental Notice to the Class**

Next, the Court asks Plaintiffs to address "whether, if Rule 23 does not permit the Court to require such notice and a hearing, the Court may nonetheless exercise discretion to direct notice to the class and to permit class members to give their thoughts on the proposed modification during a status hearing or motion hearing."  October 20, 2014 Minute Order.

Although supplemental notice is not required by Rule 23(e), nothing in Rule 23 prevents this Court from directing supplemental notice or holding a hearing to consider the views of Class Members concerning the proposed amendment to the Settlement Agreement's cy pres provisions. Indeed, Section XXII of the Settlement Agreement acknowledges the Court's authority to direct "notice to the Class" at its discretion, before ruling on a proposed modification to the Agreement. While the Rule 23 standards articulated above, governing when supplemental notice is required, also provide good guidance for the Court in determining how to exercise its discretion, Section XXII does not limit the Court's exercise of discretion to those circumstances where Rule 23(e) would require supplemental notice.  The extensive notice provided in 2010, however, and the absence of any substantial change in the recipients eligible to receive a share of the cy pres funds, reduce the need for the Court to exercise its discretion to direct the issuance of notice. *See infra* at 8-9 (describing the 2010 notice).  In addition, class counsel convened eight full-day meetings in various parts of Indian Country over the summer and conducted three multi-hour conference calls during which they discussed at length the proposed changes to the cy pres provision, further reducing the need for notice.  Plaintiffs' Motion to Modify (Dkt. 709) at 23-25

and Ex. E thereto.  Moreover, issuance of additional notice and the convening of a hearing will also delay further distribution of the unclaimed settlement funds.[2]  Such further delay, coupled with the notice already provided, and the fact that no class members' rights will be adversely affected by the modification at issue, all weigh against the Court exercising its discretion to direct notice here.

### 3. Any Supplemental Notice Should Be Distributed in a Fashion Comparable to the Original Settlement Notice, But Content Should Be Adapted to These Circumstances

Third, the Court asks Class Counsel to address "what content and form any notice-- whether required by Rule 23(e) or permitted by the Court's discretion--should take."  October 20, 2014 Minute Order.

Whether or not notice is required by Rule 23(e), if the Court directs the issuance of notice of the proposed modifications, the content should reflect the specific posture of the case when this notice would be sent.  The class has already received notice required under Rule 23(c)(2), which informed potential class members about the claims process, the scope of the class certified, and their rights to opt-out of the action or to appear by counsel.  Fed. R. Civ. P. 23(b)(c)(2).  They have also been provided notice which describes the full scope of the Settlement Agreement.  Much of the content in notices typically provided pursuant to Rule 23(c)(2) and Rule 23(e) is no longer relevant here.

Accordingly, the appropriate content of a notice would include: (a) a definition of the class that was certified and description of the nature of the claims made; (b) an explanation that

---

[2] In addition, notwithstanding how carefully crafted notice is, a further publication notice at this time is likely to invite, as have the meetings already, interest from those who never submitted claims for a new claims process, thereby consuming time of the Court and parties in explaining that course of action has long been foreclosed.  This is particularly so as radio ads, which provided a significant source of outreach in the past notice campaigns, cannot provide much detail without becoming prohibitively expensive.

the original Settlement Agreement has already been approved by the Court, that this notice concerns solely a modification in one term of the Agreement; (c) the specifics of the proposed modification would change the cy pres provisions of the Settlement Agreement; (d) the notice should explicitly state that the claims process under the settlement agreement has been completed, and that this notice does not re-open the settlement process to permit additional claims; (e) the notice should also inform Class Members that they can visit the website IndianFarmClass.com, to learn more about the proposed modification, and inform them how Class Members may express their views on the proposed modification to the Court, and the deadline for doing so.

The scope of the notice distribution, moreover, should be guided by the significance of the rights at issue at this juncture of the litigation.  As the time for class members to opt out of the case and to participate in the claims process have passed, the purpose of any notice issued at this juncture would be for the purpose of notifying class members of the proposed changes to the cy pres terms, many of whom received such notice through the recent listening sessions and conference calls, and to provide a forum in which the Court could consider any additional comments on the proposal beyond those already presented.  The Court has already granted amicus status to one of the parties that sought intervention and will undoubtedly hear comments on the proposed cy pres changes at the upcoming scheduled hearing.  In the event that the Court elects to direct the issuance of notice, therefore, notice of a more modest scope than was required by Rule 23(c)(2) may be warranted.

The notice issued in 2010 pursuant to Rule 23(c)(2) provided (1) a 14-page detailed notice that included over 30 questions and answers about the Settlement and how Class Members could exercise their rights; and (2) a summary publication notice that summarized the same

information in single page.  The detailed notice and summary publication notice were made

available to the public on the website IndianFarmClass.com, the detailed notice was mailed to

more than 20,000 individuals whom the U.S. Department of Agriculture believed, based on the

government's records, were Native Americans who had some contact with the USDA, and the

summary publication notice was used to place advertisements in national, regional, and local

publications throughout the United States.  *See* Detailed Notice, attached as Ex. 1; Summary

Publication Notice, attached as Ex. 2; *see also* Order Granting Preliminary Approval and

Approving Notice ¶ 10, Dkt. No. 577 (Nov. 1, 2010) (approving Class Counsel's notice plan);

Dkt. No. 592 (April 4, 2011) (proposing supplemental notice to alert class members to the

commencement of the claims process); Dkt. No. 594 (April 6, 2011) (providing further details of

the supplemental notice plan).

 If the Court directs the issuance of notice, the scope could be modified to be

proportionate to the changes being made to the Agreement.  While publication notice would still

be necessary,[3] a single appearance in each of the relevant publications should be sufficient, rather

than the multiple publication dates used previously to maximize the chance that a potential class

member would see the notice.  In addition to publication, notice can be sent by mail to all

persons who filed claims, as well as addresses obtained for the original 2010 mailing.  Of course,

notice would also be posted on the website IndianFarmClass.com.

---

 [3] Distribution of the notice should not be limited to those who filed claims, as the class
definition is not limited to that population.  The Class is defined as "all persons who are Native
American farmers and ranchers who (1) farmed or ranched or attempted to farm or ranch
between January 1, 1981 and November 24, 1999; (2) applied to the USDA for participation in a
farm loan  program during that same time period; and (3) during the same time period filed a
discrimination complaint with USDA either individually or through a representative with regard
to alleged discrimination that occurred during the same time period."  Settlement Agreement §
II.E.  Because there is no requirement that a person file a claim to be a member of the Class, the
Class is necessarily broader than the thousands of individuals who did file claim forms in 2011.

1939584.2

As the Court may be aware, the cost of the original publication notice was around $2 million, plus additional costs for mailing the notice to individual addresses where available.  The Settlement Agreement provided that USDA would underwrite the cost of notice as well as the administration of the claims process and the adjudication of the claims, separate from the funds it disbursed to satisfy class member claims.  Settlement Agreement §II.Y (defining Implementation Costs as including "costs necessary to provide notice of this Settlement Agreement to the Class"), §VII.B-C (providing $5 million initially and permitting up to three additional tranches of $5 million each to be transferred by the U.S. Treasury to Class Counsel to cover Implementation Costs.)   As such, the Agreement provided that USDA would pay up to $ 15 million, with the option to pay an additional $5 million, to underwrite notice and the claims process.  To date, two of the three routinely-available $5 million tranches of Implementation Costs have been disbursed by the USDA, of which approximately $1.5 million remains. Depending on the scope of the notice, the remaining balance of funds paid by the USDA may be sufficient to underwrite the cost of printing and distribution of notice, as well as to cover the additional costs that would be incurred by the Claims Administrator, which would likely receive a significant increase in calls to its call center as a result of the notice and require expenditure of time to respond to frequently asked questions.

In sum, Rule 23 does not require issuance of notice at this juncture of the litigation. Nonetheless, the Court possesses the discretion to direct the issuance of notice to the class. Given the extensive notice already provided that the cy pres funds would be distributed to non-profit groups serving Native American farmers and ranchers, which term would remain unchanged by the proposed Settlement revisions, and the cost and further delay that additional notice would impose, the Court could reasonably conclude that no additional notice is warranted.

10

1939584.2

November 12, 2014                        Respectfully submitted,


By /s/ Joseph M. Sellers
Joseph M. Sellers, Bar No. 318410        Paul M. Smith, Bar No. 358870
Christine E. Webber, Bar No. 439368      Jessica Ring Amunson, Bar No. 497223
Peter Romer-Friedman, Bar No. 993376     Carrie F. Apfel, Bar No.
COHEN MILSTEIN SELLERS &                  JENNER & BLOCK LLP
   TOLL PLLC                              1099 New York Ave., N.W.
1100 New York Avenue, N.W.               Suite 900
Suite 500, West Tower                    Washington, DC 20001-4412
Washington, DC 20005                     Telephone: (202) 639-6000
Telephone: (202) 408-4600                Facsimile: (202) 639-6066
Facsimile: (202) 408-4699


David J. Frantz, Bar No. 202853          Phillip L. Fraas
CONLON, FRANTZ & PHELAN                   STINSON LEONARD STREET
1818 N Street, N.W.                      1775 Penn. Ave. NW
Suite 400                                Suite 800
Washington, DC 20036-2477                Washington, DC 20006
Telephone: (202) 331-7050                Telephone: (202) 785-9100
Facsimile: (202) 331-9306                Facsimile: (202) 572-9946


Sarah Vogel
SARAH VOGEL LAW OFFICE
1203 North 2nd St.
Bismarck, ND 58501
Telephone: (701) 355-6521
Facsimile:  (701) 425-0155


                                         *Attorneys for Plaintiffs*

1939584.2