# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN KEEPSEAGLE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TOM VILSACK, Secretary, United States ) <br> Department of Agriculture, ) <br> ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:99CV03119 <br> (EGS) <br><br> Judge: Emmet G. Sullivan <br> Magistrate Judge: Alan Kay |

**[PROPOSED] BRIEF OF *AMICUS CURIAE*, ASSOCIATION OF AMERICAN INDIAN FARMERS TO PARTICIPATE IN PROCEEDINGS RELATED TO THE *CY PRES* FUND, INCLUDING ANY PROPOSED MODIFICATIONS THERETO**

Andre Barlow, Esq.
Keith Lively, Esq.
**DOYLE, BARLOW & MAZARD, PLLC**
1110 Vermont Avenue, NW
Suite 715
Washington, DC 20005
202.589.1834
202.589.1819 (fax)
klively@dbmlawgroup.com
*Attorneys for Association of American Indian Farmers Proposed Amicus*

The Association of American Indian Farmers ("AAIF") respectfully submits this Brief, as *Amicus Curae* to offer its assistance to the Court on behalf of its membership of almost 200 Native American Farmers, including members of the state-recognized Lumbee Tribe, as the Court considers the distribution of *Cy Pres* funds and the status of the Settlement Agreement and any proposed amendments thereto.[1]  AAIF and its membership, including many successful and unsuccessful claimants, have a vested interest in the outcome of the proceedings currently before the Court, and believe that Class Counsel has failed to adequately represent these interests at this stage of the litigation, specifically through Class Counsel's proposed amendment to the Settlement Agreement, and through the process by which it represents that this amendment was vetted by class membership.

Many of the underlying issues have already been submitted to the Court in the past two months from unsatisfied class members, in the form of direct letters to the Court opposing the proposed amendment, to Motions to Intervene by both the Great Plains Claimants and Choctaw Nation.  AAIF does not propose to waste the Courts' time reiterating the well-reasoned legal arguments of these parties, but will rather focus on the situations of its own membership, much of which is made up of non-federally recognized tribes who are largely invisible to the United States Department of Agriculture ("USDA") as a matter of policy, and who now find themselves at the mercy of former USDA officials if Class Counsel's proposed amendment is approved.

It is obvious by now that a substantial number of class members oppose Class Counsel's proposed amendment.  In so-called "listening sessions" held over the past few

---

[1] A list of AIFF membership is attached hereto as Exhibit 1.

2

months, the overwhelming sentiment was to allow Native American Farmers to receive a direct share of the remaining *Cy Pres* fund, whether through a new round of claims or otherwise. Even the lead class representatives, George and Marilyn Keepseagle advocate an approach that focuses on additional compensation to the Native American farmers who were the victims of discrimination. *See* Letter from George and Marilyn Keepseagle, dated March 9, 2014 (Dkt. No. 679).

AAIF proposes the following modification to the Settlement Agreement that is more in line with the opinion and needs of the class members, and will do more to substantially compensate Native American farmers for the decades of discrimination they have suffered.

I.  **INTEREST OF AAIF.**

AAIF, was formed in January 2014 to increase public awareness and understanding of the current *Keepseagle* settlement, the settlement in *Cobell v. Salazar* Civil Action No. 1:96-cv-01285-TFH (D.D.C., filed June 10, 1996) and the agriculture industry in general for American Indian Farmers. AAIF was founded by Kara D. Boyd, its president, to provide outreach, advocacy and technical assistance support for related programs and activities compatible and consistent with United States governmental agencies as they pertain to agriculture. Ms. Boyd is a member of the state-recognized Lumbee Tribe of North Carolina. She personally worked with hundreds of Native American farmers during the *Keepseagle* claims process and knows first-hand how confused and frustrating the claims process was for farmers not only in the Lumbee Tribe, but also members of other Tribes throughout the country.

3

AAIF was co-founded by John Boyd, who has been working on behalf of Native American Farmers for Decades. In the late 1990's, John Boyd worked with Alex Pires on the filing of the original *Keepseagle* lawsuit. As a majority of minority farmers were barred by statute of limitation from bringing discrimination claims against the government, Boyd worked to press congress for the passage of legislation that allowed minority farmers, including the Native Americans in the present case, to bring discrimination lawsuits against the United States Department of Agriculture (U.S.D.A).

AAIF represents prevailing claimants, denied claimants, and potential claimants who were denied an opportunity to file. It has a national membership and representation of all class members - Federally Recognized, State Recognized, Historically Non-Federally Recognized and Non-Recognized American Indians.

In the course of this advocacy and outreach, and specifically as part of its efforts to educate its membership about benefits under the *Keepseagle* settlement, it has come to light that the outreach to American Indian farmers has been incomplete and not wholly effective. Otherwise deserving farmers all over the country have been denied their just compensation under the settlement, and in far too many cases this is because of a lack of communication about their rights under the settlement and an unforgiving and an overly strict claims process.

AAIF's membership is approximately well over one hundred (100) farmers at present, including Native American farmers who were successful under Track A and Track B, as well as farmers whose claims were denied. AAIF's membership opposes Class Counsel's current motion to amend the settlement agreement for many reasons, but specifically because it forecloses the possibility of Native American farmers being

4

directly compensated from the remaining *Cy Pres* funds, which are far in excess of what any of the parties reasonably anticipated. This brief offers a proposal to amend the settlement agreement which will adequately compensate successful claimants; allow adequate opportunity to reapply for compensation from previously unsuccessful, but otherwise deserving claimants; and to provide for a distribution of remaining *Cy Pres* funds which take due consideration of the claims of all eligible tribes, both federally and non-federally recognized tribes.

II. **AN UNACCEPTABLE OF NUMBER OF OTHERWISE DESERVING AMERICAN INDIAN FARMERS HAVE BEEN DENIED JUST COMPENSATION UNDER THE CURRENT *KEEPSEAGLE* SETTLEMENT AGREEMENT.**

As the Court should by now be well aware, a large number of Native Americans are not in favor of class counsel's proposal to modify the settlement agreement. The Court has received a significant number of letters almost universally denouncing the proposed amendment, and urging the Court to order a new round of funding to one degree or another. The parties have expressed a willingness to modify the settlement agreement, or at least in the government's case, not to oppose a modification, and it is certainly within this Court's prerogative to approve a modification as justified and appropriate. AAIF simply offers the following proposals for the Court to consider as how to proceed in the face of this unprecedented opportunity to justly compensate Native Americans who have faced decades of discrimination at the hands of the U.S. Government.

Class Counsel has done an admirable job in securing the settlement with U.S.D.A., but now, as is obvious from the overwhelmingly negative reaction of Native Americans, their proposed distribution of such an extraordinarily large *Cy Pres* fund to

5

parties other than the Native American farmers themselves, is unacceptable and would leave a sour taste from a settlement that could, and still has, the potential to be an historic opportunity to rectify decades of discrimination. For the reasons that follow, AAIF believes that it is clear that Class Counsel's current motion to amend the settlement does not enjoy the support of many of its own clients, (including lead Plaintiff Marilyn Keepseagle herself), and is not an acceptable way of distributing funds when so many Native American farmers have been undercompensated, refused, or denied a chance to participate in the claims process.

III. **IN LIGHT OF THE $380 MILLION IN *CY PRES* FUNDS, AND OF THE FUNDAMENTAL PURPOSE OF THE SETTLEMENT, ANY AMENDMENT TO THE SETTLEMENT AGREEMENT SHOULD HAVE AS ITS PRIORITY A REVIEW OF PREVIOUSLY DENIED CLAIMS AND A NEW ROUND OF APPLICATIONS TO ALLOW OTHERWISE DESERVING AMERICAN INDIAN FARMERS TO RECEIVE JUST COMPENSATION.**

Over the past year Class Counsel has presented to Indian Country its proposal for dealing with the unclaimed *cy pres* funds. By all accounts the amount of these funds far exceeds the reasonable estimate of all concerned. On the contrary, as is evident from the onerous claims process, both USDA and Class Counsel presumably anticipated the real possibility of running out of funding and planned accordingly. The very fact that $380 million in *Cy Pres* funds is currently unclaimed should raise a red flag that many deserving farmers have not received their fair compensation. However, from all accounts neither the USDA nor Class Counsel has questioned the adequacy or fairness of the claims process in compensating deserving American Indian farmers for years of past discrimination.

Outreach is certainly part of the problem. Indian nation consists of hundreds of federally recognized tribes and hundreds more state recognized tribes. Many of the American Indian farmers whom this settlement was explicitly meant to compensate often live in some of the most rural parts of this country, many of them with limited access to internet and transportation.

The unduly onerous provisions of the claims process have also contributed to the problem. Only 180 days was allowed for American Indian farmers to file their claims under the settlement agreement. The process, consisting of two exclusive tracks was confusing and document intensive. The determinations of eligibility were final and unreviewable. While there may have been some justification for this onerous process when it was unclear if there would be enough money to compensate all the farmers effected, it is obvious that this justification no longer exists, and that there is no legitimate reason to continue to enforce such a rigid and unforgiving claims process in light of the amount of funds still unclaimed.

AAIF believes that the priority of this Court should be to compensate all deserving farmers and to satisfy itself that all farmers have been afforded a fair and reasonable opportunity to receive compensation. In light of these considerations, AAIF would propose the following provisions be included in any amendment to the settlement agreement.

1. <u>Each denied claim should be subject to review and reconsideration</u>.

Instead of unappealable decisions, every claim denial should be subject to review and reconsideration if necessary. For whatever good that can be said of the current settlement agreement, it cannot be argued that it is a simple or easily understood

document. It is roughly 57 pages of definitions, rules, exclusions, and administrative and bureaucratic burdens forced upon American Indian farmers who fell victim to discrimination under this same sort of bureaucracy. And the settlement agreement is as intimidating as it is unforgiving. It vests in the administrators tasked with reviewing the claims an unassailable power to enforce technical requirements and to make rulings on claim eligibility that are neither reviewable nor appealable. This is a power not even enjoyed by this Court.

Justification for this review can be found simply from considering the concerns voiced by attendees at the various "Listening Sessions" held by class counsel in various locations. A record of these concerns has been filed by Class Counsel as Exhibit E to its motion to modify the settlement Agreement. (Docket No. 709-6). For example:

- "concern was raised because some claimants lost their claims because they checked the wrong box on the claims forms and that something should be done to assist these individuals." Summary Report p. 6, Tulsa/Catoosa, OK Listening Session Held July 30, 2014 (Docket No. 709-6).
- "An individual suggested that there must be a way pursued to "make it right" as to those who were denied incorrectly." Summary Report p. 6, Raleigh, NC Listening Session Held August 26, 2014 (Docket No. 709-6).

As a specific example, Joleen Beaumont Whiteclay, a member of AAIF living on the Crow Indian Reservation in Pryor Montana. Ms. Whiteclay had difficulty getting sufficient information about the claims process and missed her deadline. (See undated Affidavit of Joleen Beaumont Whiteclay, attached as Exhibit 2).

Furthermore, on September 30, 2014 AAIF started and online petition using the MoveOn.org web service, and to date has collected 362 signatures in support of the idea that the *Cy Pres* funds should be paid directly to Native American farmers instead of

8

indirectly through non-profit bureaucracies. (*See* AAIF Online Petition, attached as Exhibit 3).

With the extraordinary amount of *Cy Pres* funds available, even one Native American Farmer whose claim was denied on a technicality is unacceptable.

2. Reconsider claims of successful Track A claimants, who should more properly have been compensated under Track B.

Because of the exclusivity between Track A and Track B applications, many farmers were pushed into Track A out of fear that if they were unsuccessful under Track B, they would not receive compensation under Track A, even if they were deserving. At least one AAIF member, a member of the Lumbee Tribe, that it was his experience that several Native American Farmers who intended to file under Track B were discouraged from doing so by the persons in charge of the process, because Track B required a higher standard of proof, and if they were unsuccessful, they would not be allowed to then make a claim under Track A, and thus risk losing all chance at compensation because of the track they chose to begin with.

This rigid application process makes little sense, especially in light of the fact that there is $380 million in *Cy Pres* funds that were presumably meant to compensate victims of discrimination. Instead of exclusivity between Track A and Track B applications, AAIF proposes and asks the parties and the Court to consider revisiting these claims, and allow claimants to file under both tracks simultaneously, and to be awarded the compensation they deserve based upon the merit of their cause, not the form of their application.

Furthermore, the records requirements are unduly burdensome. Native American farmers, often living in some of the most rural and poverty-stricken areas of the country,

9

are required to provide fifteen-year-old records, which many surely no longer have. The USDA should have sufficient records to verify just claims without imposing arbitrary restrictions upon the victims of discrimination.

3. Allow a second round of applications for American Indian farmers otherwise <u>eligible for compensation</u>.

AAIF has cited specific examples of otherwise eligible farmers who have been denied compensation for purely technical failure to abide by the unduly harsh provisions of the settlement claim procedures. These examples are simply the instances AAIF is directly aware of. Now that an extraordinarily large amount of unclaimed funds exist, it is axiomatic that the first step would be to ensure that American Indian farmers have not been unfairly excluded from compensation by a settlement that was meant to make amends for a system that had unfairly excluded them in the past. AAIF does not pretend that the claims process was an easy undertaking. On the contrary, it acknowledges that any efforts to compensate farmers throughout Indian County is an extremely difficult undertaking. This is the very reason that more must be done to ensure the deserving farmers are duly compensated.

4. Allow a second round of claims applications for American Indian farmers who did not file a claim of discrimination, but otherwise meet the criteria for an <u>eligible claimant under the Settlement Agreement</u>.

The purpose of the settlement is presumably to address past discrimination. It is often the case that victims of discrimination to not necessarily file complaints for one reason or another. All to often victims of discrimination, especially at the hands of the government, are completely unaware they have been discriminated against under the law. It seems unjustified to exclude a farmer who was, in fact, discriminated against, solely because he or she failed to file a complaint with a governmental agency twenty years ago.

10

If a claimant can establish all the other requirements for claims under the settlement agreement, whether or not he/she filed a formal complaint at the time seems to be an superfluous and arbitrary requirement. This is doubly true in light of the fact that there is currently $380 million in unclaimed *Cy Pres* funds.

5. <u>Raise the cap on awards to successful Track A Claimants</u>.

From the input class counsel received during the several listening sessions provided at various locations, by far the most common comment and proposal was to open a second round of payments to successful claimants. Listening sessions, $50,000 was often cited as inadequate to cover losses. Summary Report pp. 60-65, (Docket No. 709-6).

## IV. FURTHER SUGGESTIONS FOR AMENDING THE SETTLEMENT AGREEMENT.

Even with the suggested amendments to the settlement agreement AAIF has already proposed, a *Cy Pres* fund may still be in existence, though presumably in a much smaller amount. In managing this fund, it is important for all parties to recognize and make consideration for the fact that the class consists not only of federally-recognized tribes, but state-recognized tribes as well. The settlement includes both federally-recognized, and non-federally recognized tribes. The distinction is of vital importance because the U.S.D.A. only administers programs to federally-recognized tribes. *See* USDA Departmental Regulation 1350-002, January 18, 2013.

As AAIF represents member of state-recognized and historically non-federally recognized tribes, the issue of ensuring these tribes are duly represented during these proceedings is of extreme importance. It is very concerning that several former officials at USDA are being hired and considered for positions of vital importance in

11

administrating the funds going forward. Through its appointment of former USDA Senior Advisor for Tribal relations Janie Hipp, and other former USDA officials, Class Counsel discounts the rights of its non-federally recognized class members, including but not limited to the Lumbee Tribe of North Carolina.

Class Counsel has already hired former USDA Official/Senior Advisor Janie Simms Hipp to assist with outreach, facilitation, and conducting needs assessments. Upon information and belief, Ms. Hipp is also involved in the selection process for appointing a board of directors to oversee a trust made up of *Keepseagle Cy Pres* funds. Another former USDA official, Ms. Toni Stanger, is a part of Ms. Hipp's team. Ms. Stanger was formerly with the USDA's Office of Tribal Relations.

While not meaning to cast aspersions upon the character and qualifications of these individuals, AAIF and its membership believe the appointment of former USDA officials to these positions is inappropriate for several reasons. First, these officials were at USDA during the time when the Department was discriminating against American Indian Farmers and negotiating with Class Counsel over the settlement. Second, and perhaps more importantly, the USDA has historically only dealt with federally recognized tribes. The former USDA officials at issue are themselves, all members of federally recognized tribes. It is of extreme importance that any *Cy Pres* funds be used for the benefit of all tribes, and that the persons responsible for administering the funds have experience with both federal and state recognized tribes, and be mindful that all such tribes be given fair treatment with regards to the *Keepseagle* settlement.

Beside that fact that it is unseemly to be appointing former officials from the very agency that historically discriminated against Native Americans as a whole, it is equally

concerning that these officials will necessarily have a closer relationship with the federally-recognized tribes they worked with in the past, and will no doubt exhibit an inherent bias in favor of these federally-recognized tribes, whether intentional or not. The *Keepseagle* settlement makes no distinction between federally recognized and non-federally recognized tribes, and it should be important that anyone appointed to a position of authority with regards to the distribution of the remaining *Cy Pres* funds not be unfairly disposed to federally recognized tribes.

## CONCLUSION

AIFF requests this Court to permit its participation in this matter as *amicus curiae,* to consider favorably the points made in its *amicus* brief, and to encourage the parties to reconsider their positions as to the current proposal to amend the settlement agreement put forth an amended agreement that will more fully address the concerns of Native American farmers throughout the country.

Respectfully submitted,

**AMERICAN ASSOCIATION OF INDIAN FARMERS**
Kara Boyd, President

By counsel
**DOYLE, BARLOW & MAZARD, PLLC**

      /s/
Andre Barlow, Esq. (D.C. Bar #465683)
Keith Lively, Esq. (D.C. Bar #499948)
1110 Vermont Avenue, NW, Suite 715
Washington, DC 20005
202.589.1834
202.589.1819 (fax)
abarlow@dbmlawgroup.com
klively@dbmlawgroup.com
*Attorneys for Association of American Indian Farmers Proposed Amicus*

13