**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————— )
                                          )
MARILYN KEEPSEAGLE, et al.,               )
                                          )
            Plaintiffs,                   )
                                          )
       v.                                 ) Civil Action No. 99-3119 (EGS)
                                          )
TOM VILSACK, Secretary, U.S.              )
Department of Agriculture,                )
                                          )
            Defendant.                    )
———————————————————————— )

<u>**MEMORANDUM OPINION**</u>

"On October 19, 2010, after nearly eleven years of litigation, Plaintiffs Marilyn Keepseagle, Luther Crasco, Gene Cadotte, Porter Holder, Keith Mandan, and Claryca Mandan, individually and on behalf of all others similarly situated . . . and Defendant Tom Vilsack, the Secretary of the U.S. Department of Agriculture . . . entered into a Settlement Agreement . . . to resolve *Keepseagle v. Vilsack* . . . a nationwide class action lawsuit that allege[d] systemic racial discrimination in the USDA's Farm Loan Program during the period from 1981 through 1999." Mem. in Supp. of Mot. for Prelim. Approval, ECF No. 571-1 at 1; *see* Settlement Agreement ("Agreement"), ECF No. 621-2.[1] The Agreement created a $680,000,000 fund, most of which was

———————————————
[1] The Agreement was modified in 2012 in a manner not relevant to the issues currently pending before the Court. For clarity, the Court refers throughout this Opinion to the version of the Agreement as modified.

dedicated to providing compensation to class members who were able to prove their claims in a non-Judicial Claims Process. *See* Agreement ¶ VII.F (p. 13). The Agreement limited the length of the claims process: Class members had 180 days from the effective date of the Agreement to submit their claims. *See id.* ¶ II.B (p. 1), IX.A.1 (pp. 15–16).

In crafting the Agreement, the parties agreed to terms that would govern the distribution of the fund in the event that money was left over after the non-Judicial Claims Process was completed. If that occurred, the Agreement *required* that "the Claims Administrator *shall* direct any leftover funds to the Cy Pres Fund." Agreement ¶ IX.F.9 (p. 33) (emphasis added). The Agreement also contained provisions detailing precisely how the Cy Pres Fund *must* be distributed "for the benefit of Native American farmers and ranchers." *Id.* ¶¶ II.I (pp. 2–3), IX.F.9 (p. 33–34). This Court approved the Agreement after providing notice to the class, receiving written comments, and holding a fairness hearing. The objections the Court received to the Agreement were unrelated to the *cy pres* issues now before the Court. *See* Mot. for Final Approval, ECF No. 589 at 62–63; Kent Objection, ECF No. 585-2 at 7–8; Givens Objection, ECF No. 585-4 at 19–20; Transcript of April 28, 2011 Fairness Hearing, ECF No. 609. No appeal was filed from the Court's approval of the Agreement.

Nearly three years later, Class Counsel notified the Court that although the non-Judicial Claims Process had been completed, approximately $380,000,000 remained unclaimed. *See* Status Report, ECF No. 646 at 3. For some reason, far fewer class members had filed claims than the parties expected, far fewer had been successful on their claims, or both. Class Counsel accordingly embarked on attempts to modify the Agreement to address the far-larger-than-expected excess. The Agreement itself allows its own modification "only with the written agreement of the Parties and with the approval of the District Court, upon such notice to the Class, if any, as the District Court may require." Agreement ¶ XIV (p. 49).

Class Counsel first proposed to the government a modification of the Agreement that would have provided for an additional distribution to members of the class, including successful claimants as well as those whose claims were denied, but in Class Counsel's view required "further review." Opp. to Mot. to Remove at 4. The government strongly opposed any such modification and threatened to seek reversion of the excess funds if Class Counsel pursued such a modification unilaterally. Faced with such a risk, along with the need for the government's consent to obtain a modification under the Agreement and the less-than-clear path for obtaining such a modification unilaterally, Class Counsel settled on an approach that would

maintain the *cy pres* nature of the funds, but modify the procedures for their distribution.

On September 24, 2014, Class Counsel filed a proposed modification of the Agreement, which the Department of Agriculture does not oppose. *See* Mot. to Modify, ECF No. 709. Most importantly, the modification would use the bulk of the Cy Pres Fund to create a trust with a twenty-year life span, which would distribute the funds to organizations that are deemed to serve Native American farmers and ranchers. The idea being that a longer time horizon for distribution, combined with the creation of an independent and specialized entity for directing the distribution, would more efficiently distribute the funds than the existing *cy pres* provisions.

The government and Class Counsel have asked this Court to approve the modification without directing notice to the Class or holding a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e), on the grounds that the Rule is inapplicable where a modification would not affect a class's legal rights. On December 2, 2014, the Court held a status hearing, in part to discuss that issue. The Court began the status hearing by permitting Ms. Keepseagle to speak. Ms. Keepseagle discussed her opposition to Class Counsel's proposed modification and her support for a proposal under which the *cy pres* funds would instead be distributed to members of the class. *See* Transcript

of Dec. 2, 2014 Hearing, ECF No. 756 at 5:12–8:5, 9:19–10:3. The

Court responded:

> I'm not suggesting at all by any stretch of the
> imagination that the theory has legal support. I don't
> know. But I very clearly heard [Ms. Keepseagle] tell me
> in her words very eloquently, as she is, that she wants
> relief from this judgment which sounds like a Rule 60(b)
> motion. So, the thought then is, what should the Court
> do at this juncture to enable her to develop her theory?
> I'm not going to lose sight of the fact that she's
> without individual counsel, from what I can determine
> based on our brief discussion in open court.

*Id.* at 12:25–13:18. Accordingly, the Court held further

proceedings in abeyance, and granted Ms. Keepseagle time to

secure legal representation. *See id.* at 22:4–9.

On February 9, 2015, an attorney appeared on behalf of George

and Marilyn Keepseagle. *See* Notice of Appearance, ECF No. 755.

The Keepseagles subsequently indicated that they requested a

decision on two preliminary motions before any deadline for

filing a motion for relief from judgment. *See* Joint Status

Report, ECF No. 758 at 1. Although the government and Class

Counsel preferred to brief all motions simultaneously, the Court

granted the Keepseagles's request to brief their preliminary

motions first. *See* Minute Order of February 24, 2015.

The Keepseagles filed their motions on March 13, 2015. The

first motion seeks a Court Order removing Porter Holder and

Claryca Mandan as class representatives. *See* Mem. in Supp. of

Mot. to Remove ("Mot. to Remove"), ECF No. 760-1. The second

motion seeks an Order compelling Class Counsel to produce
certain materials. *See* Mem. in Supp. of Mot. to Compel ("Mot. to
Compel"), ECF No. 759-1. Class Counsel filed oppositions to both
motions on March 20, 2015. *See* Opp. to Mot. to Remove, ECF No.
762; Opp. to Mot. to Compel, ECF No. 764. The government "takes
no position on the relief sought in the Keepseagles' motions,"
but filed a brief indicating its disagreement with their
contention "that the *cy pres* fund belongs to the class." Gov't
Response, ECF No. 763 at 1 (quotation marks and alteration
omitted). The Keepseagles filed reply briefs in further support
of both motions on March 27, 2015. *See* Reply in Supp. of Mot. to
Compel., ECF No. 766; Reply in Supp. of Mot. to Remove, ECF No.
767. At the Court's direction, the Keepseagles and Class Counsel
filed supplemental briefs on April 2, 2015. *See* Class Counsel's
Suppl. Br., ECF No. 768; Keepseagles's Suppl. Br., ECF No. 769.
Upon consideration of the motions, the responses and replies
thereto, the applicable law, and the entire record, the Court
**DENIES** the motions.[2]

---

[2] The Court directed the parties to address whether the
Keepseagles must move to intervene to obtain the relief they
seek in these motions. *See* Minute Order of February 24, 2015.
Although Class Counsel and the Keepseagles dispute whether
George Keepseagle must intervene—he was once a class
representative, but was removed for health reasons in 2006—they
agree that Marilyn Keepseagle need not intervene because she
remains a class representative. *See* Mot. to Remove at 11-12;
Opp. to Mot. to Remove at 17. Because Marilyn Keepseagle's

## I.    Motion for Removal of Class Representatives

The Keepseagles seek the removal of Porter Holder and Claryca Mandan as class representatives on the basis that they are no longer adequate representatives of the class. They argue that Holder and Mandan have "abdicated their fiduciary duties" by supporting Class Counsel's proposal even though "a substantial minority—and, in all likelihood a majority, of the class members" oppose the proposal and because Holder and Mandan have been proposed as potential trustees of the Trust to be created by the modification, rendering their interests divergent from those of the class. *See* Mot. to Remove at 2. Upon reviewing the pleadings regarding this motion, the Court noted that the Order requested by the Keepseagles seeks a post-judgment modification of the class-certification order, which is arguably barred by Federal Rule of Civil Procedure 23's provision of authority to "alter[] or amend[]" an "order that grants or denies class certification" only *before final judgment*." Fed. R. Civ. P. 23(c)(1)(C) (emphasis added). Because neither party had addressed the issue, the Court requested supplemental briefing. *See* Minute Order of March 30, 2015.

---

status is undisputed, the Court need not address George Keepseagle's status at this time.

**A.   The Court is Not Authorized to Remove Class Representatives After a Final Judgment Has Been Approved.**

In their supplemental brief, Class Counsel asserted that post-judgment modifications of class-certification orders are permitted only when "the amendment will materially affect the legal rights of the members of the class," a circumstance not present here because class members have no legal right to the Cy Pres Fund and therefore would not have any rights altered by modifying the method of its distribution. Class Counsel's Suppl. Br. at 2–3. The Keepseagles disagree, arguing that the Court must reassess the adequacy of representation at all times, and that the proposed modification will "bind" class members. *See* Keepseagle Suppl. Br. at 6–7.[3] The question is therefore whether,

---

[3] The Keepseagles's supplemental brief focused largely on an attempt to recharacterize their motion for removal of class representatives as one pursuant to Federal Rule of Civil Procedure 60(b). *See id.* at 1–6. On the same page of that brief, they recognize that they "did not explicitly cite to Rule 60(b) as the basis of this Court's authority to grant the Motion to Remove," yet assert without explanation that the motion to remove was "premised" on Rule 60(b). *Id.* at 2 & n.4. Rule 60, however, was not discussed as a basis for the motion to remove or reply in support thereof, nor were the very specific circumstances under which a Rule 60 motion may be granted discussed in either document. The Keepseagles's attempt fundamentally to alter their motion in a supplemental brief is rejected. *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992) (describing the general rule that courts "refuse[] to entertain arguments raised for the first time in [a] reply brief" because of the court's "dependence as an Article III court on the adversarial process for sharpening the issues for decision"). The Keepseagles, moreover, have indicated their intent to file a Rule 60 motion to seek modification of the Agreement. The Court will consider their Rule 60 arguments

when a class action has resulted in a final settlement that
resolves both liability and remedy issues, Rules 23(a)(4) and
23(c)(1)(C) permit the Court to modify the class certification
order in light of allegedly inadequate representation by a class
representative.

Both Rules make clear that the answer is "no," at least where
post-judgment actions will not affect class members' legal
rights. Rule 23(c)(1)(C), which provides district courts with
authority to modify a class-certification order "before final
judgment" implies a clear limitation—modification cannot come
*after* final judgment. *Cf. Larionoff v. United States*, 533 F.2d
1167, 1183 (D.C. Cir. 1976) (finding, in connection with a prior
version of the Rule which provided authority for modification
before a "decision on the merits," that the Rule "'implies, even
if it does not state expressly, that such a decision should be
made in advance of the ruling on the merits'") (quoting *Jimenez
v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975) (Stevens, J.)).
Indeed, two courts of appeals have found that Rule 23(c)(1)(C)
generally does not apply in post-settlement requests for
modification. *See Jeff D v. Andrus*, 899 F.2d 753, 758 (9th Cir.
1989) (finding Rule 23(c)(1)(C) "inapplicable" where the
district had previously "entered a final judgment in the form of

---

in connection with that motion, to which Class Counsel and the
government will be able to respond.

an order approving the . . . Settlement Agreement"); *Cox v. Shah*, 187 F.3d 629, at *7 (4th Cir. 1999) (same). The Keepseagles's request for removal of class representatives would require modification of the class-certification order underlying the judgment. *See* Order Preliminarily Approving Settlement, ECF No. 577 at 2 ("The following individuals are approved as Class Representatives: Gene Cadotte, Keith Mandan, Porter Holder, Marilyn Keepseagle, and Claryca Mandan."); Agreement ¶ II.F (p. 2) (listing Porter Holder and Claryca Mandan as "Class Representatives").

To be sure, as Class Counsel admitted, the bar on modifications after "final judgment" is flexible: "Following a determination of liability, for example, proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class. In this setting the final judgment concept is pragmatic. It is not the same as the concept used for appeal purposes, but it should be flexible, particularly in protracted litigation." Fed. R. Civ. P. 23(c)(1)(C), Adv. Comm. Notes. The "final judgment" language was inserted in 2003 in place of the phrase "decision on the merits," to ensure that a class certification order could be modified after a liability finding *but before the finalization of the appropriate remedy. Id.; see also* Wright & Miller, *Federal Practice and Procedure* § 1785.4 (3d ed. 2014). This

flexibility regarding the finalization of a remedy, however, does not apply here. The Agreement not only settled and extinguished the class's liability claims, but also provided detailed resolution of the appropriate remedy, including precise provisions *requiring* the transfer of all unclaimed funds at the conclusion of the non-Judicial Claims Process to a Cy Pres Fund, and *requiring* the distribution of the Cy Pres Fund pursuant to *cy pres* procedures.

Rule 23(a)(4)'s adequacy-of-representation requirement is similarly targeted at ensuring that class members who may be bound by a judgment are properly represented *in proceedings that may bind them*. The Rule requires that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and "[b]asic consideration[s] of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives *at all stages of the litigation where absent members will be bound by the court's judgment*." *Nat'l Ass'n of Reg'l Med. Programs v. Mathews*, 551 F.2d 340, 344-45 (D.C. Cir. 1976) (emphasis added). As the emphasized text indicates, these concerns are tied to the *res judicata* effect of any judgment on class members—a class-action judgment binds absent class members, so if the class representatives are inadequate, it would be unfair to allow the case to proceed as a

class action. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–27 (1997).

The problem in this case is that the lawsuit is, for *res judicata* purposes, over. *See Keepseagle v. Vilsack*, No. 99-3119, 2014 WL 5796751, at *12 (D.D.C. Nov. 7, 2014) ("the Great Plains Claimants, with notice, have intentionally satisfied their legal claims"); *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 197 (D.D.C. 2008) ("An agreement between the parties dismissing all claims is the equivalent of a decision on the merits and thus claims settled by agreement are barred by *res judicata*."). Indeed, the Agreement made clear that the Class's claims would be dismissed and "forever barred and precluded." Agreement ¶¶ VI.A. (p. 11), X (pp. 47–48). Accordingly, the *res judicata* interests that Rule 23(a)(4) is designed to protect have dissipated.

That is not to say that such interests never arise after a final judgment is entered. Just as the final-judgment concept of Rule 23(c)(1)(C) is pragmatic, so too are the concerns underlying Rule 23(a)(4). The D.C. Circuit has found that concerns regarding binding the legal rights of class members continue to animate the adequacy requirement post-judgment. For example, where a post-judgment order granted class counsel an attorney-fee award to be paid by the class members out of the funds they had received as damages, the Circuit found the adequacy requirement implicated because the class

representative, an association that had entered into a retainer agreement with class counsel under which the association would pay a flat-fee that would be reimbursed from the ultimate class award, had interests directly in conflict with those of the class. *Mathews*, 551 F.2d at 344-45. Proceeding with that judgment would have subjected class members to court-ordered payment of attorney's fees. *See id.* Post-judgment adequacy concerns may also arise when a class member's legal rights under a settlement are bargained away. *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 572 (D.C. Cir. 1997) (assessing the adequacy of a representative where class counsel sought to bargain away the right to enforce a consent decree regarding living conditions in a District of Columbia jail in exchange for an agreement to meet "certain staffing levels").

As the Court has previously held, the class members in this case have no legal right to the Cy Pres Fund. *See Keepseagle*, 2014 WL 5796751, at *12-14. They agreed to—and did not appeal—a final settlement that entirely extinguished their legal claims, provided a framework for the distribution of damages, and *mandated* that all excess funds be distributed pursuant to a *cy pres* remedy. *See id.* The process for distributing the Cy Pres Fund is the sole target of Class Counsel's pending motion for modification, so the proposed modification would not implicate a

class member's legal right.[4] Unlike the class in *Mathews*, they

would not be subject to a judgment to be paid out of their own

pocket; rather, the Cy Pres Fund contains money that was

allocated to pay the damages claims of other class members who,

for whatever reason, were unsuccessful under the non-Judicial

---

[4] The Court recognizes that the Keepseagles intend to argue in
their motion for modification that the unclaimed funds are the
property of the individual class members. *See* Reply in Supp. of
Mot. to Remove at 4–5 n.5. This Court's November 2014 Opinion
held, in rejecting a request for intervention, that class
members lacked standing to intervene because they had no legal
or property interest in the Cy Pres Fund and therefore faced no
imminent legal injury from Class Counsel's proposed
modification. *See Keepseagle*, 2014 WL 5796751, at *11–14. The
Keepseagles's characterization of this holding as "dicta," Reply
in Supp. of Mot. to Remove at 5 n.5, is incorrect; the lack of a
property interest was necessary to the Court's holding that
class members faced no imminent injury. The Keepseagles are
free, of course, to argue that this conclusion was wrong. Their
brief attempt to do so in connection with the pending motions,
however, is unconvincing. Their citation to *Klier v. Elf Atochem
N. Am.*, 658 F.3d 468 (5th Cir. 2011) ignores what *Klier* actually
held: That settlement proceeds belonged to a class where the
settlement agreement *did not* provide for a *cy pres* remedy and
permitted the reallocation of excess funds to compensate another
subclass. *See Keepseagle*, 2014 WL 5796751, at *13 (noting that
the Fifth Circuit also emphasized that it did not have "'a case
where the settlement agreement itself provide[d] that residual
funds shall be distributed via *cy pres*,' and . . . that 'the
relevant provisions' of the Agreement 'shape the property
interest created by the Agreement'") (quoting *Klier*, 658 F.3d at
476, 478). The recent Eighth Circuit decision, *In re BankAmerica
Corp. Securities Litig.*, 775 F.3d 1060 (8th Cir. 2015), may well
support an argument that the Court's prior holding should be
reconsidered—although the Eighth Circuit appears not to have
been confronted with a settlement agreement that mandated that
the settlement administrator direct all excess funds to a Cy
Pres Fund—but the Keepseagles have not elaborated their reliance
on that case, so the Court has no occasion to address it at this
time.

Claims Process or did not participate in the process. And unlike the class in *Twelve John Does*, no one is bargaining away any legal right regarding the enforcement of the Agreement. Accordingly, the Court does not have the authority to remove class representatives at this stage of proceedings, where a final judgment has been entered and the pending proposal for modification of the Agreement does not implicate the legal rights of class members. For that reason, the Court **DENIES** the Keepseagles's motion to remove.

### B.  Porter Holder and Claryca Mandan Remain Adequate Representatives.

Although the Court lacks the authority to remove class representatives in the peculiar posture in which this motion arises, even if the Court had such authority, removal of Holder and Mandan would be inappropriate because they remain adequate representatives. The adequacy requirement ensures that "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class." *Twelve John Does*, 117 F.3d at 575 (quotation marks omitted). This is necessary because "[a] class representative whose interests are materially adverse to some of the class cannot be an adequate representative for the whole class because in promoting her own interests she may undercut the interests of other class members." Newberg on Class Actions § 3:54 (5th ed. 2014).

The Keepseagles argue that Holder and Mandan do not have the same interests as those of the class because: (1) they support a proposed modification that is opposed by many class members; and (2) they have been proposed as trustees of the Trust to be created by the proposed modification and stand to receive compensation for that position. *See* Mot. to Remove at 2-4.[5] Class Counsel responds that Holder and Mandan have merely taken a different strategic position than the Keepseagles, and that no conflict of interest arises from their nomination as trustees because they stand to gain even more from any proposal under which the Cy Pres Fund would be distributed to successful class members. *See* Opp. to Mot. to Remove at 8-15.

The Court agrees that class representatives do not become inadequate merely because other class members disagree with their strategic decisions. *See* Newberg on Class Actions § 3:65

---

[5] The Keepseagles's counsel repeatedly suggest, without providing any evidentiary support, that Holder and Mandan may have received some type of secret compensation in exchange for supporting Class Counsel's motion for modification. *See, e.g.*, Mot. to Remove at 4 n.3. They even go so far as to appear to imply that Class Counsel provided large class-representative awards to Holder and Mandan—in the 2011 settlement—as compensation for their support for the proposed modification—the need for which could not have been apparent in 2011. *See* Mot. to Remove at 9 & n.9; Reply in Supp. of Mot. to Remove at 19 n.21. The former allegations, which would be deeply concerning if true, are wholly unsupported by evidence; the latter implication defies logic. The Court recognizes the sincere and deep disagreement regarding these issues, but no party's position is advanced by leveling wholly unsupported allegations.

(5th ed. 2014); *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 348 (N.D. Cal. 2008) ("A difference of opinion about the propriety of the specific relief sought in a class action among potential class members is not sufficient to defeat certification."). The same is true when portions of the class disagree with a proposed settlement. *Cf. Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998) ("a settlement can be fair even though a significant portion of the class and some of the named plaintiffs object to it"); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22–24 (2d Cir. 1987) (approving class-action settlement, under standard that required "that the class members' interests were represented adequately," even though all class members who expressed an opinion on the settlement opposed it). "Rule 23(a)(4) ensures that representative parties will fairly and adequately protect the interests of the *entire class*." *Council of & for the Blind v. Regan*, 709 F.2d 1521, 1547 (D.C. Cir. 1983) (emphasis added). This may require consideration of the views of vocal class members, but a class representative must also exercise judgment as to the propriety and likelihood of success of any particular course of action. *Cf. Twelve John Does*, 117 F.3d at 576 (rejecting a contention that class counsel was inadequate in negotiating with the defendant regarding violations of a consent decree for failing to seek "concessions not contained in the

consent decree"). A class representative's support for a particular course of action, then, must be judged not only against the views of the class, but also against the strategic calculations that factored into that support.

Although reasonable minds could—and clearly do—disagree on the best approach in this case, there is ample reason for Holder and Mandan to view Class Counsel's proposal as the strategic decision that is most in the Class's interest. The fact remains that the Agreement that was approved *mandates*, in provisions neither objected to nor appealed from, that all leftover funds be distributed by the Claims Administrator to the Cy Pres Fund and that the Cy Pres Fund be distributed to Cy Pres Beneficiaries. *See* Agreement ¶¶ II.I (pp. 2–3), IX.F.9 (p. 33–34). In considering whether to propose *any* modification of the Agreement, Holder and Mandan would have to review the limited avenues for obtaining such a modification. One path lies with the Agreement itself, which permits modification "only with the written agreement of the Parties." *Id*. ¶ XIV (p. 49). Another path arguably may lie with Federal Rule of Civil Procedure 60(b), which provides for relief from judgment under certain narrow circumstances. After learning that the government would not only withhold consent to a modification that provided additional payments directly to class members, but would seek to obtain reversion of the excess funds if Class Counsel sought

such a modification unilaterally, Holder and Mandan could reasonably have decided that seeking supplemental payments was not worth the risk. Their decision could be bolstered by the uncertainty inherent in seeking a modification of the Agreement under Federal Rule of Civil Procedure 60(b). *See, e.g.*, *In re Black Farmers Discrimination Litig.*, 950 F. Supp. 2d 196, 199–201 (D.D.C. 2013) (rejecting Rule 60 motion for modification of a similar settlement agreement that resolved similar discrimination claims raised by African-American farmers); *In re Black Farmers Discrimination Litig.*, 29 F. Supp. 3d 1, 3–5 (D.D.C. 2014) (same). Were such a motion pursued in lieu of the agreed-upon modification and subsequently denied, the class would be stuck with the deal it originally struck—resulting in a large Cy Pres Fund to be distributed in an arguably inefficient manner. Worse, the government might follow through with its promise to seek reversion of the entire excess. Of course, a class representative might also decide—as Ms. Keepseagle has decided—that the risk of losing a Rule 60 motion is worthwhile, and that the government is unlikely to obtain reversion of the funds. But that is precisely the point; either strategic path has its benefits and its risks. Weighing these benefits and risks is the job of a class representative, and Holder and Mandan cannot be faulted for reaching a reasonable conclusion that differs from that reached by many class members.

The Court also finds that Holder and Mandan do not have a
conflict of interest that would render them inadequate
representatives. To be sure, Holder and Mandan have been
nominated as potential trustees of the Trust that Class Counsel
seeks to create to oversee the distribution of the Cy Pres Fund.
*See* Class Counsel's Notice of Nominations, ECF No. 712 at 1, 2.
If confirmed to this position, they would be eligible to receive
up to $10,000 annually for as long as they served, although
their service would be subject to reappointment and limited to a
maximum possible term of ten years. *See* Proposed Trust
Agreement, ECF No. 709-3 at 7, 9. The Keepseagles argue that
this creates an incentive to support the modification because
Holder and Mandan stand to gain up to $100,000 and would be in a
position to direct the distribution of a significant Cy Pres
Fund.[6] Class Counsel responds that if Holder and Mandan were
financially motivated, they would be much better served by

_____

[6] The Keepseagles's attorneys also appear to challenge the
qualifications of Holder and Mandan to serve as trustees. They
imply that both are totally unqualified for the job: "Upon
information and belief, neither Holder nor Mandan has ever
served on a non-profit entity with a substantial endowment and
neither has substantial experience with grants." Mot. to Remove
at 3. This is misleading. Clarcya Mandan has experience with
various non-profit organizations. *See* Mandan Bio, ECF No. 712-8.
Porter Holder, moreover, has served on the Council for Native
American Farming and Ranching, which was created by the
Agreement in this case to advise and oversee the Department of
Agriculture regarding issues that affect Native American farmers
and ranchers. *See* Holder Bio, ECF No. 712-5.

seeking supplemental payments directly to class members. *See* Opp. to Mot. to Remove at 9.

Adequacy is not questioned whenever class representatives have any divergence of views or interests; "not every potential distinction between the proposed representative and other class members will render the representative inadequate." Newberg on Class Actions § 3:58 (5th ed. 2014). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Id*. Holder and Mandan do not have such a deep divergence of interests. For one, their nomination is contingent on being approved by the Court, and would be subject both to term limits and to their reappointment. *See* Proposed Trust Agreement, ECF No. 709-3 at 7, 9. They would not be given money for nothing; they would be required to serve as Trustees and supervise what would surely be a complex distribution process. Finally, and most importantly, Holder and Mandan are successful claimants under the existing Agreement. If they were to support a redistribution of the excess funds to the class as a whole or to previously successful class members, they would be among those who would directly benefit, without the need for approval of a nomination, continued service, years of work, or reappointment. Indeed, if the excess funds were distributed *pro rata* to all those who successfully submitted claims, Holder and

Mandan would receive approximately $100,000 each, Opp. to Mot.
to Remove at 9—the maximum amount they could receive for serving
as trustees, which would come only if they served for ten years.
*See* Proposed Trust Agreement, ECF No. 709-3 at 7, 9.
Accordingly, Holder and Mandan may stand to benefit under the
proposed modification, but they would also directly benefit
under a proposal akin to the Keepseagles's plan. It is thus not
a conflict of interest that is driving their support for Class
Counsel's motion, but a difference of opinion regarding the best
strategy.

In their reply, the Keepseagles argue that Holder and Mandan
would not benefit from the Keepseagles's forthcoming motion to
modify the Agreement because the Keepseagles intend to move for
supplemental distributions only to class members who
successfully prosecuted a claim under Track A of the Agreement,
and Holder and Mandan were Track B claimants. *See* Reply in Supp.
of Mot. to Remove at 18–20. This argument illustrates the
fundamental flaw in the Keepseagles's motion. If the Court were
to grant the motion, and the Keepseagles were to propose the
modification they say they intend to file, it would render
Marilyn Keepseagle subject to removal as a class representative.
The Keepseagles seek to remove Holder and Mandan for supporting
a modification that would not directly benefit all class
members, yet intend to propose a modification that would

22

distribute the excess funds *only to* successful Track A claimants. This would omit all successful Track B claimants, all class members whose claims were denied during the non-Judicial Claims Process, and all class members who did not participate in the non-Judicial Claims Process. That, however, is not how class representation works: Porter Holder, Claryca Mandan, and Marilyn Keepseagle have divergent views on the strategic options available to the Class in seeking potentially to modify the Agreement they struck in 2011. Given the posture of this case, the uncertain legal issues involved, and the seeming impossibility of reaching a modification that would benefit all class members equally, their divergent views are understandable and reflect not a conflict of interest, but that they all continue to serve as strong representatives of the class, despite their disagreements about the best strategy going forward.

Holder and Mandan thus find themselves in a position far different from those of the inadequate class representatives referenced by the Keepseagles. Many of the cases relied upon by the Keepseagles addressed class representatives whose underlying legal claims differed in material ways from those of the class. *See Rosario v. Rockefeller*, 410 U.S. 752, 759 n.9 (1973) (class representatives who were not subject to challenged practice were not members of the class); *Hall v. Beals*, 396 U.S. 45, 49 (1969)

(same); *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962) (same).
There is no dispute that Holder and Mandan had identical
substantive claims against the Department of Agriculture. Other
cases relied upon by the Keepseagles established the proposition
that a class should not be represented by an individual who,
under the class's allegations, herself engaged in the challenged
conduct. *See Wagener v. Taylor*, 836 F.2d 578, 595 (D.C. Cir.
1987) (employment-discrimination class that included managers
who allegedly participated in the discriminatory conduct against
lower-level employees who were also class members). There could
be no allegation that Holder or Mandan were involved in the
Department of Agriculture's actions that gave rise to this
lawsuit.

Nor are Holder and Mandan anything like the self-dealing class
representatives of *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th
Cir. 2014) and *Mathews*, 551 F.2d at 346. *Mathews* found
inadequate a class representative that had fronted the costs of
class counsel's representation of the class and sought a post-
judgment order directing other class members to reimburse those
costs out of the damages recovered in the underlying suit. 551
F.2d at 344–46. Holder and Mandan do not stand to take anything
from class members (even if they become trustees, the Cy Pres
Funds with which the Trust will operate are not the property of
class members, *supra* at 13–14 & n.4), and unlike the

representative in *Mathews*, they actually would stand to gain
from an alternative modification proposal. *Eubank* demonstrated a
severe conflict of interest, where a class representative was
the father-in-law of class counsel, class counsel was facing
significant financial difficulties, and the class representative
therefore had a strong incentive to support proposals that
financially benefited class counsel over the class itself. 753
F.3d at 721-24. No such situation has been alleged here.
Accordingly, even if the Court had the authority to consider the
adequacy of class representatives at this stage, the Court would
**DENY** the Keepseagles's motion.

## II.  Motion to Compel

  Between July 30, 2014 and August 26, 2014, Class Counsel held
"in-person informational meetings" in Tulsa, Oklahoma;
Albuquerque, New Mexico; Phoenix, Arizona; Rapid City, South
Dakota; Bismarck, North Dakota; Spokane, Washington; Billings,
Montana; and Raleigh, North Carolina. *See* Class Counsel's Mem.
in Supp. of Mot. to Modify, ECF No. 709-1 at 24. They also held
conference calls on August 6, 2014; August 16, 2014; and August
20, 2014. *See id.* "Each of these meetings spanned an entire day,
while each call lasted three hours, and included presentations,
questions and answers, and remarks by Class Members and members
of the public." *Id.* On behalf of Class Counsel, the Indigenous
Food & Agriculture Initiative of the University of Arkansas

School of Law compiled a summary report of the comments made
during these so-called listening sessions. *See* Listening Session
Report, ECF No. 709-6; Mot. to Compel at 3.

The Keepseagles would like access to the Indigenous Food &
Agriculture Initiative's "notes and the other correspondence
from class members and others related to the Listening Sessions"
("the Listening Session Materials"). Mot. to Compel at 5; *see
also* Reply in Supp. of Mot. to Compel at 2 (describing the
materials sought as "letters, faxes and e-mails sent to IFAI
and/or Class Counsel, and IFAI's transcriptions of the Listening
Sessions"). They assert that these materials "are the best
evidence of class members' goals and interests with respect to
the distribution of the cy pres funds" and that "[a]n Order
compelling the production of the Listening Sessions records will
permit the Keepseagles to demonstrate that a substantial
minority—if not a broad majority—of the class members oppose
Class Counsel's proposed modification and instead support a
supplemental distribution of the cy pres funds to class
members." Mot. to Compel at 4.

Although the motion clearly articulates what the Keepseagles
want, it does not clarify the legal basis for getting there.
This case settled years ago pursuant to the Agreement over which
the Court retained only narrow jurisdiction. The Keepseagles
have not invoked the civil-discovery rules of the Federal Rules

of Civil Procedure as a basis for their motion to compel, nor

have they relied upon any provision of the Agreement itself.

Finally, the Keepseagles have not relied upon authority

permitting the Court to grant limited discovery in support of a

Rule 60(b) motion.[7] The Keepseagles rely on two sources for their

motion to compel: First, they assert that Class Counsel's

professional obligations require them to provide the Keepseagles

with the Listening Session Materials. *See* Mot. to Compel at 5-6.

Second, they invoke a doctrine that permits an objector to a

class-action settlement to obtain discovery in support of her

objection. *See id.* at 7.[8]

---

[7] Their motion argued that the discovery would be useful to their
forthcoming Rule 60 motion, but did not tie that to any legal
basis for granting the motion to compel. In any event, the
circumstances under which discovery is allowed in support of a
Rule 60 motion appear limited to those in which the discovery
sought is directly relevant to proving the applicable basis for
relief from judgment. *See, e.g.*, *Bowie v. Maddox*, 677 F. Supp.
2d 276, 285 (D.D.C. 2010) (discovery "to further develop . . .
claims of fraud" may be permitted in support of a Rule 60(b)(3)
motion where the plaintiff "demonstrates a colorable claim of
fraud"). The level of class-member opposition to a competing
motion for modification, by definition, is not relevant to any
basis for relief from judgment under Rule 60—all of which speak
to defects in or changed circumstances regarding the underlying
judgment.

[8] The motion to compel also contains conclusory and unexplained
arguments that, to the extent they seek to establish additional
bases for the motion, are rejected. First, the motion states
that "[i]n addition to the Keepseagle[s]'s *right* under the Rules
of Professional Conduct to files in Class Counsel and/or their
agent's possession, this Court has authority to compel Class
Counsel to produce all such records." Mot. to Compel at 6
(emphasis in original). To the extent this argument was intended

A.   **The Keepseagles Waived Their Professional Responsibility Argument.**

The Keepseagles's invocation of the Rules of Professional Responsibility was based upon their assertion that Ms. Keepseagle "possesses a traditional attorney-client relationship with Class Counsel." Mot. to Compel at 5. Pursuant to Rule 1.16(d) of the D.C. Rules of Professional Responsibility, such a relationship requires that "[i]n connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled." The Keepseagles accordingly argue that they "are entitled to prompt production of files relevant to their case." Mot. to Compel at 6. Class Counsel responded that the Keepseagles fail to grapple with the differences between a class

---

to be distinct from the class-action-objector argument, it is wholly unexplained. The legal decision cited in the following sentence for the proposition that "district judges presiding over class actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole" has nothing to do with a district court's authority to grant a post-judgment motion to compel. *See id.* (citing *Uhl v. Thoroughbred Technology & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002)). Similarly, the final paragraph of the motion to compel invokes decisions regarding the Court's authority to impose sanctions for misconduct, a situation wholly unrelated to compelling the production of documents. *See id.* at 16 (citing *Clarke v. Washington Metropolitan Area Transit Auth.*, 904 F. Supp. 2d 11, 20 (D.D.C. 2012); *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

action and individual representation. Although Class Counsel acknowledge their attorney-client obligations to the Keepseagles, and agree to, "of course, turn over to the Keepseagles materials that pertain to their claims," Class Counsel also note that they have "a fiduciary obligation to the class apart from their attorney-client relationship with the Keepseagles." Opp. to Mot. to Compel at 5. They correctly state that none of the authority cited by the Keepseagles establishes a right to all files related to a class action—including communications between the lawyer and other class members. *See* Opp. to Mot. to Compel at 8–9 (distinguishing *Cobell v. Norton*, 212 F.R.D. 14 (D.D.C. 2002) and *In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) because the cases involved "alleged ethical violations of lawyers *other than class counsel*" and did not involve questions related to the return of client files) (emphasis in original). Class Counsel also cited authority for the proposition that its ethical obligations are different from those of counsel for an individual. *See* Opp. to Mot. to Compel at 5–9.

The Keepseagles have not provided the Court with any authority supplying a basis for this Court to adjudicate an ethical dispute involving the D.C. Rules of Professional Responsibility, and the source of such authority is not clear. *Cf. Shelvy v. Wal-Mart Stores, East*, No. 11-cv-9176, 2013 WL 6081514, at *1

(N.D. Ill. Nov. 19, 2013) (expressing skepticism that a district court would have jurisdiction over a motion to compel based solely upon a similar rule of professional responsibility). The Court need not address the issue, however, because the Keepseagles abandoned the entire argument in their reply brief by failing to respond to *any* of Class Counsel's points regarding the differences between individual and class representation and the applicable rules of professional conduct. *See generally* Reply in Supp. of Mot. to Compel., ECF No. 766. "'Because the [Keepseagles] failed to address these issues in [their] motion and failed to respond to [Class Counsel's] points in [their] Reply, the Court will deem them abandoned.'" *Coleman ex rel. Bunn v. District of Columbia*, No. 13-1456, 2014 WL 4819092, at *17 (D.D.C. Sept. 30, 2014) (quoting *McGinnis v. District of Columbia*, No. 13-1254, 2014 WL 4243542, at *15 (D.D.C. Aug. 28, 2014) (alterations omitted)).

## B. The Keepseagles Are Not Entitled to Objector Discovery of the Listening Session Materials.

The second basis invoked by the Keepseagles for their motion to compel relates to discovery that may be granted to class-action objectors. "Class members, including those who become objectors, are entitled to some opportunity to review the record of the case so as to inform their views about the value of the certification motion, settlement, and/or fee request." Newberg

on Class Actions § 13:32 (5th ed. 2014). Even so, "[c]lass members who object to a class action settlement do not have an absolute right to discovery." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001); *see also In re Cmty. Bank of N. Va.*, 418 F.3d at 316. The Manual for Complex Litigation suggests that "[d]iscovery should be minimal and conditioned on a showing of need." Manual for Complex Litigation, Fourth § 21.643; *see also* Newberg on Class Actions § 13:32 (5th ed. 2014) ("The touchstone for discovery is that it will ultimately assist the court in determining the fairness of the settlement."). As another Judge of this Court put it: "[T]he Court may in its discretion allow discovery *if it will help the Court* determine whether the settlement is fair, reasonable, and adequate." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 26 (emphasis added); *see also, e.g.*, *Wal-Mart Stores, Inc. v. Visa, USA, Inc.*, 396 F.3d 96, 120 (2d Cir. 2005) (if "the District Court had before it sufficient facts intelligently to approve the settlement offer," there would be "no reason . . . to give appellants authority to renew discovery."); *In re Cmty. Bank of N. Va.*, 418 F.3d at 316 ("The District Court has discretion to employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement.") (quotation marks omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 342 (3d Cir. 1998) ("whether to

grant discovery is committed to the sound discretion of the
court").

The Keepseagles justify their discovery request as "directly
relevant to the propriety of Class Counsel's motion and the
issue of whether their motion is supported by a majority of the
members of the class they purport to represent," and rightly
note the potential relevance of class-member opposition to the
Court's consideration of a settlement. Mot. to Compel at 7.
Class Counsel oppose the request on the grounds that discovery
of the Listening Session Materials would not add anything
because all parties agree "that most class members who spoke at
the eleven Listening Sessions or otherwise contacted Class
Counsel prefer a supplemental distribution instead of the
proposed modification." Opp. to Mot. to Compel at 2; *see also*
Class Counsel's Mot. to Modify, ECF No. 709-1 at 25("most Class
Members who spoke . . . expressed their preference that some or
all of the cy pres funds be distributed directly to Class
Members who filed claims"); Summary of Comments, ECF No. 709-6.

The Court largely agrees with Class Counsel that the discovery
sought by the Keepseagles would be duplicative of existing
stipulations. It is well established that discovery is not
warranted where the underlying factual issue is one to which all
parties stipulate. *See, e.g.*, *Jones v. ReliaStar Life Ins. Co.*,
615 F.3d 941, 945 (8th Cir. 2010) (where plaintiff "emphasize[d]

32

that discovery should be allowed to explore [the defendant's] conflict of interest, but [the defendant] concede[d] that it was both insurer and administrator of the plan, . . . discovery is unnecessary to establish the existence of a conflict"); *Estevez-Yalcin v. Children's Village*, 331 F. Supp. 2d 170, 180 (S.D.N.Y. 2004) (where a party "concedes that it did no background check at all on [a particular individual], . . . further discovery on that issue is unnecessary"); *Med. Billing Consultants, Inc. v. Intelligent Med. Objects, Inc.*, No. 1-cv-9148, 2003 WL 1809465, at *2 (N.D. Ill. Apr. 4, 2003) ("Discovery of these documents at this point in the litigation is not necessary as defendants are willing to concede the most important issue."). The point the Keepseagles intend to make—that class members expressed broad opposition to Class Counsel's proposal—has largely been stipulated to. Indeed, the comments received by the Court—all of which have been posted on the docket—also demonstrate strong opposition by many class members.

To the extent the Keepseagles intend to object to the modification based upon the precise number of individuals opposed to it or the precise words used to describe their opposition, Reply in Supp. of Mot. to Compel at 3–5, the Court would be better served by receiving written and oral statements from these individuals directly. Such statements would be far more persuasive proof of the positions of class members than

comments made by a relatively small subset of the class nearly one year ago, some of which may have been intended to be private communications to Class Counsel. The Court, moreover, intends to solicit such a broad and timely array of comments from the class. Because the Court intends to receive such input—the true best evidence of the class's perspective on Class Counsel's motion and the Keepseagles's forthcoming motion—and because the materials the Keepseagles seek have been largely stipulated to, the Court finds that the Keepseagles's proposed discovery would not assist the Court in determining "whether the settlement is fair, reasonable, and adequate," *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 26, and therefore **DENIES** the motion to compel.

## III. Conclusion

For the foregoing reasons, the motions to remove class representatives and to compel are **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **April 23, 2015**