UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                               )
MARILYN KEEPSEAGLE, et al.,     )
                               )
            Plaintiffs,         )
                               )
        v.                      ) Civil Action No. 99-3119 (EGS)
                               )
TOM VILSACK, Secretary, U.S.    )
Department of Agriculture,      )
                               )
            Defendant.          )
_____)

**MEMORANDUM OPINION**

Pending before the Court is a motion filed by Class Counsel to modify the Settlement Agreement that was entered in this case in 2011. The Settlement Agreement created a $680,000,000 fund and included precise terms regarding the distribution of that fund to individual class members who could prove their claims in a non-Judicial Claims Process. In 2013, after the entire distribution process had been completed, Class Counsel notified the Court that approximately $380,000,000 remained in the fund. The Settlement Agreement mandates that this excess be distributed pursuant to a *cy pres* remedy.

Many involved in this case would like to modify those provisions of the Settlement Agreement. Some prefer a modification that would direct that the $380,000,000 be distributed as supplemental payments to class members who succeeded under the non-Judicial Claims Process. Others have

suggested reopening the Claims Process to new or previously unsuccessful claimants. Still others believe that opposition from the Department of Agriculture has made it impossible to obtain a modification that would alter the *cy pres* status of the funds, and have proposed modifications that would create *cy pres* distribution procedures to better handle the massive amount of money to be distributed.

Class Counsel's pending motion falls into the latter category. As this Court's recent Opinions demonstrate, there is significant controversy over Class Counsel's motion. *See Keepseagle v. Vilsack* ("*Keepseagle I*"), No. 99-3119, 2014 WL 5796751 (D.D.C. Nov. 7, 2014) (denying requests by two different groups to intervene in the case to oppose Class Counsel's motion); *Keepseagle v. Vilsack* ("*Keepseagle II*"), No. 99-3119, 2015 WL 1851093 (D.D.C. Apr. 23, 2015) (adjudicating preliminary motions filed by a class representative who intends to move under Federal Rule of Civil Procedure 60(b) for a different modification of the Settlement Agreement). A handful of issues remain to be decided by the Court, including the ultimate disposition of Class Counsel's motion.

This Opinion addresses only a narrow issue: Whether Federal Rule of Civil Procedure 23(e) applies to Class Counsel's motion for modification and, if not, whether the Court may nonetheless order Class Counsel to provide notice of their motion to the

Class and permit class members to speak during the June 29, 2015
hearing on Class Counsel's motion for modification. Upon
consideration of the parties' pleadings, the *amicus curiae* brief
filed on behalf of many class members, the applicable law, and
the entire record, the Court finds that Rule 23(e) does not
apply to Class Counsel's motion, but that it is appropriate to
direct that Class Counsel provide notice to the Class and to
permit class members to speak at the June 29, 2015 hearing or to
submit written comments in advance of that hearing.

## I.  Background

   The complete background of this case and its current posture
is set forth more fully in the Court's recent Opinions. *See
Keepseagle I*, 2014 WL 5796751; *Keepseagle II*, 2015 WL 1851093.
In summary:

> Following over a decade of litigation, the parties to
> this class action reached a Settlement Agreement. *See*
> Agreement, ECF No. 621-2. The Agreement created a
> Compensation Fund ("the Fund") of $680,000,000 "for the
> benefit of the Class." *Id.* ¶ VII.F (p. 7). The Fund was
> to be used in part to cover the attorney-fee award and
> individual awards to those who served as class
> representatives. *See id.* Primarily, however, the Fund
> would "pay Final Track A Liquidated Awards, Final Track
> A Liquidated Tax Awards, Final Track B Awards, and Debt
> Relief Tax Awards, to, or on behalf of, Class Members
> pursuant to the Non-Judicial Claims Process." *Id.*
>
> The Agreement described how leftover funds, if any,
> would be disbursed: "In the event there is a balance
> remaining . . . the Claims Administrator shall direct
> any leftover funds to the Cy Pres Fund." Agreement ¶
> IX.F.9 (p. 37). "Class Counsel may then designate Cy
> Pres Beneficiaries to receive equal shares of the Cy

> Pres Fund." *Id.* These designations "shall be for the benefit of Native American farmers and ranchers." *Id.* The Agreement made eligibility as a recipient contingent upon being "recommend[ed] by Class Counsel and approv[ed] by the Court." *Id.* Potential recipients were also only "non-profit organization[s], other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and [November 1, 2010]." *Id.* ¶ II.I (pp. 6-7).

*Keepseagle I*, 2014 WL 5796751, at *2 (alterations in original).

As this Court has emphasized, the provisions of the Settlement Agreement regarding leftover funds "*mandated* that all excess funds be distributed pursuant to a cy pres remedy." *Keepseagle II*, 2015 WL 1851093, at *5 (emphasis in original).

> The Class also received notice of these provisions:

> The Claim Form also notified Track A claimants that they would be "eligible for . . . [a] cash award up to $50,000." Ex. C to Agreement, ECF No. 576-1 at 63. The Notice that was sent to the Class similarly described the $50,000 maximum under Track A and the fact that participation would result in a resolution of the individual's legal claim, and stated that "[i]f any money remains in the Settlement Fund after all payments to class members and expenses have been paid, then it will be donated to one or more organizations that have provided agricultural, business assistance, or advocacy services to Native Americans." *See* Ex. I to Agreement, ECF No. 576-1 at 87, 88, 92.

*Keepseagle I*, 2014 WL 5796751, at *2 (alterations in original).

The Settlement Agreement was presented to the Court in late 2010. *See id.* at *3. The Court preliminarily approved it, and "also approved the parties' proposed notice to the Class, directed that any objections to the Agreement be postmarked by

no later than February 28, 2011, and scheduled a fairness hearing for April 28, 2011." *Id.* (citing Order, ECF No. 577 at 3). "After hearing from all who attended the fairness hearing, the Court found that the Agreement was fair and reasonable and approved it pursuant to Federal Rule of Civil Procedure 23(e). No appeal was filed from the Court's approval of the Agreement." *Id.*

The parties then commenced the non-Judicial Claims Process. On August 30, 2013, after this process had come to a close, Class Counsel filed a status report, notifying the Court that approximately $380,000,000 remained leftover. *See* Status Report, ECF No. 646 at 3. Class Counsel asserted that this "render[ed] some of the conditions for *cy pres* distribution impractical." *Id.* at 5. Class Counsel and the Department of Agriculture could not agree on how to proceed, Response to Status Report, ECF No. 649, so the Court held periodic status hearings and allowed the parties additional time to come to an agreement.

On September 24, 2014, Class Counsel filed an unopposed motion to modify the Settlement Agreement:

> The modification proposes that 10% of the Cy Pres Fund be distributed immediately to non-profit organizations "proposed by Class Counsel and approved by the Court" that must also meet the following criteria: (1) they must have "provided business assistance, agricultural education, technical support, or advocacy services to Native American farmers or ranchers between 1981 and November 1, 2010 to support and promote their continued engagement in agriculture"; and (2) they must be "either

5

a tax-exempt organization described in Section 501(c)(3) of the Internal Revenue Code . . . educational organization described in Section 170(b)(1)(A)(ii) of the Code; or an instrumentality of a state or federally recognized tribe, including a non-profit organization chartered under the tribal law of a state or federally recognized tribe, that furnishes assistance designed to further Native American farming or ranching activities." Proposed Addendum to Agreement, ECF No. 709-2 ¶ II.A.

The modification utilizes the remainder of the Cy Pres Fund to create a trust "for the purpose of distributing the *cy pres* funds" which "shall seek recognition as a non-profit organization under § 501(c)(3)." *Id.* ¶ II.B. The trust would be required "to distribute the funds over a period not to exceed 20 years" and would be charged with disbursing the funds to "not-for-profit organizations that have served or will serve Native American farmers and ranchers." Mot. to Modify, ECF No. 709-1 at 1. The Trust would be authorized to make grants subject to the following restrictions: (i) "grants must be to a tax-exempt organization described in Section 501(c)(3) of the Code; educational organization described in Section 170(b)(1)(A)(ii) of the Code; or an instrumentality of a state or federally recognized tribe, including a non-profit organization chartered under the tribal law of a state or federally recognized tribe, that furnishes assistance designed to further Native American farming or ranching activities"; and (ii) "the organization must use the funds to provide business assistance, agricultural education, technical support, and advocacy services to Native American farmers and ranchers, including those seeking to become farmers or ranchers, to support and promote their continued engagement in agriculture." Proposed Addendum to Agreement, ECF No. 709-2 ¶ II.B.

*Keepseagle I*, 2014 WL 5796751, at *3-4.

In October 2014, the Court raised three questions for the parties in connection with Class Counsel's proposal:

(1) whether the Court must direct notice to the Class and hold a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e); (2) whether, if Rule 23 does not permit the Court to require such notice and a hearing,

the Court may nonetheless exercise discretion to direct
notice to the class and to permit class members to give
their thoughts on . . . the proposed modification during
a status hearing or motion hearing; and (3) what content
and form any notice . . . should take.

Minute Order of October 20, 2014. The government and Class

Counsel assert that Rule 23(e) does not apply, but that the

Court may in its discretion direct notice and hold a status

hearing at which class members may speak. *See* Gov't's Br., ECF

No. 730; Class Counsel's Br., ECF No. 731. The Great Plains

Claimants—a group of class members who succeeded under the non-

Judicial Claims Process—filed an *amici curiae* brief, in which

they argue that Rule 23(e) applies. *See* Great Plains Amicus, ECF

No. 741. The government and Class Counsel responded to that

brief. *See* Class Counsel Reply, ECF No. 742; Gov't Reply, ECF

No. 743.

During a December 2, 2014 status hearing, the Court heard from

Marilyn Keepseagle, a class representative who had expressed

written opposition to Class Counsel's motion. *See Keepseagle II*,

2015 WL 1851093, at *2. Ms. Keepseagle "discussed her opposition

to Class Counsel's proposed modification and her support for a

proposal under which the cy pres funds would instead be

distributed to members of the class." *Id.* "Accordingly, the

Court held further proceedings in abeyance, and granted Ms.

Keepseagle time to secure legal representation." *Id.* After

securing counsel, Ms. Keepseagle and her husband, George

Keepseagle, filed two preliminary motions—for removal of certain class representatives and to compel production of certain materials by Class Counsel—on which they requested a decision before beginning to brief their own motion for modification of the Settlement Agreement. *See id.* The Court denied those motions on April 23, 2015. *See id.* That same day, the Court set a briefing schedule for both Class Counsel's motion for modification and the Keepseagles's motion. *See* Order, ECF No. 771 at 1–2. The Court will now address the Rule 23(e) issues.

## II.  Rule 23(e) Does Not Apply to Class Counsel's Proposed Modification.

Both Class Counsel and the government assert that Federal Rule of Civil Procedure 23(e) does not apply to Class Counsel's motion for modification of the Settlement Agreement because the modification would not materially alter the legal rights of any class member. Although the *amici curiae* disagree, the Court finds that the parties are correct: Rule 23(e) applies only when a modification materially hinders a class member's legal right, and this proposed modification would not do so.

### A.  Rule 23(e) Applies Only When a Modification Would Materially Hinder a Class Member's Legal Rights.

The underlying purpose of Rule 23's procedural protections is to protect the rights of absent class members whose legal claims will be resolved by adjudication of the class's claims:

> Class actions are a form of representative litigation.
> One or more class representatives litigate on behalf of
> many absent class members, and those class members are
> bound by the outcome of the representative's litigation.
> Ordinarily, such vicarious representation would violate
> the due process principle that "one is not bound by a
> judgment *in personam* in a litigation in which he has not
> been made a party by service of process." However, the
> class action serves as an exception to this maxim so
> long as the procedural rules regulating class actions
> afford absent class members sufficient protection.

Newberg on Class Actions § 1:1 (5th ed. 2014); *see also id.* §

1:5 ("Rule 23 is constructed to ensure that the representative

nature of class action litigation safeguards these absent class

members' due process rights."). Subsections of Rule 23 create

procedures to ensure that absent class members are given such

protection in various ways. *See, e.g.*, *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2550 (2011) ("Rule 23(a) ensures that

the named plaintiffs are appropriate representatives of the

class whose claims they wish to litigate.").

The settlement of class actions is governed by Federal Rule of

Civil Procedure 23(e), which provides that "[t]he claims,

issues, or defenses of a certified class may be settled,

voluntarily dismissed, or compromised only with the court's

approval." The Rule further requires that, when faced with any

"proposed settlement, voluntary dismissal, or compromise," the

Court: (1) "must direct notice in a reasonable manner to all

class members who would be bound by the proposal"; and (2) "may

approve it only after a hearing and on finding that it is fair,

reasonable, and adequate," if "the proposal would bind class members." Fed. R. Civ. P. 23(e). Consistent with Rule 23's concern for the legal rights of absent class members, then, the touchstone for Rule 23(e) is whether the proposal would bind class members.

Entry of a traditional settlement of a class's legal claims clearly implicates this rule. "'An agreement between the parties dismissing all claims is the equivalent of a decision on the merits and thus claims settled by agreement are barred by *res judicata*.'" *Keepseagle I*, 2014 WL 5796751, at *12 (quoting *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 197 (D.D.C. 2008)). Absent class members who have not opted out of the class therefore have their legal claims extinguished when a class-action settlement is approved.

Modifications to a previously approved settlement may present a more difficult issue. By definition, the class's underlying legal claims have already been extinguished by the original settlement. A modification of that agreement, then, would not necessarily have a further *res judicata* effect—the claim, after all, has already been extinguished. Accordingly, courts generally find that Rule 23(e) applies to a modification of a previously approved settlement only when the settlement will be "materially alter[ed]." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 n.10, 182 (3d Cir. 2013). Phrased more

specifically, an amendment requires supplemental notice only when it "would have a material adverse effect on the rights of class members." *In re Diet Drugs Prods. Liability Litig.*, No. 99-20593, 2010 WL 2735414, at *6 (E.D. Pa. July 2, 2010); *see also Harris v. Graddick*, 615 F. Supp. 239, 244 (M.D. Ala. 1985) ("Under these limited circumstances where the amendment is narrow and it is clearly apparent that the interests of the classes are not substantially impaired, the court is of the opinion that the notice already given is adequate and that additional notice is not required pursuant to Rule 23(e)."); *cf.* Manual for Complex Litigation § 21.61 (4th ed.) ("If the fairness hearing leads to substantial changes adversely affecting some members of the class, additional notice, followed by an opportunity to be heard, might be necessary.").

Courts have applied this principle in a handful of circumstances. Where an amendment would merely "provide[] many additional benefits, including additional funding for research relating to [a medical condition connected to the class's injury] and a guarantee . . . regarding [defendant's] continued payment obligations," no legal right was adversely affected and Rule 23(e) did not apply. *In re Diet Drugs*, 2010 WL 2735414, at *6; *see also Shaffer v. Continental Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class members received the notice, the changes

did not render the notice inadequate because they narrowed the scope of the release."); *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (supplemental notice not required where a proposed amendment merely "expand[s] the rights of class members"); *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 450, 473 n.10 (D.N.J. 1997) ("Class members need not be informed of the Final Enhancements to the settlement because the Proposed Settlement is only more valuable with these changes."), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Even if a modification does not provide additional benefits, Rule 23(e) has been found not to apply to a modification that made only "minor modifications . . . [, which] did not impair class members' rights even indirectly." *Jones v. Gusman*, 296 F.R.D. 416, 467 (E.D. La. 2013).[1]

That is not to say that a modification can never hinder a class member's legal rights. Rule 23(e) would apply to a

---

[1] Where a modification would materially affect the legal rights of only some class members, notice to unaffected class members is unnecessary, but affected class members must be notified. *See Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 221 n.9 (D. Me. 2005) ("Because the class-wide settlement notice in this case already satisfied the requirements of Rule 23(e)(1)(B), as I discussed above, I would require notice of the amendment and the opt-out right only to female class members who have already filed claims, because they are the only class members who would be negatively affected by such an amendment."); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1468-69 (D. Minn. 1993) (directing supplemental notice of amendments only to class members that would be affected by the amendments).

modification that provided for lesser recovery to certain class members than was available under the original agreement. *See, e.g.*, *In re Diet Drugs Prods. Liability Litig.*, 226 F.R.D. 498, 518 (E.D. Pa. 2005). It would also cover a modification that altered class member's rights by "extinguish[ing] certain opt-out rights." *Id.* Even if these losses are exchanged for "valuable benefits to class members," the fact remains that class members's legal rights under the settlement would be hindered, making Rule 23(e) applicable. *See id.* As the D.C. Circuit has implicitly recognized in a related context, a class member's legal rights may be implicated when class counsel seeks to bargain away the right to enforce portions of a previously entered settlement. *See Twelve John Does v. District of Columbia*, 117 F.3d 571 (D.C. Cir. 1997) (applying Rule 23(a)(4)'s adequacy-of-representation requirement, which is similarly concerned with whether a class member's legal rights will be bound).

Where no legal right would be hindered, however, Rule 23(e)'s procedural protections do not apply for the simple reason that there is no risk that an absent class member will be legally harmed by approval of the modification. Accordingly, an amendment that neither adds to the *res judicata* effect of a judgment by expanding the scope of covered claims nor otherwise

13

limits any legal right held by a class member need not be subject to a renewed Rule 23(e) process.

**B.    Class Counsel's Proposed Modification Does Not Alter the Legal Rights of Class Members.**

The Court directed extensive notice to the Class of the Settlement Agreement in 2011, and the adequacy of that notice is not challenged here. Nor did anyone appeal the Court's approval of that Settlement Agreement in 2011. There is thus no challenge to the fact that the final Settlement Agreement extinguished the legal claims of those who participated and mandated that all leftover funds be used for *cy pres* purposes.[2] The question, then, is not whether choosing to utilize a *cy pres* remedy in the first instance would alter the class's legal rights if the Settlement Agreement were silent on the disposition of excess funds (that ship sailed in 2011); rather, it is whether the proposed alternative procedures for distribution of those *cy pres* funds would alter the legal rights of any class member.

Those who participated in the Settlement Agreement's process assented to the extinction of their legal claims through their participation. Those who did not participate but failed to opt

---

[2] It is on this point that the *amici* err. Their argument presumes that individual class members retain a legal right to possession of the excess funds, even though the Settlement Agreement required that all excess funds be transferred to a Cy Pres Fund and distributed pursuant to a *cy pres* remedy. *See Keepseagle II*, 2015 WL 1851093 at *5.

out similarly had their legal claims extinguished. *See Keepseagle I*, 2014 WL 5796751, at *12 ("Once the Agreement was approved and no appeal was filed, the claims of class members who did not opt out were extinguished, in accordance with the Agreement's terms.") (citing Agreement ¶¶ VI.A (p. 15), X (pp. 51-52)). Accordingly, no member of the Class retains a live legal claim.

Nor does any individual class member have a property interest in the unclaimed funds, as this Court previously held:

> "In approaching the question of the appropriate distribution of such funds, various courts have determined that 'neither the class members nor the settling defendants have any legal right to unclaimed or excess funds.'" *Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*, 517 F. Supp. 2d 212, 217 (D.D.C. 2007) (quoting *Powell*[ *v. Georgia-Pacific Corp.*], 843 F. Supp. [491, ]495 [(W.D. Ark. 1994)], *aff'd*, 119 F.3d 703, 706 (8th Cir. 1997) ("neither party has a legal right to the unclaimed funds")); *see also Wilson v. Southwest Airlines*, 880 F.2d 807, 811 (5th Cir. 1989) ("We agree with the district court that . . . none of the parties in this case has a legal right to the balance of the fund."); *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1254 (7th Cir. 1984) ("we agree that neither the plaintiff class nor the settling defendants have any right to the reserve fund"); *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1393 (N.D. Ga. 2001) ("Neither the class members nor the settling defendants have any legal right to unclaimed or excess funds.") (alteration and quotation marks omitted). Once a settlement agreement is final, "all class members who presented their claims received the full payment due them, and those who did not present claims have waived their legal right to do so. Thus, the class has no further legal rights in the fund." *Wilson*, 880 F.2d at 811-12.

Professor Rubenstein echoes this position in the most recent edition of Newberg on Class Actions. Although there is some dispute over the property status of unclaimed funds, "most courts start from the proposition that neither the plaintiff class nor the settling defendants have any right to the unclaimed or excess funds." Newberg on Class Actions § 12:28 (5th ed. 2014) (quotation marks omitted). The argument that unclaimed settlement funds are property of the class is problematic, he posits:

> The premise that the recovery fund is the property of the plaintiff class is not quite right because the settlement fund does not truly belong to the class as a whole, but rather to the class members individually. When a class member does not claim her share of the fund, it is not at all obvious that her share therefore belongs to the other class members. If, for example, the government distributed a tax refund to a group of taxpayers but some did not cash their checks, no one would seriously propose that the unclaimed funds are the property of, and should be distributed *pro rata* to, those other citizens who received tax refunds . . . . Additionally, an individual's presence as a class member in a class action hardly expands her property rights to include the property of the other class members. Even if it is the case that the claiming class members have received less than the full value of their claims by the settlement, that fact does not magically make the nonclaimants' property theirs.

*Id.* § 12:30.

*Keepseagle I*, 2014 WL 5796751, at *12–13.

Because all class members have settled their legal claims and retain no property interest in the unclaimed funds, a modification of the procedures for distributing the unclaimed funds as *cy pres* would not alter the legal rights of any class

member. The class members are affected to the extent that they
would like the Settlement Agreement to be modified to permit
additional payments directly to class members. But that is not a
harm caused by the proposed modification; rather, it stems from
the plain language of the Settlement Agreement. The
modifications to the *cy pres* distribution scheme therefore do
not have a material impact on the legal rights of any class
member, making Rule 23(e)'s procedural requirements
inapplicable.

**III. The Court Will Order Notice to the Class and Hold a Hearing
at Which Class Members May Speak.**

Although Rule 23(e) does not apply to Class Counsel's pending
motion, the Court finds that it has the authority to require
Class Counsel to provide notice to the Class of the pending
motion, and that the Court may permit class members to speak
during the June 29, 2015 motion hearing or to submit written
comments in advance of that hearing.

**A.   The Court Has Authority to Order Class Counsel to Provide
Notice to the Class and to Solicit Written and Oral
Comments from the Class.**

Although Rule 23(e) does not apply to the pending motion, the
Court has the authority to follow similar procedures in
connection with Class Counsel's motion.

As to notice, this authority rests on two sources: First,
Federal Rule of Civil Procedure 23(d)(1)(B) permits the Court to

"require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action." Second, the Settlement Agreement provides that it "may be modified only with the written agreement of the Parties and with the approval of the District Court, *upon such notice to the Class, if any, as the District Court may require*." Agreement, ECF No. 621-2 ¶ XIV (p. 53) (emphasis added).

As Class Counsel and the government concede, the Court has ample authority to order that notice be provided to the Class. *See* Class Counsel's Br., ECF No. 731 at 6-7; Gov't's Br., ECF No. 730 at 3-4. Pursuant to Rule 23(d)(1)(B), the Court finds that, to "fairly conduct the action" at this stage, class members must be informed fully about the pending proceedings. Even in the absence of Rule 23(d), the Court would exercise the discretion granted to it by the Settlement Agreement because the extensive interest in these proceedings, as evidenced by the volume of correspondence the Court has received and the significant attendance at status hearings the Court has held, makes clear that it is appropriate and necessary to ensure that the Class is as informed as possible about upcoming proceedings.

Although the Court is not empowered to hold a Rule 23(e) fairness hearing, the Court retains the authority to hear from any class member who wishes to speak during the June 29, 2015

18

motion hearing. *Cf. Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (describing the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Hearing these comments—or receiving written comments from those who cannot attend—will be useful to the Court's consideration of the pending motions. *See Keepseagle II*, 2015 WL 1851093, at *11. Class Counsel and the government, moreover, do not oppose this approach. *See* Class Counsel's Br., ECF No. 731 at 6–7; Gov't's Br., ECF No. 730 at 4.

### B. Class Counsel Shall Provide Notice of the Posture of this Case and the Class's Ability to Provide Comment.

The final question briefed by the parties and the *amici* is the appropriate content and form of any notice ordered by the Court. Three issues arise from these pleadings: (1) the content of the notice; (2) the manner of its distribution; and (3) who should bear the cost of providing the notice.

Content of the Notice: The government, Class Counsel, and the *amici* agree that the notice should be tailored to the modification proposal pending before the Court. They do not dispute that the notice should describe: (a) the class and its claims; (b) the history of this case and the fact that the notice relates to a proposed modification of a preexisting Settlement Agreement and that no claims process is yet being

reopened; (c) the proposed modification and the trustee nominations that have been made; (d) the hearing that the Court has scheduled, including a discussion of a class member's right to file written comments or to speak in Court; and (e) a link to the IndianFarmClass.com website. *See* Class Counsel's Br., ECF No. 731 at 7–8; Gov't Br., ECF No. 730 at 4; Great Plains Br., ECF No. 741 at 10. The Court will direct Class Counsel to file for Court approval a proposed Notice to conform with these requirements.

The Great Plains *amici* request that the notice also include a copy of the motion for modification of the Settlement Agreement and copies of two declarations that were submitted regarding the investment of the leftover settlement funds. *See* Great Plains Br., ECF No. 741 at 10. The Court agrees with Class Counsel that this is unnecessary—even the original settlement notice did not include a copy of the full Settlement Agreement. *See* Class Counsel Reply, ECF No. 742 at 4–5. The purpose of the notice is to provide a summary of relevant information, so complete copies of documents need not be included.

Distribution of the Notice: Class Counsel and the government emphasize that notice should be distributed to all class members. *See* Class Counsel Reply, ECF No. 742 at 3–4; Gov't Reply, ECF No. 743 at 2–3. The Great Plains *amici* appear to suggest that notice be limited to "all claimants," implying that

it should go only to those who filed claims under the Settlement Agreement. *See* Great Plains Br., ECF No. 741 at 10. The Class, however, includes members who did not file claims, so it would be improper to limit the notice in that manner.

As for the method of distribution, the Court will direct that a more limited version of the distribution conducted in connection with the original settlement notice be undertaken. Publication notice is appropriate, but need only occur for one day rather than for multiple days. The Court agrees with Class Counsel that "notice can be sent by mail to all persons who filed claims, as well as addresses obtained for the original 2010 mailing" and that "notice would also be posted on the website IndianFarmClass.com." Class Counsel Br., ECF No. 731 at 9. The Court also agrees with the suggestion of the *amici* that notice be mailed and e-mailed "to tribal offices for those tribes whose members filed claims, with a request that such information be made available for inspection and posted to tribal websites." Great Plains Br., ECF No. 741 at 11.

Cost: Class Counsel and the government appear to dispute who should bear the cost of providing the notice. Class Counsel rely on the Settlement Agreement, which provided government-funded "Implementation Costs" of up to four payments of $5,000,000 each. *See* Agreement, ECF No. 621-2 ¶¶ VII.B–C (pp. 16–17); Class Counsel Br., ECF No. 731 at 10. According to Class Counsel, one

of these $5,000,000 payments is not yet exhausted, leaving
$1,500,000 to be used. *See* Class Counsel Br., ECF No. 731 at 10.
The government appears to disagree, noting that the Agreement
defined "Implementation Costs" as "the administrative costs
associated with implementing this Settlement Agreement,
including the fees and costs of the Track A and Track B
Neutrals, the Track B Expert, the Claims Administrator, costs
incurred under Section IX, and the costs necessary to provide
notice of this Settlement Agreement to the Class." *Id.* ¶ II.Y
(p. 8); *see* Gov't Br., ECF No. 730 at 5 n.2. It is not clear,
however, whether the government opposes Class Counsel's proposed
use of the $1,500,000 leftover from earlier implementation
payments. Accordingly, the Court declines to address the cost
issue unless and until it becomes necessary—either because the
government disputes Class Counsel's ability to utilize the
remaining $1,500,000, or if the costs of providing the
supplemental notice exceed $1,500,000.

**IV.  Conclusion**

   For the foregoing reasons, the Court finds that Federal Rule
of Civil Procedure 23(e) does not apply, but that the Settlement
Agreement and the Court's supervisory authority over this case
permit the Court to direct that Class Counsel provide notice to
the Class, and to allow class members to submit written comments
or to speak during the hearing to be held on **June 29, 2015 at**

**9:00 a.m.** An appropriate Order accompanies this Memorandum

Opinion.

    **SO ORDERED.**

  **Signed:**  **Emmet G. Sullivan**
          **United States District Judge**
          **May 4, 2015**