**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARILYN KEEPSEAGLE, et al.,      )
                                 )
            Plaintiffs,          )
                                 )
       v.                        )      Case No.   1:99CV03119 (EGS)
                                 )
TOM VILSACK,                     )
Secretary of Agriculture,        )      Judge:  Emmet G. Sullivan
                                 )
            Defendant.           )
_____ )

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO MARILYN AND GEORGE KEEPSEAGLE'S MOTION TO MODIFY THE
REVISED SETTLEMENT AGREEMENT**

KATHLEEN HARTNETT
Deputy Assistant Attorney General

VINCENT H. COHEN, JR.
United States Attorney

JUDRY L. SUBAR, DC Bar # 347518
Assistant Director
Federal Programs Branch

AMY POWELL
JUSTIN SANDBERG
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 5377
Washington, D.C. 20530
Telephone: (202) 514-9836
amy.powell@usdoj.gov

i

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ......................................................................................................................6

   I.   The Government Does Not Consent to Keepseagles' Proposed
      Modification of the Agreement. ............................................................................7

   II.  The Keepseagles Cannot Meet Rule 60(b)'s Stringent Requirements for
      Relief. ....................................................................................................................7

      A.   The Keepseagles Have Not Demonstrated Changed Circumstances
          under Rule 60(b)(5) that Warrant Restructuring the Agreement. ..................8

      B.   Rule 60(b)(6) Does Not Justify Any Relief Here. ......................................10

   III. The Keepseagles' Proposed Amendments Would Not Constitute
      Appropriate Relief Under Rule 60(b) Even If Some Modification Is In Order.................11

      A.   Distribution to Successful Claimants is Not Appropriate Relief. ...............12

      B.   Re-Opening the Claims Process is Not Appropriate Relief.........................16

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*BankAmerica Corp. Securities Litig,*
   775 F.3d 1060 (8th Cir. 2015) ...............................................14

*Beecher v. Able,*
   575 F.2d 1010 (2d Cir. 1978)................................................15

*Dennis v. Kellogg Co.,*
   697 F.3d 858 (9th Cir. 2012) ...............................................12

*\*Diamond Chemical Co. v. Akzo Nobel Chemicals B.V.,*
   517 F. Supp. 2d 212 (D.D.C. 2007) ....................................... passim

*Equal Rights Ctr. v. Washington Metro. Area Transit Auth.,*
   573 F. Supp. 2d 205 (D.D.C. 2008)........................................16

*In re Black Farmers Discr. Litig.,,*
   950 F. Supp. 2d 196 (D.D.C. 2013).......................................7, 8

*\*In re Black Farmers Discrimination Litig.,*
   29 F. Supp. 3d 1 (D.D.C. 2014)...........................................7, 8

*In re Checking Account Overdraft Litig.,*
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .....................................14

*In re Lupron Marketing and Sales Practices Litig.,*
   677 F.3d 21 (1st Cir. 2012)................................................14

*Kapar v. Islamic Republic of Iran,*
   --- F. Supp. 3d ---, 2015 WL 2452754 (D.D.C.  2015)........................16

*Klier v. Elf Atochem N. Am.,*
   658 F3d 468 (5th Cir. 2011) ...............................................12,14

*Marshall v. National Football League,*
   --- F.3d ---, 2015 WL 2402355 (8th Cir. May 21, 2015)......................14

*Massaro v. United States,*
   538 U.S. 500 (2003)......................................................18

*Pigford v. Johanns,*
    416 F.3d 12 (D.C. Cir. 2005) ...............................................................................8

*\*Pigford v. Veneman,*
    292 F.3d 918, 927 (D.C. Cir. 2002) .............................................................11, 12

*\*Rufo v. Inmates of Suffolk County Jail,*
    502 U.S. 367 (1992) .............................................................................. passim

*\*Salazar ex rel. Salazar v. District of Columbia,*
    633 F.3d 1110 (D.C. Cir. 2011) .........................................................................10

*Summers v. Howard Univ.,*
    374 F.3d 1188 (D.C. Cir. 2004) .........................................................................18

*Twelve John Does v. District of Columbia,*
    841 F.2d 1133 (D.C. Cir. 1988) .........................................................................16

## RULES

*Fed. R. Civ. P. 60(b) ............................................................................... passim

## MISCELLANEOUS

*Newberg on Class Actions (5th ed.) ................................................................9, 11, 13

**INTRODUCTION**

Over four years ago, the parties negotiated a comprehensive class action settlement in this matter.  The Court approved the settlement after extensive notice to the class and a fairness hearing.  At that time, George and Marilyn Keepseagle agreed to extinguish their claims without any finding or admission of liability by the government in exchange for valuable consideration: the claims process, debt relief, class representative awards and other measures established in the Settlement Agreement.  The Keepseagles do not dispute that they (and all other class members) have received all of the money and other benefits to which they are entitled under the Agreement.

The Settlement Agreement provided for the use of leftover funds after all successful claimants were paid; it authorized the establishment of a cy pres fund to benefit Native American farmers and ranchers through grants to organizations that assist such farmers and ranchers.  After disposition of all claims, class counsel discovered that the remaining funds from the claims process totaled a larger amount than expected.  Class counsel have explained that it would be difficult and inefficient to distribute the funds following the procedures outlined in the Settlement Agreement and have moved for a modest revision of the Agreement to promote efficient distribution of those funds.  In light of the allegations of changed circumstances and the public interest in efficient distribution of those funds, Defendant United States Department of Agriculture ("USDA") has agreed not to oppose the class's motion.

The Keepseagles propose something quite different.  Having discovered that the remaining funds from the claims process total a larger amount than expected, Mr. and Mrs. Keepseagle now seek more money for claimants like themselves who already succeeded on their claims.  In the alternative, they seek a reopening of the claims process to additional claimants and unsuccessful claimants.  But the Keepseagles have not demonstrated changed circumstances

1

that would permit the Court to fundamentally change the nature of the bargain the parties struck. Although Rule 60(b) may permit some modification of the Agreement, neither modification proposed by the Keepseagles is remotely tailored to the specific alleged changed circumstances. Accordingly, the Keepseagles' Motion to Modify the Agreement should be denied.

## BACKGROUND

### Settlement Agreement

Several of this Court's recent opinions set forth the complete background of this case. *See, e.g.*, ECF No. 776 at 3-8. In the interest of resolving the protracted litigation regarding allegations of discrimination in USDA's farm loan programs without any admission or finding of liability, the parties negotiated the Settlement Agreement in 2010. *See* ECF. No. 576-1 (Nov. 1, 2010); Aug. 1, 2012 Minute Order (approving Plaintiffs' Unopposed Motion to Modify Settlement Agreement); Plaintiffs' Unopposed Motion to Modify Settlement Agreement, ECF No. 621 (July 31, 2012) (hereinafter "Agreement"). After notice and a hearing, the Court approved the Settlement Agreement and entered judgment in April 2011. *See* Order and Judgment, ECF No. 606, 607. Under the Agreement, in addition to other relief, the Judgment Fund paid $680 million into a compensation fund ("the Fund"). *See* Agreement §VII. F. The money was designated in the first instance for the payment of (1) meritorious claims filed by class members under a private claims resolution process, (2) service awards paid to class representatives such as the Keepseagles, and (3) attorneys' fees for class counsel. *Id.*§ VII.[1] The private claims process consisted of two avenues for claimants seeking liquidated damages. Track A claimants who could make the necessary minimal showing were eligible for an award up to $50,000 and tax relief; Track B claimants who could meet a higher burden were eligible for

---

[1] The additional relief included extensive debt relief (up to $80 million) and significant programmatic relief.

an award up to $250,000 and tax relief. *Id*. USDA was not a party to the individual claims and therefore, consistent with its disclaimer of liability in the Agreement, did not have any opportunity to contest the claims of discrimination made by claimants.

The Agreement contemplates that payment of successful claimants might not exhaust the Fund. It specifically mandates the distribution of leftover funds to what it calls a "Cy Pres Fund." *See* Agreement § IX.F.7. Money in that fund would then be distributed in equal shares to organizations meeting certain guidelines for the benefit of Native American farmers and ranchers, subject to approval of the Court. *Id*. & § II.I-J.

The Court approved notice to the class of the proposed settlement, received written comments, and held a fairness hearing. As this Court has previously explained, the class specifically received notice of the cy pres provisions. ECF No. 776 at 4. The Court received no comments on this aspect of the Agreement. ECF No. 772 at 2.

The Claims Administrator completed the claims resolution process in October 2012, and all other required payments have been made. Status Report, ECF No. 646 (August 30, 2013). Because there was sufficient money in the Fund to cover the claims of all claimants, each Track A Plaintiff received $50,000 cash plus tax relief plus whatever debt relief was awarded by the Neutral under the Agreement. *Id*. As part of the private claims process, Mr. and Mrs. Keepseagle pursued Track A and received $50,000 in payment. *See* Declaration of Marilyn Keepseagle, ECF No. 779-9 (filed May 19, 2015 as Exhibit H to the Keepseagles' Motion to Modify). Under the terms of the Agreement, this amount was in addition to their individual class representative awards, debt relief, and tax relief on the award, as well as the programmatic relief promised the class. *See* ECF No. 646 (detailing over $59,000,000 in debt relief for Track A claimants, over $10,000,000 in debt forgiveness tax relief payments for Track A claimants, and almost $45,000,000 in debt relief for Track A claimants).

3

**The Cy Pres Fund and Class Counsel's Motion to Modify**

After the Claims Administrator distributed cash awards to class members, a balance of approximately $380 million remained unspent.  ECF No. 646 at 3.  The Agreement directs these "leftover" funds to the "Cy Pres Fund."  Agreement § IX.F.7 & II.I.  Because the amount of leftover funds was larger than anticipated, class counsel became concerned that it would be inefficient and ineffective to distribute such a large sum under the cy pres terms of the Agreement.  *Id*. §II.I (requiring a cy pres beneficiary to be a nonprofit organization other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and the Execution Date that will be proposed by Class Counsel and approved by the Court); *id*. § IX.F.7 (requiring distribution in "equal shares" to the beneficiaries).  *See generally* ECF No. 709.  The parties therefore entered negotiations regarding a modification to the Agreement, and the Government ultimately agreed not to oppose the class's motion to modify the Agreement.  *Id.*  The class's proposed modification approximates the original intent of the Agreement by distributing a portion of the funds under an expedited process for qualified beneficiaries and creating a new trust to distribute the remainder of the funds over time to eligible organizations for the benefit of Native American farmers and ranchers.  *Id*.

**Subsequent Proceedings**

Several motions have been filed related to the issue of the leftover funds.  Two groups sought to intervene in this action in order to oppose the class's motion to modify: the Choctaw Nation Jones Academy Foundation (which may have been eligible for funds under the original provision of the Agreement) and "the Great Plains claimants" (successful claimants who would prefer a different modification that awarded them more money). The Court denied the motions to intervene, finding that both groups of movants lacked standing.  *See* ECF No. 728 at 3

4

(November 7, 2014).[2]  The Court found that the Great Plains claimants had received the full value of their claims and extinguished those claims pursuant to the Agreement and that, accordingly, individual class members had no legal right to the leftover funds.  *Id.* at 32.   The Court also specifically rejected the argument of the Great Plains claimants that they had not consented to a large Cy Pres Fund:  "The Great Plains Claimants—like Class Counsel and the government—may not have anticipated that so few claimants would come forward and therefore may not have expected the Cy Pres Fund to be as large as it is.  All of the provisions creating this result, however, were part of the proposed Agreement, of which the Great Plains Claimants received notice and to which they did not object." *Id.* at 32.[3]

The Keepseagles also oppose the class's motion to modify the Agreement.  Accordingly, they sought independent representation and filed motions seeking discovery and the removal of the class representatives who support class counsel's motion to modify the Agreement.  *See generally* ECF No. 772 at 3.  The Court denied the Keepseagles' motions, holding that "the Court does not have the authority to remove class representatives at this stage of proceedings, where a final judgment has been entered and the pending proposal for modification of the Agreement does not implicate the legal rights of class members."  The Court further explained that these class representatives reasonably supported the position of class counsel, given the "limited avenues" for pursuing a modification:

> One path lies with the Agreement itself, which permits modification only with the written agreement of the Parties. . . . Another path arguably may lie with FRCP 60(b), which provides for relief from judgment under certain narrow circumstances.

---

[2] The Court has denied additional motions to intervene as well.  *See* ECF Nos. 633, 692, 720, 727.

[3]  The Choctaw Nation and its affiliate Jones Academy Foundation have appealed denial of the motion to intervene, *see* Case No. 15-5011 (D.C. Cir.), and indicated that they may seek a stay of any order regarding modification pending appeal, *see* ECF No. 750 & Minute Order dated January 10, 2015. There is an additional appeal pending by another attempted intervenor, but it does not involve a request to modify the settlement agreement.  *See* ECF No. 701; Case No. 14-5223 (D.C. Cir.).

> After learning that the government would not only withhold
> consent to a modification that provided additional payments
> directly to class members, but would seek obtain reversion of the
> excess funds if Class Counsel sought such a modification
> unilaterally, Holder and Mandan could reasonably have decided
> that seeking supplemental payments was not worth the risk. Their
> decision could be bolstered by the uncertainty inherent in seeking a
> modification of the Agreement under FRCP 60(b).

ECF No. 772 at 18-19.

The Keepseagles, pursuant to a schedule set by the Court, moved to modify the

Settlement Agreement, over the objection of class counsel and the Defendants. *See* ECF No.779.

They make two alternate proposals. First, they propose a re-distribution of the leftover funds to

successful claimants. *See* ECF No. 779-2. In the alternative, they propose re-opening the claims

process to unsuccessful claimants and new claimants. *See* ECF No. 779-3.

The Court also sought briefing on whether supplemental notice to the class was required

or desirable. Following this briefing, the Court found that notice to the class was not required

because the proposed modification had no effect on the rights of class members, who had no

property interest in the leftover funds. The Court reasoned that the "class members are affected

to the extent that they would like the Settlement Agreement to be modified to permit additional

payments directly to class members. But that is not a harm caused by the proposed modification;

rather it stems from the plain language of the Settlement Agreement." ECF No. 776 at 17. The

Court nonetheless ordered class counsel to provide notice to the class and has set a hearing for

June 29, 2015. *See also* ECF No. 778 (class counsel's notice).

## <u>ARGUMENT</u>

This Court has opined that there are two potential paths to modification of the

Agreement: (1) a motion of the parties pursuant to Section XXII; or (2) relief from judgment

under Rule 60(b).  The Government does not consent to the Keepseagles' ill-conceived

proposals, and the Keepseagles' proposal cannot meet the Rule 60(b) standards.

**I.      The Government Does Not Consent to Keepseagles' Proposed Modification of the Agreement.**

The Settlement Agreement provides that it "may be modified only with the written

agreement of the Parties and with the approval of the District Court, upon such notice to the

Class, if any, as the District Court may require."  *See* Agreement § XXII.  The Government does

not consent to the Keepseagles' proposed amendments, which as discussed *infra* in Part III,

provide a windfall to claimants and do not preserve the essence of the bargain reached by the

parties.

**II.     The Keepseagles Cannot Meet Rule 60(b)'s Stringent Requirements for Relief.**

Rule 60(b) of the Federal Rules of Civil Procedure provides that, "[o]n motion and just

terms, the court may relieve a party or its legal representative from a final judgment, order, or

proceeding" when certain conditions are met.  At most, only two subparts of the rule are

arguably relevant here.  Rule 60(b)(5) authorizes the court to vacate or amend a judgment when

"applying [the judgment] prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).  Rule

60(b)(6) is a general provision that authorizes the court to amend a judgment for "any other

reason that justifies relief." Fed. R. Civ. P. 60(b)(6).[4]  *See generally In re Black Farmers Discr.*

*Litig.*, 29 F. Supp. 3d 1 (D.D.C. 2014); *In re Black Farmers Discr. Litig.,* 950 F. Supp. 2d 196,

200 (D.D.C. 2013).

---

[4] The other provisions of Rule 60 have no applicability here.  Rule 60(a) permits correction of clerical errors.  Rule 60(b)(1)-(3) describe other situations not relevant here in which relief is available within one year after the judgment.  Rule 60(b)(4) provides for relief when a judgment is void.

## A.  The Keepseagles Have Not Demonstrated Changed Circumstances under Rule 60(b)(5) that Warrant Restructuring the Agreement.

"Under Rule 60(b)(5), a party seeking modification of a [settlement agreement] bears the burden of demonstrating 'a significant change either in factual conditions or in law' that warrants revision of the [agreement]." *In re Black Farmers Discr. Litig.*, 29 F. Supp. 3d at 3 (quoting *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 383–84 (1992)); *see also Pigford v. Johanns,* 416 F.3d 12, 16 (D.C. Cir. 2005) (same).  This is a "stringent" standard.  *Id.*  Modification may be warranted only when the facts have changed and the changed factual conditions "make compliance 'substantially more onerous,' [or] when an agreement 'proves to be unworkable because of unforeseen obstacles,' or when enforcement of the agreement without modification 'would be detrimental to the public interest.'" *In re Black Farmers Discr. Litig.*, 29 F. Supp. 3d at 3; *In re Black Farmers Discr. Litig.,* 950 F. Supp. 2d at 200 (quoting *Rufo,* 502 U.S. at 384–85).  Although the Supreme Court in *Rufo* counseled "flexibility" in interpretation of this standard, it also explained that "it does not follow that a modification will be warranted in all circumstances.  Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective application,' not when it is no longer convenient to live with the terms."  *Rufo,* 502 U.S. at 383.

Here, class counsel has reported that there were fewer claimants than the parties anticipated and that the amount of leftover funds is accordingly greater than expected.[5] Defendant agrees that these changed circumstances justify the limited modification to the cy press that the Class has proposed.  The Keepseagles have not demonstrated, however, that

---

[5] There are any number of possible explanations for the small number of claimants, but the simplest one is that there are simply fewer people with claims than Plaintiffs originally argued.  Whatever the reality, though, the fact that fewer people came forward to file claims than might have does not mean that successful claimants should each get a bigger chunk of the fund than what the class agreed to, nor does it mean that people who did not file timely or adequate claims (or any at all) should be able to participate.

circumstances have changed in a way that require or permit the Court to alter the fundamental

bargain the parties struck by ordering additional payments to class members or allowing

additional claims.  The possibility of leftover funds was anticipated and provided for in the

Agreement.  The Court previously held that "[a]ll of the provisions creating this result . . . were

part of the proposed Agreement, of which the . . . Claimants received notice and to which they

did not object."  *See* ECF No. 728 at 31.  No facts have changed that suggest the Court should

fundamentally restructure that Agreement.  For example, the Keepseagles have made no showing

that the disposition of leftover funds to approved cy pres beneficiaries would be "onerous," much

less "substantially more onerous" or "unworkable."  *See Rufo*, 502 U.S. at 384.  There is no

reason that class counsel <u>could not</u> distribute the funds as described in the Agreement, and

implementation of the original provisions would have no negative impact on the Keepseagles or

other claimants.  Any inconvenience to class counsel in distributing a larger amount of money is

simply that – an inconvenience, which would not justify Rule 60(b) relief standing alone.  *Id*. at

385.[6]  More importantly, whatever challenges there may be in distributing the larger amount of

leftover funds to eligible organizations, those challenges do not make it "inequitable" to apply

the Agreement prospectively (i.e. – distribute the cy pres fund); the only arguably changed

circumstances relate to the specific mechanisms for distribution.  The Keepseagles and other

class members already received the individual benefits they bargained for and, as this Court has

held, have no property interest in the leftover funds.

---

[6] Because the parties explicitly required consent for any modification of the Agreement, the parties' disagreement with the Keepseagles' proposals should at least be a thumb on the scale against that modification even if Rule 60 could justify some modification. *See In re Black Farmers Discr. Litig*., 29 F. Supp. at 3 (denying Rule motion where the Agreement required consent of the parties); Newberg on Class Actions § 12:28 (preferring the terms of the settlement agreement over any alternative method of distributing leftover funds).

By contrast, class counsel makes a reasonable argument that modest changes to the Cy Pres Fund provision are needed in order in order to fulfill its purpose, and that those changes are in the public interest. *Cf. Rufo*, 502 U.S. at 385. Class counsel has represented that, given the small number and typical operating budget of charities serving Native American agriculture, the present cy pres provisions would not result in an efficient use of the funds set aside by the parties to benefit Native American farmers and ranchers. *See, e.g.,* ECF No. 646. In the absence of information to the contrary, the Government has not opposed class counsel's motion to modify the Agreement on these grounds.[7]

### B.     Rule 60(b)(6) Does Not Justify Any Relief Here.

Rule 60(b)(6) provides for modification of a judgment for "any other reason that justifies relief." "Supreme Court cases have required a movant seeking relief under Rule 60(b) (6) to show extraordinary circumstances justifying the reopening of a final judgment." *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quotation marks omitted). In *Salazar*, the D.C. Circuit "emphasized that Rule 60(b)(6) should be only sparingly used and may not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Id*. at 1120. The Court further noted that Rule 60(b)(6) requires "a more compelling showing of inequity or hardship" than 60(b)(5) in order to give meaning to Rule 60(b)(5)'s limitation to judgments with prospective application. *Id*.

That demanding standard cannot be satisfied here. Even if no changes are made, the class, including the Keepseagles, received the full benefit of the bargain reached. The Keepseagles focus their argument on the fact that the Cy Pres Fund is larger than expected, but

---

[7] Of course, the fact that the Keepseagles' motion should be denied does not mean that the only available option for the Court is to grant the motion for modification made on behalf of the class. If that motion is denied as well, the parties will simply have to comply with the original agreement to which they are signatories.

nothing about the amount of leftover money fundamentally changes the nature of the bargain the parties struck. The parties could have negotiated an agreement whereby any leftover funds were re-distributed to successful claimants; but the parties agreed on hard caps on per-claimant pay-outs and a Cy Pres Fund (and the Government could well have resisted any provision for redistribution of leftover funds).

Finally, the Keepseagles have shown no "hardship" whatsoever. They received the full Track A Award, debt relief and their class representative awards. As the Court opined, all successful claimants received full relief for their claims and extinguished them under the terms of the Settlement Agreement. *See* ECF No. 728 at 32; 772 at 13; 776 at 14. Nothing about a large Cy Pres Fund harms the Keepseagles or other claimants; if anything, as Native American farmers, they are quite likely to benefit from expenditures of funds to benefit Native American agriculture broadly. The fact that they would prefer an additional payment is not a hardship.

## III.    The Keepseagles' Proposed Amendments Would Not Constitute Appropriate Relief Under Rule 60(b) Even If Some Modification Is In Order.

Assuming there is some justification for some relief under Rule 60(b)(5), the Keepseagles' proposed amendments should be rejected because they provide a windfall to claimants and are not tailored to address the changed circumstances. The Supreme Court has explained that a party seeking modification under Rule 60(b)(5) must show that the proposed modification is suitably tailored to the changed circumstance. *See Rufo,* 502 U.S. at 393; *see also Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002) (holding that a modification under Rule 60(b)(5) "must preserve the essence of the parties' bargain").

To begin, the Keepseagles rely heavily on the discussion in *Diamond Chemical* in their discussion of how best to distribute leftover funds. *See Diamond Chemical Co. v. Akzo Nobel Chemicals B.V.*, 517 F. Supp. 2d 212, 217 (D.D.C. 2007). Although the district court's

11

discussion in *Diamond Chemical* is instructive in several ways, that court was dealing with a different situation – how to distribute leftover funds when the Agreement did *not* address that issue.   Indeed, much of the case law cited by the Keepseagles discusses the "cy pres doctrine," which permits the judiciary to distribute unclaimed or excess funds from a class action settlement."  4 Newberg on Class Actions, 5th Ed. § 12.28, 32; *see also Diamond Chemical*, 517 F. Supp. 2d at 219-20 (discussing cy pres distribution of "excess" funds that had to be allocated somewhere).[8]  Here, the "Cy Pres Fund" does not involve "unclaimed" or "excess" funds remaining after the settlement is effectuated.  Rather, the Agreement specifically provided for disposition of these funds and the parties previously agreed to a means of distribution.

### A.      Distribution to Successful Claimants is Not Appropriate Relief.

Plaintiffs' primary proposal is not tailored to addressing the changed circumstances and would create a windfall for successful claimants.  Moreover, it amends those portions of the judgment not having prospective application.  Accordingly, it is not justified under Rule 60(b).[9]

The Keepseagles' insistence that direct, additional payments "will directly improve the lives of the class members and assist in ameliorating the injuries resulting from discriminatory lending practices" is just a statement that they would prefer additional payments, but additional payments are not what they agreed to accept and would not "preserve the essence of the parties' bargain." *Cf. Pigford*, 292 F.3d at 927.  The Keepseagles agreed that any additional funds would be distributed to charitable organizations for the indirect benefit of the class more broadly.  The

---

[8] "*Cy pres* is shorthand for the old equitable doctrine '*cy près comme possible*' —French for 'as near as possible.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012);   As one might expect given the origin of the term *cy pres*, *cy pres* funds are to be used "as near as [is] possible" to compensate absent class members. *See id.; see also Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468,  474 (5th Cir. 2011) ("a cy pres distribution is designed to be a way for a court to put any unclaimed settlement funds to their next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.").

[9] To the extent that this proposal requires changes not falling within the court supervised portions of the Agreement, the Court would lack jurisdiction to make those changes. *See* Agreement §XIII.

government did not agree to pay money into a settlement fund for the eventual payment to class members of amounts beyond what the parties agreed was the appropriate value of a claim. Nothing about the difficulties in distributing a large amount of leftover funds would justify additional payments to claimants.

The class received the money that the government agreed to pay.  Individual class members had their claims adjudicated and paid in accordance with the Agreement.  Further payments would provide a windfall to particular class members.  As this Court previously held, "[t]hose who participated in the Settlement Agreement's process assented to the extinction of their legal claims through their participation . . . . [N]o member of the class retains a live legal claim."  *See* ECF No. 776, at 14-15; *see also* ECF No. 772 at 12 ("The problem in this case is that the lawsuit is, for res judicata purposes, over.").  This is also consistent with the finding in *Diamond Chemical* that a cy pres distribution was the most appropriate use of unclaimed funds (even in the absence of agreement by the parties) in part because plaintiffs there had already been fully compensated under the terms of the agreement.  *See* 517 F. Supp 2d at 218.[10]

The Keepseagles also cite cases in which they claim that a cy pres distribution was found inappropriate because the funds are the "property" of class members.  But this Court has quite correctly rejected the notion that the leftover funds are the property of class members; the class members have extinguished all of their claims and those funds were set aside for a different purpose.  *See* ECF No. 772 at 14 n.4 (rejecting Keepseagles' argument that the Cy Pres Fund is "class property" and distinguishing cases where the proposed cy pres fund was judicially

---

[10] Defendant USDA, just as other parts of the federal government that effectively pay claims from the Judgment Fund out of which the settlement payment here was made, finds itself sued all the time in federal courts and thus has an institutional interest in not overpaying claims and thus creating incentives for future plaintiffs to seek excessive damages.   Plaintiffs' blithe assertion that there is "no prejudice" to USDA is thus unwarranted.

created); ECF No. 728 at 35-37 (rejecting notion that the leftover funds are the property of successful claimants); 4 Newberg on Class Actions, § 12:32.[11]

Even in cases where there are "excess" or "unclaimed" funds, courts have held that distribution to claimants would be inappropriate "where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution." *See Klier*, 658 F.3d at 475; *In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21, 35 (1st Cir. 2012) ("protesting class members are not entitled to windfalls in preference to cy pres distributions."); *Diamond Chemical*, 517 F. Supp. 2d at 218. The Keepseagles assented to the Agreement, which provided that their damages claims were 100 percent satisfied by the settlement; indeed, the Agreement imposed hard caps on per-person recovery, *see* Agreement § IX, and all members of the class (except for those few who opted out of the Agreement) agreed to extinguish all claims for additional funds, *see id.* § XVIII.[12]

---

[11] The Keepseagles' reliance on *Klier v. Elf Atochem N. Am.*, 658 F3d 468 (5th Cir. 2011), is misplaced. In *Klier,* the parties expressly agreed that residual funds would be distributed within the class, and the Fifth Circuit enforced that agreement. *Id.* at 471. *Klier* thus supports Defendant's position that the Keepseagles cannot avoid the terms of their bargain. *See Klier*, 658 F.3d at 475 ("The terms of the settlement agreement are always to be given controlling effect."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (approving a settlement involving a cy pres fund and distinguishing *Klier* because "[o]bjectors ask this Court to do precisely what the Fifth Circuit found to be error in *Klier*—ignore the Settlement Agreement and re-allocate the cy pres funds.").

In *BankAmerica Corp. Securities Litig*, 775 F.3d 1060 (8th Cir. 2015), the other case heavily relied upon by the Keepseagles, the court found the cy pres provision of a settlement agreement "void" because it failed to comply with Eighth Circuit precedent. In Defendant's view, the *BankAmerica* court improperly ignored the bargain of the parties and rewrote it, apparently long after the agreement was noticed to the class and approved by the court without objection or appeal. Such an approach unbalances the bargain of the parties and upends the finality of a settlement. But this Court need not decide whether it agrees with the Eighth Circuit's holding. There is no similar controlling precedent in this Circuit, and there is no argument that the cy pres provision the parties agreed here to is "void." Moreover, the Eighth Circuit has limited the scope of *BankAmerica*, holding that a distribution of leftover funds to an organization that was created for the benefit of class members and which had class members on the Board is not a cy pres distribution at all. *Marshall v. National Football League*, --- F.3d ---, 2015 WL 2402355 (8th Cir. May 21, 2015). Thus, even if the original Agreement would fail under the Eighth Circuit's precedent, the Class's proposed amendment would not.

[12] In the *Lupron* case, the First Circuit reasoned that "allowance of such windfalls could create a perverse incentive among victims to bring suits where large numbers of absent class members were unlikely to

The Keepseagles dispute that they have received everything to which they are entitled, arguing that the Agreement does not provide for "liquidated damages" and that because they compromised claims for additional damages, there is no windfall in additional payments to them. This Court has already effectively (and quite correctly) rejected that contention by holding that all claims were fully extinguished.  *See* ECF No. 772 at 14 n.4; ECF No. 728 at 31-37.[13]  The Keepseagles' claim to the contrary is particularly untenable in light of the nature of the settlement in this case, which ended Plaintiffs' claims in this civil action with conclusive and binding effect, and without any concession of liability by the government.  Even if it were true that the Keepseagles had compromised the amount of their claims, they agreed to compromise and extinguish their claims in light of litigation risk; there was always a substantial risk that the class would be decertified on appeal, that the claimants would be unable to prove liability or damages, or that even if successful, the litigation would continue for many more years.  In return for a compromise of their claims, the Keepseagles received an immediate, sizable payment, in addition to many other benefits provided for in the settlement: their class representative awards, tax relief, debt relief, extensive programmatic relief, and notably, a cy pres fund to provide indirect benefits to all class members.  *See also* ECF No. 744.  That the Keepseagles now want a

---

make claims. It might also create an incentive for the represented class members to keep information from the absent class members."   677 F.3d at 35.

[13] *Beecher* provides no support for Plaintiffs' position.  *See Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978).  There, in district court, the parties agreed that allocation of settlement funds to different subclasses as provided in the agreement would have been inequitable in light of the number of claimants. The court was choosing between competing modification proposals – one for reversion to the Defendant, which was expressly foreclosed by the agreement, and one to modify the distribution to subclasses provided for in the settlement agreement.  The Court of Appeals found no abuse of discretion in the decision to tweak the allocation in lieu of allowing reversion under these circumstances.  Notably, the Court rejected the argument that an unexpectedly low number of claimants justified a change to the agreement and found that the objector "had expressly assumed the risk of mistake that the estimated number and amount of claims might be incorrect."  *Id*. at 1015.  Here, it is the Keepseagles who are seeking to avoid the letter of their own bargain.

different deal than the one they struck does not change the fact that they have already extinguished those claims.[14]

Finally, the proposed alterations do not go to "prospective relief" within the meaning of Rule 60(b)(5). Rule 60(b)(5) allows a court to amend "any judgment that has prospective effect." *Kapar v. Islamic Republic of Iran*, --- F. Supp. 3d ---, 2015 WL 2452754, *3 (D.D.C. 2015). A judgment is "prospective" if it is either "executory" or involves "the supervision of changing conduct or conditions." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988). A claim for money damages is generally not "prospective" for the purposes of Rule 60(b)(5). *Id.* at 1138; *Kapar*, 2015 WL 2452754 at *3. Here, the proposed modification of the Agreement goes well beyond amendment of the prospective portions of the Agreement; it would effectively re-open extinguished claims for money damages, raise the caps on awards to successful claimants and would otherwise amend those portions of the Agreement without any prospective effect. Accordingly, the alteration does not fall with the authority of Rule 60(b)(5).

### B.      Re-Opening the Claims Process is Not Appropriate Relief.

The Keepseagles' alternative proposal for amending the Agreement is yet more problematic. They propose opening the claims process to individuals who did not submit valid claims – i.e., unsuccessful claimants and individuals who never filed a timely claim. This is not

---

[14] Defendants note that the proposed amendments are simply unworkable and incomplete as drafted. It is unclear who would pay for the continuing implementation and tax reporting, and the Keepseagles give no indication of having obtained any cost estimates. Nor is it clear how the pro rata distribution would be calculated. Their unilateral, unnegotiated proposal stands in sharp contrast to the original agreement and the modification proposed by the class, which were the result of arm's-length adversarial negotiations. *See* Order Approving Settlement, ECF No. 606 ("The Settlement resulted from vigorous arm's-length negotiations, which were undertaken in good faith by counsel with significant experience litigating civil rights class actions."); *cf. Equal Rights Ctr. v. Washington Metro. Area Transit Auth.,* 573 F. Supp. 2d 205, 212 (D.D.C. 2008) ("The court presumes that a settlement is fair, adequate, and reasonable when "a class settlement [is] reached in arms' length negotiations between experienced, capable counsel after meaningful discovery.").

appropriate relief because the Court has no jurisdiction to amend the claims process in this way, this relief is not available under Rule 60(b)(5), and the proposal is in no way tailored to the alleged changed circumstances.

First, the Court lacks jurisdiction to re-open the claims process.  The parties expressly foreclosed this possibility in the Agreement.  The parties agreed to, and the Court approved, strict limitations on any continuing jurisdiction of the Court.  *See* Agreement, §XIII.  The Court has previously rejected the attempts of disappointed claimants to amend those provisions, explaining that "Settlement Agreement expressly prohibits the Court's continuing jurisdiction over the non-judicial claims process."  *See* ECF No.  633 at 7-8.  Accordingly, Section 13's provision for the Court's continuing supervision of the "distribution of the Fund" cannot encompass claims relating to the non-judicial claims process.  Indeed, the Court interpreted Section 13 as granting it only the authority to ensure that, as a ministerial matter, the fund is distributed in accordance with the decisions made by those responsible for calculating awards (the Class A and B neutrals) and debt relief (the USDA).  *Id*. at 8; *see also* ECF No. 692.  Because the Keepseagles' "alternative" proposal requires re-opening the claims process, extending the time limitations on filing and other changes to the claims process, it is not within the Court's jurisdiction.

Second, the proposed alterations do not go to "prospective relief" within the meaning of Rule 60(b)(5).  As discussed in Part III.A, *supra*, Rule 60(b)(5) allows a court to amend "any judgment that has prospective effect."  Here, because the proposed modification of the Agreement here would re-open extinguished claims for money damages, extend the time limits for filing claims and would otherwise amend those portions of the Agreement without any prospective effect, the alteration does not fall with the authority of Rule 60(b)(5).

17

Third, the proposed alternations are in no way tailored to the alleged changed circumstances.  Nothing about lack of claimants suggests that the process should be re-opened to *unsuccessful* or untimely claimants.  The Keepseagles have not put forward any competent evidence regarding other such claimants or why they might not have made timely claims previously.  Nor have they explained what principle would permit these hypothetical claimants to receive money now but not previously. And because the alternative proposal still provides for distribution of leftover funds to successful claimants, it suffers from all the problems identified in Part III.A, *supra*.

Finally, USDA has an interest in not re-opening the claims process.  The Government, as well as the public, has an important interest in finality of judgments.  *See, e.g., Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (referring to "the law's important interest in the finality of judgments"). The parties, the Court and the public are entitled to final resolution of this matter, not re-opening and second-guessing about how the parties might have reached a different agreement years ago.

## CONCLUSION

For the foregoing reasons, the Court should deny the Keepseagles' Motion to Modify the Agreement.

Dated:   June 2, 2015                    Respectfully submitted,


                                         KATHLEEN HARTNETT
                                         Deputy Assistant Attorney General

18

VINCENT H. COHEN, JR.
United States Attorney

JUDRY L. SUBAR, DC Bar # 347518
Assistant Director
Federal Programs Branch

 _/s/Amy E. Powell_____
AMY POWELL
JUSTIN SANDBERG
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 5377
Washington, D.C. 20530
Telephone: (202) 514-9836
amy.powell@usdoj.gov