

Leave to file GRANTED
United States District Judge

Jan 11, 2016
3257 US Hwy 231
Brundidge, Al. 36010

Honorable Emmet G. Sullivan
333 Constitution Avenue N.W.
Washington DC 20001

Sir:
   My name is James McGough I am
writing you, to ask you to Please
Consider the new proposal, on How
the remaining settlement funds,
should be used.

   Honorable Sullivan, I feel this is
a win win, for everyone. The
Claimant will get a little Supplemental
Payment and the non-profit Organization
will direct the balance to Native
American farming Activities.

   Thank you for giving us a chance to
Voice our Views, and please pass this
New proposal its good for all the
people!

              Thank you
              James McGough

*Leave to file GRANTED*

United States District Judge

January 14, 2016

Chambers of the Honorable Emmet G Sullivan
US District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C 20001

Re: Esther Blue Eyes - Party to USDA Settlement

Dear Honorable Emmet G Sullivan

It is with great hope that you will consider
the proposed revision of the USDA Settlement by
providing each Prevailing Claimant a Supple-
mental payment of $21,275.00 We as Claimant
have endured many obstacles in trying to be
successful at farming without the financial
resources that should have been available to
us. Therefore, we feel it most fair to consider
the revised proposal as presented.

It is unfortunate that Native Americans were
discriminated against by a branch of the
Federal Government and many Native Americans
families were negatively impacted for years and
many of us never recovered. So, it is hard to
understand why the entire settlement monies

Leave to file GRANTED

United States District Judge

January 14, 2016

Nelson Yazzie
Elsie G. Yazzie
P.O. Box 391
Ganado, Arizona 86505-0391

Keepseagle Claims Administrator
P.O. Box 3560
Portland, OR 97208-3560

To: Whom It May Concern,

I have your letter of December 30, 2015
Supplemental Notice RE: Keepseagle V. Vilsak

It has been more than a decade of litigation;
(Not finalize yet) But finally it is coming to
proportional as to be harmonious foresight.
I agree in some degree with the new proposal;
meaning the (2) two prior proposals. If
arrangement of change. I am hoping the best
with my holistic as a whole in prosperous.

Yours very truly,

Nelson Yazzie

Nelson Yazzie
Elsie G. Yazzie  (12-09-55 — 09-08-08)
Class Members
NY/EGY



Leave to file GRANTED

United States District Judge

January 6, 2016

To: Chambers of the Honorable Emmet G. Sullivan

From: JoAnn R. Jim
      Class Member

RE: How the Remaining Settlement Funds should be distributed

Here is my input about how the remaining settlement
funds should be distributed. It should provide
each Prevailing Claimant a supplemental payment
of $18,500 directly and $2,775 paid to the
IRS on their behalf for a total supplemental
award of $21,275. I want to be paid with
the supplemental payment. The remaining
settlement fund should be trusted and protected
by the Board of Trustees, who has experience
to help further Native American farming
and ranching activities. The fund will earn
and gain interest over the years.

JoAnn R. Jim

allocated were not all distributed to the claiments as it was a settlement. Instead, a large amount of the monies are projected for organizations that are to provide agricultural educational serices to us claimant.

I do not beleive those agricultinal services will benefit many of the claimants because we Native Americans are spread out in diffent states. Also, we alredy learned how to farm from our parents who have passed on so we do not see the benefit in giving the settlement monies to agriculture service.

Thank You for allowing me and my children to provide our comments to this very imporant issue. It is with high hopes that you will consider our request to provide $21,275.00 to each claimant.

Best regards
Esther Blue Eyes
Ursula R. Yazzie
Wesley



Leave to file GRANTED

United States District Judge

Jan 12, 2016

Mr Sallivan,

I am writing this to say that I am in favor of the revised Proposal. And I pray that the remainder of the money be used for all the farmers. Because a lot of them don't get much information on the latest farming and Ranch information.

And a lot of them need help in producing Hay for their cattle. Maybe setting up places where they can get equiptment for use on their land.

Sincerely

Dwayne Ware

Leave to file GRANTED

United States District Judge

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C.  20001

January 12, 2016

Dear Judge Sullivan,

I was a successful claimant in Keepseagle v. Vilsack.  It is my opinion that any settlement funds that have not been distributed should be given to all successful claimants and I am in favor of the revised settlement proposal.

If the Court does make changes to the proposal, please consider giving each successful claimant more funds rather than less.  Each successful claimant had a valid cause of action against the Defendants and should be the recipients of the settlement funds.  In addition, increasing the percentage of tax payments would be a good idea because not every claimant is in the lower tax bracket and therefore, some claimants would acquire more tax liability due to receiving the settlement funds.

Thank you for your consideration.

Respectfully,

Sandy Crosslin

Leave to file GRANTED

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely, *Thomas Ducheneau s*


Name: *Thomas Ducheneau,*
Address: *Timber So. Dak ~ 57656*
*P.O. Box # 223.*

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Leave to file GRANTED

United States District Judge

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

*Hilda Ducheneaux*

Name:      *Hilda Ducheneaux*

Address:   *P.O. Box # 223*

*Timber Lake, South Dakota*
*57656*

Leave to file GRANTED

United States District Judge

January 13, 2016

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe,

has four representatives. Oglala should be reduced to one represented on this board. The other three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. The lawsuit claims that the USDA denied thousands of Native American farmers and ranchers the same opportunities to get farm loans or loan servicing that were given to white farmers and ranchers. Plaintiffs also claim that the USDA did not do outreach to Native American farmers and ranchers or provide them with the technical assistance they needed to prepare applications for loans and loan servicing.

The Class includes all Native American farmers and ranchers who:

- Farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999; **and**
- Sought, or attempted to seek, a farm loan from the USDA during that period; **and**

Complained about discrimination to the USDA orally or in writing on their own or through a representative, such as a tribal government, during the same time. We feel that Class Counsel and USDA continue to discriminate for their benefit and the so called nonprofits will be doing exactly the opposite, making a profit at our expense.

I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely, *Delbert W. Longbrake*

Name: Delbert W. Longbrake

Address: P.O. Box 1179

Eagle Butte, S.D. 57625

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Leave to file GRANTED

United States District Judge

To the Honorable Judge Sullivan,
It has been very disheartening being represented by this class counsel who has turned
out to be no more than self-serving. The lawsuit began to correct an injustice and
because of the self-serving negotiating between class counsel, USDA and DOJ has
become a deception to the claimants. When I originally filled out the claim form class
counsel explained if more claimants applied for the lawsuit than the counsel
anticipated, claimants would receive less money.
George and Marilyn Keepseagle have shown true dedication for the sole purpose of
making sure this injustice is solved righteously and lawfully. We are truly thankful for all
of the Keepseagles hard work in keeping the real issue alive, and keeping us well
informed in this case. The Keepseagles have told several of the claimants that they felt
forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are
concerned at their age, if something would happen to them prior to an appeal date the
case would die with them therefore; we stand behind the Keepseagles and ask for a
higher additional payment.
My question is, why would class counsel put a cap of $50,000 on the amount of money
each person would receive on the high end but not the lower end? Why would class
counsel be so willing for the claimants to receive less money if there were more
claimants than they anticipated and not negotiate a higher pay out for a smaller
claimant sign up? If the left over funds are given to non-profits as class counsel
suggests, twenty to thirty percent of the funds will be taken for administration fees
which does not benefit the claimants. We would rather have the left over funds be
returned to the U.S. government instead of given to a non-profit. We believe class
counsel should also have to return its' contingency fee back to the U.S. government on
the amount of money not paid out to the claimants. If the left over money is given to a
non-profit, class counsel should return its' contingency fees back on that amount of
money given to non-profits because they grossly misrepresented the size of the class
and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.
Sincerely,

Frederick K Farlee
PO Box 187
Dupree, SD 57623

Leave to file GRANTED

United States District Judge

Judge Sullivan

I hope you are Able to follow what I am writing in this letter. as some times what I'm thinking does not come out clear to others on pAper. I'm unwAre of the correct protocols but if need you may contAct me for further clarification.

THAnks
Pyle

H. 605-733-2225
C. 605-848-2225

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name: Lyle Anderson

Address: P.O. Box 111
Whitehorse, S.D.
57661

*Leave to file GRANTED*

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name: *Mary Jane Anderson*

Address: *26324 BIA Y*
*Mobridge SD 57601*

Leave to file GRANTED

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out
to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-
serving negotiating between class counsel, USDA and DOJ has become a deception to the
claimants. When I originally filled out the claim form class counsel explained if more claimants
applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of
making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the
Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case.
The Keepseagles have told several of the claimants that they felt forced into accepting an unfair
and unjust amount of $21,275. George and Marilyn are concerned at their age, if something
would happen to them prior to an appeal date the case would die with them therefore; we stand
behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money
each person would receive on the high end but not the lower end? Why would class counsel be
so willing for the claimants to receive less money if there were more claimants than they
anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over
funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will
be taken for administration fees which does not benefit the claimants. We would rather have the
left over funds be returned to the U.S. government instead of given to a non-profit. We believe
class counsel should also have to return its' contingency fee back to the U.S. government on the
amount of money not paid out to the claimants. If the left over money is given to a non-profit,
class counsel should return its' contingency fees back on that amount of money given to non-
profits because they grossly misrepresented the size of the class and gained by unjust
enrichment.

We do not believe that any of the money should be going to non-bonded non-profit
organizations. A stipulation should be placed, if you are employed by a non-profit or a
descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that
receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region
had one of the highest numbers of successful claimants, when you look at the list of board of
directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe,
has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely, *Sharon Keller*

Name: Sharon Keller
Address: HCR 77 #48
Trail City, SD
57657

January 11, 2016

~~Leave to file~~ GRANTED

United States District Judge

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

Dear Honorable Sullivan;

This letter is in response to the Supplemental Notice Re: Keepseagle v. Vilack.

I am Angela Sanford, a claimant on the case of Keepseagle v. Vilack.  I strongly recommend that all victims of this case be awarded $21,275.00.

I experienced mental and physical trauma based on the horrible experience I had with U.S.D.A.

Again, I was victimized by the attorneys who worked with the Keepseagle claims administrator from Portland, Oregon, who probably got a lot of money based on all us victims who were misguided and misrepresented.  *See* Affidavit.

I called Keepseagle claim administrator requesting for help to re-file my claim for $250,000.00, however they told me they can't help me.  I kept asking for several attorneys to help me, but they kept referring me around.  I then got this letter that says "Please do not submit any new claims".

Honorable Sullivan, I pray that all victims be paid $21,275.00 for the discrimination we went through.  Further, that claimants be given information as to how to file for financial assistance in farm equipments, etc.

Respectfully submitted.

Angela Sanford, Claimant
No. 271802190725
Post Office Box 1783
Shiprock, New Mexico 87420

cc:    copy
       Keepseagle Claims Administrator

# AFFIDAVIT

I, Angela Sanford, being first duly sworn upon oath, deposes and says:

1.     That I informed the attorney helping me with my claim documents that I would like to file for $250,000.00, due to the evidence and emotional experience I encountered with the U.S.D.A.

2.     That the attorney stated "you have to go to court for $250,000.00 and if you lose your case you get nothing."

3.     That the attorney stated "if you make a settlement, you will get the $50,000.00 by not going to court.  It is a settlement so he said sign this document, which I did with hesitation."

4.     I trusted the attorney but I now understand I was misguided.  I have never been through any legal action as this.

5.     I did not know we were already awarded the money, but it was into two tracks, (Track A - $50,000.000 and Track B - $250,000.000).

6.     Based on the wrongful guidance of the attorney, I strongly recommend the claimants be awarded $21,275.00.


_Angela Sanford_
Angela Sanford, Claimant
No. 271802190725
Post Office Box 1783
Shiprock, New Mexico 87420


Sworn to and subscribed before me this ___11th___ day of January, 2016.

_Elsie Shorthair_
NOTARY PUBLIC

My Commission Expires: _7/26/2018_

OFFICIAL SEAL
Elsie Shorthair
Notary Public - State of New Mexico
My Commission Expires 2-26-2018

Leave to file GRANTED

December 6, 2015

The Honorable Emmett G. Sullivan United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

**Re: Keepseagle v. Vilsack No. 1:99-CV-03119-EGS**

Dear Judge Sullivan:

This letter is sent to request you to schedule a hearing at the Courts earliest convenient date in the Keepseagle matter.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves.

I am a valid Keepseagle claimant and I, along with George and Marilyn Keepseagle and my co-claimants believe that the remaining 380 million that is in a trust should be disbursed equally between the 3,600 valid claimants.
I have sent letters urging the group to meet (Please see enclosed letters.) to modify the settlement agreement - to disburse the settlement monies equally between the valid claimants.

**It is my understanding from your July 24, 2015, Opinion that**:
1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an order.

Your time and consideration in this regard is truly appreciated.

Regards.

Name:  Charles D Biddle

Mailing Address:  2510 County Road 477
                  Kinston, AL 36453

1

Leave to file GRANTED

United States District Judge

The Honorable Emmett G. Sullivan
Attn: Judge Sullivan Chambers
United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

      RE:   Keepseagle
              Case No. 1:99-CV-03119-EGS

Dear Judge Sullivan:

My name is Amanda Biddle, Legal Administrator of the Estate of Danny Kevin
Nobles. I am a member of the Machis Lower Creek Indian tribe of Alabama. I am
also a valid Claimant in the Keepseagle matter.  The financial loss that I suffered
due to the USDA's discrimination against me was greater than the $50,000.00
awarded to Track A Claimants.

It is my understanding that in litigation matters, it is a normal routine practice
for the clients to equally divide the remaining settlement money; therefore, by
way of this letter I am advising your Honor that I cast my vote for **Option
Three: I agree with Marilyn Keepseagle**. I request that this Honorable
Court issue an Order to immediately disburse the remaining 380 million dollars,
including any interest accrued on the 380 million dollars; equally between all of
the valid Keepseagle Track A Claimants.

It just doesn't make sense that the attorneys are insisting on setting up a Trust
Account: 1) pay for Board members salary and travel, 2) pay for office space and
staff, and 3) process applications to give money to people who were not
discriminated against by the USDA.  **The Keepseagle lawsuit was litigated
because the USDA discriminated against the American Native Indian
farmers and ranchers – the remaining 380 million, plus interest
should only be divided equally between Track A valid claimants.**  **The
settlement money should only go to the Keepseagle Track A claimants.**
I don't believe that the Black Farmer case (Pigford I or II) had their money put
into a trust account. If the Keepseagle money is put into a Trust account and not
given to the people who were discriminated against; the Keepseagle valid Track A
claimants - isn't this yet another form of discrimination?

Date:         January 5, 2016
Signature:    *Amanda Biddle*
Name:      Amanda Biddle, Legal Administrator,Estate of Danny Kevin Nobles
Address:    2510 County Road 477
              Kinston, AL 36453
Phone No.:  334-303-9516

1

December 6, 2015

*Leave to file GRANTED*

*United States District Judge*

The Honorable Emmett G. Sullivan United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

**Re: Keepseagle v. Vilsack No. 1:99-CV-03119-EGS**

Dear Judge Sullivan:

This letter is sent to request you to schedule a hearing at the Courts earliest convenient date in the Keepseagle matter.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves.

I am not a Keepseagle claimant however. I agree with George and Marilyn Keepseagle, and other co-claimants that the remaining 380 million that is in a trust should be disbursed equally between the 3,600 valid claimants.
I have sent letters urging the group to meet (Please see enclosed letters.) to modify the settlement agreement - to disburse the settlement monies equally between the valid claimants.

**It is my understanding from your July 24, 2015,** Opinion that:
1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an order.

Your time and consideration in this regard is truly appreciated.

Regards.

*Breeann Biddle*
Name: Breeann N Biddle
Address:  2510 County Road 477
            Kinston, AL 36453

1

Leave to file GRANTED

_United States District Judge_

The Honorable Emmett G. Sullivan
Attn: Judge Sullivan Chambers
United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

RE:   Keepseagle
      Case No. 1:99-CV-03119-EGS

Dear Judge Sullivan:

My name is Charles D Biddle. I am a member of the Machis Lower Creek Indian tribe of Alabama. I am also a valid Claimant in the Keepseagle matter. The financial loss that I suffered due to the USDA's discrimination against me was greater than the $50,000.00 awarded to Track A Claimants.

It is my understanding that in litigation matters, it is a normal routine practice for the clients to equally divide the remaining settlement money; therefore, by way of this letter I am advising your Honor that I cast my vote for **Option Three: I agree with Marilyn Keepseagle**. I request that this Honorable Court issue an Order to immediately disburse the remaining 380 million dollars, including any interest accrued on the 380 million dollars; equally between all of the valid Keepseagle Track A Claimants.

It just doesn't make sense that the attorneys are insisting on setting up a Trust Account: 1) pay for Board members salary and travel, 2) pay for office space and staff, and 3) process applications to give money to people who were not discriminated against by the USDA. **The Keepseagle lawsuit was litigated because the USDA discriminated against the American Native Indian farmers and ranchers – the remaining 380 million, plus interest should only be divided equally between Track A valid claimants. The settlement money should only go to the Keepseagle Track A claimants.** I don't believe that the Black Farmer case (Pigford I or II) had their money put into a trust account. If the Keepseagle money is put into a Trust account and not given to the people who were discriminated against; the Keepseagle valid Track A claimants - isn't this yet another form of discrimination?

Date:        January 5, 2016
Signature:   _Charles D. Biddle_
Name:        Charles D. Biddle
Address:     2510 County Road 477
             Kinston, AL 36453
Phone No.:   334-313-8046

1

Leave to file GRANTED
_United States District Judge_

The Honorable Emmett G. Sullivan
Attn: Judge Sullivan Chambers
United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

RE:   Keepseagle
Case No. 1:99-CV-03119-EGS

Dear Judge Sullivan:

My name is Amanda Biddle.  I am a member of the Machis Lower Creek Indian tribe of Alabama.  I am also a valid Claimant in the Keepseagle matter.   The financial loss that I suffered due to the USDA's discrimination against me was greater than the $50,000.00 awarded to Track A Claimants.

It is my understanding that in litigation matters, it is a normal routine practice for the clients to equally divide the remaining settlement money; therefore, by way of this letter I am advising your Honor that I cast my vote for **Option Three:  I agree with Marilyn Keepseagle**. I request that this Honorable Court issue an Order to immediately disburse the remaining 380 million dollars, including any interest accrued on the 380 million dollars; equally between all of the valid Keepseagle Track A Claimants.

It just doesn't make sense that the attorneys are insisting on setting up a Trust Account: 1) pay for Board members salary and travel, 2) pay for office space and staff, and 3) process applications to give money to people who were not discriminated against by the USDA.  **The Keepseagle lawsuit was litigated because the USDA discriminated against the American Native Indian farmers and ranchers – the remaining 380 million, plus interest should only be divided equally between Track A valid claimants.  The settlement money should only go to the Keepseagle Track A claimants.** I don't believe that the Black Farmer case (Pigford I or II) had their money put into a trust account. If the Keepseagle money is put into a Trust account and not given to the people who were discriminated against; the Keepseagle valid Track A claimants - isn't this yet another form of discrimination?

Date:          January 5, 2016
Signature:     _Amanda Biddle_
Name:          Amanda Biddle
Address:       2510 County Road 477
               Kinston, AL 36453
Phone No.:     334-303-9516

1

Leave to file GRANTED

*United States District Judge*

December 6, 2015

The Honorable Emmett G. Sullivan United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

**Re: Keepseagle v. Vilsack No. 1:99-CV-03119-EGS**

Dear Judge Sullivan:

This letter is sent to request you to schedule a hearing at the Courts earliest convenient date in the Keepseagle matter.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves.

I am a valid Keepseagle claimant and I, along with George and Marilyn Keepseagle and my co-claimants believe that the remaining 380 million that is in a trust should be disbursed equally between the 3,600 valid claimants.
I have sent letters urging the group to meet (Please see enclosed letters.) to modify the settlement agreement - to disburse the settlement monies equally between the valid claimants.

**It is my understanding from your July 24, 2015, Opinion that:**
1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an order.

Your time and consideration in this regard is truly appreciated.

Regards,

Name: Estate of Danny Kevin Nobles
          c/o Amanda Regina Biddle, Legal Administrator

Mailing Address: 2510 County Road 477
                          Kinston, AL 36453

1

Chambers Of The Honorable Emmet G. Sullivan
U.S. District Court For The District Of Columbia
333 Constitution Avenue N.W.
Washington,D.C.   20001

Leave to file GRANTED

_United States District Judge_

To Honorable Emmet G.Sullivan,

Its long over due this matter of Funds Distribution should have
been resolve over a year ago or so. I personally feel this Funds
was allocated for certain purpose and one purpse only which is to
disburse this funds among all Eligible claimants.However,as I've
said in the past and I will continue to stand firm on this issue
regarding Funds distribution. In fact $380 million is alot of
money,Therefore, my suggestion is that All eligible Claimant must
and should receive $175,000.00 I solely believe its only right,
and I want to do right by my Father,after all he was the one who
suffered the ordeal,and I can not undo such horrible experience
he endure. Its only because of my Father's ordeal I solely believe
it is right and just that I want to do right by my Father.Where did
these people when my Father and others going throughdealing with no
win situation. Whywould anyone think they're entitled to this Money
when they have no idea what my Father and others experience/ They
are not entitle to this money,they should not receive not a penny
My suggestion to this matter is this Funds should and must only
disburse to  all eligible claimant in the amount of $175,000.00..
If this Funds should be given to non-eligible people who do not
deserve a penny-Then we all did injustice to the very people who
suffered so much. In closing I appreciate and I Thank You  whole
Heartedly.

Thank You Again,

Sutton, Betty

*GRANTED*

United States District Judge

December 6, 2015

The Honorable Emmett G. Sullivan United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

**Re: Keepseagle v. Vilsack No. 1:99-CV-03119-EGS**

Dear Judge Sullivan:

This letter is sent to request you to schedule a hearing at the Courts earliest convenient date in the Keepseagle matter.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves.

I am a valid Keepseagle claimant and I, along with George and Marilyn Keepseagle and my co-claimants believe that the remaining 380 million that is in a trust should be disbursed equally between the 3,600 valid claimants.
I have sent letters urging the group to meet (Please see enclosed letters.) to modify the settlement agreement - to disburse the settlement monies equally between the valid claimants.

**It is my understanding from your July 24, 2015, Opinion that**:
1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an order.

Your time and consideration in this regard is truly appreciated.

Regards,

*Amanda Biddle*

Name:  Amanda Biddle

Mailing Address:  2510 County Road 477
Kinston, AL 36453

1



Leave to file GRANTED

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely, *JoAnn Ducheneaux*

Name:   *JoAnn Ducheneaux*

Address:   *P.O. Box 304*

*Timber Lake, SD*

*57656*

Leave to file GRANTED

_____
United States District Judge

January 15, 2016

Glenda Hall
209 West 3rd
Stuttgart, AR  72160

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C.  20001

Dear Judge Sullivan,

I am writing this letter to share my view on how the remaining settlement funds should be used in the Keepseagle V. Vilsack case.  I think the funds should be divided with the Prevailing Claimants, the ones who were damaged.

Thank you for your time and for your consideration.

Sincerely,


Glenda Hall

Glenda Hall

Leave to file **GRANTED**

United States District Judge

To whom it may concern.

I've been praying and hoping this would be reconsidered to give to many people who applied and got denied. I have acquaintances that have never even owned any livestock or have applied for a loan and they got the $50,000⁰⁰ one of them is even kin to my father and I know that doesn't matter now.

I'm wanting to buy a few cows back while the market is down but don't have the money now and that is where this money would go if it is settled out that way so I'm super hopeful you will consider doing that with the money people could sure use it, I miss having cows to get see have calves every year because of finances this would greatly help and would be greatly appreciated.

Thanks for reconsidering.

Kayla Roberts

Keepseagle Claims Administrator
PO Box 3560
Portland, OR 97208-3560

271802141041

KAYLA NICOLE ROBERTS
PO BOX 164
PEGGS, OK 74452

December 30, 2015

### SUPPLEMENTAL NOTICE RE: KEEPSEAGLE V. VILSACK

You are receiving this notice either because you were previously sent notice of the settlement of this case or because you made a claim in connection with this settlement. Please read this notice carefully. There are funds paid in settlement of this case that remain undistributed. This notice is to inform you that the Court is inviting input from Class Members on how those funds should be distributed and to let you know how and when you can provide that input.

Please note: As described in greater detail below, this concerns a revised proposal, different from the one described in the May 2015 notice. The revised proposal provides each Prevailing Claimant a supplemental payment of $18,500 directly and $2,775 paid to the IRS on their behalf, for a total supplemental award of $21,275, with the balance of the funds being directed to nonprofit organizations to provide assistance designed to further Native American farming or ranching activities.

**What is the Keepseagle case about? Who is in the Class?**

The Keepseagle case claimed the USDA discriminated against Native Americans who applied for or tried to apply for farm loans or loan servicing. USDA denied the claims of discrimination.

The Class *includes* all Native American farmers and ranchers who:
- Farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999;
- Tried to get a farm loan or loan servicing from the USDA during that period; and
- Complained about discrimination to the USDA either on their own or through a representative during the time period.

The Class *does not include* individuals who:
- Experienced discrimination only between January 1 and November 23, 1997; or
- Complained of discrimination only between July 1 and November 23, 1997.

**What happened in the case?**

After more than a decade of litigation, the Parties reached a settlement in October 2010, which was publicized and then approved by the Court in April 2011. The settlement included programmatic relief, debt relief, and a claims process with two tracks (Track A, with payments of $50,000 plus tax relief and Track B with payments capped at $250,000). Notice of this claims process was issued, and meetings with Class Members who wished to file claims were held from May to December 2011. The deadline for submitting claims was December 27, 2011. A Court-appointed neutral determined which claims to grant and which to deny. Claimants were notified of the rulings, and checks were mailed to successful Claimants in 2012. Of the $680 million paid to settle this case, approximately $380 million remains undistributed.

**What does the current agreement say about how the remaining funds are to be distributed?**

The Settlement Agreement approved by the Court requires that the remaining funds be given to nonprofit organizations, other than a law firm, legal services entity, or educational institution, that have provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and November 1, 2010. The Settlement Agreement requires all funds to be distributed at one time in equal shares to organizations that were proposed by Class Counsel and approved by the Court.

O4431 v.02 12.22.2015



1

In addition, Plaintiffs nominate as initial Executive Director of the Trust Janie Hipp, a member of the Chickasaw tribe and Director of the Indigenous Food and Agriculture Initiative at the University of Arkansas School of Law.

The Class, USDA, and Marilyn Keepseagle have agreed to this compromise.  The Court must still approve this option before it can be put into place and the funds distributed as proposed.

### What happens next?

Class Counsel filed a motion asking the Court to approve the new proposal.

*What the Court has ordered:* The Court has scheduled a hearing for **February 4, 2016**, beginning at 10 a.m. EDT, to hear from the Parties and others with an interest in how the remaining settlement funds should be distributed.  The hearing will be held in Courtroom 24A of the United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001.  If you submit your comments in writing (*see* below), the Court will consider your views even if you do not attend the hearing.  If you attend the hearing, you will be provided a brief opportunity to speak to the Court.

### How can I get more information?

The website www.indianfarmclass.com has copies of all the main court filings and additional information about this issue.

### How can I share my views?

If you want to share your views about how the remaining settlement funds should be used, you may submit them in writing, addressed to the Court, with a postmark date no later than **January 20, 2016**.

Comments should be addressed to:

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

### PLEASE DO NOT SUBMIT ANY NEW CLAIMS.



Leave to file GRANTED

United States District Judge

Dear Sir or Madam;

I feel it only fair that this money is paid out to the people who did their claims and were denied. My reasoning behind this is because in a 4-County area in Oklahoma alone I know 4 different people who got the money and had never even tried to borrow money from FSA but went to several meetings so they get all the information they needed to recieve it anyway. I understand life isn't fair in many ways but in my case personally (my husband is dead now) I know we were denied the money and had the paperwork to prove where we were discriminated against on the loan.

Also, I have a few other reasons I feel the money should be given to the people that filled out all the paperwork. As for myself, I owe money at a bank now on cattle because I don't feel like their is any reason to try and get a loan through FSA, the cattle market had gotten very high and I'm in a position to take quite a loss on some cattle in the next 30 days, so I know I could really use the money for that as well.

I also have pushed hard for my children

to be involved in agriculture and I want them to be able to depend on trying to get a loan through FSA is they need it.

By giving to the folks that didn't get it I also feel like you will have folks getting back into the cattle business. They will feel like there is a reason to have cattle or livestock again.

I pray that my letter gets read and condsidered for this mony. My family depends on lots of things in the agriculture industry. We spray for weed & brush, we fertilize, we bale hay, we plant a little wheat, we have a garden yearly, We have cattle, horses, goats, sheep, pigs, chickens, ducks, dogs, cats and of course this time of year a problem with mice in our feed rooms.

Thank you for your time

Your fried from Oklahoma

Angela Forrest
1/8/15

Keepseagle Claims Administrator
PO Box 3560
Portland, OR 97208-3560

271802193695

000 0017873 00000000 001 002 04469 цпп: 0 0
ANGELA J FORREST
P O BOX 164
PEGGS, OK 74452

December 30, 2015

## SUPPLEMENTAL NOTICE RE: KEEPSEAGLE V. VILSACK

You are receiving this notice either because you were previously sent notice of the settlement of this case or because you made a claim in connection with this settlement. Please read this notice carefully. There are funds paid in settlement of this case that remain undistributed. This notice is to inform you that the Court is inviting input from Class Members on how those funds should be distributed and to let you know how and when you can provide that input.

Please note: As described in greater detail below, this concerns a revised proposal, different from the one described in the May 2015 notice. The revised proposal provides each Prevailing Claimant a supplemental payment of $18,500 directly and $2,775 paid to the IRS on their behalf, for a total supplemental award of $21,275, with the balance of the funds being directed to nonprofit organizations to provide assistance designed to further Native American farming or ranching activities.

### What is the Keepseagle case about? Who is in the Class?
The Keepseagle case claimed the USDA discriminated against Native Americans who applied for or tried to apply for farm loans or loan servicing. USDA denied the claims of discrimination.

The Class *includes* all Native American farmers and ranchers who:
- Farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999;
- Tried to get a farm loan or loan servicing from the USDA during that period; and
- Complained about discrimination to the USDA either on their own or through a representative during the time period.

The Class *does not include* individuals who:
- Experienced discrimination only between January 1 and November 23, 1997; or
- Complained of discrimination only between July 1 and November 23, 1997.

### What happened in the case?
After more than a decade of litigation, the Parties reached a settlement in October 2010, which was publicized and then approved by the Court in April 2011. The settlement included programmatic relief, debt relief, and a claims process with two tracks (Track A, with payments of $50,000 plus tax relief and Track B with payments capped at $250,000). Notice of this claims process was issued, and meetings with Class Members who wished to file claims were held from May to December 2011. The deadline for submitting claims was December 27, 2011. A Court-appointed neutral determined which claims to grant and which to deny. Claimants were notified of the rulings, and checks were mailed to successful Claimants in 2012. Of the $680 million paid to settle this case, approximately $380 million remains undistributed.

### What does the current agreement say about how the remaining funds are to be distributed?
The Settlement Agreement approved by the Court requires that the remaining funds be given to nonprofit organizations, other than a law firm, legal services entity, or educational institution, that have provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and November 1, 2010. The Settlement Agreement requires all funds to be distributed at one time in equal shares to organizations that were proposed by Class Counsel and approved by the Court.



**What other options are available for distributing the remaining funds?**

As described in the notice circulated in May 2015, there were competing proposals regarding distribution of the remaining funds, which required modification of the Settlement Agreement. In an opinion issued July 27, 2015, the Court rejected both proposals. Following that ruling, the Parties engaged in further discussion and have submitted a new compromise proposal to the Court. The Settlement Agreement requires that changes to its terms, such as those governing how to distribute the remaining settlement funds, must be agreed to by the Parties and approved by the Court.

The new proposal is a combination of the two prior proposals. First, each Prevailing Claimant would be paid $18,500 directly and $2,775 would be paid to the IRS on their behalf, for a total supplemental award of $21,275. Next, remaining funds, including the interest earned (minus expenses and some money going to several of the named Plaintiffs as Class Representative service awards) would be distributed to help Native American farmers and ranchers through grants to nonprofit organizations, as the current agreement provides. But, the Agreement would be changed in the following ways: (1) Most of the unclaimed funds would be placed in a Trust that could disburse the funds over a 20-year period, rather than immediately; (2) Decisions on how to distribute the funds would be made by a board comprised of 14 Native American leaders with experience in agriculture, Native American issues, financial issues, and grantmaking, rather than by Class Counsel; (3) Recipients of grants from the settlement funds would be expanded to include certain educational institutions, tribal-sponsored organizations, and community development financial institutions; (4) The funds could be distributed to new nonprofit organizations serving Native American farmers and ranchers, not just to previously existing organizations; and (5) $38 million would be distributed more quickly to the same types of organizations (so long as they existed prior to November 1, 2010) based on recommendations from Class Counsel that are approved by the Court.

Organizations receiving funds would be required to use the funds to provide business assistance, agricultural education, technical support, or advocacy services to Native American farmers and ranchers, including those seeking to become farmers or ranchers, to support and promote their continued engagement in agriculture.

The people nominated to head the Trust at the outset, whose appointment must be approved by the Court, are:

| Name | Tribal Affiliation | Professional Affiliation | State of Residence |
|------|-------------------|--------------------------|--------------------|
| Sherry Black | Oglala Lakota | Senior Advisor for Partnership for Tribal Governance, National Congress of American Indians | Virginia |
| Charles Graham | Lumbee | State Representative, North Carolina General Assembly | North Carolina |
| Pat Gwin | Cherokee Nation | Director of the Cherokee Nation Seed Bank and Native Plant Center at the Cherokee Nation, sheep farmer | Oklahoma |
| Dr. Joseph Hiller | Oglala Sioux | Professor Emeritus, University of Arizona (College of Agriculture and Life Sciences), rancher | Nebraska |
| H. Porter Holder | Choctaw | Rancher, Vice Chair of Council on Native American Farming and Ranching | Oklahoma |
| Marilyn Keepseagle | Standing Rock Sioux | Rancher, lead plaintiff in Keepseagle v. Vilsack | North Dakota |
| Jim Laducer | Turtle Mountain Chippewa | Director, majority owner of Turtle Mountain State Bank | North Dakota |
| Paul Lumley | Yakama | Executive Director, Columbia River Inter-Tribal Fish Commission | Washington state |
| Claryca Mandan | MHA, Three Affiliated Tribes | Former Natural Resources Director, MHA, rancher | North Dakota |
| Elsie Meeks | Oglala Sioux | Former South Dakota State Director of USDA Rural Development, rancher | South Dakota |
| Monica Nuvamsa | Hopi | Executive Director, The Hopi Foundation | Arizona |
| Ross Racine | Blackfeet | Executive Director, Intertribal Agricultural Council | Montana |
| Michael Roberts | Tlingit | Executive Director, First Nations Development Institute | Colorado |
| Rick Williams | Oglala Lakota | Consultant to American Indian nonprofit organizations, recently retired from American Indian College Fund | Colorado |

In addition, Plaintiffs nominate as initial Executive Director of the Trust Janie Hipp, a member of the Chickasaw tribe and Director of the Indigenous Food and Agriculture Initiative at the University of Arkansas School of Law.

The Class, USDA, and Marilyn Keepseagle have agreed to this compromise. The Court must still approve this option before it can be put into place and the funds distributed as proposed.

**What happens next?**
Class Counsel filed a motion asking the Court to approve the new proposal.

*What the Court has ordered:* The Court has scheduled a hearing for **February 4, 2016**, beginning at 10 a.m. EDT, to hear from the Parties and others with an interest in how the remaining settlement funds should be distributed. The hearing will be held in Courtroom 24A of the United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001. If you submit your comments in writing (*see* below), the Court will consider your views even if you do not attend the hearing. If you attend the hearing, you will be provided a brief opportunity to speak to the Court.

**How can I get more information?**
The website www.indianfarmclass.com has copies of all the main court filings and additional information about this issue.

**How can I share my views?**

If you want to share your views about how the remaining settlement funds should be used, you may submit them in writing, addressed to the Court, with a postmark date no later than **January 20, 2016**.

Comments should be addressed to:

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

**PLEASE DO NOT SUBMIT ANY NEW CLAIMS.**

January 10, 2016

Leave to file GRANTED

_____
United States District Judge

Keepseagle Claims Administration

P.O. Box 3560

Portland, Oregon 97208-3560

Attention Claims Administration:

In regards to your request for rebuttal concerning the proposed determination of the Keepseagle case, as a plaintiff, I find the offer satisfactory.

My recommendations concerning this offer are:

1. Make payment immediately.
2. This money is non-taxable.
   *(This settlement money is non-taxable, nor will it affect eligibility for government benefits. Congress passed the Claims Resolution Act of 2010, H.R. 4783, 111th Cong. (2010), which specifically prohibits settlement awards from being treated as gross income or a resource.)* This is a settlement!
3. The full amount designated for payment and taxes should be dispersed directly to plaintiffs in the amount of $21,275.00.
4. The excess monies proposed to provide assistance to further Native American farming and ranching activities should be limited to assist only Plaintiffs families.
5. All excess moneys should be divided equally and distributed to plaintiffs.

I respectfully request that you take this recommendation into consideration.

Sincerely,

_____, Plaintiff
Lonnie Dean Harwood
Address:
31 Harwood Drive
Cut Bank, Mt
59427
406-338-3300
406-460-0893
cc. file

January 10, 2016



Leave to file GRANTED

_____
United States District Judge

Keepseagle Claims Administration

P.O. Box 3560

Portland, Oregon 97208-3560

Attention Claims Administration:

In regards to your request for rebuttal concerning the proposed determination of the Keepseagle case, as a plaintiff, I find the offer satisfactory.

My recommendations concerning this offer are:

1. Make payment immediately.
2. This money is non-taxable.
   *(This settlement money is non-taxable, nor will it affect eligibility for government benefits. Congress passed the Claims Resolution Act of 2010, H.R. 4783, 111th Cong. (2010), which specifically prohibits settlement awards from being treated as gross income or a resource.)* This is a settlement!
3. The full amount designated for payment and taxes should be dispersed directly to plaintiffs in the amount of $21,275.00.
4. The excess monies proposed to provide assistance to further Native American farming and ranching activities should be limited to assist only Plaintiffs families.
5. All excess moneys should be divided equally and distributed to plaintiffs.

I respectfully request that you take this recommendation into consideration.

Sincerely,

_____, Plaintiff

Address:

3819 Birch Creek RD
Valier, Mt 59486

cc. file

January 10, 2016



file GRANTED

es District Judge

Keepseagle Claims Administration

P.O. Box 3560

Portland, Oregon 97208-3560

Attention Claims Administration:

In regards to your request for rebuttal concerning the proposed determination of the Keepseagle case, as a plaintiff, I find the offer satisfactory.

My recommendations concerning this offer are:

1. Make payment immediately.
2. This money is non-taxable.
   *(This settlement money is non-taxable, nor will it affect eligibility for government benefits. Congress passed the Claims Resolution Act of 2010, H.R. 4783, 111th Cong. (2010), which specifically prohibits settlement awards from being treated as gross income or a resource.)* This is a settlement!
3. The full amount designated for payment and taxes should be dispersed directly to plaintiffs in the amount of $21,275.00.
4. The excess monies proposed to provide assistance to further Native American farming and ranching activities should be limited to assist only Plaintiffs families.
5. All excess moneys should be divided equally and distributed to plaintiffs.

I respectfully request that you take this recommendation into consideration.

Sincerely,

_Patrick Hall_ , Plaintiff

Address:

Box 392
Heart Butte, Mt. 59448

cc. file

January 14, 2016

*Leave to file GRANTED*

*United States District Judge*

Chambers of Honorable Emmet G Sullivan

US District Court for the District of Columbia

333 Constitution Avenue NW

Washington, DC  20001

To Whom It May Concern,

I think the funds should be allocated to the people who were discriminated against.

Thank you,

Bradley Taylor

Leave to file GRANTED

_____
United States District Judge

I live on the Navajo Nation reservation, in Sanders, AZ (Newlands). I am part of a tribal ranching community and our focus area is cattle and sheep. I must provide my statement for the cautious distribution of excess settlement funds.

My comment:

1. Distribution of the funds should be on a case by case basis, time wise it may not be effective.

For instance my community suffers from drought, low income families, lack of transportation, agribusiness is suffering due to livestock theives.

 A. For that matter, my ranching community is in need of roads, infrastructure of the livestock & lease land for summer time grazing (due to drought conditions it is tough during times of severe drought).

 B. Be advised of suffering communities, not only individual basis. I am interested in submitting a claim, for my ranch & livestock and for my own community. It would help if there was a separate grant/distribution of funds that pertain to individual livestock producer & community partners.

Please contact me if you have any questions.

Sincerely,

Marilyn Nelson   Frankie Nelson (father)   Mary Nelson (mother)

1

Leave to file GRANTED

United States District Judge

January 13, 2016

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District Columbia
333 Constitution Ave. NW.
Washington, D.C. 20001

My name is James Cordell, a Prevailing Claimant and my input proposal is that the

Undistributed Funds for Native American Farmers and Ranchers, should go to Track A and B

Claimants, because it was the Native American Farmers and Ranchers, claims of Discrimination

Court filings.

Thank you for reviewing my input proposal.

James Cordell

James Cordell
P.O. Box 252
Fruitland, NM 87416

Leave to file GRANTED

United States District Judge

January 10, 2016

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

RE: Estate of Howard BlueEyes

Dear Honorable Emmet G Sullivan,

We respectfully write you to express our feelings about the USDA Settlement and the impact it had on our parent's livelihood. Our parents, Howard and Louise BlueEyes have been farmers all their lives.

They had a total of 71 acres and were successful at farming these acres to its capacity. They grew alfalfa, wheat, corn, melons, and other vegetables. These crops were used to feed our family and other relatives and also to sell to the public.

We all grew up working in the fields helping our parents with their farming business. We recall our parents having to take out a USDA loan to purchase the farm equipment to make working the fields more efficient. During these times, our parents were successful in managing their farms. While other families were on federal assistance like food stamps or welfare, our family never needed these types of assistance because they were able to support our family with the farming.

After a few years, our parents tried to get assistance from USDA again and were denied several times. My father did not understand why he was not able to obtain a loan or assistance as before. By this time, his farm equipment was old and breaking down and no matter how much he tried, his farming business began to decrease. Soon, some of his farm equipment was repossessed by USDA and that's when our parents farming were negatively impacted. After this, our parents never recovered and our father became depressed and both became ill and passed away in their early 60's.

The Native American communities have been legally wronged by USDA and the compensation our family received on behalf of our parents, Howard and Louise BlueEyes was $62,500. Unfortunately, this compensation did not begin to cover the damaged caused by the wrong

doing because our parents suffered years of financial hardship and eventually lost everything. We learned that there was still millions of dollars left of the settlement and to our surprise, it was to be given to non-profit organizations or educational institution that have provided agricultural, business assistance, or advocacy services to Native American farmers. We find this decision to be unfair.

We are afraid the balance put aside for the above purposes will not benefit all the Native Americans impacted because the Native American communities are spread through-out the United States.  How do we know we will get these benefits that will help us to re-build our farm lands.  Most of these funds will be used for administrative cost and not direct services to us.

We respectfully ask you to reconsider the set aside of the full amount of $380 million and that you please support providing $21,275.00 to each effected parties.  This will enable us to continue rebuilding our families that were negatively impacted by this issue.

We thank you for taking time to read our comments and hope and pray that you will understand and support our request.

We the undersigned are the children of Howard BlueEyes,

Faye BlueEyes

Perry BlueEyes

Darryl BlueEyes

Harry BlueEyes- oldest son, deceased

Esther BlueEyes

Yulanda McLendon

Diana Silversmith

Roselind Begay-oldest daughter, deceased

Angie M Kelly

346 Bowden Street

Brundidge, Alabama 36010



Leave to file GRANTED

United States District Judge

Keepseagle Claims Administrator

Po Box 3560

Portland, OR 97208-3560

Dear Class Counsel Members:

I am writing expressing my recommendation on how the undistributed 380 million dollars settlement funds should be used.  I am hoping all applicants had their claims reviewed and justice was served.  Also give those who met the filing deadline a second review and see whether or not they did qualify.  380 Million dollars is a lot of money not claimed.

I, thank you the Class Counsel Members for representing me and others in the USDA damage settlement.

If the decision made by the USDA is final, it is my recommendation that the undistributed 380 million dollars be awarded to a nonprofit serving minorities'.

The Class Counsel should decide which groups should receive the funds and distribute the money at once.   Things so easily get caught up in the political red tape.   The people who were discriminated against have waited long enough for their compensation.

Adding Additional boards to oversee money transfer is unnecessary and will administratively deplete the funds available.  Have the Class Counsel continue their method of issuing the money to those who rightly deserve it.  Again, I thank the council members for all of their hard work on the claimant's behalf.

Sincerely,

Angie M Kelly

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Leave to file GRANTED

United States District Judge

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name:     Ross Lawrence

Address:  PO Box 32

White Horse, SD

57661

Dear Honarbe Judge Emmet Sullivan.

Leave to file GRANTED

United States District Judge

My Name is Alan Lockleart I was

A Recierent of the first Award From

the Settlement. I Thank you. I Am still

having finical hardship becouse when I was

denied a Loan from The usda several years ago

Even though My Beacon score was over

700 + No Debt to income Problems 80 - 10

in favor of income. I knew it was becouse

of My Ethnicity. Lumberton NC (where The USDA)
                                +              OFFice was
                          Whiteville NC

has always Looked down on US Indains.

I was Later given a Very High intrest

Loan through Another Bank

one in which I'm still paying

on. This money would greatly

Help my farming operation +

my family. I'm very careful

with money + it would 100%

go to Bills. Thank you for

your consideration + support,

Alan Lockieur

706 South Austin
Street Maxton NC
28364

Phone #
910 734 - 1783

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name: Kim Annis

Address: 719 S. Jackson St.
Aberdeen, SD 57401

Leave to file GRANTED

United States District Judge

Jan. 15 - 2016

To - Honarable Emmet G. Sullivan

This letter is to urge you to approve the Keepseagle settlement Proposal submitted to you. at the hearing on Feb. 4th 2016 -

Member of Choctaw Nation of Okla

Jack D. Ferguson

969 N. 4140 Rd

Hugo. Okla 74743

Jan, 14- 2016

Leave to file GRANTED

United States District Judge

Dear Honorable Emmet,

The new proposal is the best of the two proposals. The first awards of the Keepseagle were miscalculated. The monies that were left should be distributed to the people who were not paid the proper amount on the first pay outs. The money belongs to the people who were shortchanged the first time, Paying them $21,275.00 You are still going to have a large amount of money leftover. make sure the amounts you pay out is fair.

Sincerly

Kenneth C. Redeau

PO BOX 103
Beggs, Ok. 74421

Keepseagle Claims Administrator
PO Box 3560
Portland, OR 97208-3560

271802146842

KENNETH C REDEAU
PO BOX 103
BEGGS, OK 74421

December 30, 2015

## SUPPLEMENTAL NOTICE RE: KEEPSEAGLE V. VILSACK

You are receiving this notice either because you were previously sent notice of the settlement of this case or because you made a claim in connection with this settlement. Please read this notice carefully. There are funds paid in settlement of this case that remain undistributed. This notice is to inform you that the Court is inviting input from Class Members on how those funds should be distributed and to let you know how and when you can provide that input.

Please note: As described in greater detail below, this concerns a revised proposal, different from the one described in the May 2015 notice. The revised proposal provides each Prevailing Claimant a supplemental payment of $18,500 directly and $2,775 paid to the IRS on their behalf, for a total supplemental award of $21,275, with the balance of the funds being directed to nonprofit organizations to provide assistance designed to further Native American farming or ranching activities.

### What is the Keepseagle case about? Who is in the Class?

The Keepseagle case claimed the USDA discriminated against Native Americans who applied for or tried to apply for farm loans or loan servicing. USDA denied the claims of discrimination.

The Class *includes* all Native American farmers and ranchers who:
- Farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999;
- Tried to get a farm loan or loan servicing from the USDA during that period; and
- Complained about discrimination to the USDA either on their own or through a representative during the time period.

The Class *does not include* individuals who:
- Experienced discrimination only between January 1 and November 23, 1997; or
- Complained of discrimination only between July 1 and November 23, 1997.

### What happened in the case?

After more than a decade of litigation, the Parties reached a settlement in October 2010, which was publicized and then approved by the Court in April 2011. The settlement included programmatic relief, debt relief, and a claims process with two tracks (Track A, with payments of $50,000 plus tax relief and Track B with payments capped at $250,000). Notice of this claims process was issued, and meetings with Class Members who wished to file claims were held from May to December 2011. The deadline for submitting claims was December 27, 2011. A Court-appointed neutral determined which claims to grant and which to deny. Claimants were notified of the rulings, and checks were mailed to successful Claimants in 2012. Of the $680 million paid to settle this case, approximately $380 million remains undistributed.

### What does the current agreement say about how the remaining funds are to be distributed?

The Settlement Agreement approved by the Court requires that the remaining funds be given to nonprofit organizations, other than a law firm, legal services entity, or educational institution, that have provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and November 1, 2010. The Settlement Agreement requires all funds to be distributed at one time in equal shares to organizations that were proposed by Class Counsel and approved by the Court.



**What other options are available for distributing the remaining funds?**

As described in the notice circulated in May 2015, there were competing proposals regarding distribution of the remaining funds, which required modification of the Settlement Agreement. In an opinion issued July 27, 2015, the Court rejected both proposals. Following that ruling, the Parties engaged in further discussion and have submitted a new compromise proposal to the Court. The Settlement Agreement requires that changes to its terms, such as those governing how to distribute the remaining settlement funds, must be agreed to by the Parties and approved by the Court.

The new proposal is a combination of the two prior proposals. First, each Prevailing Claimant would be paid $18,500 directly and $2,775 would be paid to the IRS on their behalf, for a total supplemental award of $21,275. Next, remaining funds, including the interest earned (minus expenses and some money going to several of the named Plaintiffs as Class Representative service awards) would be distributed to help Native American farmers and ranchers through grants to nonprofit organizations, as the current agreement provides. But, the Agreement would be changed in the following ways: (1) Most of the unclaimed funds would be placed in a Trust that could disburse the funds over a 20-year period, rather than immediately; (2) Decisions on how to distribute the funds would be made by a board comprised of 14 Native American leaders with experience in agriculture, Native American issues, financial issues, and grantmaking, rather than by Class Counsel; (3) Recipients of grants from the settlement funds would be expanded to include certain educational institutions, tribal-sponsored organizations, and community development financial institutions; (4) The funds could be distributed to new nonprofit organizations serving Native American farmers and ranchers, not just to previously existing organizations; and (5) $38 million would be distributed more quickly to the same types of organizations (so long as they existed prior to November 1, 2010) based on recommendations from Class Counsel that are approved by the Court.

Organizations receiving funds would be required to use the funds to provide business assistance, agricultural education, technical support, or advocacy services to Native American farmers and ranchers, including those seeking to become farmers or ranchers, to support and promote their continued engagement in agriculture.

The people nominated to head the Trust at the outset, whose appointment must be approved by the Court, are:

| Name | Tribal Affiliation | Professional Affiliation | State of Residence |
|---|---|---|---|
| Sherry Black | Oglala Lakota | Senior Advisor for Partnership for Tribal Governance, National Congress of American Indians | Virginia |
| Charles Graham | Lumbee | State Representative, North Carolina General Assembly | North Carolina |
| Pat Gwin | Cherokee Nation | Director of the Cherokee Nation Seed Bank and Native Plant Center at the Cherokee Nation, sheep farmer | Oklahoma |
| Dr. Joseph Hiller | Oglala Sioux | Professor Emeritus, University of Arizona (College of Agriculture and Life Sciences), rancher | Nebraska |
| H. Porter Holder | Choctaw | Rancher, Vice Chair of Council on Native American Farming and Ranching | Oklahoma |
| Marilyn Keepseagle | Standing Rock Sioux | Rancher, lead plaintiff in Keepseagle v. Vilsack | North Dakota |
| Jim Laducer | Turtle Mountain Chippewa | Director, majority owner of Turtle Mountain State Bank | North Dakota |
| Paul Lumley | Yakama | Executive Director, Columbia River Inter-Tribal Fish Commission | Washington state |
| Claryca Mandan | MHA, Three Affiliated Tribes | Former Natural Resources Director, MHA, rancher | North Dakota |
| Elsie Meeks | Oglala Sioux | Former South Dakota State Director of USDA Rural Development, rancher | South Dakota |
| Monica Nuvamsa | Hopi | Executive Director, The Hopi Foundation | Arizona |
| Ross Racine | Blackfeet | Executive Director, Intertribal Agricultural Council | Montana |
| Michael Roberts | Tlingit | Executive Director, First Nations Development Institute | Colorado |
| Rick Williams | Oglala Lakota | Consultant to American Indian nonprofit organizations, recently retired from American Indian College Fund | Colorado |

In addition, Plaintiffs nominate as initial Executive Director of the Trust Janie Hipp, a member of the Chickasaw tribe and Director of the Indigenous Food and Agriculture Initiative at the University of Arkansas School of Law.

The Class, USDA, and Marilyn Keepseagle have agreed to this compromise. The Court must still approve this option before it can be put into place and the funds distributed as proposed.

**What happens next?**
Class Counsel filed a motion asking the Court to approve the new proposal.

*What the Court has ordered:* The Court has scheduled a hearing for **February 4, 2016,** beginning at 10 a.m. EDT, to hear from the Parties and others with an interest in how the remaining settlement funds should be distributed. The hearing will be held in Courtroom 24A of the United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001. If you submit your comments in writing (*see* below), the Court will consider your views even if you do not attend the hearing. If you attend the hearing, you will be provided a brief opportunity to speak to the Court.

**How can I get more information?**
The website www.indianfarmclass.com has copies of all the main court filings and additional information about this issue.

**How can I share my views?**

If you want to share your views about how the remaining settlement funds should be used, you may submit them in writing, addressed to the Court, with a postmark date no later than **January 20, 2016.**

Comments should be addressed to:

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

**PLEASE DO NOT SUBMIT ANY NEW CLAIMS.**

To the Chambers of the Honorable Emmet G. Sullivan:

I am requesting that remaining settlement funds
be equally distributed among all the
successful claimants of this settlement. Were
the ones who've worked so hard & waited
so long for compensation.

Sincerely,
Leslie Chambers
Leslie Chambers
16640 N Richardson Rd
Skiatook, OK 74070
1-13-2016

Leave to file GRANTED

United States District Judge

January 12, 2016

Leave to file GRANTED

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C  20001


TO:     Honorable Emmet G. Sullivan


From:   Joe Boone Jr.
        37293 Turkey Hill Road
        Macomb, OK  74852


RE:     Supplemental Notice RE: Keepseagle v. Vilsack
        Dated December 30, 2015


As a claimant of the settlement of Track A with a payment of $50,000 plus tax relief.
I believe that the remaining funds should be distributed equally between the claimants,
because if I had not been denied the opportunity to acquire a loan at the time that I
applied, my farm would now be worth more than a total of $68,500.00 plus tax relief that
the court is wanting me to consider.  Because of the denial of the loan, I lost my family
farm of 240 acres, which I was raising cattle and hay on. The remaining funds are and
should be used to compensate those that lost the most, their American Native family
farms.  It took a decade to go to the court system to make things right, it should not be
grounds to take away from the claimants again.  I wanted my family to grow up in an
agricultural setting and be proud that the family farm would be handed down from
generation to generation.

In the letter dated December 30, 2015, it states that the Class, USDA and Marilyn
Keepseagle have agreed to the compromise of 18,500.00 plus 2,575.00 paid to the IRS
pending the courts approval. And the remaining funds provide business assistance,
agricultural education, technical support, or advocacy services to Native American
farmers and ranchers, seeking to become farmers or ranchers.  My question to this is, who
determines and decides who will qualify for assistance.  If this new proposal is ruled on
and approved by the court, what guarantees that my family and I will benefit from the
proposed assistance in the future?

For example, my son is an agricultural teacher, teaching for ten years in a small rural
farming community and has applied for the Native American education assistance
through the Muskogee Creek Nation and is only receiving a small amount for educational
assistance to receive a master degree (4.0 grade point) in Business Administration,

leaving him with a large student loan to pay back after he graduates.  So will this benefit him and others like him in the new proposal? If so how?

The Muskogee Creek Nation states that educational assistance is limited in the funds that they can provided.  So with the new proposal will that help with all aspects of agricultural for all Native American's like me, my sons and grandchildren?  How can I be sure that I and my next generation will benefit from this new proposal that this court is considering.

Sincerely,   Joe R. Boone Jr.


Joe Boone Jr.

January 10, 2016



Leave to file **GRANTED**

United States District Judge

Keepseagle Claims Administration

P.O. Box 3560

Portland, Oregon 97208-3560

Attention Claims Administration:

In regards to your request for rebuttal concerning the proposed determination of the Keepseagle case, as a plaintiff, I find the offer satisfactory.

My recommendations concerning this offer are:

1. Make payment immediately.
2. This money is non-taxable.
   *(This settlement money is non-taxable, nor will it affect eligibility for government benefits. Congress passed the Claims Resolution Act of 2010, H.R. 4783, 111th Cong. (2010), which specifically prohibits settlement awards from being treated as gross income or a resource.)* This is a settlement!
3. The full amount designated for payment and taxes should be dispersed directly to plaintiffs in the amount of $21,275.00.
4. The excess monies proposed to provide assistance to further Native American farming and ranching activities should be limited to assist only Plaintiffs families.
5. All excess moneys should be divided equally and distributed to plaintiffs.

I respectfully request that you take this recommendation into consideration.

Sincerely,

Philomene Stov, Plaintiff

Address:
PO Box 2390
Browning, MT 59417

cc. file

# JACK J. SIMMONS – TRACKING # 23144



Leave to file GRANTED

United States District Judge

Route 4 Box 1491

Stilwell, Ok. 74960

Chambers of the Honorable Emmet G. Sullivan

U.S. District Court for the District of Columbia

333 Constitution Avenue N.W.

Washington, D.C. 20001

January 12, 2016

 Supplemental Notice Re: KEEPSEAGLE V. VILSACK

Dear Honorable Emmet G. Sullivan,

My name is Jack J. Simmons. I am an American Indian of the Sac-and-Fox Tribe. I am a Track B Claimant, whose claim was denied.

  I was denied by the USDA office in Cherokee County Oklahoma in 1990 when applying for a farm ownership loan. I applied for this loan to buy 669 acres. I felt they wouldn't work with, or give me any suggestion of how in the future I could be approved and buy the land I wanted to purchase to start my cattle operation. I left the USDA office very discouraged.

In 1992 and again in 1993 I applied for an SDA farm ownership loan at the same USDA office in Cherokee County Oklahoma and again, both of my loan applications were denied.

In 1999, USDA- FSA had low interest rate loans for Farmers and Ranchers who suffered the drought. I went to the same USDA office in Cherokee County and asked about the program; the staff said they had no knowledge of the emergency low interest rates.

I know several people in the county of Adair where I live, who received the $50,000 from the Track A Claim and never applied for a USDA loan, or even walked in a USDA office; they admit it and brag about it. I feel like the proof and paperwork I submitted for the TRACT B CLAIM, TRACKING # 23144,  was sufficient  to receive at least the same amount of $50,000 that  the TRACT A CLAIMANTS received for providing only proof of their Indian Card.

1/12/2016

Jack J. Simmons- TRACKING # 23144

Respectfully Yours,

Jack J. Simmons

918-696-9168



Leave to file GRANTED

United States District Judge

January 8, 2016

Dear Honorable Emmet G Sullivan,

In regards to the proposals regarding the distribution of the said remaining funds in the Keepseagle case I would like to propose my opinion to the Settlement Agreement.

As an 84 year old Native American who is proud of his heritage my opinion is that the remaining funds would be best distributed to the Prevailing Claimant's in a supplemental payment as proposed on Page 2 First proposal.  I feel the funds should be given to the people it was intended for.

Thank you for taking this time to read my proposal.


Sincerely Yours,

Estel E Hollister
Rt 1 Box 246
Nowata, Ok  74048
918 273 2516

Leave to file GRANTED

United States District Judge

To: Chambers of the Honorabel Emmet G. Sullivan

We feel that the remaining funds should be dispersed among the Claimants.

We feel that this should take place as soon as possible.

Thank You,

Mark Detherage

20400 S. 590 Rd.

Fairland, Ok. 74343

Aka – Detherage Dairy

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C.  20001

*[handwritten signature]* file GRANTED

United States District Judge

January 12, 2016

Your Honor,

I was a successful claimant in Keepseagle v. Vilsack.  I believe that any undistributed settlement funds should be distributed among all successful claimants and I am in favor of the revised proposal.

If anything were to be changed I believe giving more to the successful claimants would be the appropriate resolution as each and every one of the claimants had an actual cause of action against the Defendant(s).

Thank you for your consideration.

Sincerely,

*Billie Crosslin [signature]*

Billie Crosslin