Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Leave to file GRANTED

United States District Judge

January 13, 2016

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Leave to file GRANTED

_____
United States District Judge

January 13, 2016

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has
turned out to be no more than self-serving. The lawsuit began to correct an
injustice and because of the self-serving negotiating between class counsel,
USDA and DOJ has become a deception to the claimants. When I originally
filled out the claim form class counsel explained if more claimants applied for the
lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose
of making sure this injustice is solved righteously and lawfully. We are truly
thankful for all of the Keepseagles hard work in keeping the real issue alive, and
keeping us well informed in this case. The Keepseagles have told several of the
claimants that they felt forced into accepting an unfair and unjust amount of
$21,275. George and Marilyn are concerned at their age, if something would
happen to them prior to an appeal date the case would die with them therefore; we
stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of
money each person would receive on the high end but not the lower end? Why
would class counsel be so willing for the claimants to receive less money if there
were more claimants than they anticipated and not negotiate a higher pay out for a
smaller claimant sign up? If the left over funds are given to non-profits as class
counsel suggests, twenty to thirty percent of the funds will be taken for
administration fees which does not benefit the claimants. We would rather have the
left over funds be returned to the U.S. government instead of given to a non-profit.
We believe class counsel should also have to return its' contingency fee back to
the U.S. government on the amount of money not paid out to the claimants. If the
left over money is given to a non-profit, class counsel should return its'
contingency fees back on that amount of money given to non-profits because they
grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit
organizations. A stipulation should be placed, if you are employed by a non-profit
or a descendants of an employee, also people working for USDA, Indian Ag., or
any non-profit that receives Cy Pres funds would be ineligible for applying for any
grants. The Great Plains Region had one of the highest numbers of successful
claimants, when you look at the list of board of directors proposed to the court that

will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00 Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name: Kip V Marshall

Address: 820 Stanley St
Belle Fourche SD
57717

Leave to file GRANTED

United States District Judge .

January 14, 2016

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

Re: Supplemental Notice 12-30-15
Keepseagle V. Vilsack

I am a Native American Rancher who filed
a claim of discrimination through a representative
and was denied an award. I am a prevailing
claimant who has suffered financially over
the years due to the discrimination on three (3)
different occasions.

I am still a struggling rancher who could
certainly use the help a supplemental award
of $21,275 could provide. I believe all prevailing
claimants are deserving of these funds more
so then the Nonprofit organizations mentioned
in the letter I received. Many of us will soon
be too old to use the services of these
organizations by the time all is resolved.

Thank you for your consideration in this
case.

Sincerely,

Ewell E. Bornmann
181 Mead Cemetery Rd.
Mead, OK 73449

cc: Keepseagle Claims
Administrator

January 14, 2016

Leave to file GRANTED

_____
United States District Judge

Chambers of the Honorable Emmett G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C.  20001

Dear Judge Sullivan,

I am writing in response to the latest letter received regarding Keepseagle V. Vilsack, dated December 30th, 2015.

I approve of the new proposal of the payment of $18,500.00 and the $2,775 paid to the IRS.  The only concerns/request would be concerning the additional funds for business assistance, Agriculture Education, Technical Support, Advocacy Service, or any Loans or Grants that come available from these funds that the claimants be notified in writing as each is implemented.  That way, we have a fair chance of utilizing these programs.

I would like to thank each and every person that has worked hard to get this resolved.

Sincerely,


Robin A. Lawrence

Robin A Lawrence

*Leave to file GRANTED*

*United States District Judge*

December 6, 2015

The Honorable Emmett G. Sullivan United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

Re: Keepseagle v. Vilsack No. 1:99-CV-03119-EGS

Dear Judge Sullivan:

This letter is sent to request you to schedule a hearing at the Courts earliest convenient date in the Keepseagle matter.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves.

I am a valid Keepseagle claimant and I, along with George and Marilyn Keepseagle and my co-claimants believe that the remaining 380 million that is in a trust should be disbursed equally between the 3,600 valid claimants.
I have sent letters urging the group to meet (Please see enclosed letters.) to modify the settlement agreement - to disburse the settlement monies equally between the valid claimants.

It is my understanding from your July 24, 2015, Opinion that:
1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an order.

Your time and consideration in this regard is truly appreciated.

Regards.

Name: Roger Dale Aughtman

Mailing Address: 108 West Stewart Ave.
Opp, Al. 36467

Marilyn Keepseagle, George Keepseagle, ET. Al.  And

Thomas Vilsack, Secretary
U.S Department of Agriculture
1400 Independence Avenue, S.W.
Washington, D.C.  20250

**Leave to file GRANTED**

_____
United States District Judge

Re:   Keepseagle v. Vilsack
No. 1:99-cv-03119-EGS

Dear Honorary Keepseagle Claims Representatives and Mr. Vilsack:

It is my understanding that Judge Sullivan stated in his Opinion dated July 24, 2015, that:

1. "The Settlement Agreement permits its own modification only with the consent of the parties." He also said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Judge Sullivan further stated: "This Court appointed Class Representatives for a reason."

3. He also stated: "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an Order."

The undersigned wants the Keepseagle Claim Representatives and Defendant Vilsack to know that I want the $380 million (plus interest) to be divided equally between all valid Track A (3,587) and Track B (14) claimants in the Keepseagle matter; total valid claimants is 3,600; giving each claimant an additional amount of approximately $100,000.00. It is my understanding that it is normal practice in litigation matters to divide the settlement monies equally between all Plaintiffs.

Also, during the claims process, there were numbers of NON-American Indian individuals attempting to file a claim for $50,000.00.

The USDA and class attorneys think that the remainder of the settlement money should be put into a Trust account - I believe this is a form of discrimination. The Black Farmer case (Pigford I and II) **DID NOT** have to put their money into a Trust Account.

Also, I believe that if forced to put money into a Trust that some groups calling themselves a non-profit American Indian Farmers group would most likely NOT have the Valid Claimants and/or American Indians, who hold a Tribal enrollment card and/Certificate of Blood Quantum card, interest at heart. Another question is if put into a Trust, how will valid Keepseagle claimants who are elders and families who filed on behalf of deceased family members benefit from a Trust Account?

The only true and just option is: to equally divide the remaining 380 million, including interest to the valid Keepseagle claimants.

I urge the nine (9) Keepseagle Claims Representatives and Secretary Vilsack to: 1) meet within the next 30-45 days; and 2) agree to amend the settlement agreement - "to disburse the settlement monies equally between all valid claimants;" and 3) prepare the Amendment to the Keepseagle Settlement Agreement and submit to the Honorable Judge Sullivan for an immediate Order to disburse the remaining 380,000. Million equally to all valid Track A and Track B claimants.

Thank you.

Signature:   _Kevin Archie_
Name:        KEViN Archie
Address:     471 County Rd 494
             Kinston, AL 36453

Marilyn Keepseagle, George Keepseagle, ET. Al.  And

*Leave to file GRANTED*

United States District Judge

Thomas Vilsack, Secretary
U.S Department of Agriculture
1400 Independence Avenue, S.W.
Washington, D.C.  20250

        Re:   <u>Keepseagle v. Vilsack</u>
               No. 1:99-cv-03119-EGS

Dear Honorary Keepseagle Claims Representatives and Mr. Vilsack:

It is my understanding that Judge Sullivan stated in his Opinion dated July 24, 2015, that:

1. "The Settlement Agreement permits its own modification only with the consent of the parties."  He also said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Judge Sullivan further stated: "This Court appointed Class Representatives for a reason."

3. He also stated: "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an Order."

The undersigned wants the Keepseagle Claim Representatives and Defendant Vilsack to know that I want the $380 million (plus interest) to be divided equally between all valid Track A (3,587) and Track B (14) claimants in the Keepseagle matter; total valid claimants is 3,600; giving each claimant an additional amount of approximately $100,000.00. It is my understanding that it is normal practice in litigation matters to divide the settlement monies equally between all Plaintiffs.

Also, during the claims process, there were numbers of NON-American Indian individuals attempting to file a claim for $50,000.00.

The USDA and class attorneys think that the remainder of the settlement money should be put into a Trust account - I believe this is a form of discrimination. The Black Farmer case (Pigford I and II) **DID NOT** have to put their money into a Trust Account.

Also, I believe that if forced to put money into a Trust that some groups calling themselves a non-profit American Indian Farmers group would most likely NOT have the Valid Claimants and/or American Indians, who hold a Tribal enrollment card and/Certificate of Blood Quantum card, interest at heart. Another question is if put into a Trust, how will valid Keepseagle claimants who are elders and families who filed on behalf of deceased family members benefit from a Trust Account?

The only true and just option is: to equally divide the remaining 380 million, including interest to the valid Keepseagle claimants.

I urge the nine (9) Keepseagle Claims Representatives and Secretary Vilsack to: 1) meet within the next 30-45 days; and 2) agree to amend the settlement agreement - "to disburse the settlement monies equally between all valid claimants;" and 3) prepare the Amendment to the Keepseagle Settlement Agreement and submit to the Honorable Judge Sullivan for an immediate Order to disburse the remaining 380,000. Million equally to all valid Track A and Track B claimants.

Thank you.

Signature:
Name:    23418 Co. Rd. 167
Address:   Jack, Al 36346

Leave to file GRANTED

_____
United States District Judge

Marilyn Keepseagle, George Keepseagle, et. al.  and

Thomas Vilsack, Secretary
U.S Department of Agriculture
1400 Independence Avenue, S.W.
Washington, D.C.  20250

      Re:   <u>Keepseagle v. Vilsack</u>
              No. 1:99-cv-03119-EGS

Dear Honorary Keepseagle Claims Representatives and Mr. Vilsack:

It is my understanding that Judge Sullivan stated in his Opinion dated July 24, 2015, that:

1. "The Settlement Agreement permits its own modification only with the consent of the parties."  He also said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Judge Sullivan further stated: "This Court appointed Class Representatives for a reason."

3. He also stated: "Once the parties agree on a revision to the Settlement Agreement, that the Parties bring him the agreement and he would issue an Order."

The undersigned wants the Keepseagle Claim Representatives and Defendant Vilsack to know that I want the $380 Million (plus interest) to be divided equally between all valid Track A (3,587) and Track B (14) claimants in the Keepseagle matter; total valid claimants is 3,600; giving each claimant an additional amount of approximately $100,000.00.  The loss I encountered due to the USDA's discrimination was far more than the $50,000.00 that I was given to be a valid Track A claimant. It is my understanding that it is normal practice in litigation matters to divide the settlement monies equally between all Plaintiffs.

Also, during the claims process, there were numbers of NON-American Indian individuals attempting to file a claim for $50,000.00.

The USDA and class attorneys think that the remainder of the settlement money should be put into a Trust account - I believe this is a form of discrimination. The Black Farmer case (Pigford I and II) did NOT have to put their money into a Trust Account.

Also, I believe that if forced to put money into a Trust that some groups calling themselves a non-profit American Indian Farmers group would most likely NOT have the Valid Claimants and/or American Indians, who hold a Tribal enrollment card and/Certificate of Blood Quantum card, interest at heart. Another question is if put into a Trust, how will valid Keepseagle claimants who are elders and families who filed on behalf of deceased family members benefit from a Trust Account?

The only true and just option is: to equally divide the remaining 380 Million, including interest to the valid Keepseagle claimants.

I urge the nine (9) Keepseagle Claims Representatives and Secretary Vilsack to: 1) meet within the next 30-45 days; and 2) agree to amend the settlement agreement - "to disburse the settlement monies equally between all valid claimants;" and 3) prepare the Amendment to the Keepseagle Settlement Agreement and submit to the Honorable Judge Sullivan for an immediate Order to disburse the remaining $380 Million equally to all valid Track A and Track B claimants.

Thank you.

Signature:
Name:     BILLY R HARDY
Address:   714 LOWERY RD
          KINSTON, AL 36453

cc:

*Leave to file GRANTED*

*United States District Judge*

December 25, 2015

Chambers of the Honorable Judge Emmit G. Sullivan

U.S. District Court for the District of Columbia

333 Constitution Avenue, N.W.

Washington DC  20001

I have not received DKT 824 as was ordered by the court however I did find it on pacer.  After reading the document, hopeful that Class Counsel had recognized the error of their ways, it became evident to me that a few minor points had been omitted possibly just over looked.  The balance of my letter to the court will be an attempt by me to express my opinion and to put a finer point on the proposal a little of the clutter might need to be removed for the court to make an informed decision, as always I will try to make my comments as painless and innocuous as possible, 824 is the courts' decision to make.

As an opening I wish to commend the attorneys on agreeing that proven class members should receive a share and the benefit of the cy-pres fund.   The approximately $21, 275.00 payment this document proposes is sorely needed and will be greatly appreciated by me, and I will thankfully accept it.

Given the 3601 proven class members and the $380,000,000. 00 CY-PRES fund size, I believe that the total distributed to class members would be about 20% of the CY-PRES fund.

I wonder would anyone have the fortitude or gall to deny, delay, or reallocate provisions while sitting on those resources at the site of a disaster.   I think it is a good time to point out the results of the USDA's actions have created a disaster.  Additionally this begs the question was the relief effort improperly positioned or are there, in fact, no more survivors. According to 576 and 621 it is the latter. Which I think brings us to the crux of this dismal drama, what to do with the funds earmarked for class members?

Drawing on the biblical fish analogy should the CY-PRES fund provide:  1. Hook, line and nets. (cash to class members), 2.  Fishing Trawlers and platforms to better position class members (old original non-profits) or 3. Provide a video on fishing to a bunch of fishermen and people who may want to fish someday….. Somewhere in the Dakotas (foundation).

Which would be more beneficial to class members? Now which would be more beneficial to Class Counsel?

DKT 576 – DKT 621 –DKT 646

Dkt 824 page 1

Would class members, or the court for that matter, have allowed 621 had they known Class counsel would twist the intentions of that document?

Old farm adage: Trust your neighbor, but brand your cattle.

1 of 9

DKT 824 page 1 and 2

"Counsel for the defendants don't object to class members receiving a supplemental payout... but don't necessarily agree with class counsel's characterizations" ...

For three years Class Counsel has told class members and the court it is impossible for a supplemental payout and provided documentation why this could never happen, coupled with the threat that if the foundation was not adopted and approved, counsel for the defendants would take the money back. Going back to the biblical stuff I guess, according to Class Counsel, we are witnessing a miracle. I read pretty much all of 824, I don't recall Class counsel explaining that one. Or saying oops.

824- 1 page 4 of 24

DKT-576, DKT-621, DKT-646

DKT 576 said 200 days for full cy-pres distribution:  because of DKT 621 & DKT 646 Full cy-pres distribution as proposed In DKT 824 will be about 9,000 days:  Now 1000 days later it might start in 200 days and continue for 8000 more days.  HMMM 9,000 days that's $30,000.00 per day every day. For 25 years. Not counting interest of the CY-PRES fund.  I ask is this a recipe for a bureaucratic budget balloon? The foundation has no budget, no course of action, no specific designed defined intent. I consider myself a man of faith... but really?

824-1 page 5 of 24

Service Award

Clarice Mandan. Port Holder and of course Marilyn Keeps Eagle, will all receive an additional $ 100,000 check for the extra work they did. Oddly, this is the same amount all class members would get if the balance of the cy-pres fund were to be equally divided amongst proven class members.

 I have given this some thought and rewards are not what this case is about Ms. Mandan, Mr. Porter and Mrs. Keeps Eagle deserve that extra $100,000,  the same as the other 3,598 class members for the humiliation suffering and degradation dealt to each of us by the dominant power.  Please do not make it a faux reward, these people endured unconscionable abuse throughout their lives. Why not include all class representatives in this service award, living and dead, this settlement was fought for to somes' dying breath.  The sole criteria for this service award should not be the ability to kiss class counsels butt. My only regret is 3,598 of us are going to have to suck it up because of class counsels' quest for Moby Dick.  But most certainly pay those three people the 100 grand each.  Class counsel should try to be equitable.

824-1 Page 6 of 24

"This solution does not fully reflect what any one party wanted"

What did class Counsel give up? Still coming back with the foundation the only difference I see is this time it is written Class Counsel Recommends not propose.  An argument could be made that DKT 824 strengthens and solidifies Class Counsels stranglehold on the resources. (Cy-PRES fund)

Power corrupts, absolute power corrupts absolutely. Comes to mind.

824-1 Page 7 of 24

2   of   9

"Not necessary to tell class members"

Sir I know you ordered a notice, DKT 825 but how can the court excuse class counsel for even trying to keep their foundation actions quiet, all while class counsel professes to the court the paramount value of transparency and accountability.

824-1 page 8 of 24

"Recommendation of class counsel"

Is there any conceivable circumstance or situation where the court truly believes Class counsel can be unbiased, open or even remotely equitable with their proposed recommendation clause, as it pertains to old non-profits? I cannot, class counsel has picked their friends and designated their enemies and subordinates. (Old non-profits, class members, class representatives) Much like Ahab in Moby Dick. To the peril of class members and the old nonprofits. Put me on the Whistleblower list.

824-1 Page 8 of 24

"Where class members could learn about the foundation and express their views"

A more apt description would be "Where class members were bullied by class counsel to accept the foundation and were chastised for expressing their views" just like the current class representatives.

824-1 Page 8 of 24

"Change propose to recommend".

824-1 Page 9 of 24

"Will undertake a multi-step process that will be fair to all cy-pres beneficiaries"

I thought the CY-PRES beneficiaries' definition in the settlement agreement was fair to all nonprofits and to class members. If the nonprofit was there when class members were under attack, and the nonprofit helped, the nonprofit can participate as a CY-PRES beneficiary. If the nonprofit was not there and did not help class members in those troubled times, the nonprofit may not be a recipient of the Keeps Eagle v. Vilsack CY-PRES fund.  Class counsel argues that not very many nonprofits helped class members, in their hour of need. I think that is the point of retaining the definition in the settlement agreement.  Foxhole mentality.

824-1 Page 10 of 24

"Grant applications"

Nowhere in 576 did a granting application or apparatus receive timely objection consideration or mention.  Historically the grandfather clause has not been rejected unless harmful or detrimental conduct and results can be proven.  (Voting rights-Water rights) The whole foundation theory is based on denigrating the old nonprofits, further slandering the old nonprofits by supposing what potentially might negatively occur were these experienced old original nonprofit organizations funded as ordered. I think it is fair to point out that the foundation has potentially a far larger down side. The old original non-profits might not serve the class seamlessly, however the foundation might not serve the class members at all.  As in Moby Dick it was a whaling ship not a ship to pursue one whale.

824-1 Page 10 of 24

"$265,000,000.00 "

3601 x $21,275 = 76,611,275 + 38,000,000= 114,611,275+ 300,000 = 114,911, 275 + 265,000,000=
379,911,275.00 * $88,725.00 * $11,400,000 +or - $70,000,000.00 interest accrued.

3,601 Class members receiving 18,500 with a tax relief in the amount 2,775 amounts to a total
supplemental payment of 21,275 per class member for a total payment to all proven Class Members
totaling 76,611,275 add to that the 38,000,000 Class counsel propose to award to whomever they feel is
pleasing.  that total would be 114,611,275 adding the 300,000 paid to Mandan Holder and Keeps Eagle
the total is now 114,911,275. Now take this figure from the 380,000,000 cy pres fund and you are left
with approximately 265,088,725.   that's $88,725.00  Class Counsel couldn't bother to report to the
court, to me that is bad enough but what is more substantial, where the hell is the 3 years of interest on
the 380,000,000 cy-pres fund? No mention of the value of interest. Transparency Indeed.

Any asset manager worth his salt could deliver a 5% - 10% annual Return on Investment, approximately
$70,000,000, accrued since cy-pres was scheduled to be paid.  Which, by the way, should have
elevated the present cy-pres fund value to $450,000,000.  Even if Class counsel has 0 financial aptitude
and only received a 1% ROI for three years that would still be $11,400,000.00 on $380,000,000.00.
Which should have increased the reported CY-PRES fund to $391,400,000.00.

 $11,500,000.00 at least, is missing from DKT 824 by act or omission.  Class counsels own submissions
illustrate a profound lack of efficiency, accountability and transparency by class counsel.

824-1 10 of 24

"III Creation and operation of the trust foundation"

Was Class counsel ever asked or ordered or even realistically obligated to propose this trust? And did
class counsel request formal permission and funding to proceed?  DKT 576 or 621 or 646

To date the only people advocating a trust foundation are people who will profit by a trust, mostly
lawyers, no one else. Incidentally when 576 was proposed I was one of very few who spoke up.  It
amuses me that the same issues I brought up then, and was chastised for, are now the glaring issues
before the court. Where were all the lawyers and do gooders then?

824-1 Page 13 of 24

"More money for Class Counsel."

I suppose if class counsel had submitted a budget to the court and the class, and class counsel received
class member support and the approval of the court for that budget.  I

I suppose that would make this request debatable, but I looked and I can find no formal action granted
by the court. Just a courtesy extended to class counsel, to allow this wild goose chase.   But now class
counsel wants more money?  Apparently $60,000,000.00 just ain't enough.

While we are on money and class counsel what is the preliminary budget for the supplemental
payment?  Not the payment but how much is the class administrator going to get paid for this activity?
Or is the class administrator still getting paid under contract while this three year foundation malarkey

goes on? And how much? Where is the preliminary setup budget for the foundation?   What is the expected costs of the inaugural meeting of these 13 strangers?   The foundation staffing requirement budget? The foundation office budget? How much per year has been allocated for foundation expenses and where are the justifications for these expenses? Expected housing and transportation costs for visiting consultants? Why hasn't class counsel forwarded these figures to the court already?  I thought transparent efficient accountable and beneficial were class counsel's call signs.  Which one of those words describe to class members or the court why no foundation budget is included? Or costs?  Where are the submissions for approval of those expenses by the court?

Class counsel has been hitting pretty hard and often on accountability transparency and fitness of the old nonprofits.  The short question how much of the reported $265,088,725 CY-Pres fund has already been allocated for a base budget for the foundation per year, before approval? 1 million per year, 5 million per year, 10 ? More? How much? And again why hasn't a preliminary budget for 25 years been submitted to the court? Is it irrelevant to class counsel? Does class counsel feel it is irrelevant to the court? It is relevant to class members.

Can we as class members expect a 10 % increase in native Ag population participation as a result of the foundation?  will the native Ag acreage increase as well or will our farms be smaller? Will the future producer be in a position to support a family or will they be hobby farms? Will there be an increase in productivity per acre?  Is class counsel able to answer and be held to any of these basic questions? Is the foundation?  What will constitute an acceptable cost to benefit ratio. Will the cost benefit ratio be applied to Native Ag as a whole or will it be applied to class members.  Lastly how did class counsel source this baseline information? It is my opinion class counsel can't answer any of these questions. Any farmer would be laughed out of any bank and rightly so to be this ill prepared. All of the above questions are answered or addressed by any producer for each crop or property acquisition.  And if a producer omitted information like class counsel has …well…You guys are in way over your head.

Class counsel is placing an undue burden on the vulnerable (supplemental payout) class members for class counsels' benefit (foundation) in my opinion. I can only conclude class counsel figures class members are used to it. Maybe we are.

824-1 Page 14 of 24

"Proposed addendum will make the cy-pres distribution more effective accountable transparent and beneficial"

Those are four very good words they arguably have value. But As applied they are figurative, vague, shortsighted, restrictive, and cumbersome, without context. Basically they don't mean much without a specific instance.

Take an engineering class. Problems are solved by addressing issues from start to finish to minimize steps to create a fluid production environment with an eye on the goal. Factoring all inputs and by-products and capturing the full value of each. Not by robbing a bank. Providing a white paper would have been beneficial to class counsels' cause. Although I fear class counsel could not adequately provide one.

Let me characterize if I may be so bold. Class counsel supposes the foundation will be a group to define the problems and then find someone to fix them, and finance them, with possibly some success no

5 of 9

guarantees. I know of 3601 people who know their problems and class counsel did address one problem as ordered (the USDA). Sadly Class counsels fumbling around has created several more.

Hypothetically, let's forget for a moment that keeps eagle is a class member case and for the sake of argument let's just say the foundation is a success for the next generation to depend on. Now what? You will have created a generation of natives' dependent beholden to a foundation which will end. Additionally you will have effectively hindered possibly extinguished the old non-profits that were there in the dark days, than what? the foundation in 2035 will be the old non-profit. Designed to cease with all historical ties severed before 2015. You are creating a worse outcome than you say exists today, all because the USDA treated natives poorly. The ultimate coup d'état. What is the moral of this story? Or does class counsel care? 2036 will come, for the Indian people than what? Ask the govt for help because what we had in 2015 was placed on the altar and sacrificed. I don't see Class counsels' end game.

I have heard people say if you don't remember the past, you are condemned to repeat it. I can see that. I don't intend to be mean but considering context, class counsel is just not thinking, that's assuming they ever were. What is wrong with getting behind the old nonprofit organizations that have hundreds of years of passed down experience? Maybe class counsel should have offered to help the old nonprofits like the settlement agreement said. Why hasn't class counsel approached the old nonprofits? And why does class counsel continue to rebuff their overtures? Utilization of old nonprofit infrastructure, expanding old nonprofit infrastructure, bolstering old nonprofit infrastructure, enhancing old nonprofit infrastructure, tapping into old nonprofit insight and access, wasn't that the goal of the CY-PRES provision? Kind of makes sense to me. Class counsels' foundation proposal isn't justified. Does Class counsel have a vested interest or just a rabid dog in the village? 1492-2036

I'll go back to simple stories: I liken the addendum of 824 to creating a protocol for saddling and bridling a horse, so that a cattle drive can occur. There is quite a little bit more involved in a cattle drive, and if you are worried about bridling and saddling the horse, the cattle drive isn't going anywhere. I will not argue that the horse will be saddled.

A short example for your consideration about a cattle drive: Can the cattle drive be justified? Will a cost benefit ratio support a cattle drive? Are you moving cows and calves? Is it calving season? Yearlings? Are there bulls in the herd? How many? Are their gates? Are their open fields? Do you need to cross a hi-way? How much time do you have? Do you have dogs? Do you need them? Now the horses. Will it buck? Is it lame? Can it carry a man? Is it afraid of cattle? Can it see? What is the weather? Is everybody dressed for it? Is there enough food and water for all involved? And who is operating the horse? Will he get a sore butt? Does he have boots? Does he know where he is going? Does he know how to get there? Does he have a notion of pace? Can he make the day or is he the banker who wants to feel part of something? But is that really important? well yes it is. What happens if someone or something gets hurt or needs help do you have sufficient resources and expertise to resolve the situation? All of these question and many more will be answered and mitigated before one finger is lifted to embark on a cattle drive.

Engineers would shiver at the feats accomplished and planned by old farts in old trucks every day. Class counsel proposes to …I don't have the first clue what class counsel is proposing other than consuming $265,000,000.00 from somewhere in the Dakotas. I would venture a guess there are several old farts in old trucks in the Dakotas. I would venture another guess the old fart would politely not give class

counsel the time of day.  Another guess would be the people chosen in class counsels own image will be treated the same. More than likely the old fart is a little on the independent side. And more than likely the old fart will not extend the courtesy of allowing class counsel or the foundation to dictate how he saddles his horses. The old fart will probably allow the CY-PRES fund to build him a fence or haul his hay, if it is done properly.

Native AG is not class counsels' petri dish.

824-1 Page 16 of 24

"III The Court may approve the proposed amendment pursuant to Section XXII of the settlement agreement" DKT 621

The following few pages say essentially class counsel hoodwinked the Court once.  Now the court is being inconsistent if the court doesn't fall for it again.

On exigent circumstances: there have been many droughts, hurricanes, floods, stampedes, blizzards, tornadoes, Wild fires, earthquakes and many other exigent circumstance across Indian country since 621 and 646.  but that hasn't changed class counsels grip on the purse strings. More is the pity.

Curious, isn't it, how important time was when class counsel needed to set a precedent for changing the settlement agreement. DKT 621, but now getting the money out quickly isn't very important. 1000 + days and counting.  But hey at least class counsel points out that the court can remove Class Counsel.

Hubris hyperbole and maybe pecuniary avarice.

824-1 Page 17 of 24

"We address at greater length"    Class counsel

Sounds to me like class counsel is preparing for their next appeal or their next amendment of the addendum and you know that is coming.  One thing is for sure the foundation will encounter another "unforeseeable" boondoggle or several in the next 20 years. And class counsel will be there for just a few more dollars. In my opinion. So what Class counsel is saying is the court can do anything the court pleases. I would like to suggest it would be quite pleasing to see the court cool class counsels' jets.

Pecuniary interests

It is vexing to me that class counsel notes class representatives can be removed but are silent to counsel being removed or censured.  I do remember somewhere in class counsels pleadings where the removal of class counsel was cited.

824-1 Page 19 of 24

"Class Counsel monitoring function rests not with class representatives but with the court"

I think it is fair to say the court has ruled on class counsel's function when it denied class counsels' foundation proposal. Than in clear defiance of class counsels' own cited material, class counsel appealed the court's monitoring decision.

Now juxtapose the supplemental payout, the reason it was denied was because DOJ opposed the supplemental payout proposal, which is no longer the case. I, for one, am still opposed to the foundation.

It is my opinion Class Counsel is piggy backing its pecuniary interests (foundation) on the desperation of class members. (Supplemental payout)  So I guess, again, class counsel has cited reasons for the court to remove class counsel. Class members fear if they complain they might lose the $21 grand.  824 isn't a hybrid.  It is a ransom note.

824-2 addendum

This proposal, other than the supplemental payout and service award, will open the floodgates for legal wrangling for 20 years.  A lawyer's gold mine.  Or maybe just bureaucratic excess. Remove class counsel and award the remainder, interest included, to the old original non-profits of record. I think it is reasonable to note DOJ has never objected to the original settlement agreement terms, nor the original old non-profits or even Class counsels' removal. DKT 576.  Or if DOJ is willing increase the supplemental payout I'm good with that.

824-2 page 4 of 8 heading E.

"Pay class administrators... if there is no money left, Interest from cy-pres will pay class administrators"

Interest on cy-pres is mentioned here, not the amount, but it is mentioned.  A clear example of Class counsels' version of accountability, beneficial and transparency.

824-2 page 5 of 8

V. procedures

"Upon approval of addendum all appeals dropped"

According to pacer DKT 827 all appeals have been dismissed.  Is this a threat to the court or the class?

824-3 Trust Document

No specific direction, definition, advantage, benefit, purpose, budget or mission is mentioned except in 20 years the foundation must consume $265,000,000.00 to generally support and promote native Ag, strangely not class members. When I look at this I see a lawyers' bureaucratic gold mine, and another Indian tragedy. Not a benefit to class members. Or Native AG.

824-4 The fatted calves:

I would suggest to the proposed foundation board, please consider with whom you are associating yourself.  Take a good look at class counsels clients, at least 3500 are against the foundation.  Do you really think class counsel is concerned about Indians or could it possibly be class counsel ultimately is concerned with $265,000,000?  Will class counsel support you or flush you and your career if you try to march out of step with class counsels objective. (Reference class representatives). I understand you are honored and humbled by the notion of service to the people, but take a few days and truly consider who class counsel wants you to serve, for your 10 grand a year. (not much)

8 of 9

In conclusion the foundation portion has absolutely nothing in it directly for class members. Keeps Eagle v. Vilsack is all about class members as I believe the CY-PRES fund should be. What really sticks in my craw about 824, is class counsel provides no budgets, no avenues, no destination and no track record.

I must admit I would have liked to have read in one bio about at least one of the potential foundation board members tending a garden or bragging on their roses or adopting wild horse.  Not for a living but just because…. no one talks about giving a box of tomatoes to the elders….. or a bin of cantaloupes to the longhouse….. or a bin of pumpkins to the head start at Halloween .  Or hauling show stock for the neighbor kids to the County fair. No community

Class counsel requires/demands a lump sum unconditional blank check and carte blanche from the court, for the foundation. But not for the old original nonprofits. Class counsel cites Effectiveness Accountability Transparency and benefits but there is no demonstration or description of these traits in DKT 824 to class members, or the court, as they relate to the CY-PRES fund or the foundation budgets. But, I fear, Class counsel will succeed in taking the community out of native AG.  I'll miss the old farts.

Harry Kent                    Class Member

PO box 66

White Swan WA. The REZ

98952    halhek111@live.com

1-5-16

PS  Got the flyer?

9 of 9

January 03, 2015

*Leave to file GRANTED*

United States District Judge

The Honorable Emmett G. Sullivan
Attn: Judge Sullivan Chambers
United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington DC 20001

RE:   Keepseagle
      Case No. 1:99-cv-03119-EGS

Dear Judge Sullivan:

 My name is Joan Waller. I was discriminated by the USDA. I filed for a USDA loan in the early year of 1986. I applied for a farm operation loan to raise and breed AQHA (Quarter Horses) Horses and Charolais cattle, but continuously was denied. I appealed the decisions but was told " honey you can't get a loan you do not have a zipper.." I again appealed this decision but was denied again..  My documentation also included how I would repay the USDA loan. I proved how that loan would be repaid by showing how much I would make each year on my off the livestock. I applied twice with the USDA office in Americus GA, then numerous times in the Montezuma GA office. I prepared documentation with my USDA loan paperwork that included my farming plan.....I was denied, so Claude McKenzie the office loan officer advised me to mark out the Native American on my application, ( the same application I was denied on) and mark "white". I received the loan, but lost the opportunity to purchase the property I wanted with running water, to raise horses and cattle, so I had to settle for what I have now.
I was denied by the Athens GA USDA office for approximately 10+ years. I decided to call to Washington DC USDA office to speak with anyone who would hear me....I mailed the information... my loan documentation from our the main USDA office. This was the same loan documentation that I had presented to the Americus GA and Augusta GA USDA office. After reviewing my paperwork the Washington DC USDA office approved my loan. Now in May 2011 I had called to get the payoff on my loan and was told it was about $110,000.00, but when the Keepseagle paid out the notes, it was a total of $279,000.00 a far cry more than what the original payoff was....I have asked numerous times for information regarding my account and I am told I either have to pay for the records or they do not have time to get it for me, and yes this is all in emails…again USDA discriminates me in their own way.

I am a valid Keepseagle claimant. I had enough documentation to apply for a Track B claim; however, I was told that if I filed for Track B and was denied that I would not be eligible for a Track A claim. The class action attorneys basically said that if I didn't take the Track A Claim that I might not get any money at all. This was also told to other Native American Farmer's thru out the United States.

I was unable to attend the June 29, 2015 Court hearing but I sent numerous letters to your office asking you to hear my words that the USDA discriminated against me.

It is my understanding that to date, Secretary Vilsack has not communicated with all nine (9) Keepseagle Claims Representatives, in any way, or to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves.

I am a valid Keepseagle claimant and I, along with George and Marilyn Keepseagle and my co-claimants believe that the remaining 380 million, including interest should be disbursed equally between the 3,600 valid claimants.

I have sent letters urging the group to meet to modify the settlement agreement - to disburse the settlement monies equally between the valid claimants.

It is my understanding from your July 24, 2015, Opinion that:

1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the

Parties bring him the agreement and he would issue an order.

Your time and consideration in this regard is truly appreciated.

Regards,

Joan K Waller
P.O. Box 386
Leslie, GA 31764
229-938-1571
Tracking #: 18578
Claim # : 451

I believe the new USDA and  Keepseagle compromise is a good plan.

Thank you,

Cathy Cothran

Leave to file GRANTED

_____
United States District Judge

I think the USDA and Keepseagle  comprise is a good one. I think this would be fair to everyone. Although no money can ever compensate for the loss of a loved one killed using  broken down equipment because he could not get a loan will give us peace that he did succeed and come out the winner.


Thank you

The Estate of Wayne Rogers

*Louise Rogers*

Leave to file GRANTED

_____
United States District Judge

*Leave to file GRANTED*

*United States District Judge*

December 30, 2015

The Honorable Emmett G. Sullivan
Attn: Judge Sullivan Chambers
United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington DC 20001

      RE: <u>Keepseagle</u>
        Case No. 1:99-cv-03119-EGS

Dear Judge Sullivan:

 My name is Joan Waller. I was discriminated by the USDA. I filed for a USDA loan in the early 86. I applied for a farm operation loan to raise and breed AQHA (Quarter Horses) Horses and Charolaise cattle, but continuously was denied. I appealed the decisions but was told " honey you can't get a loan you do not have a zipper.." I again appealed this decision but was denied again..  My documentation also included how I would repay the USDA loan. I proved how that loan would be repaid by showing how much I would make each year on my off the livestock. I applied twice with the USDA office in Americus GA, then numerous times in the Montezuma GA office. I prepared documentation with my USDA loan paperwork that included my farming plan.....I was denied, so Claude McKenzie the office loan officer advised me to mark out the Native American on my application, ( the same application I was denied on) and mark "white". I received the loan, but lost the opportunity to purchase the property I wanted with running water, to raise horses and cattle, so I had to settle for what I have now.
I was denied by the Athens GA USDA office for approximately 10+ years. I decided to call to Washington DC USDA office to speak with anyone who would hear me....I mailed the information... my loan documentation the main USDA office. This was the same loan documentation that I had presented to the Americus GA and Augusta GA USDA office. After reviewing my paperwork the Washington DC USDA office approved my USDA loan.

I am a valid Keepseagle claimant. I had enough documentation to apply for a Track B claim; however, I was told that if I filed for Track B and was denied that I would not be eligible for a Track A claim. The class action attorneys basically said that if I didn't take the Track A Claim that I might not get any money at all. This was also told to other Native American  farmers thru out the United States.

I was unable to attend the June 29, 2015 Court hearing but I sent numerous letters to your office asking you to hear my words that the USDA discriminated against me.  When my claim was paid, USDA not only got their pay off, they took the full run of the 33year note, my pay off was approximately $110,000.00 not the $279,000.00 they took on my note.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, or to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement.

It appears that the attorneys, Keepseagle attorneys, Joe Sellars and the Department of Justice attorneys are attempting to settle by themselves. I am somewhat concern about this matter, as it is my understanding that all nine (9) Keepseagle Claims Representatives and Secretary Vilsack were to meet, not the attorneys or their co councils.

I am a valid Keepseagle claimant and I, along with George and Marilyn Keepseagle and my co-claimants believe that the remaining 380 million, including interest should be disbursed equally between the 3,600 valid claimants.

I have sent letters to your office commenting on my concerns of how the USDA is and continues to establish this bully like mentality to the Native American, that we have no say so or ability to comment our concerns regarding this matter.

It is my understanding that to date, Secretary Vilsack has not communicated with the nine (9) Keepseagle Claims Representatives, in any way, or to schedule a meeting between the nine (9) Keepseagle Claims Representatives and himself to modify the settlement agreement, but they have the attorneys to meet, I feel again USDA is throwing their weight and power against the Native Americans rights to resolve this matter and not be forced to accept an agreement which USDA wants.

It is my understanding from your July 24, 2015, Opinion that:

1. "The Settlement Agreement permits its own modification only with the consent of the parties." Further said: "that the final legal avenue that was proposed lies in the Agreement itself."

2. Also, you stated: "This Court appointed Class Representatives for a reason."

3. "Once the parties agree on a revision to the Settlement Agreement, that the

Parties bring him the agreement and he would issue an order.

This letter is sent to request that you schedule a hearing and issue and order for a mediation or settlement conference in the Keepseagle matter.

Your time and consideration in this regard is truly appreciated.

Regards,

CLAIM # :451
TRACKING # : 18578

*Leave to file* GRANTED

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia   United States District Judge
333 Constitution Avenue N.W.
Washington, D.C. 20001

Dear Sir:

I have received yet another letter involving the Keepseagle case and was told I could send one last letter to again share my views about the remaining settlement funds and how they should be used. I am submitting this letter.

As I have written and said before, I am a Native American Indian, as were my ancestors. Native American Indians were not lawyers, the CEO or owner of a big business. They were for the most part farmers and fisherman. Whatever they had to do to make a living for their families. This was done working off the land, land that was theirs in the beginning. As far back as I can remember my father, grandfather etc. farmed this land. I was proud to carry on that tradition for a number of years. As I said before, I had a hard time farming. Farming is not an easy occupation as any farmer will acknowledge, but it is an honorable profession and they are proud to be farmers.

My point is, this money has been approved by the courts for the Native American Indian Farmers. They were the ones who were not treated properly. They were the ones who did not get the same funding as other farmers, they were the ones who struggled to farm their lands on what funds they could acquire on their own. They, in many cases, had to abandon their farms to provide for their families by other means. In my personal opinion those farmers in the Keepseagle Case are the ones who should receive the funds that have been made available. It is true that there are still Native American Indians who are farming their lands, but this particular case does not involve them. However, if the monies did actually help those Indians, one could say that it at least could benefit the rightful heirs of the Native American Indian.  '

This case after so many years needs to be settled and settled honorably and honestly. In my opinion, those farmers who are noted in the original case of 1981-1999 should receive due compensation.

Sincerely

*Larry J Cocke*

Larry J. Cocke

**Estate of Bernard Bowekaty**
**C/O Margie Bowekaty, Personnal Representative**
**P.O. Box 235**
**Zuni, NM 87327**
**PH (505) 870-6856**

Leave to file GRANTED

United States District Judge

January 11, 2016

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, DC 20001

Honorable Emmet G. Sullivan,

My name is Margie Bowekaty. I am the eldest daughter of Bernard Bowekaty, who died March 30, 2013. MB
On behalf of my father, I am submitting this letter in support of the latest Keepseagle proposal. I thank
the parties, including Marilyn Keepseagle for the on-going settlement negotiations. I support the latest
proposal on the undistributed Keepseagle V. Vilsack settlement funds.

I look forward to the claimants receiving $18,500 and $2,775 for IRS tax and that the remaining
settlement balance plus interest earned be put into Trust and be disbursed over the twenty-year period to
nonprofit organizations.

Thank you, Honorable Judge Sullivan for your understanding.

Sincerely,

Margie Bowekaty

Margie Bowekaty, Personal Representative
Estate of Bernard Bowekaty

Leave to file GRANTED

_____
United States District Judge

Honorable Judge Emmett Sullivan
United Stated District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001                                         January 4th, 2016

Dear Judge Sullivan:

My name is Marilyn Kary and I am a full-blood (4/4) Standing Rock Sioux and a recipient of the funds distributed by the Keeps Eagle class action lawsuit.   I understand that Mrs. Keeps Eagle has agreed to the compromise that each recipient receives a minimal amount from the total balance of funds. I am in support of Mrs. Keeps Eagle to distribute funds to class members.  It's a shame that she has to fight so hard for us.  When USDA threatened to direct the Court to return the funds to the US Treasury, they again demonstrated the same bullying behavior, the same arrogance, disregard, and blatant discrimination that we, my family had to endure.  It was heart wrenching for me to see my family suffer the loss of our home and livelihood, which sold for little or nothing.  We lost much more financially then what we are being given by the class action suit.

I still disagree with funds being distributed by a foundation. I strongly believe that a foundation would only create a mechanism for people who head the trust to "play Santa Claus" with funds to family and friends or fly around the country and have "meetings" (all expenses paid) by the foundation with no benefit to the people who were harmed, without being accountable for the funds. The funds should not be used to right a historic wrong but to compensate those who suffered because of the actions of the USDA. If USDA would like to right the wrongs through a Foundation, they should use other funds to do so. Asking the class members to pay for righting the wrongs conducted by the USDA is passing their responsibility to those of us who lost our livelihoods and our futures.

I know that this will not help me or my family, it's just too late. I am 70 years old and considered an elder like most of the class members. Many of the members are passing away to the Spirit World. It won't do us any good to wait or to see funds used for other purposes. USDA and the people who want the Foundation are using their influence to strongly oppose what is rightfully given to the class action members. We, who have small voices, can only write letters such as this and hope that your sense of justice is strong.

I read that the Court rejected Mrs. Keepseagle's request to divide all the money between the 3605 successful claimants, but I am humbly requesting that the Court seriously consider Mrs. Keeps Eagle's voice for what she has been fighting so hard for and keep in mind that we as plaintiffs and our children lost so much in the harshest way imaginable.  Thank you for listening to Indian Country.

Respectfully Submitted,

Marilyn Kary

MEMORANDUM

*Copied from E-mail*
*JMK*

January 5, 2016

TO: Keepseagle Claimants
FROM: Marshall Matz & John Dillard
RE: Keepseagle Settlement Options

The Government, Class Counsel and the Keepseagles have recommended a compromise
settlement to the Court and the Court will hold a hearing on the proposal February 4, 2016. The
Keepseagles' recommendation to divide all the money between the 3605 successful claimants
was rejected by the Court. This compromise settlement to the Court and the Court will hold a
hearing on the proposal February 4, 2016. The Keepseagles' recommendation to divide all the
money between the 3605 successful claimants was rejected by the Court. This leaves four
options outlined below:

(1) Retain the status quo. The settlement agreement currently in place would distribute $380
million in equal amounts to charities selected by class counsel and approved by the court. There
would be no additional distribution to the successful claimants

(2) New proposed Settlement Agreement.

a. Every successful Track A and Track B claimant would receive a payment of $21,275 ($18,500
direct payments, $2,775 in tax relief), which is a 37% supplement to the original payment for
Track A claimants.

b. $38 million (10%) will be distributed within six months to charities supporting Native
American farmers and ranchers that existed prior to

Keepseagle Settlement Options
January 5, 2016
Page 2

November 2010. Charities will be recommended by a committee of Native American ranchers
and leaders and submitted by Class Counsel, subject to final approval by the Court.

c. The remainder, approximately $265 million, will be paid to the Native American Agriculture
Fund. The Fund will make grants to nonprofit organizations serving Native American farmers
and ranchers. Recipients could include charities, educational institutions, tribal
organizations, and credit-lending nonprofits. The trust will be operated by a Native-controlled
Board of Directors.

(3) Reversion. Return the $380 million to the federal government.

(4) Appeal the court's decision. The District Court denied the Keepseagles' request to distribute the remaining funds to the class members and held that class members were not entitled to any supplemental payments. The Keepseagles declined to appeal this decision because:

a. The D.C. Circuit Court of Appeals was not likely to overturn the District Count, which means appealing to the Supreme Court, where they accept less than 1% of the cases submitted to it; and

b. The odds of prevailing are against us at the Supreme Court (less than a 2% chance of winning) and it would take 3-4 years. A loss at the Supreme Court would preserve the status quo.

The Keepseagles have chosen to support Option #2 above, for very good and logical reasons. We are happy to discuss this memo with interested parties on January 21st at Standing Rock.

Keepseagle Claims Administrator
PO Box 3560
Portland, OR 97208-3560

271802195922

MARILYN S KARY
304 OXFORD DRIVE
BISMARCK, ND 58504

December 30, 2015

## SUPPLEMENTAL NOTICE RE: KEEPSEAGLE V. VILSACK

You are receiving this notice either because you were previously sent notice of the settlement of this case or because you made a claim in connection with this settlement. Please read this notice carefully. There are funds paid in settlement of this case that remain undistributed. This notice is to inform you that the Court is inviting input from Class Members on how those funds should be distributed and to let you know how and when you can provide that input.

Please note: As described in greater detail below, this concerns a revised proposal, different from the one described in the May 2015 notice. The revised proposal provides each Prevailing Claimant a supplemental payment of $18,500 directly and $2,775 paid to the IRS on their behalf, for a total supplemental award of $21,275, with the balance of the funds being directed to nonprofit organizations to provide assistance designed to further Native American farming or ranching activities.

### What is the Keepseagle case about? Who is in the Class?
The Keepseagle case claimed the USDA discriminated against Native Americans who applied for or tried to apply for farm loans or loan servicing. USDA denied the claims of discrimination.

The Class *includes* all Native American farmers and ranchers who:
- Farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999;
- Tried to get a farm loan or loan servicing from the USDA during that period; and
- Complained about discrimination to the USDA either on their own or through a representative during the time period.

The Class *does not include* individuals who:
- Experienced discrimination only between January 1 and November 23, 1997; or
- Complained of discrimination only between July 1 and November 23, 1997.

### What happened in the case?
After more than a decade of litigation, the Parties reached a settlement in October 2010, which was publicized and then approved by the Court in April 2011. The settlement included programmatic relief, debt relief, and a claims process with two tracks (Track A, with payments of $50,000 plus tax relief and Track B with payments capped at $250,000). Notice of this claims process was issued, and meetings with Class Members who wished to file claims were held from May to December 2011. The deadline for submitting claims was December 27, 2011. A Court-appointed neutral determined which claims to grant and which to deny. Claimants were notified of the rulings, and checks were mailed to successful Claimants in 2012. Of the $680 million paid to settle this case, approximately $380 million remains undistributed.

### What does the current agreement say about how the remaining funds are to be distributed?
The Settlement Agreement approved by the Court requires that the remaining funds be given to nonprofit organizations, other than a law firm, legal services entity, or educational institution, that have provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and November 1, 2010. The Settlement Agreement requires all funds to be distributed at one time in equal shares to organizations that were proposed by Class Counsel and approved by the Court.



In addition, Plaintiffs nominate as initial Executive Director of the Trust Janie Hipp, a member of the Chickasaw tribe and Director of the Indigenous Food and Agriculture Initiative at the University of Arkansas School of Law.

The Class, USDA, and Marilyn Keepseagle have agreed to this compromise. The Court must still approve this option before it can be put into place and the funds distributed as proposed.

**What happens next?**

Class Counsel filed a motion asking the Court to approve the new proposal.

*What the Court has ordered:* The Court has scheduled a hearing for **February 4, 2016**, beginning at 10 a.m. EDT, to hear from the Parties and others with an interest in how the remaining settlement funds should be distributed. The hearing will be held in Courtroom 24A of the United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001. If you submit your comments in writing (*see* below), the Court will consider your views even if you do not attend the hearing. If you attend the hearing, you will be provided a brief opportunity to speak to the Court.

**How can I get more information?**

The website www.indianfarmclass.com has copies of all the main court filings and additional information about this issue.

**How can I share my views?**

If you want to share your views about how the remaining settlement funds should be used, you may submit them in writing, addressed to the Court, with a postmark date no later than **January 20, 2016**.

Comments should be addressed to:

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

**PLEASE DO NOT SUBMIT ANY NEW CLAIMS.**

5 January 2016

Chambers of the Honorable Emmett G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

Leave to file GRANTED

United States District Judge

Everett J. Rachels
10109 S 11th St
Bellevue, NE 68123
Tribal Affiliation: Citizen Potawatomi Nation
Track A Claimant

RE: Keepseagle V. Vilsack

Honorable Judge Sullivan,

Bozho

I am writing in support of the revised proposal for distribution of the remaining Keepseagle
settlement funds.

It is with great hope you render a ruling to approve the compromise proposal agreed to by
the class, USDA, and Marilyn Keepseagle.

Migwetch,

Everett J. Rachels

*Leave to file GRANTED*

*United States District Judge*

January 6, 2016

Chambers of Honorable Emmet g. Sullivan
US District court for the District of Columbia
333 Constitution Ave. N.W.
Washington, DC 20001

Re: Keepseagle v. Vilsack additional comments

Dear Mr. Sullivan:

I am Burtis White Wolf, Sr. I am a full blooded, Lakota speaking member of the Cheyenne River Sioux Tribe. I am a life long rancher. I was born and raised in a ranching family, having grown up ranching with my father Moses White Wolf and his brothers and extended family. We have a long and very proud history of ranching as our heritage.

We full bloods have always suffered discrimination in many forms. My father taught us to be proud of our heritage and family and to never accept anything less than respect from others. As someone who suffered racial discrimination as described in the Keepseagle litigation, I can state without qualification that the monetary settlement payment has done very little to reinstate my ranching business. I was sold out of the ranching business in 1983 because I was unable to obtain funding and financial backing to continue my operation. I was one of the original Plaintiffs in the Keepseagle litigation as I felt the government should not be allowed to discriminate against tribal members ever again. The past wrongs I have suffered at the hands of the Federal Government and the US Department of Agriculture can not be made right by a cash payment of $ 50,000.00. An additional payment would be very helpful and could be combined with outside funding to help tribal member ranchers get back into the ranching business. We the actual farmers and ranchers who suffered the discrimination should receive the funds to help our businesses, not some unnamed non-profit organization. There are already many non-profits organizations to help tribal members in agriculture. We do not need to use funds intended for tribal member farmers and ranchers to pay salaries of non-ag, non-native people.

In my opinion, there should be another payment to all qualified applicants to give us the best chance to begin ranching again. That is what the money was intended for and what should be done with the funds. I also support a Native American, enrolled member board to oversee any remaining trust funds that should invested for the benefit of the descendants of the Keepseagle claimants. Only in this way can the wrongs we suffered begin to be made right.

Sincerely,

Burtis White Wolf, Sr.

I think the new USDA and Keepseagle compromise is a acceptable plan.

Thank you,

Carroll Rogers

Leave to file GRANTED

_____
United States District Judge

I am very agreeable to the new compromise between USDA and Keepseagle.  I think that would be a fair way to settle this. I believe everyone wins.

Thank you,

Jacob Rogers

*Jacob Rogers*

Leave to file GRANTED

_____
United States District Judge

Leave to file GRANTED

United States District Judge

January 10th, 2016

Chambers of the Honorable Emmit G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C.  20001

My recommendation for distributing the remaining funds is to go ahead with the new proposal of a combination of the two prior proposals, whereas each Prevailing Claimant would be paid $18,500 directly and $2,775 would be paid to the IRS on their behalf, for a total supplemental award of $21,275. Next, the remaining funds, including the interest earned would be distributed to help Native American farmers and ranchers through grants to nonprofit organizations, as the current agreement provides.

I strongly believe that new proposal mentioned above should be considered because the Prevailing Claimants have already successfully filed and found worthy of payment because of the discrimination they experienced trying to get a USDA loan and /or assistance.  Each Native American farmer or potential farmer lost out of so many benefits during their farming endeavors while not having the assistance they were denied at the time.  Had they received the assistance from USDA they may have furthered their farming endeavors to be more profitable in a very tough agricultural field.  Our Native American reservation, Turtle Mountain Indian Reservation, consists within a 6x12 mile land base and is within Rolette County, the poorest county in North Dakota; we are already so limited in our land base for starting a farm, animal grazing, haying, and planting that we continually need to look outside of our land boundaries (Turtle Mountain Indian Reservation) for more land.  Today, most of the land outside of our reservation is either already taken by non-native farmers and/or the price of land is so high that a native farmer cannot afford to purchase nor lease farm land.  Back in the years of 1981 and 1999 land wasn't as expensive as it is today, so Native American farmers could have afforded to purchase land for farming with the assistance from USDA all while keeping up with their normal farming expenditures; however, because of the discriminatory action of USDA toward Native American farmers the non-native farmers that received assistance from USDA reap the benefits of owning so much more agricultural land outside of the Turtle Mountain Reservation.  I feel by USDA's discriminatory actions they hindered Native American farmers more than they realize and more than they want to realize.  The damage already done to Native American farmers and potential Native American farmers back in 1981 and 1999 cannot be undone so I believe continuing to help the Prevailing Claimant and other Native American farmers through a nonprofit organization to reconcile their damages is the fair process; therefore, I agree with the new combination proposal.

If you have any questions I can be reach at 701-477-8282 (home) or 701-550-9390 (cell).

Thank you,

John A. Keplin

John A. Keplin
PO Box 1260
Belcourt, ND 58316

January 10, 2016

Leave to file **GRANTED**

United States District Judge

Keepseagle Claims Administration

P.O. Box 3560

Portland, Oregon 97208-3560

Attention Claims Administration:

In regards to your request for rebuttal concerning the proposed determination of the Keepseagle case, as a plaintiff, I find the offer satisfactory.

My recommendations concerning this offer are:

1. Make payment immediately.
2. This money is non-taxable.
   *(This settlement money is non-taxable, nor will it affect eligibility for government benefits. Congress passed the Claims Resolution Act of 2010, H.R. 4783, 111th Cong. (2010), which specifically prohibits settlement awards from being treated as gross income or a resource.)* This is a settlement!
3. The full amount designated for payment and taxes should be dispersed directly to plaintiffs in the amount of $21,275.00.
4. The excess monies proposed to provide assistance to further Native American farming and ranching activities should be limited to assist only Plaintiffs families.
5. All excess moneys should be divided equally and distributed to plaintiffs.

I respectfully request that you take this recommendation into consideration.

Sincerely,

_Lucille Hall_ , Plaintiff

Address:

PO Box 1256
Browning, MT 59417
Phone 406 338-3494

cc. file

Leave to file **GRANTED**

United States District Judge

January 12, 2016

Chambers of the Honorable, Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C.   20001

Honorable Emmet G. Sullivan,

I take this opportunity to share my views on how the remaining settlement funds should be distributed.

As described in paragraphs one (1) and  two (2) of  memo, SUPPLEMENTE NOTICE RE; KEEPSEAGLE V. VILSACK, Dated December 30. 2015 it states there are funds paid in settlement  of this case that remain undistributed.

I concur with the revised proposal that provides each Prevailing Claimant a supplement payment of $18,500 directly and $2,775 paid to the IRS on my behalf, for a total supplement award of $21,275

Currently, still actively involved in agriculture.  Conditions on Native American Reservations remain painstakingly harsh and would welcome any and future distributions if available.

I wish to thank you for all the assistance you have provided me.

Kevin Ronald Lente
35 Tribal Rd. 6
Bosque Farms, New Mexico   87068

Leave to file GRANTED

United States District Judge

# TINGLE & ASSOCIATES, P.A.
1008 Airport Road, Suite E
Destin, Florida 32541
Phone: 850-650-8138

D. Craig Tingle, LLM, Esquire*
*Also admitted in Georgia and Missouri

January 4, 2016

The Honorable Judge Emmet G. Sullivan
333 Constitution Avenue, NW
Washington, DC 20001
Re: **Keepseagle v. Vilsack, Cy Pres Settlement Opposition**

Dear Judge Sullivan:

I am writing in order to urge you to reject the settlement proposal as it pertains to the cy pres funds from the Keepseagle lawsuit. This lawsuit was a lawsuit for damages as a result of discrimination to a specific class of people. Those people became the plaintiff's class for the lawsuit. Ultimately, there was a settlement for those class members. I am a member of that class of plaintiffs, and I received a settlement check as a result of that litigation.

However, that paltry settlement check has not made me whole and to the extent additional settlement funds are available those funds should be provided to the class members. No other group of participants was incorporated into the lawsuit and it is inappropriate for a provision to be made for third party beneficiaries when there are primary beneficiaries (class members) that can be readily identified by class counsel. It was inappropriate at the time the settlement agreement was contrived and it is inappropriate still.

Based upon my discernment as an attorney and my suspicion as an Indian tribal member, I am convinced that something nefarious is anticipated regarding these cy pres funds. The intent of the powerful few is to create a legacy that allows for the continued support of certain class representatives and other key people that have managed to get a seat on the board of trustees.

If any portion of the cy pres funds are allowed to pass to this entity one can expect corruption to be the routine practice. For example, we may see a situation whereby in order for a not for profit corporation to receive a grant, it will have to provide a paid directorship to one or more of the trustees. Also, beware of the new settlement provision that allows for newly created not for profits to be established. This is the greatest subterfuge of all. It will allow the trustees to create a not for profit directly or indirectly with some ancillary benefit to Indian farmers, but the bulk of the funds will go towards salaries benefits and expenses for the favored few. There are innumerable ways for trustees to benefit when not for profits corporations are trying to curry favor and receive grants.

1

It is worthwhile to pose the question "Why is class counsel, certain class representatives and certain trustee members who were never part of the lawsuit working so hard to prevent the remaining cy pres funds from going to the class members?" I do not believe it has anything to do with goodwill and even if it did it is unlikely that anyone would fight so tenaciously just to be charitable. Rather, those that favor a trust for the cy pres funds wish to reserve unto themselves a greater measure of the funds.

I may be the only person taking the time to oppose this proposal, but I do not believe I speak only for myself. However, in the event that I am the only person opposing this proposal, I am enough. As you indicated in your opinion rejecting the previous proposals, there has been no provision for resolving any disputes pertaining to this matter, such as: (i) a vote by a majority of the class representatives or (ii) a unanimous vote of the class representatives. Therefore, in applying a standard for approval of a settlement proposal involving the cy pres funds only the strictest standard possible will suffice and that standard is unanimous agreement of the settlement terms by the class members. Therefore, if there is even one raised objection then based upon both the canons of construction and upon the rationale of your own legal opinion the proposed settlement must be rejected.

Finally, but in some ways perhaps most importantly, the class counsel has proudly announced that Marilyn Keepseagle supports this most recent proposal. The clear implication being that if she finds the proposal satisfactory then it must be acceptable. However, Marilyn Keepseagle has been appointed as one of the trustees to oversee any remaining Keepseagle Cy Pres funds. She was not on the board previously. Prior to being provided with a trusteeship she was the most ardent supporter of disbursing all the funds to the prevailing class members. Now she is at peace with the proposal from class counsel. The conclusions that can be drawn from this radical shift in position based upon the new facts are obvious. Based upon this and the foregoing, the seeds of corruption have been sown. Most of those on the board of trustees have spent their lives living off the government in one way or the other, now they have found a way to feather their respective beds for the next twenty years and none of them are going to do what is best for the class members or Indians. Sir, I know my people and I know Indian organizations. I have an emphasis in Federal Indian Law, I have worked for the American Indian Law Center and I am stating categorically that the only way to ensure there is no corruption is to disburse the funds to successful class members. Wherefore, I ask that you reject the proposal set forth by class counsel, a portion of the class representatives and the trustees of the trust.

Sincerely,

D. Craig Tingle

2

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

1-5-2016

Leave to file **GRANTED**

United States District Judge

I feel the remaining settlement funds should be used as:

First, each Prevailing Claimant would be paid $18,500.00 directly and $2,775.00
would be paid to the IRS on their behalf, for a total supplemental award of
$21,275.00.  Next, remaining funds, including the interest earned (minus expenses
and some of money  going to several named Plantiffs as Class Representative service
awards) would be distributed to help Native American farmers and ranchers
through grants to nonprofit organizations, as the current agreement provides.  But,
the Agreement would be changed in the following ways: (1) Most of the unclaimed
funds would be placed in a Trust that could disburse the funds over a 20 year
period, rather than immediately: (2) Decisions on how to distribut the funds would
be made by a board comprised of 14 Native American leaders with experience in
agriculture, Native American issues, financial issues, and grantmaking, rather than
by Class Counsel: (3) Recipients of grants from the settlement funds would be
expanded to include certain educational institutions, tribal-sponsored organizations,
and community development financial institutions: (4) The funds could be
distributed to new nonprofit organizations serving Native American farmers and
ranchers, not just to previously existing organizations and (5) $38 million would be
distributed more quickly to the same types of organizations (so long as they existed
prior to November 1, 2010) based on recommendations from Class Counsel that are
approved by the Court.

Organizations receiving funds would be required to use the funds to provide
business assistance, agricultural education, technical support, or advocacy services
to Native American farmers and ranchers, including those seeking to become
farmers or ranchers, to support and promote their continued engagement in
agriculture.

The people nominated to head the Trust at the outset, whose appointment must be
approved by the Court are the same as listed on Notice 04431 v 02 dated 12-22-2015.

Sincerely,

Velda R. Hall, Claimant
3355 Hwy 82 East
Montrose, AR 71658

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington,D.C. 20001

*Leave to file GRANTED*

_____
United States District Judge

Rhea  J. Turning Heart
5008 Lakewood Dr.
Mohnton, PA  19540

January 4, 2016

Greetings Honorable Emmet G. Sullivan:

I would like to thank you for giving me the opportunity for my silent voice to be finally
heard on the Keeps Eagle Claim. As a claimant that was denied I am very saddened at the
process. I have lived off the reservation and did not have the opportunity to go to my
hometown or agency and have the folks from USDA help file my claim. I was told there
was 43% of the people who got disapproved that sent there applications in, versus the
ones who had a sit down face to face meeting with folks from USDA who helped them
file there claim/application.

With this being stated I am elderly and could have used the assistance the USDA gave to
those living on the reservation. I was discriminated against and that is the facts. I truly
feel I am being discriminated for being an off reservation Tribal member. I believe that
the money that is left over from all other claims that were paid out already should go to
those of us who were disapproved for minor error on our application, again giving light
to, we did not have the one on one assistant as other claimants did.

I strongly urge the courts and your honor to reconsider that the claimants who were
denied be given a fair and just amount of time to resubmit there claim and be paid out as
all other claimants were. This is the fair and just thing to do as many of us know that
many people who filed know they never applied for a farm loan, it was an easy way for
them to get $50,000 to $250,000 and the ones who want more are being greedy, let us all
be awarded something.

Thank you for your time and consideration, I truly hope the scale of justice hears my plea
to allow my claim to resubmitted and awarded as I was an Indian woman who was
discriminated against.

Sincerely,

Rhea J. Turning Heart
610-348-5541

*Leave to file GRANTED*

United States District Judge

CHAMBERS OF THE HONORABLE EMMENT G. SULLIVAN
U. S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE N.W.
WASHINGTON  D.C.  20001


**Honorable E. G. Sullivan's Office of The Clerk**                    **January 12, 2016**

REFERENCE: United States District Court Judge E.G. Sullivan's  December 30, 2015  Keepseagle
Supplemental Notice  requesting inputs for the February 4, 2016 hearing concerning the disposition of
the Keepseagle  Settlement  Agreement  undistributed $380 Million Cy Pres Funds.

I have been involved with Frank G. Jones and Mary Maxine Jones Keepseagle Track "B" Claim – which has been denied.

(1) May 25, 2015, I, Ned Gene Jones, as Executor of Frank G. Jones' Will and Estate, submitted a proposal for distribution of the
remaining Cy Pres Funds.
(2) July 2, 2014,  as executor of Frank G. Jones' Will and Estate, a request was submitted to US District Court Judge E.G. Sullivan
for a Fair Hearing review of the denied Frank G. Jones and Mary Maxine Jones' Keepseagle Track "B" Claim.
(3) July 28, 2014, Judge E.G. Sullivan issued a motion to intervene Court Order (633) allowing opportunity to present supplement
information for "review" of Neutral's denial of Frank G. Jones Discrimination Claim.
(4) Oct 9, 2014,  Case 1:99-cv-03119-EGS  Document 720 Memorandum Order denied the motion to intervene.


**The creation of an approximate $300 Million Dollar Trust Fund for future Native American
generation's benefit was certainty not the original intent of the Keepseagle V. Vilsack Class Action
Case nor was it the original objective of the Keepseagle Settlement Agreement.**

It is simply unconscionable for a proposed settlement that results in future Native American generations
to receive the majority of the $380 Million from the Cy Pres Fund (approximate $300 Million Dollars—
about 80% of the undistributed Cy Pres Fund).   The farmers and families who experienced the FSA's
discrimination to receive less than an additional $80 Million Dollars (approximate 20% of the undistributed
Cy Pres Fund) as additional reparations payments for successful Claimants.

**It is emphasized**:  the approximate $300 Million Dollar Trust Fund will benefit future generations of a few
"lucky" Native Americans.  The sons and daughters who most likely will receive the majority of the grants
and scholarships will be applicants primarily from affluent parents with the support to write (or with
capability to seek assistance to write) award winning grant proposals, etc.  The majority of future Native
American generation's recipients of grant awards-- most likely will not be members of farm families. Many
future grant and scholarship recipients probably will not set foot on a farm performing the dirty and
unending physical labor required of a farmer to survive.

Also, it is well known in academic communities and Trust Fund Agencies that 30-40% ( $100 million+/-
dollars) of the Trust Funds will be used to cover administrative costs of the funding agencies—not for
reparations or grants for the discriminated Native American farmer or their heirs.

**Again for emphasize:** The  Keepseagle  V. Vilsack Case intent was for Native American Farmers and
their spouses, their children plus grandchildren (their heirs) to receive the majority of funds in the Cy Pres
Fund for reparations **as result of the years of discrimination they were subjected to and endured**. In
many cases, the resulting financial impact destroyed many farmers and their heirs' livelihood.

Why are the USDA's Officials so against the payment of reparations direct to the actual Native American
Farmers and their families who endured and suffered the disastrous impact of local FSA Officials
humiliation and discrimination for many years?  This also includes a few Native American Families'
Keepseagle Claims that were denied based on a Neutral's interpretation of subjective criteria or
technicality of some type.                                                          **Page 1**

Yet it appears USDA is very supportive of assignment of the undistributed Keepseagle Cy Pres Trust Funds to establish an approximate $300 Million Dollar Plus Native American Trust Fund for the benefit of future generations of Native Americans. The future Cy Pres Trust Fund Awards winners certainty did not and will never have to endure the humiliation and suffer the disastrous impact of the hostile discrimination of local FSA Officials.

It is clear that the purpose of the U.S. District Court's February 4, 2016 Supplemental Notice for the hearing is to consider a motion from Class Council "requesting the Court to approve a new proposal for distribution of the undistributed Cy Pres Funds".

The original Keepseagle Settlement Agreement will be modified if the Class Council's request is approved by the Court. This would appear to open the door for the Court to consider other proposals or requests to modify or change the **Adjudication Process of the original Keepseagle Settlement Agreement  to insure all farmers whose claims were initially denied were treated fairly and equally.**

This could be done with an appointment of an Office of Monitor to review all denied Keepseagle Claims. This would involve less than 1000 Claims to be reviewed.

It should be noted, in the Pigford I Claims Adjudication, the Claimant could protest the Neutral's adjudication of his claim to an Ombudsman for review to obtain some degree of fairness.

Also in Pigford II Claims Adjudication , an Office of Monitor basically served as Ombudsman and actively reversed many Neutral's determination based on the Office of Monitor's evaluation of protested Claimant's Claims.

There were **mistakes of non-excusable neglect** made in the adjudication of Frank G. Jones and Mary Maxine Jones Keepseagle Track "B" Discrimination Claim as well as in an additional 100-150 denied claims. A review of Submitted Claim Documentation of all denied Claims is warranted to ensure **"President Obama and USDA Secretary T. Vilsack's top priority that all farmers are (and were) treated fairly and equally"** in the Keepseagle Settlement Agreement proceedings.

Why cannot the Court appoint an Office of Monitor to review the denied Keepseagle Claimants' claims to insure all Native American Farmers Claims have been reviewed and, in fact, provide a fair hearing as promised by President Obama and USDA Secretary T. Vilsack. **This would not be unlike the review process granted to Pigford I and Pigford II Black American Farmers Claims with Ombudsman Process and the Office of Monitor Process to review the Pigford Claimants' denied claims.**

The Office of Monitor type review of all the Keepseagle denied claims should be done prior to decisions about how the "Proposed funds be disbursed as additional payments to the successful Claimants **and possibly to Claimants who claims were denied due to a technical defect but warrant reconsideration".**

I am taking the liberty to suggest a candidate with the following qualifications for a proposed Office of Monitor to review denied Keepseagle claims. (See next 2 pages of Office of Monitor's qualifications)

Regards

Ned Gene Jones

Ned Gene Jones                                                    as Executor of Estate and Will for Frank G. Jones
1300 West Omaha Place
Broken Arrow, Ok. 74012

**The following qualifications of an experienced Office of Monitor for review of less than 1000 Keepseagle denied claims is presented for the Court's review. This person should be acceptable to Class Counsel as well as USDA Officials since she was an expert witness in the Keepseagle v. Vilsack Case.**

MS  Lynn Hayes
Program Director & Senior Staff Attorney
Farmer's Legal Action Group, Inc.
6 West 5th Street,  Suite  650
Saint Paul, MN.  55102

## Expert Report of Lynn A. Hayes in
## *Keepseagle v. Vilsack,* Case No. 1:99CV03119

**Qualifications**                                                                                          I

have been asked to evaluate and describe the farm lending programs available during the class
period and describe how those programs changed over the class period. In particular, I have been
asked to analyze whether farm lending programs permitted opportunities for individual
discretion and whether decisions relating to loan eligibility and approval, or loan servicing were
made based, at least in part, upon individual discretion.

I have not been asked to analyze any particular discriminatory decision, or the particulars of the
claims made by the class representatives or any other borrower.

I received a J.D. from the Catholic University of America Columbus School of Law in 1982 and
a B.A. in English from Coe College in 1978.

Currently, I am the Program Director and a Senior Staff Attorney at the Farmers' Legal Action
Group, Inc. (FLAG), a non-profit law center dedicated to providing legal services to farmers and
ranchers and to farm organizations that work on their behalf. I have spent the vast majority of my
legal career working at FLAG. I was an attorney at FLAG when it was founded in July 1986 and
have spent all but a few years of my career since then in the employ of FLAG. During this time
I have litigated several class action and major impact lawsuits on behalf of farmers and ranchers.
I served as co-counsel in the *Coleman* litigation against the Secretary of Agriculture on behalf of
a nation-wide class of Farm Loan Program borrowers in which the Farmers Home
Administration (FmHA) loan servicing programs were at issue. *Coleman* v. *Block,* 663 F.Supp.
1315 (D.N.D. 1987); *Coleman* v. *Lyng,* 864 F.2d 604 (8th Cir. 1988) cert. denied at *Coleman* v.
*Yeutter,* 493 U.S. 953 (Nov. 6, 1989). I also served as co-counsel in a Minnesota state-wide class
action lawsuit on behalf of Minnesota Farm Loan Program borrowers against the Secretary of
Agriculture addressing essentially the same issue as in the *Coleman* lawsuit. *Gamradt* v. *Block,*
581 F. Supp. 122 (D.MN 1983).

From late 2002 through 2006, I worked as a staff attorney with the Office of the Monitor for the
*Pigford v. Johanns* and *Brewington* v. *Johanns* class action litigation involving African- .
American farmers' claims of discrimination by USDA in the Farm Loan Programs. At the Office
of the Monitor, I reviewed and assisted in drafting the Monitor's decisions on Petitions for
Monitor Review of adjudicator and arbitrator decisions made on individual farmers' claims of
discrimination submitted pursuant to the Consent Decree in that litigation.

**Page 3**

I have written articles and co-written books addressing the laws controlling the USDA Farm Loan Programs including: (1) *Farm Survival Handbook: A Guide to FmHA Debt Restructuring and Appeals* (with Randi Ilyse Roth), Farmers' Legal Action Group, Inc., November 1988; (2) *The Agricultural Credit Act of 1987*, Farmers' Legal Action Report, Special Report (1988); (3) *Farmers Home Administration: What the New Law Provides* (February 1988); (4) *Farm Survival Handbook: A Guide to FmHA Debt Restructuring and Appeals* (with Randi Ilyse Roth), Farmers' Legal Action Group, Inc., November 1988; (5) *Farmers Guide to FmHA* (with Randi Ilyse Roth, Laurie Steiger, Lynn Slick, and Dale Reesman), Fourth Edition, Farmers' Legal Action Group, Inc., March 1990; (6) *Farmers' Guide to FmHA* (Fourth Edition, March 1990); (7) "FmHA Beginning Farmer Programs Now Available," *Farmers' Legal Action Report and the Minnesota Family Farm Law Update,* Volume 9, Number 1, Winter 1994.

Since the mid-1980s, I have made presentations addressing USDA Farm Loan Programs at more than 100 educational programs for farmers and ranchers, farm advocates, and attorneys in 25 states. See, FLAG Trainings -Lynn A. Hayes (1986 through 2008) attached.

Since the mid-I 980s, I have often advised farm organizations on federal legislation and administrative regulations and policy matters pertaining to the USDA Farm Loan Programs. At the request of congressional office staff, I have provided technical assistance on USDA Farm Loan Programs issues and testified before congressional committees on agricultural credit matters.

On behalf of farm organization clients, I have submitted extensive comments on proposed regulations on the USDA Farm Loan Programs, including comments on: (1) Advance Notice of Proposed Rule Making; Loan Policies and Operation (53 Fed. Reg. 4177), Submitted March 3, 1988; (2) FmHA Proposed Rules Published Friday, June 17, 1988, Regarding Guaranteed Farmer Program Regulations (53 Fed. Reg. 22,764-811), Submitted July 15, 1988; (3) Comments on consolidation, combination, elimination and simplification of farmer program loan regulations. (April 13, 1995); and (4) FSA Interim Rules (41 Red. Reg. 9351), Submitted May 2, 1997.

Throughout the course of my legal career, I have advised hundreds of individual farmers and ranchers on USDA Farm Loan Program matters.

**Page  4**

Leave to file GRANTED

United States District Judge

January 18, 2016
The Honorable Emmett G. Sullivan
United States Federal Court for the District of Columbia
333 Constitution Ave. N.W.
Washington DC 20001

Re:    <u>Keepseagle</u>; Case No. 1:99-cv-03119-EGS

Dear Judge Sullivan:

This class action lawsuit was filed due to the USDA's discrimination against the American Indian farmers and ranchers. The settlement monies were to "be given to the ACTUAL discriminated parties," not to put into a Trust account and certainly not to make the attorneys multi-millionaires! I DISAGREE with what the attorneys are proposing because:

1. The nine claims representatives were not called to attend a meeting to amend the settlement agreement. As I understand it, the class counsel, Department of Justice and Keepseagle attorney were the only participants in the discussion(s).
2. There is an unfair disbursement of settlement money.
3. In the certificate of service, the class attorney only listed a few of the actual plaintiffs/class representatives. This is improper service of the "unopposed motion."
4. THE ACTUAL PLAINTIFFS AND CLAIMANTS WILL NOT BENEFIT FROM A TRUST ACCOUNT [Trust account would be controlled by non-profits – are these non-profits to be bonded? Are they going to be audited?] **<u>If the USDA/Department of Justice and the class attorneys want a Trust account – let them take money from the interest that has accrued over the past years (there should be millions in interest alone) – to fund the Trust.</u>**

The disbursement amounts are NOT fair or just:

1. **Class attorneys' received 61 Million plus costs**.
2. **Claims Representatives, collectively received a total less than 1 million**: [1. Luke Crasco, 2. Marilyn Keepseagle, 3. George Keepseagle, 4. Claryca Mandan, 5. Keith Mandan, 6. Gene Cardotte, 7. Porter Holder, 8. Basil Alkire, 9. John Frederick, Jr.] In the proposed amendment, the USDA and class attorneys ONLY want three of the nine plaintiffs/claims representatives to receive an additional amount of money. **That is a form of <u>unfair treatment and discrimination. This is unfair on many levels.</u>**
3. Claimants received a very small portion of the 760 million:
   A. Track A claimants, $50,000 and B. Track B claimants received $250,000
**The USDA thinks it is fair to give valid claimants an additional $18,000.00 and give the remaining amount – approximately $350 million to a trust account that would benefit non-claimants.** How is this right to give such a large amount of money to people who were not discriminated against?

In the Settlement Agreement, the USDA states that they will stop discriminating and that they will provide programs for American Indian Farmers and Ranchers; however, if you call the USDA office, they say there are no programs for American Indian Farmers. The USDA is saying that the American Indian Farmers and Ranchers must put the majority of the remaining funds into a Trust account. WHY? Why should the American Indian Farmers and Ranchers PAY for the programs that the USDA agreed to fund in the settlement agreement. How is this fair or just? This is ludicrous! Isn't this yet another form of discrimination? **<u>Neither Pigford nor Love class action lawsuits were forced to put their additional money into a Trust account. This is very "HURTFUL." Is the USDA saying that the American Indian farmers and ranchers who were plaintiffs and valid claimants in Keepseagle are not smart enough to manage their own affairs?</u>**

Please deny the ~~Case 1:99 cv 03119 EGS~~ proposed changes and order the preparation for Secretary Vilsack to attend a settlement conference or mediation to amend the settlement agreement. As it stands right now, the proposed amended settlement agreement is a mess!

Thank you.

Michael V. Thompson
514 Ralph Lane
McGehee, AR 71654

Note: Thus far the message is clear: We belong back in our proper place. That being the reservation.

Thank You,
Michael Thompson

*Leave to file GRANTED*

*United States District Judge*

January 8, 2016

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

RE: Keepseagle v. Vilsack

Dear Judge Sullivan,

It is with respect that I pray for the court to take into consideration my views of settlement for the remaining monies to be awarded in the Keepseagle suit.

I have had the privilege to be a part of a family Agriculture and Ranching business. What a great honor as a Native American!

Imagine through family perseverance to have a dream of doing it better and achieving; only to be suffocated by the personal views and a bias opinion of the one person that should have been making differences in the agriculture economy. The USDA service representative clearly told me I could not get assistance because of who my father is. I witnessed my father in his own humiliation from the USDA, being denied assistance more than once. Farming and Ranching is my heritage and I know that I was under good leadership and training as I worked alongside of my father. As far back as elementary school I would help feed cattle, clean stalls, plow, cut hay, etc.

The intent of the Keepseagle suit was established to have funds distributed to claimants for their suffrage of discrimination by the USDA. That's exactly what should take place. My family and I have had to take bank loans and use everything we own for collateral. Had the USDA given us the rightful opportunity I know we could have been more productive and prosperous by now. Witnessing, certain Farmers and Ranchers being awarded USDA programs and others not was traumatic humiliation bringing stress and hardship. We have had to use old equipment, pay higher interest rates and lose out on what would have been good business opportunities because of USDA funds denied. Responsibilities of family, education and a desire to share my

opportunities with my two sons and daughter have been extremely limited due to missed opportunities by improper funds mainly due to the USDA.

I would very much like to see the remainder of the funds given to claimants of the Keepseagle suit- *NOT* given to Non-Profit Organizations.   We certainly do not need more committees formed to try to tell us "another way" to do something, when usually they have never done the job.  Never should there be in this day and age any trouble finding a class, instruction tutorial, or program for equipment, farming or ranching.  They are everywhere!!!  This is a moot point in my judgment for us to fund Non-Profit Organizations from these available monies, when the current world we live in is within the touch of literally a few keystrokes.  Truly the concept is outdated and would seem to be coming from a manipulation of greed.  These funds were intended to be for the claimants and have been *awarded already* to each American Native Farmer/Rancher for their hardship endured.  I as a Native American Farmer and Rancher have spent many tiring days and sleepless nights knowing the humiliation by the USDA bureaucracy. It's time to call an end to more harassment and manipulations to so many that have been deprived and financially harmed.

I pray for you to uphold and enforce the original judgment by awarding the remainder funds to the Keepseagle claimants and *Not* to the ideals of antiquated Non-Profit Organizations. Sincere regards,

Wesley Lansford
347 Vick Rd
Childersburg, AL 35044

*Wesley Lansford*

Leave to file GRANTED

United States District Judge

Chambers of the Honorable Emmet G. Sullivan

U.S. District Court for the District of Columbia

333 Constitution Avenue N.W.

Washington, D.C. 20001

Honorable Emmet G. Sullivan:

My name is Mathew Detherage and I am writing in response to the recently received new proposal for changes to settlement.  After carefully reading through the new proposal of how the remaining funds should be distributed I believe that it is fair for the successful claimants to receive a portion of the remaining balance ($18,500 to the claimants and $2,775 to be withheld for the IRS for a total of $21,275). The balance remaining after this payout should be handled as agreed upon to nonprofit organizations, other than a law firm, legal services entity, or educational institution, that have provided agricultural, business assistance, or advocacy services to Native American farmers between 1981 and November 1, 2010.

Thank you in advance for your consideration,

*Mathew J Detherage*

Mathew J Detherage

59520 E 170 Rd

Fairland, OK 74343



Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

Leave to file GRANTED

_____
United States District Judge

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit.  We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

Leave to file GRANTED

United States District Judge

1/13/16

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form, class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagle's hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned with their age, if something would happen to them prior to an appeal date the case would die with them; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded, non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one

represented on this board. The other three positions should be filled with representatives from other reservations or regions not included.

Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300,000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name: Barry Pateneaude

Address:

Barry Pateneaude

PO Box 283

Timber Lake, SD 57656

Leave to file GRANTED

United States District Judge

The Honorable Emmet G. Sullivan

US District Judge

US District Court for the District of Columbia

Dear Judge Emmet G. Sullivan,

I'm writing you as an advocate for my brother Lance Robinson:

First, it's with great humility that I state how apologetic my family is right now and to ask that I be heard with a tender ear!

I have read over the sentencing recommendation from the government;

The proliferation of plea deals and how they create a "black box" within the criminal justice system contributes to racial disparities.   The federal government enacts stiff prison penalties that are disproportionately applied to low-income African Americans in urban areas and are more likely to apply a criminalized rather than a medicalized approach to their behavior. US vs. Bookers' decision did not increase racial disparity in judicial sentencing determinations; rather prosecutors' charging decisions "appear to be the dominant procedural sources of disparity." There are significant racial disparities in sentencing decisions in the United States.   Sentences imposed on Black males in the federal system are nearly 20 percent longer than those imposed on white males convicted of similar crimes.  According to the ACLU report submitted to the Commission on Human Rights these racial disparities result from disparate treatment of Blacks at every stage of the criminal justice system, including stops and searches, arrests, indictments, prosecutions and plea negotiations, trials, and sentencing.

You see Lance was already at an economic, social, racial and class disadvantage from the onset, he's a BLACK MAN; Lance never got the help needed to change the mindset of urban-ology.  Some people's children in society get a second chance in life, they get to make mistakes, and other people's kids don't. And this is not always or necessarily a conscious strategy or idea, I think much of this is unconscious racism, how we think of things. Most people have more compassion for people who look and think like themselves, who live in their neighborhoods.  So people who are describing indictments when they see this young attractive suburban folk caught up in a drug problem, they're more likely to reach out and be sympathetic.  Is that sympathy good? Of course it is, but how do we get over those lines of race and class and recognize that the child of someone else who may be a different race and social class, they're going through virtually the same problem.  And it's really distressing after all these decades; we're still viewing things in that way, when the criminals are African American.  According to Wikipedia White Americans are the racial majority. African Americans are the largest racial minority, amounting to 13.2% of the population. Hispanic and Latino Americans amount to 17.1% of the population, making up the largest ethnic minority.  Approximately 12–13% of the American population is African-American, but

they make up 60% of the almost 2.1 million male inmates in jail or prison (according to census U.S. Department of Justice, 2009).  As compared to whites, African Americans are incarcerated 6.4 times higher for violent offenses, 4.4 times higher for property offenses and 9.4 times higher for drug offenses.

Lance was raised by a widower (black women) 5 kids in household; his early childhood spent in public housing with no positive role models, a high school dropout (acquired a GED while incarcerated), Traumatically witnessed our sister take last breathe at a young age,  drug and alcohol dependencies, years of witnessing domestic abuse and violence in our household.  He has suffers abandonment issues and is a repeat offender to this system.

My senior brother, Torrea, poised a question "What could have done to prevent this tragedy from happening?"  Well 3 years later, there is a solution; my brother needs a program involving  long term drug/alcohol dependence program to help uncover the problems, weaknesses, and his venerability to this urban life style, while servicing his time.    I'm asking for your help Judge Sullivan, No I'm pleading with you to help break this cycle of recidivism.  Effective studies have shown that inmates who participate in residential treatment programs while incarcerated have 9 to 18 percent lower recidivism rates and 15 to 35 percent lower drug relapse rates than their counterparts who receive no treatment in prison.

Lance has a God given gift to motivate, encourage, and inspire people.  I couldn't sit back and watch another black man's life be reduced to, referred to as another statistics, or as merely a number, I have be his advocate.

My desire is to see Lance get the help he needs and wants at this point of his life.  I have watched him go through different processes of life, not only me, but he has experienced it. With that said, he is trying to develop a program for young ex-offender and to connect the dots of helping them stay out.  But he needs the help first.  The heart of the King is in hand of the Lord, He is able to turn it in any direction of where He wants.  The seed of the righteous shall be delivered. He matters to us!  Please Do Not to Discount His Life. His life matters!


Thank You.

Lenya Perkins

Leave to file GRANTED

United States District Judge

January 13, 2016

Chambers of the Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C.  20001

To Whom It May Concern;

I feel that the remaining funds should be distributed between the Prevailing Claimant's.  These were the Native American farmers and ranchers that were discriminated against.  I do not feel they should be placed in a Trust to be distributed over a twenty year period, nor should they be distributed to the Native American Tribal organizations because of all the previous misuse of funds that have been distributed to so many of these tribal organizations.

Sincerely,

Russell B. Wilkins
P.O. Box 456
Wolf Point, MT  59201

Leave to file GRANTED

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001
To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The

Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other three positions should be filled with representatives from other reservations or regions not included. Furthermore, we should bring to the courts attention, in a document filed by class counsel in your court which states approximately $1.300, 000.00 in uncashed checks from the first settlement. Subsequently, this issue has not been addressed there are at least 26 claimants that will not be able to respond to this comment period.

The amount of compensation given in this settlement is inferior in today's economic values. This lawsuit was an injustice reaching back to 1981. If you want to compare the value of a $50,000 Income or Wealth in 1981 there are four choices. In 2014 the relative:

Historic opportunity cost of that project is $112.000.00 Contemporary opportunity cost is $157,000.00Labor cost of that project is $128,000.00 (using the unskilled wage) or $147,000.00 (using production worker compensation)

Economic cost of that project is $270,000.00. Economy Cost of a project is measured using the relative share of the project as a percentage of the output of the economy. This measure indicates opportunity cost in terms of the total output of the economy. This view point is the importance of the item to society as a whole, and the measure is the most inclusive. This measure uses the share of GDP.

Judge Sullivan these additional funds we are seeking are by no means a windfall, as USDA and DOJ suggests it is a shortfall. A minimum of $62,500.00 in which we are seeking as an additional supplemental payment would help ease this horrific act that has devastated entire Tribal economies and generations of Native Americans. I pray that the remaining funds be dispersed as in the amount stated above, to the successful claimants. Anything less would be gross negligence and another breach on the U.S. government.

Judge Sullivan we successful claimants would like to thank you for all you have done throughout this timely process and making sure we are treated fairly and justly. We appreciate your time and ask for your favorable consideration of this matter.

Sincerely,

Name: _Glenn Turkey_

Address: P.O. Box 8
Wyola mt
59089

— See you there

Leave to file GRANTED

United States District Judge

January 15, 2016

Chambers of the Honorable Judge Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Ave. N.W.
Washington D.C.  2001

Your Honor:

My name is Clara S. Bryant, I am a valid Keepseagle Claimant from Pembroke, N.C. I have attended both hearings in Washington D.C., our group did not have money to for such a trip so we raised money by selling doughnuts from door to door so that we may rent a bus and pay for hotel fees.

During the years I made several visits to the USDA asking for help with fertilizer and drainage for my land to only be told there were no loans for such, but the white farmer next to my land was granted a loan for his farm. This was back in 1986, does this seem right to you? I went back to ask for my papers but was told that the papers had been destroyed. In 1991 I made another visit to USDA to apply for another loan of about $12000 to repair a tobacco barn and a pack house. At this time I was again denied and told to go elsewhere. You can understand how very upset I was, so I asked to meet with their Board of Directors. I was only allowed to go in their meeting but they would not allow me to speak. I was introduced and that was all. I observed that only men served on the Board, no women served on the Board. Again in 1992, I asked for an operating loan of $20000 to spend operating costs and for building improvements, only to be told go elsewhere we can't help you. I felt defeated.

Yes, we went to D.C. attending both meetings, we wanted to give Marilyn Keepseagle our support. Our elders are dying every day, we hope to work with you in spirit and true partnership to give our children, their children the future they deserve. When the lawyers came to Pembroke to assist the farmer's with their claims, they did not explain claim information for Track A and Track B. They did not tell us the difference of Track A and Track B nor did they tell us what track we would be qualified in.

Are we going to be discriminated against today? We have been discriminated against for many many years and it is time to set it right. The hands of justice needs to sway on our side. The balance has been shifted for so long, we are tired in body and spirit. For once we need to see that we can trust the government.  We need to see a change.

After attending meetings in D.C. two weeks later I began to get letters for the USDA informing me of the loans that their office was extending to me. How is this right, where was this so many years ago. How many farmers lost homes, land and dreams?  I speak for a large number of farmers in Robeson County and tell you that we are not in favor of the settlement agreement approved by the court requiring that the remaining funds be given to nonprofit organizations. We do not agree with $18,500 being paid to our Native American Farmers. From the beginning the funds are designated for the Native American Farmers. How does this help them? We are a dying people who deserve justice. Farming monies to farmers. We are a people do not agree with this trust fund.

Nonprofit organizations have been discriminating against us for many years, and now we are being told to go to these organizations for assistance which by the way will never come. They will give funding to whomever they please. These places will spring up overnight just waiting to get their hands on a piece of the pie. They will create big salaries for themselves and help their own relatives. Farmer's money for the farmers only, we need this desperately. I imply you to travel to Robeson County and see the farmers first hand, some of areas look like a third world country. Our elders are tired, they are dispirited and need this so very much.

Over the years many of us Native American farmers, men and women have asked USDA for help only to be turned away. From 1986-1991 my papers where I consistently asked for help were destroyed. The farmers should be given another opportunity to file for this money, do not give it to some organization. The lawyer's that were here did not give us the correct information, they did not explain how to even fill out the papers. Many female farmers were told the money was strictly for male farmers. I did not know I qualified as a female farmer to even apply. Again, how is this right? How is it right that these people who were to help us apply were not trustworthy?

Honorable Sullivan please listen to the people crying out to you for help. Do not close your ears or your eyes. Feel with your heart, the people are trying to do the right thing by asking you to consider just once their position. We do not need another institution such as a nonprofit organization. We do not need another trust fund. This is money designated for the Native American Farmers. Please make it right, give to the Native American Farmers their monies.

I thank you for your time in reading this letter, I hope it sends a message to your heart. God Bless and Keep you.  As you lay down to rest, may you hear and see the Native Peoples in your dreams asking you for justice for our farmers.

Sincerely yours,

*Clara S. Bryant*

Clara S. Bryant

January 14, 2016

Leave to file GRANTED

United States District Judge

The Honorable Emmett G. Sullivan
Attn:  Judge Sullivan Chambers
United States Federal Court
 for the District of Columbia
333 Constitution Ave.  N.W.
Washington,  DC  20001

Dear Judge Sullivan:

My name is Ozmer Lee Oxendine Jr.  I am writing this letter due to being denied from the Keepseagle settlement.  I have written you three letters and I have been to your court in Washington twice and was able to meet and speak to you.

I got a letter from Keepseagle and I can't understand what the word, Prevailing Claimant, means.  I would like for someone to look over claims that were denied.  I have asked Keepseagle, USDA, and Senator Richard Hudson but I have had no help from any of them.  It's like you said in court in June, we got screwed the first time, now we're going to get screwed again.  They have no interest in Native American Farmers, they just care about how much money they can make off of us in the settlement if they are not for the ones that were denied.  I am not for it because it is not fair.

In closing, I would like to go back to Washington DC to your court but, unfortunately, I am not able to go because of money problems.  I'm hoping the best thing will happen this time.

If you would like to speak to me, please call (910) 674-5480.

Thank you,



Ozmer Lee Oxendine Jr.
1917 Old Baker Road
Maxton  NC  28364

*Ozm Lee Axpl A*  1-14-2016

Leave to file GRANTED

_____
United States District Judge

January 15, 2016

To: Chambers of the Honorable Emmet G. Sullivan
     U.S. District Court for the District of Columbia
     333 Constitution Avenue N.W.
     Washington, DC 20001

From: Herman Jacobs   DOB: 5-20-1937   SS# 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
       3844 BUIE PHILADELPHUS RD
       Red Springs, NC 28377

To Whom It May Concern:

I am writing in reference to the leftover settlement fund from the Farmer's Claims against the unfair treatment from the USDA. I would like for you to please consider the revised proposal that provides each prevailing claimant a supplemental payment of $18,500 directly and $2,775 paid to the IRS on their behalf. This leftover settlement money should be awarded to all who filed claims that were award money and those, who were not educated enough to apply and failed to do so. Also, those who filed and were not found eligible. Everyone should be considered in this matter.

I feel that the money was truly deserving to those of us who worked all our lives on the farms and were left with little assets at all to enjoy the remainder of our lives, while others enjoyed the benefits of our great labor and mistreatment.

The leftover settlement fund could be used for those of us who now are unable to work and have very little income coming into our homes. I would have loved to have extra money to take vacations but I was never that fortunate. Now this can be made possible.

Please consider distributing the funds to us.

I have trust and faith that you will make the correct and right decision in this matter.

Sincerely,   *Herman Jacobs*

Herman Jacobs
910-322-9450

Leave to file GRANTED

United States District Judge

January 15, 2016

To:  Chambers of the Honorable Emmet G. Sullivan
     U.S. District Court for the District of Columbia
     333 Constitution Avenue N.W.
     Washington, DC 20001

From: Reba Jacobs   DOB: 8-8-1942   SS# 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
      588 Goins Rd
      Pembroke, NC 28372

To Whom It May Concern:

I am writing in reference to the leftover settlement fund from the Farmer's Claims against the unfair treatment from the USDA. I would like for you to please consider the revised proposal that provides each prevailing claimant a supplemental payment of $18,500 directly and $2,775 paid to the IRS on their behalf. This leftover settlement money should be awarded to all who filed claims that were award money and those, who were not educated enough to apply and failed to do so. Also, those who filed and were not found eligible. Everyone should be considered in this matter.

I feel that the money was truly deserving to those of us who worked all our lives on the farms and were left with little assets at all to enjoy the remainder of our lives, while others enjoyed the benefits of our great labor and mistreatment.

The leftover settlement fund could be used for those of us who now are unable to work and have very little income coming into our homes. I would have loved to have extra money to take vacations but I was never that fortunate. Now this can be made possible.

Please consider distributing the funds to us.

I have trust and faith that you will make the correct and right decision in this matter.

Sincerely,

Reba Jacobs
Reba Jacobs
910-521-9897

FROM: Joey & Lora J. Platero
Track A Claimants
P.O. Box 1628 Crownpoint, NM 87313

Leave to file GRANTED

_____
United States District Judge

January 14, 2016

TO: Chambers of the Honorable Emmett G Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

RE: Revised Proposal to Prevailing Claimants

Dear Honorable Emmett G. Sullivan

We are writing this letter of support in favor of the revised proposal to each Prevailing Claimants with a supplemental payment of $18,500 directly and $2775 paid to IRS on our behalf, for a total award of $21,275.

Thank you for really thinking about us Ranchers and Farmers.  This money will help us greatly in our daily operation to carry out our duties as Ranchers and Farmers by providing food for our fellow Americans here in the United States. With increase costs of hay and feed this money will help us tremendously as Ranchers to help us sustain healthy livestock.

Please Honorable Emmett G. Sullivan consider us as Claimants and that we are still in need of financial assistance and we are in total favor of the revised proposal.

In closing, We hope that you will consider us Claimants for the revised proposed payment.

Warm Regards

Joey & Lora J. Platero

Malcolm B Bowekaty                6920 Porlamar Rd NW         Albuquerque, New Mexico 87120

January 15, 2016

Chambers of the Honorable Emmet G. Sullivan

Leave to file GRANTED

U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, DC 20001

United States District Judge

Honorable Emmet G. Sullivan,

I am expressing my support for the latest proposed agreement on the undistributed Keepseagle V. Vilsack settlement funds. The litigation has taken a lengthy time with settlements to any one's total satisfaction, however, the latest proposal is agreed upon by most parties which has good merits that I support. The Court has reviewed and determined good discretion on prior agreements, I don't see that waivering and believe you will agree that this latest proposal is the best under the circumstances.

I believe payment to each prevailing claimant of $18,500 and $2,775 for IRS tax is fair. It is straightforward and follow similar procedures before.

The remaining settlement balance plus interest earned should be put into Trust and be disbursed over the 20 year period to nonprofit organizations that were listed in the court approved agreement. The proposed Trust Board Membership is okay. I have no disagreement on membership. I want to stress that it is very important to disburse quickly, the proposed $38 million to existing nonprofit organizations listed in the current court approved agreement. These entities have helped us farmers and ranchers in the past and they can further their efforts with an influx of funding to expand services to American Indian and Alaska Natives.

The new Trust Board can best determine new or tribally-sponsored nonprofits to receive disbursements when the interest earned is sufficient.

I sincerely hope my views will be considered and that your approval of this "new proposal" is expedited to benefit most prevailing claimants and existing nonprofits entities who helped us in our time of need. Thank You Honorable Judge Sullivan!

Sincerely,

Malcolm B. Bowekaty



Leave to file GRANTED

United States District Judge

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

~~Leave to file~~ GRANTED

United States District Judge

To whom it may Concern:

I'd like to address the issue of a
non-profit organization; American
Nations are non-profits As in the
area I'm at South central mt.
People are all ready accustom To going
To the post office checks and not looking
for anyone else to pass by them
or as an equal; also Anglos don't
Want any new livestock or OWNERS support
leases; So I am a non-profit
Native american. So any help will
be appriciated; leasing is to poplar

Sincearly

Michel _____
tu _____ 406
639 912X

Chamber of the Honorable Emmet G. Sullivan
U.S. District Court of the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001



Leave to file GRANTED

United States District Judge

To the Honorable Judge Sullivan,

It has been very disheartening being represented by this class counsel who has turned out to be no more than self-serving. The lawsuit began to correct an injustice and because of the self-serving negotiating between class counsel, USDA and DOJ has become a deception to the claimants. When I originally filled out the claim form class counsel explained if more claimants applied for the lawsuit than the counsel anticipated, claimants would receive less money.

George and Marilyn Keepseagle have shown true dedication for the sole purpose of making sure this injustice is solved righteously and lawfully. We are truly thankful for all of the Keepseagles hard work in keeping the real issue alive, and keeping us well informed in this case. The Keepseagles have told several of the claimants that they felt forced into accepting an unfair and unjust amount of $21,275. George and Marilyn are concerned at their age, if something would happen to them prior to an appeal date the case would die with them therefore; we stand behind the Keepseagles and ask for a higher additional payment.

My question is, why would class counsel put a cap of $50,000 on the amount of money each person would receive on the high end but not the lower end? Why would class counsel be so willing for the claimants to receive less money if there were more claimants than they anticipated and not negotiate a higher pay out for a smaller claimant sign up? If the left over funds are given to non-profits as class counsel suggests, twenty to thirty percent of the funds will be taken for administration fees which does not benefit the claimants. We would rather have the left over funds be returned to the U.S. government instead of given to a non-profit. We believe class counsel should also have to return its' contingency fee back to the U.S. government on the amount of money not paid out to the claimants. If the left over money is given to a non-profit, class counsel should return its' contingency fees back on that amount of money given to non-profits because they grossly misrepresented the size of the class and gained by unjust enrichment.

We do not believe that any of the money should be going to non-bonded non-profit organizations. A stipulation should be placed, if you are employed by a non-profit or a descendants of an employee, also people working for USDA, Indian Ag., or any non-profit that receives Cy Pres funds would be ineligible for applying for any grants. The Great Plains Region had one of the highest numbers of successful claimants, when you look at the list of board of directors proposed to the court that will oversee the remainder of the funds, Oglala Sioux Tribe, has four representatives. Oglala should be reduced to one represented on this board. The other

Leave to file GRANTED

United States District Judge

Martha Jean Wilbourn

115102 HW 48

Okemah, OK 74859

Jan. 13-16

Honorable Emmet G Sullivan

U.S. District Court for the District of Columbia

333 Constitution Avenue N.W.

Washington , D.C.


Honorable Emmet G. Sullivan

This is my second letter in response to the Settlement Notice.  I still feel that

each prevailing claimant receive a direct payment.

In order for Native American farmers and ranchers to be successful, we need the

necessary funds to operate with.   Machinery, land, cattle, and fuel etc. are very

expensive.  Grants to provide assistance for the things that were mentioned are very

important for Native Americans to be successful and productive ranchers.


Thank you very much for allowing me to express my view.

Sincerely

Martha Jean Wilbourn

Martha Jean Wilbourn