**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————————————
                                      )
MARILYN KEEPSEAGLE, et al.,           )
                                      )
                  Plaintiffs,         )
                                      )
            v.                        ) Civil Action No. 99-3119 (EGS)
                                      )
TOM VILSACK, Secretary, U.S.          )
Department of Agriculture,            )
                                      )
                  Defendant.          )
—————————————————————————————)

**MEMORANDUM OPINION**

Pending before the Court is the plaintiffs' unopposed motion to modify the *cy pres* provisions of the Settlement Agreement (Agreement) that was entered in this case in 2011. The Agreement created a $680,000,000 fund and included precise terms regarding the distribution of this fund to individual class members who could prove their claims in a non-Judicial Claims Process. In 2013, after the entire distribution process had been completed, class counsel notified the Court that approximately $380,000,000 remained in the fund. The Agreement mandates that any excess be distributed pursuant to a *cy pres* provision.

The proposed modification (Addendum) before the Court: (1) provides a supplemental monetary award to every claimant who had filed a successful claim in the initial claims distribution

process; (2) subjects the remaining funds to an amended *cy pres* distribution procedure; and (3) provides a supplemental service award to three of the nine original class representatives for their assistance in reaching an agreement on the proposed Addendum. Although the motion is entitled "unopposed," Keith Mandan, a class representative and prevailing claimant, obtained independent counsel and filed an objection to the motion to modify the Agreement. Class member William Smallwood, Jr. filed an identical objection. Marilyn Keepseagle, lead plaintiff and class representative, filed separate pleadings supporting the proposed Addendum.

Upon consideration of the parties' submissions, oral argument heard on February 4, 2016, the oral and written submissions of class members, the applicable law, and the entire record, the pending motion to modify the Agreement is **GRANTED.**[1]

---

[1] Following the February 4, 2016 hearing, the Court received an "Opposition to Unopposed Motion to Modify the Settlement Agreement or in the Alternative Remand for Further Negotiations with Instructions from the Court" filed by attorneys representing class members Blake Larmon, Jason Cole Larmon, Jana J. Haynes, Larry A. Million, Alfred R. Million, Garry Million, Vernon D. Sellers, J.R. Sellers, Anthony Snell, Justin Earp, Jamie Earp, Edward Crittenden, and Curtis Snell. This motion is addressed in Part III, *infra*.

## I.   Background

The facts of this case have been fully recounted in prior opinions of this Court, *see e.g., Keepseagle v. Vilsack ("Keepseagle IV")*, 118 F. Supp. 3d 98, 105-114 (D.D.C. 2015), but relevant facts are summarized below.

### A. The 2011 Settlement Agreement

On November 24, 1999, plaintiffs filed this lawsuit, on behalf of themselves and those similarly situated, alleging that the U.S. Department of Agriculture (USDA) had discriminated against Native Americans in its provision of farm loans and benefits programs. *Id.* at 105. The Court certified the matter as a class action as to the claims for declaratory and injunctive relief on December 12, 2001. *See Keepseagle v. Veneman*, No. 99-CIV-3119, 2001 WL 3467944, at *15 (D.D.C. Dec. 12, 2001).

After nearly ten years of significant discovery and motions practice, on October 19, 2010, the parties informed the Court they had reached a settlement. *See* Notice of Settlement and Proposed Settlement Agreement, ECF No. 570. Among other provisions, the Agreement created a $680,000,000 compensation fund for the benefit of the class. *See id.* at 15. This award amounted to nearly 90% of the total damages estimated by the plaintiffs' experts. Pls.' Supp. Br., ECF No. 572 at 4. Class members participating in the claims process acknowledged that they "forever and finally release[d] USDA from any and all

3

claims and causes of action that have been or could have been asserted . . . in the Case arising out of the conduct alleged therein." Notice of Filing, ECF No. 576-1 at 63. The Agreement also provided that leftover funds, if any, would be distributed pursuant to a *cy pres* provision, which reads as follows:

> In the event there is a balance remaining in the Designated Account after the last check has been cashed, the last check has been invalidated due to passage of time, and after the passage of time set forth in paragraph 7 of Section IX.A, the Claims Administrator shall direct any leftover funds to the Cy Pres Fund. Class Counsel may then designate Cy Pres Beneficiaries to receive equal shares of the Cy Pres Fund. The Claims Administrator shall send to each Beneficiary, via first class mail, postage prepaid, a check in the amount of the Beneficiary's share of the Cy Pres Fund. Designations shall be for the benefit of Native American farmers and ranchers, upon recommendations by Class Counsel and approval by the Court.

Agreement, ECF No. 621-2 at 33-34. The Agreement defines *cy pres* beneficiaries as:

> [A]ny non-profit organization, other than a law firm, legal services entity, or educational institution, that has provided agricultural, business assistance or advocacy services to Native American farmers between 1981 and the Execution Date [of the Agreement].

*Id.* at 2-3. The Agreement provided that the Court would retain limited supervisory jurisdiction over the case only with respect to five specifically-enumerated areas, and "only for a period of five years from the date of final approval" of the Agreement.

4

*Id.* at 40-42. After notice to the class members, and a fairness hearing held on April 28, 2011, the Court granted final approval of the Agreement and entered a final order and judgment on April 29, 2011. *See* ECF Nos. 606, 607. No party appealed the Court's decision.

### B. Previous Motions to Modify the Agreement

The Agreement left the Court largely uninvolved in the claims process following the entry of final judgment. On August 30, 2013, however, class counsel filed a status report notifying the Court that the claims process had concluded and that approximately $380,000,000 remained available for *cy pres* distribution. Status Report, ECF No. 646 at 3. Thereafter, class counsel filed a motion to modify the settlement agreement's *cy pres* provisions. *See* Pl.'s Unopposed Mot. to Modify the Settlement Agreement Cy Pres Provisions, ECF No. 709. Class counsel stated that "[w]hile the cy pres funds would go to non-profit organizations serving Native American farmers and ranchers under both the original agreement and the proposed Addendum, changes in the mechanism for distributing funds, and refinement in the eligible groups, will better accomplish the aims of the original agreement." *Id*. at 1.

Marilyn and George Keepseagle, lead named plaintiffs and class representatives, opposed class counsel's proposed modification. The Keepseagles retained counsel and filed their

own motion to modify the settlement agreement wherein they

proposed that

> the Court order a *pro rata* distribution of the remaining settlement funds to successful claimants, or, in the alternative re-open the claims process for class members that did not receive payment in the initial claims process and, upon completion of this claims process, provide a *pro rata* distribution to all successful claimants.

Marilyn and George Keepseagle's Mot. to Modify the Settlement

Agreement, ECF No. 779.

After a day-long hearing on the two pending modification

proposals on June 29, 2015, the Court denied the motions in a

Memorandum Opinion issued July 24, 2015. *See generally*

*Keepseagle IV*, 118 F. Supp. 3d 98 (D.D.C. 2015). Though

sympathetic to the concerns of both class counsel and Mrs.

Keepseagle, the Court concluded that there was no basis to

approve the modifications under the law governing the

disposition of unclaimed settlement funds nor under Federal Rule

of Civil Procedure 60(b)(5) or 60(b)(6). *Id.* at 114-31 (citing

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994);

*Pigford v. Venemen*, 292 F.3d 918, 924 (D.C. Cir. 2002)). Because

class counsel asserted that its proposal could be approved based

on the modification provision in the Agreement itself, the Court

briefly addressed that argument, but concluded that there was no

consensus on the two proposed unilateral modifications pending

6

before the Court within the meaning of the Agreement. *See Keepseagle IV*, 118 F. Supp. 3d at 103.

### C. The Pending Motion to Modify the Agreement

On December 11, 2015, class counsel, counsel for Mrs. Keepseagle, and counsel for the government informed the Court that after engaging in protracted yet constructive discussions, they had reached an agreement on a proposed Addendum to the Agreement that would modify the existing Agreement's *cy pres* provision. Thereafter, class counsel filed the "Unopposed Motion to Modify the Settlement Agreement" now pending before the Court. *See* Pls.' Mot., ECF No. 824. According to class counsel, at the time the motion was filed, Mr. Mandan had not stated whether he agreed with the proposed Addendum. Transcript of Feb. 4, 2016 Hearing, ECF No. 854 at 36. Thereafter, Mr. Mandan filed his Opposition to the Motion. *See* Class Representative Mandan Comments, ECF No. 833.

### D. Terms of the Proposed Addendum

The proposed Addendum is a compromise between class counsel's and Mrs. Keepseagle's prior proposals. It would provide for: (1) a supplemental award to claimants who prevailed in the original claims process; and (2) an amended process through which the *cy pres* funds will be distributed. Pls.' Mot., ECF No. 824 at 4.

7

### 1. Supplemental Award

The proposed Addendum provides for a supplemental payment of $18,500 to all 3,605 prevailing claimants, plus $2,775 in direct payments to the Internal Revenue Service on each prevailing claimant's behalf. *Id.* This supplemental payment totals approximately $77,000,000.

### 2. *Cy Pres* Distribution and Creation of a Trust

The proposed Addendum modifies the *cy pres* distribution process by creating a Trust to help ensure the remaining funds are "distributed in an effective and accountable way." *Id.* at 5. Because it will take a certain amount of time to set up the Trust, an initial distribution of $38,000,000 would be made to "eligible non-profit groups after approval by the Court and upon recommendation by class counsel within 180 days of the Court's approval of this process." *Id.* at 8.

The remaining funds -- about $265 million or 70% of the *cy pres* funds available -- would endow a Trust which would distribute the funds over a period not to exceed 20 years. *Id.* at 5-6, 9.

The mission of the Trust would be "to make grants to Eligible Grant Recipients . . . to fund the provision of business assistance, agricultural education, technical support, and advocacy services to Native American farmers and ranchers to support and promote their continued engagement in agriculture."

8

Trust Agreement, Pls.' Ex. B, ECF No. 824-4, § 7. The proposed Addendum expands the types of organizations eligible to receive grants to include, among other things, organizations that may not have existed when the Agreement was initially executed in 2010. *Id.* § 8. Additionally, certain instrumentalities of tribal governments would be eligible to receive distributions from the Trust so long as the funds are used for charitable and educational purposes in support of Native American farmers and ranchers. *Id.* § 8(a)(4).

There would be between nine and sixteen Trustees. *Id.* § 13. At least two-thirds of the Trustees must "have substantial knowledge of agricultural issues, the needs of Native American farmers and ranchers, or other substantive knowledge relevant to accomplishing the Trust's Mission." *Id.* At least one Trustee must have professional finance and investment experience, and another professional grant making experience. *Id.* The Trustees would hold staggered terms and no Trustee could serve more than two consecutive terms, or three terms overall. *Id.* Class counsel has nominated fourteen initial Trustees. *Id.* Following these initial nominations, any subsequent Trustees appointed to fill vacancies would be appointed by the existing Trustees by majority vote. *Id.*

9

### 3. Service Awards to Three Class Representatives

The Addendum also provides for service awards of $100,000 to be paid to class representatives Marilyn Keepseagle, Claryca Mandan, and Porter Holder. Pls.' Mot., ECF No. 824 at 8. The factual basis for the service awards is as follows:

> Each of these Class Representatives has devoted countless hours to addressing the disposition of the *cy pres* funds, including: (a) joining numerous phone calls with Class Counsel as [Class Counsel was] evaluating what could be done and negotiating with the USDA; (b) responding to dozens, if not hundreds, of phone calls from class members interested in the decision, and (c) participating in several of the meetings held throughout the summer of 2014 at which class members were invited to attend to learn about the possible trust for *cy pres* funds, and to express their views.

*Id.*

### 4. The Court's Continuing Jurisdiction

Under the proposed Addendum, the Court would retain jurisdiction over this action for an additional 180 days following final approval of the Agreement by the Court solely for the purpose of: (1) supervising the distribution of supplemental awards; (2) supervising distribution to the Initial Cy Pres Beneficiaries; and (3) ruling on appointment of Trustees or any other matter regarding the initial implementation of the *cy pres* fund. Addendum to Settlement Agreement, ECF No. 824-2 at 1.

10

### E. February 4, 2016 Hearing

Without deciding or expressing any opinion about whether Federal Rule of Civil Procedure 23(e) applied to the resolution of this motion, *see generally Keepseagle v. Vilsack*, 102 F. Supp. 3d 306 (D.D.C. 2015), the Court directed class counsel to provide the class with notice of the proposed Addendum, allowed class members to submit written comments to the Court, and scheduled a hearing for February 4, 2016 to hear argument from counsel and oral statements from class members. *See* Order, ECF No. 825; Amended Order, ECF No. 828.

The Court received many submissions from class members; those timely received were reviewed and uploaded to the Court's docket. *See* Letters, ECF Nos. 835-839, 842-850, 865. Many class members expressed their support for the proposed Addendum, but many did not. *See generally id.* Of those who opposed the proposed Addendum, there were two main objections. First, many class members stated that all of the remaining funds should be distributed to the class members who filed successful claims during the initial claims period and that none of the remaining funds should be distributed to non-profit entities. *Id.* Second, many individuals who were unsuccessful during the initial claims period stated that the claims process should be reopened to allow them another opportunity to submit claims. *Id.*

11

On February 4, 2016, the Court held a second day-long hearing in the Court's Ceremonial Courtroom. Once again, everyone present who wished to address the Court was given an opportunity to do so. *See generally* Hr'g Tr., ECF No. 854. The Court heard many more disturbing accounts of alleged discrimination suffered by class members and their families. *See generally id.* Many class members asked the Court to reject the proposed Addendum, stating that successful claimants from the initial claims process should be entitled to a larger supplemental award than that in the proposed Addendum, if not a *pro rata* distribution of the entire remaining funds. *Id.*

At the close of the hearing, Mrs. Keepseagle's attorney pointed out that the comments made at the hearing reflected two points of agreement:  First, the commenters agreed there should be a second distribution of funds, although they disagreed on the amount -- whether it should be the $21,500 in the proposed Addendum or $100,000, which would be the approximate *pro rata* distribution of the remaining funds to the successful claimants. Second, no one defended the *status quo* under which the entire $380,000,000 would be distributed pursuant to the existing *cy pres* provision. Hr'g Tr., ECF No. 854 at 211-212.

12

## II.  Discussion

To resolve the pending motion to modify the Agreement, the Court must address two questions:  (1) whether the proposed Addendum was properly reached pursuant to the modification provision of the Agreement,[2] and if so; (2) whether the proposed Addendum is fair, reasonable and adequate.

### A. The Proposed Addendum Was Properly Reached

The plaintiffs move the Court to approve the proposed Addendum pursuant to the modification provision of the Agreement, which provides as follows:  "This Settlement Agreement may be modified only with the written agreement of the Parties and with the approval of the District Court, upon such notice to the Class, if any, as the District Court may require." Agreement, ECF No. 621-2 at 53. The Agreement defines the "Parties" as "the Plaintiffs and the Secretary." Agreement, ECF No. 621-2 at 9. The Agreement further defines the "Plaintiffs" as the "individual plaintiffs named in Keepseagle v. Vilsack, No. 1:99CV03119 (D.D.C.), the members of the Class, and the Class Representatives." Agreement, ECF No. 621-2 at 9.

---

[2] As the Court noted in *Keepseagle IV*, the Court's jurisdiction extends to approving a modification to the settlement agreement that is properly reached. *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 129 (D.D.C. 2015). "'[D]istrict Courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but are instead constrained by the terms of the decree and related order.'" *Keepseagle v. Vilsack*, 815 F.3d 28, 33 (D.C. Cir. 2016)(citations omitted).

The plaintiffs argue that because the Court can approve a settlement agreement in a class action lawsuit over the objections of class representatives and class members, this "[a]greement cannot be read to require the consent of individual Class Representatives as a condition of modifying the Agreement." ECF No. 853 at 2-3. At the hearing, class counsel argued that the "parties" are "counsel representing the class and the USDA" because Rule 23(g) provides that class counsel is "ultimately responsible for representing the interest of the class." Hr'g Tr., ECF No. 854 at 39.

Class counsel also informed the Court that although there were nine class representatives when the Agreement was approved in 2011, only four remain active today. *See* Hr'g Tr., ECF No. 854 at 33-35. Class counsel explained that of the five who are no longer active, three are deceased, one is incapacitated, and one ceased to be a class representative. *Id*. Further, class counsel stated that class representatives Marilyn Keepseagle, Claryca Mandan, and Porter Holder support the proposed Addendum. *See id* at 7: 11-18; Pls.' Mot., ECF No. 824-1 at 21.[3]

---

[3] Mr. Mandan asserts that Mrs. Keepseagle and Ms. Mandan's support for the proposed Addendum is "tepid at best." Class Representative Mandan Points and Authorities, ECF No. 851 at 4. Mrs. Keepseagle refutes Mr. Mandan's assertions with a declaration in which she explains her role in the negotiations that culminated in the proposed Addendum. Specifically, Mrs. Keepseagle states "While I had proposed a larger supplemental distribution, I support the proposed Addendum because it is the

Mr. Mandan opposes the proposed Addendum, asserting that it "is not in the best interest of the Prevailing Claimants and that the remaining funds should be distributed to the Prevailing Claimants in equal amounts." Class Representative Mandan Comments, ECF No. 833 at 1. Mr. Mandan argues that the Court is in the same position that it was in July 2015 when it declined to approve the then-pending class counsel proposal over the objections of at least two class representatives. Class Representative Mandan Points and Authorities, ECF No. 851 at 1-4. Thus, according to Mr. Mandan, under the law-of-the-case doctrine, the Court should reach the same result here. *Id*. at 4-5. Mr. Mandan also asserts that "his consent is required" to amend the agreement. Keith Mandan's Reply, ECF No. 867 at 4. At the February 4, 2016 hearing, Mr. Mandan's counsel informed the Court that "anything less than the total distribution per capita to the prevailing claimants is unacceptable. And if that is something that influences this Court to deny the proposed addendum, he's willing to live with the consequences and stand on those principles."  Hr'g Tr., ECF No. 854 at 230.

---

best available compromise and the best option available for improving the terms of the Settlement Agreement in a timely manner."  Marilyn Keepseagle's Response to Points and Authorities Submitted by Keith Mandan, ECF No. 856 at 2; ECF No. 856-1, ¶ 7.

Contrary to Mr. Mandan's assertions, the Court's decision in *Keepseagle IV* does not dictate how the Court must interpret the Agreement's modification provision.[4] In *Keepseagle IV*, the Court was asked to amend the terms of the Agreement in response to two competing unilateral proposals. Because class counsel invoked the Agreement's modification provision as a ground for approving its unilateral proposal, the Court briefly addressed that argument. The motion pending before the Court today is entirely different. It seeks approval of a proposal negotiated and agreed to by three of the four remaining class representatives and the defendant. Whether this proposed Addendum was properly reached under the Agreement has now been briefed and the issue is squarely before the Court.

Class counsel's position is that "the parties" means class counsel and the USDA. While class counsel plays a critical role in class action lawsuits, *see* Federal Rule of Civil Procedure 23(g), the Agreement does not define the parties to include class counsel. The Court therefore rejects this reading of the Agreement.

---

[4] The Agreement's modification provision was also invoked in 2012 when the plaintiffs filed a motion to amend the settlement agreement to make certain changes to the distribution of a portion of the funds.  Pls.' Expedited Unopposed Mot. to Amend the Settlement Agreement, ECF No. 621.  There was no opposition to that motion, and the Court approved the modification.  Minute Order, Aug. 1, 2012.

Mr. Mandan's position is that "the parties" have not agreed to the terms of the proposed Addendum because the class representatives have not unanimously agreed to the proposed Addendum. For the reasons explained below, the Court does not accept Mr. Mandan's reading of the Agreement.

The Agreement is a contract between the parties and as with any contract the meaning of the provision at issue depends upon the intention of the parties at the time it was signed consistent with applicable legal principles. RICHARD A. LORD, WILLISTON ON CONTRACTS § 30.2 (4th ed. 2012). Thus the question is, given that the Agreement settled a class action lawsuit, what did the parties intend when they agreed that the Agreement could be modified only with the written agreement of the parties.[5]

Because the Agreement settled a class action lawsuit, the modification provision must be construed within the context of the representational nature of class actions:

> Class actions are a form of representative litigation. One or more class representatives litigate on behalf of many absent class members, and those class members are bound by the outcome of the representative's litigation. Ordinarily, such vicarious representation would violate the due process principle that "one is not bound by a judgment

---

[5] "To be effective a modification requires assent of all parties to the agreement" because "there is no such thing as a unilateral modification." HOWARD O. HUNTER, MODERN LAW OF CONTRACTS § 5.20 (2016 Edition). The proposed modification is not unilateral because it has been agreed to by all but one of the remaining active class representatives and the defendant.

> *in personam* in a litigation in which he has not been made a party by service of process." However, the class action serves as an exception to this maxim so long as the procedural rules regulating class actions afford absent class members sufficient protection.

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 1:1 (5th ed. 2015).

With these principles in mind, the Court is aware that it can approve a settlement agreement in a class action lawsuit over the objection of one or more class representatives. *See Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3rd Cir. 1999)(noting that "In many class actions, one or more class representatives will object to a settlement."); *Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998)(settlement can be fair even if "a significant portion of the class and some of the named plaintiffs object to it"); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994)("To empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement does not appear to serve the best interests of Rule 23 and would merely encourage strategic behavior 'designed to maximize the value of the veto rather than the settlement value of their claims.'") Thus, "a class representative cannot alone veto a settlement." MANUAL FOR COMPLEX LITIGATION (4th) § 21.642 (2015). Unanimity among the class representatives is thus not required at a critical stage of class action proceedings –– the point at which the Court

determines whether the settlement is fair, reasonable, and adequate, and not the product of collusion between the parties.

In view of the representational nature of class action lawsuits and noting that unanimity among class representatives is not necessary for a court to approve a class action settlement agreement, the Court declines to construe the modification provision at issue here to require unanimous consent of the class representatives. The Court finds that the parties did not intend to give a single class representative veto power over a modification to the Agreement. Just as it could not reasonably have been the intent of the parties to construe the modification provision to require the consent of all class members to any modification, it also could not reasonably have been the intent of the parties to construe the modification provision to require the unanimous consent of the class representatives. The Court therefore finds that the proposed Addendum was properly reached pursuant to the modification provision in the Agreement.

### B. The Proposed Addendum is Fair, Reasonable, and Adequate

Having determined that the proposed Addendum was properly reached, the Court now turns to whether the proposed Addendum is fair, reasonable, and adequate. *See, e.g., Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford Motor*

*Co.*, No. 07-CIV-14845, 2009 WL 3757040, at \*12 (E.D. Mich. Nov. 9, 2009))(the "fair, reasonable, and adequate" standard set forth in Fed. R. Civ. P. 23(e)(2) "applies when considering an amendment to a previously-approved class settlement agreement" and collecting cases). "[T]he district court must consider the objections raised by the named plaintiffs . . . It is the obligation of the district court . . . to evaluate the fairness of the settlement to the class as a whole." *Thomas v. Albright*, 139 F.3d at 233.

### 1. Arguments Presented to the Court

The plaintiffs argue that the Court should approve the proposed Addendum because: (1) the supplemental distribution will benefit prevailing claimants as they will receive a supplemental distribution; (2) the supplemental service awards to class representatives are supported by legal authority and the factual record; and (3) the *cy pres* distribution will be more effective, accountable, transparent, and beneficial. Pls.' Mot., ECF No. 824-1 at 13-14. With regard to the *cy pres* distribution, plaintiffs state that

> [u]se of a Trust governed by community leaders and authorized to distribute the cy pres funds over an extended time period better serves the interests of the Class than the current terms of the Settlement Agreement that provide that the funds be disbursed in equal amounts and within a brief period of time to recipients selected by Class Counsel.

20

*Id*. at 14. Plaintiffs argue that this structure for distributing the remaining funds "serves the same goal as the *Keepseagle* litigation" because

> Whereas many Native American farmers and ranchers currently receive little or no assistance with their businesses, the resources that they would receive from the Trust over a multi-year period could dramatically change that dynamic and ensure that Native American farmers and ranchers have a significant and sustained connection to national, regional, and local non-profit groups that deliver critically needed services education, advocacy and assistance.

*Id.* at 16.

Plaintiffs also note that case law supports the proposition that the Court may approve a class action settlement agreement over the objection of named plaintiffs. Pls.' Mot., ECF No. 824-1 at 16-21.

According to class counsel, in deciding whether to approve the proposed Addendum, the Court's role is to "tak[e] into account the recommendations of the parties, which we view as the class counsel representing the class and USDA, and the views of the class representatives, each of them individually." Hr'g Tr., ECF No. 854 at 40. Furthermore, according to class counsel, as there is no list of the members of the class, the Court cannot undertake a mathematical calculation to determine the amount of support for and opposition against the proposed Addendum, nor

21

does the Court need to do so under applicable law. Hr'g Tr., ECF No. 854 at 40.

Mr. Mandan[6] asks the Court to reject the proposed Addendum, objecting to any modification that allows for payment to "third parties who have not suffered any injury and who have no claims against the United States" and noting that "despite the existence of undistributed settlement funds that could easily and equitably be distributed to Prevailing Claimants, the government is refusing to do so without valid reasons."  Class Representative Mandan Comments, ECF No. 833 at 3. Mr. Mandan is concerned that: (1) the proposed Addendum "does not disclose the total amount of remaining undistributed funds;" (2) "does not disclose the amount of interest that has accrued on those funds;" and (3) "newly formed organizations with no experience or track record assisting Native Americans" will be eligible to receive funds thereby "creat[ing] an incentive for new organizations to be formed with the objective of capturing the available funds rather than assisting Native Americans." *Id.* at 2-3.

---

[6] Class member Smallwood's opposition is identical to that of Mr. Mandan, having been filed by the same counsel.  See Class Member Smallwood Comments, ECF No. 834.

Mrs. Keepseagle, through her own counsel, voices her support for the proposed Addendum, and, among other things, argues that Mr. Mandan's position is irrational:

> Mr. Mandan, via counsel, advised the Court that if all remaining settlement funds are not distributed on a *pro rata* basis, then he prefers to implement the cy pres provisions of the original Settlement Agreement. This would result in no supplemental payments to class members and distribution of more than $380 million in equal shares to charities selected by Class Counsel and approved by the Court. He is the only class member that has advocated this position.

Marilyn Keepseagle's Response to Points and Authorities Submitted by Keith Mandan, ECF No. 856 at 5.

Mr. Mandan responds that "[i]n advocating for a per capita distribution of the remaining funds to Prevailing Claimants, Mr. Mandan seeks continued negotiations between the parties, not a return to the status quo of the original Keepseagle Settlement Agreement."  Keith Mandan's Reply, ECF No. 867 at 3.

The government does not oppose class counsel's motion and states that "[t]he proposed addendum strikes a fair balance between compensating the subset of the class comprised of successful claimants and providing relief to other members of the class through the *cy pres* funds . . ." Gov't Resp., ECF No. 859 at 4.

## 2. Findings

This case was settled five years ago and the Court approved the Settlement Agreement and entered a final judgment. *See* Final Order and J., ECF No. 607. The Court retained continuing jurisdiction for a period of five years for the limited purposes set forth in the Agreement. *See id*. Those limited purposes do not include authorizing the Court to fashion a different resolution such as ordering that the remaining funds be paid to prevailing claimants on a *pro rata* basis. Nor do those limited purposes authorize the Court to order the parties to conduct additional negotiations.[7]  If the Court were to find that the proposed Addendum is not fair, reasonable, and adequate, then the provisions of the original Agreement would remain in place and the entire $380,000,000 of remaining funds would be distributed pursuant to what everyone now agrees is an unworkable *cy pres* provision.

With this context in mind, the Court turns to the terms of the proposed Addendum and finds that those terms are fair, reasonable, and adequate, and not the product of collusion between the parties.

---

[7] As the Court observed, not a single person during the day long February 4, 2016 even raised the option of returning to the bargaining table.  Hr'g Tr., ECF No. 854 at 204.

First, the proposed Addendum provides for an additional payment to each prevailing claimant. While the amount of the payment is not as high as the class representatives and many class members would prefer, it is an additional payment that was not contemplated in the existing Agreement pursuant to which claimants agreed that the terms set forth would settle "forever and finally" their claims against the USDA. The Court finds that the additional payment to prevailing claimants is fair, reasonable, and adequate.

Second, the Trust created to distribute the bulk of the remaining funds is intended to serve the interests of the class as a whole:  The mission of the Trust is "to make grants to Eligible Grant Recipients . . . to fund the provision of business assistance, agricultural education, technical support, and advocacy services to Native American farmers and ranchers to support and promote their continued engagement in agriculture." Trust Agreement, Pls.' Ex. B, ECF No. 824-4 § 7. The Trustees, who are empowered to decide which entities will receive the funds, are required to "have substantial knowledge of agricultural issues, the needs of Native American farmers and ranchers, or other substantive knowledge relevant to accomplishing the Trust's Mission."  *Id.* § 13. A new process for distributing the funds is necessary because the existing *cy pres* provision is unworkable due to the unexpectedly large amount of

remaining funds. The Court finds that with the creation of this Trust, governed by community leaders with relevant expertise, the process for distributing those funds will be fair, reasonable, and adequate.

Finally, the proposed Addendum provides for supplemental service awards to three of the class representatives who worked on the negotiations that lead to the proposed Addendum. The Court credits class counsel's representations and finds that the service awards are justified based on these class representatives' service to the class. Hr'g Tr., ECF No. 854 at 42-43. The Court also notes that Mr. Mandan did not wish to participate in the service award. Hr'g Tr., ECF No. 854 at 71.

It is clear that the proposed modification is a compromise that was reached after hard-fought negotiations, and is certainly not the product of collusion between the parties. It is also clear that not everyone agrees with the proposal. As Mrs. Keepseagle's attorney observed at the hearing, "You're not going to get 3,605 people to agree." Hr'g Tr., ECF No. 354 at 59. Many who submitted letters and who spoke at the hearing support a *pro rata* distribution of the remaining funds to the 3,605 successful claimants and many also disagree with the creation of the Trust to distribute the remaining funds. While the Court is sympathetic to the position of the successful claimants, under the terms of the Agreement, the Court is not

26

authorized to fashion a different resolution. Further, the Court is obligated "to evaluate the fairness of the settlement to the class as a whole." *Thomas v. Albright*, 139 F.3d at 233. The Court finds that the proposal is a compromise designed to serve the class as a whole. The 3,605 successful claimants, out of as many as 30,000 members of the class, will receive an additional distribution of funds that was not contemplated in the original Agreement. Further, the initial *cy pres* distribution of $38,000,000 and the creation of the Trust will result in the settlement funds being made available to serve the class as a whole.

### III. Larmon Plaintiffs' Motion to Modify Settlement Agreement

Following the February 4, 2016 hearing, the Court received an "Opposition to Unopposed Motion to Modify the Settlement Agreement or in the Alternative Remand for Further Negotiations with Instructions from the Court" filed by attorneys representing class members Blake Larmon, Jason Cole Larmon, Jana J. Haynes, Larry A. Million, Alfred R. Million, Garry Million, Vernon D. Sellers, J.R. Sellers, Anthony Snell, Justin Earp, Jamie Earp, Edward Crittenden, and Curtis Snell ("the Larmon plaintiffs"). *See* Larmon Motion, ECF No. 852. The Larmon plaintiffs ask the Court to void the 2011 Settlement Agreement or in the alternative to "remand" the case to engage in further settlement negotiations with limitations. *Id.*

27

In their motion, the Larmon plaintiffs make a number of unsubstantiated allegations that the Court rejects largely for the reasons set forth in Mrs. Keepseagle's response, *see generally*, Marilyn Keepseagle's Response, ECF No. 857, as well as the Plaintiffs' response, *see* Reply in Support of Modification, ECF No. 858 at 11-25.

To the extent the Larmon plaintiffs ask the Court to void the 2011 Agreement nearly five years after the entry of final judgment, the Court finds that there is no basis in the record of this case to do so. As for the Larmon Plaintiffs' alternative request that the Court "remand" this action for further negotiations, as explained *supra*, the Court lacks the authority to order the parties to conduct additional negotiations. Finally, to the extent the Larmon Plaintiffs request that the Court *sua sponte* order the distribution of a greater percentage of the *cy pres* funds to the class members, the Court has explained *supra* that it is unable to do so.

28

## IV.  Conclusion

Accordingly, for the foregoing reasons, the Plaintiffs' motion to modify is hereby **GRANTED,** and the Larmon Plaintiffs' motion to reject the initial settlement, the proposed addendum or in the alternative remand for further negotiations is hereby **DENIED.** An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            April 20, 2016**

29