## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARILYN KEEPSEAGLE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:99CV03119 |
| | ) | (EGS) |
| v. | ) | |
| | ) | |
| SONNY PERDUE, Secretary, United States | ) | Judge:  Emmet G. Sullivan |
| Department of Agriculture, | ) | Magistrate Judge: Alan Kay |
| | ) | |
| Defendant. | ) | |

## FINAL REPORT TO COURT ON PAYMENTS FROM THE KEEPSEAGLE SETTLEMENT FUND AND MOTION FOR APPROVAL OF FINAL PAYMENTS INCLUDING SUPPLEMENTAL ATTORNEYS FEES

# TABLE OF CONTENTS

Page

I.     Disbursement of Settlement Proceeds .............................................................. 1

II.    Interest Earned to Date.................................................................................... 2

III.   Expenses Paid from Interest Over the Life of the Settlement............................ 3

IV.    Expenses Not Yet Paid.................................................................................... 5

V.     Supplemental Request for Attorneys' Fees and Costs ...................................... 5

    A.    Counsel Completed Substantial Work for the Benefit of the Class That
        Was Not Contemplated by the Initial Fee Award.................................... 6

        1.    The work for which the supplemental fee request is sought was not
            encompassed by the initial award of attorneys' fees in this case.............. 6

    B.    Legal Authority and Equity Support a Supplemental Award of Fees ................... 9

        1.    Supplemental Fee Awards Have Been Approved in Cases Where
            Class Counsel Performs Substantial Post-Settlement Work.................... 9

        2.    The Supplemental Fee Award Requested Is Reasonable and
            Warranted.............................................................................. 11

        3.    Counsel's Rates Are Reasonable ............................................................. 12

        4.    The Amount of Time for Which Compensation is Sought was
            Reasonable and Necessary to Obtain the Result Achieved ..................... 15

        5.    The Lodestar Award Sought Is Reasonable.............................................. 18

        6.    Reimbursement of Plaintiffs' Additional Expenses Is Appropriate ......... 19

VI.    Termination of Court's Jurisdiction and Disposition of Remaining Accrued
    Interest............................................................................................................ 19

VII.   Conclusion ..................................................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*In re Agent Orange Prod. Liab. Litig.,*
611 F. Supp. 1296 (E.D.N.Y. 1985) ...................................................................10

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980)...........................................................................................19

*Bricklayers & Trowel Trades Int'l Pension Fund v. Conn. Stone Indus., LLC,*
No. CV 17-2341 (ABJ), 2018 WL 3381314 (D.D.C. July 11, 2018)................14, 15

*Cassese v. Wash. Mut., Inc.,*
27 F. Supp. 3d 335 (E.D.N.Y. 2014) .............................................................10, 11

*Covington v. District of Columbia,*
57 F.3d 1101 (D.C. Cir. 1995)..........................................................................15

*Elec. Privacy Info. Ctr. v. U. S. Dep't of Homeland Sec.,*
218 F. Supp. 3d 27 (D.D.C. 2016)....................................................................14

*\*Fears v. Wilhelmina Model Agency, Inc.,*
No. 02 CIV 4911 HB, 2007 WL 1944343 (S.D.N.Y. July 5, 2007), *vacated on
other grounds*, 315 F. App'x 333 (2d Cir. 2009)..............................................9, 10

*Fox v. Vice,*
563 U.S. 826 (2011)...........................................................................................16

*Goldenberg v. Marriott PLP Corp.,*
33 F. Supp. 2d 434 (D. Md. 1998) ...............................................................10, 11

*\*Heller v. District of Columbia,*
832 F. Supp. 2d 32 (D.D.C. 2011) ............................................................12, 15, 18

*\*Hensley v. Eckerhart,*
461 U.S. 424 (1983)...................................................................11, 12, 15, 16

*Hernandez v. Chipotle Mexican Grill, Inc.,*
257 F. Supp. 3d 100 (D.D.C. 2017), appeal dismissed, No. 17-7115, 2017 WL
5258351 (D.C. Cir. Sept. 25, 2017) .............................................................14, 16

*Kattan ex rel. Thomas v. District of Columbia,*
995 F.2d 274 (D.C. Cir. 1993) ...........................................................................12

# TABLE OF AUTHORITIES

Page

*Laffey v. Nw. Airlines, Inc.*,
    572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*,
    746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds, Save Our*
    *Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (1988).................................13

*Makray v. Perez*,
    159 F. Supp. 3d 25 (D.D.C. 2016) .......................................................................14

*Olick v. Parker & Parsley Petroleum Co.*,
    145 F.3d 513 (2d Cir. 1998).....................................................................................9

*Orchano v. Advanced Recovery, Inc.*,
    107 F.3d 94 (2d Cir. 1997).......................................................................................9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)..........................................................................................10, 12

*Pray v. Lockheed Aircraft Corp.*,
    644 F. Supp. 1289 (D.D.C. 1986) .........................................................................11

*\*Pray v. Lockheed Aircraft Corp.*,
    No. CIV. A. 75-0874, 1987 WL 9757 (D.D.C. Apr. 3, 1987)..........................10, 11

*\*Salazar ex rel. Salazar v. District of Columbia.*,
    809 F.3d 58 (D.C. Cir. 2015) .............................................................................14, 15

*Salazar v. District of Columbia*,
    No. CV 93-452 (GK), 2014 WL 12695696 (D.D.C. Jan. 30, 2014)......................14

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989)...............................................................................................11

*\*Texas v. United States*,
    247 F. Supp. 3d 44 (D.D.C. 2017) .............................................................13, 14, 15

*West v. Manson*,
    163 F.Supp.2d 116 (D. Conn. 2001)....................................................................9, 10

*Young v. Sarles*,
    197 F. Supp. 3d 38 (D.D.C. 2016) .......................................................................14

**STATUTES**

15 U.S.C. §1691e(d) ..................................................................................................12

# TABLE OF AUTHORITIES

Page

**OTHER AUTHORITIES**

LSI Laffey Matrix, available at http://www.laffeymatrix.com/see.html (last visited
   August 2, 2018)...........................................................................................................13

After nearly nineteen years since this case began, and seven years since settlement was approved, this litigation is finally coming to an end.  Plaintiffs have previously submitted reports to the Court regarding the claims process and the initial awards (Dkts. 617, 618, 634, 646). Plaintiffs submit this final report to summarize the disbursements from the settlement proceeds. Plaintiffs also request a supplemental award of fees for work that was not anticipated or encompassed in Plaintiffs' 2011 fee petition.

## I.     DISBURSEMENT OF SETTLEMENT PROCEEDS

In 2011, Defendant transmitted $680 million to the Keepseagle Settlement Fund.  Since that time, these funds have been disbursed as follows:

| Purpose | Amount |
| --- | --- |
| Initial payment to prevailing claimants,[1] $50,000 each Track A; up to $250,000 Track B | $182,108,594.02 |
| Supplemental payment to prevailing claimants,[2] $18,500 each | $66,293,147.98 |
| Payments made to the IRS on behalf claimants (from both the initial and supplemental award distribution, and including tax payments made in connection with debt forgiveness) | $65,449,470.10 |
| Service Awards to the Class Representatives | $950,000.00 |
| Supplemental Service Awards to three Class Representatives following modification | $300,000.00 |

[1] Among the prevailing claimants in 2012, 11 were deceased and no one ever established that he or she was the legal representative of the estate, and five other prevailing claimants never cashed their checks.  In addition, some claimants were subject to backup withholding which required withholding part of their claim and paying that to the IRS; those funds are reported under taxes paid, not under payments to claimants.  In addition, one prevailing claimant was found to have engaged in fraudulent activity, and has been making restitution payments in varying amounts.  Thus, the total amount disbursed to claimants from the initial settlement payments is not the round number previously reported based upon the number of claims approved for payment.

[2] Some of these claimants were also subject to backup withholding, which was treated the same way as in the initial distribution, described in n.1 above.  The amount reported here assumes all checks will be cashed.  There are currently approximately 300 checks that have not yet been cashed, and based on the experience from the 2012 distribution, there will likely be a few uncashed checks at the end of this process despite efforts to locate individuals.  If suitable efforts to encourage cashing checks are unsuccessful, the proceeds from those checks will be added to the remaining interest and transferred to the Trust.

| Attorneys' Fees and Costs awarded in April 2011 | $60,800,000.00 |
|---|---|
| Initial cy pres beneficiary payments | $38,000,000.00 |
| **TOTAL** | **$413,901,212.10** |

Thus, $266,098,787.90 of the principal remains in the Settlement Fund.  This amount will be transferred to the Trust once the Trust has established its accounts so that the transfer can be completed.  It is expected that the transfer for most all of these funds will happen by the end of August.  There are some Certificates of Deposit held through the CDARS investments which do not come due until September or October.  Rather than pay a penalty for early withdrawal, those funds will be transferred to the Trust as they reach their maturity dates.

## II.    INTEREST EARNED TO DATE

Class counsel's management of the Settlement Fund has been guided by the terms of the Settlement Agreement approved by the Court, their obligation to invest the funds in a manner that protected the principal while earning interest consistent with this obligation and ensuring the funds remained available to satisfy the claims made pursuant to the Settlement Agreement.  In prior reports, Plaintiffs' described the identification of a bank, as well as the addition of three Native-owned banks using the CDARS program.  Declaration of Joseph M. Sellers in Support of Plaintiffs' Final Report, attached hereto as Ex. 1, at ¶¶ 2-8; Dkt. 603, 604, 610, 611, 612. Counsel also previously described the investment strategy, explaining that the Settlement Fund would be invested in a range of interest bearing accounts (including money market accounts and certificates of deposit) as well as short-term U.S. Treasury Securities, Agency paper and highly-rated commercial paper.  Dkt. 603 at 5; Ex. 1, Sellers Decl. ¶¶ 9-12.  The strategy was designed to: 1) preserve capital; 2) manage the timing of liquidity; 3) obtain a market rate of return; 4) minimize fees/costs; and, 5) reduce income tax liability.  Ex. 1, Sellers Decl. ¶ 12.

As of July 18, 2018, Oppenheimer has reported $10,546,631.02 in interest earned, a weighted average yield of 1.93%.  Ex. 1, Sellers Decl. ¶ 13a.  The CDARS invested through

three Native-owned banks will, at final maturity, yield interest of $771,638.50, which is 1.54% of the $50 million invested in CDARS.  *Id.* at ¶ 13b.  The total interest earned to date is $11,318,269.52, although this will continue to grow slightly between the July report from Oppenheimer and when the transfer of the principal to the Trust takes place in August.

## III.    EXPENSES PAID FROM INTEREST OVER THE LIFE OF THE SETTLEMENT

There were several expenses associated with the settlement that were paid from interest earned, the most significant of which was taxes paid on the income earned by the Settlement Fund.

| Purpose | Amount |
|---|---|
| Federal taxes on income of the Settlement Fund | $2,442,780.31 |
| State taxes on income of the Settlement Fund | $811,116.04 |
| Accountants to prepare tax returns | $85,594.00 |
| Legal fees paid to counsel for management and oversight of investment process (none to class counsel) | $407,986.06 |
| Legal fees paid to counsel who drafted Trust Agreement (none to class counsel) | $109,241.21 |
| Tax Seminars for Claimants | $50,000.00 |
| Listening Sessions and Report | $201,202.54 |
| Fast-track Cy Pres Process | $122,675.11 |
| **Total to date** | **$4,230,595.27** |

Tax payments and money management:  The tax payments were, of course, required by law to be made, and the accountants were essential to accurately calculate taxes due and prepare returns.  Legal fees were paid to Patton Boggs for their expertise in money management.  They vetted candidates to serve as the fund depository and investment advisor, as well as investment strategies, and presented recommendations to class counsel.  They also assisted with oversight of the tax preparation.  Ex. 1, Sellers Decl. ¶ 15a.  Legal fees were paid to Morgan Lewis for work drafting the Trust Agreement  which will govern disposition of the majority of the unclaimed settlement funds.  *Id.* at ¶ 15b.

Tax Advice to Class Members:  In response to concerns expressed by a significant

number of class members about how to handle tax treatment of the funds they received from this settlement and whether those funds should be treated differently than other revenue they generated from farming or ranching on trust lands, class counsel retained individuals with expertise in taxation, especially for farmers and ranchers, who prepared written materials and presented a seminar in over forty locations for class members throughout Indian Country.  The seminar was also recorded and available for review online.  This project was supported by Extension Risk Management Education, Rural Tax Education, several state university extension programs, and the Intertribal Agricultural Council.  By arranging for these experts to discount substantially the rates at which they charged for their time, this project was completed for $50,000.  Ex. 1, Sellers Decl. ¶ 15c.

Listening Sessions:  As previously reported to the Court, Class Counsel engaged the Indigenous Food and Agriculture Project at the University of Arkansas to convene multiple listening sessions – eight in person and three by telephone – to discuss with members of the class their views about disposition of the unclaimed settlement funds and appropriate leaders for the Trust and to report summaries of those sessions for the Court.  Dkt. 709-6.  The cost of staffing those sessions, renting the facilities where the sessions were held, the webinar/conference calls and travel expenses totaled just over $200,000.  Ex. 1, Sellers Decl. ¶ 15d.

Fast Track Funds Distribution Process:  As Plaintiffs reported more fully in connection with their recommendations for distribution of the initial $38 million "fast track" fund, Dkt. 883, they retained Echo Hawk Consulting to help design and implement an appropriate grant application and review process.  The costs associated with this work were $122,675.[3]  Ex. 1,

---

[3] In addition, there were travel and food costs associated with the October 2016 in person meeting to formulate recommendations that were paid by Class Counsel and included in the request below for reimbursement of additional expenses.

Sellers Decl. ¶ 15e.

<u>Initial Costs of Set Up and Operation of Trust</u>:  As the Addendum to the Settlement Agreement required, expenses incurred in the set up and the initial meeting of the Trust have been paid from the interest, and additional expenses are expected before the final transfer of funds to the Trust.  To date, $14,989.67 has been paid for the lodging of the Trustees, who convened in Washington, D.C. for their first meeting of the Trust.  Ex. 1, Sellers Decl. ¶ 15f.

<u>Balance of Accrued Interest</u>:  The balance remaining on the interest accrued from the unclaimed settlement funds, after deduction of expenses paid to date, is $7,072,684.58.

## IV.     EXPENSES NOT YET PAID

Pursuant to the Addendum to the Settlement Agreement, the class anticipates incurring additional expenses that must be defrayed from the accrued interest.  Specifically, additional expenses associated with the Trustees' first meeting have been incurred but not yet billed for airfare, food and incidental travel expenses, as well as charges from Morgan Lewis, counsel for the Trust.  In addition, the Trust will be obligated to pay in 2019 federal and District of Columbia taxes on income received during 2018 along with the charges for the services provided by the accountants to prepare the final tax returns.

## V.     SUPPLEMENTAL REQUEST FOR ATTORNEYS' FEES AND COSTS

Plaintiffs seek a supplemental award of attorneys' fees and costs to compensate for services rendered and defray expenses incurred in addressing disposition of the unexpectedly large amount of unclaimed settlement funds.  The need for these services and costs, which were expended after the Settlement Agreement was negotiated and approved in April, 2011 and after the award of attorneys' fees and costs, was not foreseen and these services and costs were not compensated by the earlier award of attorneys' fees and costs.  *Compare* description of services included in the prior fee petition, Dkt. 581 at 2 *with* description of services for which

compensation is sought in this supplemental award, *infra* at 9-10, 17-19.

> A.     Counsel Completed Substantial Work for the Benefit of the Class That Was Not Contemplated by the Initial Fee Award.

Plaintiffs seek fees for work performed after the claims process concluded, work which was not contemplated in the initial fee petition.  The Addendum to the settlement, which was approved by this Court, provides that counsel may move for fees for the work involved in modifying the agreement and establishing the Trust, provided that any payment approved by the Court be made only from accrued interest, and only after Defendant has the opportunity to respond to the fee request.  Dkt. 824-2 at IV.C.  Although the requested fees would be paid only from accrued interest and not from the principal paid by the USDA to settle this action and the balance of the interest remaining would be transferred to the Trust rather than distributed to the claimants, class counsel will nonetheless post a copy of this report and the fee request on the case website, www.indianfarmclass.com, in order to provide notice to the class consistent with Rule 23(h).   Further, the Trustees of the Trust have been informed of the intention to seek this supplemental award of attorneys' fees and the general amount of the fees requested and did not object to the request.

> 1.     The work for which the supplemental fee request is sought was not encompassed by the initial award of attorneys' fees in this case

In addition to seeking compensation for work performed over the prior twelve years, the initial petition for an award of attorneys' fees in this action sought compensation for work yet to be performed at that time: implementing the settlement claims process and the programmatic terms of the settlement.  In particular, the initial fee petition, filed in January 13, 2011 provided: "Class counsel will also undertake considerable work and incur substantial expenses in implementing the monetary and programmatic terms of the Settlement over the next five years and providing assistance to class members who file claims.  Class counsel projects that future

6

fees and expenses for such work will total approximately $8.65 million.  The fee award here will

be class counsel's only compensation for this prospective work." Dkt. 581 at 2.   As that initial

fee petition explained in detail, the additional work for which compensation was sought involved

the notice process, the claims process, answering class member questions, and participating in

the implementation of the programmatic relief.  Dkt. 581 at 16-18.  While this work required

expenditure of considerably more time than was estimated in the fee petition, Plaintiffs do not

seek any further award of fees related to those areas of work which were covered by the initial

fee petition.[4]

    The work for which the Plaintiffs seek compensation in this supplemental petition,

however, was not contemplated or described in the 2011 fee petition.  The need for this work

arose only after an unexpectedly large amount of settlement funds were unclaimed, which the

Settlement Agreement provided be distributed in a cy pres distribution.[5]  As a result, the peculiar

nature of this supplemental work was wholly distinct from the work that was contemplated by,

and encompassed within, the initial fee petition.

    This supplemental work entailed extensive negotiations with the USDA over disposition

of these unclaimed settlement funds and then, at the Court's direction, renewed negotiations with

---

[4] Plaintiffs' fee petition estimated that class counsel would devote $650,000 to the claims process and settlement administration, in addition to the $6.5 million for hiring temporary counsel and staff for the duration of the claims process.  Dkt. 581 at 18.  In fact, Cohen Milstein alone devoted over $2.5 million in lodestar to the claims process and expected settlement administration tasks, four times the amount anticipated at the time of the initial fee petition, and other class counsel similarly devoted far more lodestar than anticipated to the claims process and settlement administration, not counting the time included in this request for a supplemental award of fees.  Declaration of Joseph M. Sellers in Support of Plaintiffs' Request for a Supplemental Award of Attorneys' Fees and Expenses, attached hereto as Ex. 2, ¶ 17 (total lodestar from 2011 to present including that sought here was over $4.5 million).

[5] The unanticipated nature of this work is discussed in the briefing supporting modification of the Settlement Agreement.  (Dkt. 709 at 3, 14-15)

the USDA and counsel for Mrs. Keepseagle over disposition of these unclaimed funds. Supplemental notice to the class along with three telephone sessions and eight multi-hour listening sessions convened across Indian Country to inform the class of amount of unclaimed funds and solicit their views about the disposition and candidates to lead the Trust that was ultimately created.  Multiple briefings and hearings were required to address the authority to modify the cy pres provision of the Settlement Agreement.  Substantial work was undertaken to formulate and negotiate the terms of the Trust Agreement that is governing the Trust, to which the majority of the unclaimed funds have been disbursed and which represents the largest philanthropic organization exclusively dedicated to serving Native Americans.  And a process was designed and conducted to distribute $38 million from a "fast track" fund.  None of this work was anticipated at the time the plaintiffs originally applied for attorneys' fees.  But this work was nonetheless necessary to ensure that the $380 million in unclaimed settlement funds was distributed in a manner that would benefit the entire plaintiff class and serve the purposes for which this action was originally brought.  *See* Ex. 2, Sellers Decl. at ¶¶8-14.

This work required over five thousand hours to complete and was undertaken from the spring, 2012 to the present.  The work is described in further detail in the supporting declarations of Joseph M. Sellers, Ex. 2 at ¶¶ 8-14; David Frantz, Ex. 3 at 2-3; Jessica Amunson Ring, Ex. 4 at ¶¶ 9-12; Sarah Vogel, Ex. 5 at ¶ 8; and Phil Fraas, Ex. 6 at ¶ 4.  At current hourly rates, this supplemental and wholly unanticipated work expended by class counsel for the benefit of the class is compensable at market rates in an amount totaling $3,220,035.85.  Exs. 2-6.  In addition, counsel have advanced $45,656.50 in expenses for travel, transcripts, and similar such costs.  Ex. 2, Sellers Decl. at ¶ 23; Ex. 4 Amunson Decl. at ¶ 24; Ex. 5, Vogel Decl. at ¶¶ 11-12; Ex. 6, Fraas Decl. at ¶ 8.  The records of the time for which the supplemental fee award is sought were

maintained contemporaneously with the work performed, and are attached to the declarations submitted on behalf of each firm.  Exs. 2-6.

      B.      <u>Legal Authority and Equity Support a Supplemental Award of Fees</u>

            1.     <u>Supplemental Fee Awards Have Been Approved in Cases Where Class Counsel Performs Substantial Post-Settlement Work</u>

Where class counsel perform additional work post-settlement that was not encompassed by the initial fee petition, courts have granted a supplemental award of attorneys' fees.  For example, in *Fears v. Wilhelmina Model Agency, Inc.*, class counsel sought a supplemental fee award for over 2700 hours of additional work overseeing the claims process, successfully obtaining the extension of some deadlines and overcoming obstacles defendant raised to implementation.  *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 CIV 4911 HB, 2007 WL 1944343, at *6 (S.D.N.Y. July 5, 2007), *vacated on other grounds*, 315 F. App'x 333 (2d Cir. 2009).[6]  As the court explained:

> The Court may award supplemental fees to counsel for work performed in relation to the litigation or settlement following counsel's initial fee application. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515, 516 (2d Cir. 1998) (affirming district court's award of supplemental fees to class counsel for time and expenses spent defending the settlement), citing *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir. 1997); *cf. West v. Manson*, 163 F.Supp.2d 116 (D. Conn. 2001) (plaintiff's class counsel in civil rights lawsuit awarded supplemental fees for post-settlement work in conjunction with monitoring of compliance with consent decree). Accordingly, as Plaintiffs' counsel has performed a benefit to the class with its additional post-settlement work, I will supplement my original May 5, 2005 award of counsel fees with an award of fees for supplemental work performed since the original fee application.

---

[6] The Second Circuit did not disturb the supplemental fee award.  Instead, it overturned the district court's decision as to the initial fee award, holding the district court had not adequately explained why the initial fee award for pre-settlement work was not higher.

*Id.*; see also *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1341-42, 1351 (E.D.N.Y. 1985) (in this lengthy litigation, supplemental petitions were permitted, covering a year of work implementing the settlement, and were granted in same ruling which addressed modification of the initial fee award for pre-settlement work).  Supplemental awards of fees to compensate for post-settlement work effectuating the settlement have also been approved in this district.  *Pray v. Lockheed Aircraft Corp.*, No. CIV. A. 75-0874, 1987 WL 9757, at *2 (D.D.C. Apr. 3, 1987) (approving supplemental award of attorneys' fees, even where the compensated work was foreseeable, unlike the present case); *see also Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 441-42 (D. Md. 1998) (noting 14 unpublished orders from other courts which, like that court, approved supplemental awards of fees to class counsel for administration of the settlement); *West v. Manson*, 163 F. Supp. 2d 116, 117 (D. Conn. 2001) ("It is well established that prevailing civil rights plaintiffs are entitled to reasonable attorneys' fees for post-judgment monitoring.") (collecting cases).  The Supreme Court has also approved the award of post-judgment  attorneys' fees for supplemental work expended in a case, like the present matter, which arises under a fee shifting statute.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) ("post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee.")

  While the work for which the supplemental award of attorneys' fees is sought was not devoted to monitoring the settlement agreement, as the initial award of attorneys' fees provided compensation for that service, this authority amply supports the award of attorneys' fees for work expended in service of the class after a settlement has been reached and judgment entered.

  Courts generally consider whether the post-settlement work provided a benefit to the class, and if so, whether funds for such an award are available.  *Cassese v. Wash. Mut., Inc.*, 27

F. Supp. 3d 335, 339 (E.D.N.Y. 2014).  Here, the work for which compensation is requested benefitted the class by ensuring that the cy pres funds were handled in a manner most likely to benefit the entire class, including a supplemental award to prevailing claimants.  While in *Cassese* the initial fee award did not fully compensate for the lodestar expended, *id.*, supplemental awards have been made where the pre-settlement work was fully compensated. *Pray*, 1987 WL 9757, at *2, awarded fees even though the prior award had exceeded the total lodestar.  *See Pray v. Lockheed Aircraft Corp.*, 644 F. Supp. 1289, 1308 (D.D.C. 1986) (awarding $1.8 million in fees on $1.5 million in lodestar); *see also Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 n.6, 442 (D. Md. 1998) (noting initial fee award was 3.6 times lodestar, but still awarding supplemental fees).

2. <u>The Supplemental Fee Award Requested Is Reasonable and Warranted</u>

As the Supreme Court has held, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5912).  The Court defined prevailing parties as parties that "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley*, 461 U.S. at 433.  The Supreme Court further explained that, "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989).  Here, Plaintiffs not only prevailed in obtaining the initial settlement, which was memorialized in a judgment of this Court, but also they prevailed in obtaining a modification of the settlement agreement to better benefit the class, and defended that "material alteration of the legal relationship" on appeal.  The Equal Credit Opportunity Act that underpins this litigation provides that prevailing plaintiffs may be awarded

a reasonable fee.  15 U.S.C. §1691e(d).

As this Court has held with respect to establishing a reasonable fee:

> The starting point for determining a reasonable fee is the "lodestar method," which "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case[.]" *Perdue*, 130 S.Ct. at 1672. There is a "strong presumption" that the lodestar figure represents a reasonable attorney's fee, *id*. at 1673, because "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee,'" *id*. at 1667 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)).

*Heller v. District of Columbia*, 832 F. Supp. 2d 32, 37–38 (D.D.C. 2011) (Sullivan, J.).  As set forth below, Plaintiffs' counsel seek the payment of a lodestar fee award for work that was reasonably and necessarily performed in service to the class at rates prevailing in this market.

### 3.     Counsel's Rates Are Reasonable

Class Counsel rely upon their regular hourly rates, which are reasonable and appropriate. As this Court has held, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Heller* 832 F. Supp. 2d at 38 (quoting *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)). The declarations submitted in support of this request attest that the rates requested are the usual billing rate of counsel, and describe the skill, experience and reputation of counsel upon which these rates are established and regularly reviewed.  Evidence that other courts have accepted these rates is provided in the declarations.  Exs. 2-6.  After 18 years of litigation, the Court is also personally familiar with the quality of work performed by counsel.

In addition, the rates sought are consistent with the prevailing rates for experienced counsel handling complex civil rights litigation in Washington, DC. *See* Declaration of Jennifer Klar, attached hereto as Ex. 7. Ms. Klar is an experienced civil rights lawyer who is familiar with rates charged by her firm to fee paying clients and received pursuant to court awards, as well as rates charged by other firms practicing in this area. Klar Decl. ¶¶ 6-14. Ms. Klar attests that the rates requested by Cohen Milstein are consistent with the relevant Washington, DC market. *Id.* ¶¶ 16-22.

Further, the rates are consistent with the LSI Laffey Matrix. The Laffey Matrix provides one form of evidence of the prevailing rates in the Washington, DC legal market. It is commonly used in cases within the D.C. Circuit, especially in cases, such as this matter, which involve complex litigation. *Texas v. United States*, 247 F. Supp. 3d 44, 50 (D.D.C. 2017). Because the Laffey Matrix was developed to reflect prevailing rates for work done in 1981–1982 in *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds, Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (1988), it must be updated to reflect current rates. *Id.* There are two versions of the Laffey Matrix, which have been updated in different ways. The USAO Laffey Matrix is updated by the United States Attorney's Office for the District of Columbia, using the Consumer Price Index for All Urban Consumers (CPI–U) of the United States Bureau of Labor Statistics, measuring prices across commodities for the Washington DC area. *Id.* The LSI Laffey Matrix is updated using the Legal Services Index of the Bureau of Labor Statistics, which provides data on the rate of increase in national legal rates. *Id.*, see also LSI Laffey Matrix, available at http://www.laffeymatrix.com/see.html (last visited August 2, 2018).

The LSI Laffey Matrix has been widely accepted in this circuit, particularly in civil rights cases, in the absence of evidence that "the fee applicants were part of a submarket in which attorneys' rates were generally lower." *Texas,* 247 F. Supp. 3d at 50-51 (adopting the LSI Laffey Matrix in a voting rights case). *See also Salazar ex rel. Salazar v. District of Columbia.*, 809 F.3d 58, 64-65 (D.C. Cir. 2015) (affirming district court's use of the LSI Laffey Matrix in case of complex federal litigation, where billing survey showed national law firm rates were closer to the LSI Laffey than to USAO Laffey, and district court found the LSI Laffey Matrix was conservative); *Makray v. Perez*, 159 F. Supp. 3d 25, 46-48 (D.D.C. 2016) (accepting the LSI Laffey Matrix with support of declaration from experienced practitioner comparing LSI Laffey to prevailing market in DC); *Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F. Supp. 3d 100, 114-16 (D.D.C. 2017), appeal dismissed, No. 17-7115, 2017 WL 5258351 (D.C. Cir. Sept. 25, 2017) (same); *Young v. Sarles*, 197 F. Supp. 3d 38, 47 (D.D.C. 2016) (same); *Elec. Privacy Info. Ctr. v. U. S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 48-49 (D.D.C. 2016) (accepting the LSI Laffey Matrix with support of billing rate survey); *Salazar v. District of Columbia*, No. CV 93-452 (GK), 2014 WL 12695696, at *2 (D.D.C. Jan. 30, 2014) (endorsing the LSI Laffey Matrix and explaining why the rate of inflation in legal services is more appropriate to use than the general rate of inflation); *Bricklayers & Trowel Trades Int'l Pension Fund v. Conn. Stone Indus., LLC*, No. CV 17-2341 (ABJ), 2018 WL 3381314, at *4–5 & n.4 (D.D.C. July 11, 2018) (finding rate based on LSI Laffey Matrix reasonable because lower than what the court routinely awards).

While courts have noted that when a fee matrix, including the LSI Laffey Matrix, is submitted to establish rates prevailing in the community, some evidence of the matrix's reliability is needed, that evidence may be found from other court opinions holding the proffered

14

matrix is a reasonable measure of the market. *Covington v. District of Columbia*, 57 F.3d 1101, 1109-10 (D.C. Cir. 1995) (burden to show market rate is met by submitting updated Laffey Matrix; in the district court counsel submitted their own declarations as to their experience, the Laffey Matrix with declarations about updating to current rates,[7] and citation to court opinions accepting the matrix); *Texas*, 247 F. Supp. 3d at 51 (finding LSI Laffey Matrix was appropriate based on the extensive analysis in *Salazar*, *supra*, and the qualifications and experience of counsel); see also *Bricklayers*, 2018 WL 3381314, at *4–5 & n.4 (finding rate based on LSI Laffey Matrix reasonable because lower than what the court routinely awards). Given the undisputed complexity of this litigation, and the lack of evidence that class counsel operate in a submarket with lower rates, the number of recent decisions finding the LSI Laffey Matrix is a fair, or even conservative, representation of the Washington legal market, and the Klar Decl., Ex. 7, ¶ 21 (stating that the LSI Laffey Matrix is lower than the market rate for experienced civil rights counsel in Washington), Plaintiffs have satisfied their burden to establish that the rates at which they seek compensation are reasonable.

4. <u>The Amount of Time for Which Compensation is Sought was Reasonable and Necessary to Obtain the Result Achieved</u>

Only time that was reasonably expended to serve the class should be compensated. *Heller,* 832 F. Supp. 2d at 38. In determining whether the amount of time for which compensation is sought was reasonable, counsel are expected to exercise "billing judgment." *Hensley*, 461 U.S. at 434. In exercising such judgment, counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*. Counsel have engaged in a line by line review of their time records to eliminate redundant or

---

[7] Now that updates of the Laffey Matrix are published each year, parties need not provide their own update to the matrix, as in *Covington*.

excessive time, time which was inadequately documented, or which mixed small amounts of time spent on the cy pres projects with larger amounts of time devoted to the claims administration work that was excluded from this supplemental fee request.  Ex. 2, Sellers Decl. at ¶ 20; Ex. 4, Amunson Decl. at ¶ 17; Ex. 5, Vogel Decl. at ¶ 9; Ex. 6, Fraas Decl. at ¶ 5.  The time encompassed by this request was reasonably necessary in order to ensure that cy pres funds were disbursed in a manner most likely to benefit the class as a whole.

Class counsel have expended 5,082.2 hours work for which they seek compensation.  The work began in 2012 with research about options for the disposition of the unexpectedly large amount of unclaimed settlement funds.  Negotiations over disposition of these funds with the USDA began in 2012 and were particularly intensive throughout 2013-14, and resumed again in mid-2015.  The work included submission of substantial briefing to this Court including (i) the August 30, 2013 status report (Dkt. 646); (ii) opposition to the motion to intervene by the Choctaw Nation seeking $40 million for the Jones Academy (Dkt. 650), and response to the subsequent appeal filed by the Choctaw; (iii) opposition to the motion to intervene by the Great Plains Claimants (Dkt. 659); (iv) briefing the first motion to modify the settlement (Dkts. 709, 792);[8] (v) opposing a motion to remove Porter Holder and Claryca Mandan as class representatives (Dkts. 762, 768); (v) responding to a motion for discovery (Dkt. 764); (vi) responding to Mrs. Keepseagle's motion to modify the settlement (Dkt. 782) and her subsequent

---

[8] Although the Court did not grant the first motion to modify, much of the work that went into that motion was re-used in the subsequent motion to modify that the Court did approve.  Thus, this is unlike the situation described in *Hensley*, 461 U.S. at 434-35 in which the Court held that unrelated claims should be treated as if in separate cases where plaintiff prevails only on one claim.  Instead, this circumstance is governed by *Hernandez*, 257 F. Supp. 3d at 109 (citing *Fox v. Vice*, 563 U.S. 826, 834 (2011)) (awarding fees for two motions on which plaintiff was unsuccessful, as those motions were filed in furtherance of a claim on which plaintiff was ultimately successful).

appeal; (vii) preparing the second motion to modify the settlement agreement and responding to objections (Dkts. 824, 853, 858, 866); (viii) defending the settlement modification on appeal in the D.C. Circuit, including rehearing petitions and two petitions for certiorari.  In addition to the negotiations and formal briefing, substantial additional time was necessarily expended on other tasks, which included convening and participating in person in eight multi-hour listening sessions convened throughout Indian Country and in three multi-hour telephonic listening sessions  held in the summer 2014, ongoing communications with Native American community leaders and class members alike, working with trust counsel and negotiating with defendant the language of the Trust Agreement, and researching and evaluating potential trustees and submitting their nominations to the Court.  Moreover, counsel developed and implemented the process to solicit applications for the $38 million "fast track" cy pres fund, evaluate those applications, and prepare recommendations for the Court.

In addition, Class Representative Marilyn Keepseagle is seeking an award of attorneys' fees generated by counsel, Olsson Frank Weeda Terman Matz PC (OFW Law), whom she retained separately in order to assist her in seeking an additional award of damages from the unclaimed settlement funds to class members who were successful in their initial claims.   Mrs. Keepseagle retained Marshall Matz, a principal at OFW Law, after the Court invited her to retain separate counsel to assist her efforts to modify the Settlement Agreement to distribute more of the remaining funds directly to class members who were successful in their initial claims.  Mr. Matz and OFW Law were retained based on the firm's unique background in Indian law, USDA administrative matters, and complex litigation.  OFW Law is seeking compensation for services rendered on behalf of Mrs. Keepseagle as lead class representative beginning with her Motion to Modify the Settlement Agreement.  This includes representing Mrs. Keepseagle's interests in

negotiations that ultimately lead to the Addendum to the Settlement Agreement, defending the Addendum at the U.S. Court of Appeals for the D.C., and opposing writs of certiorari before the U.S. Supreme Court.  OFW Law also participated in status conferences, met with class members to generate support for the amendments to the Settlement Agreement, and regularly communicated with class members on behalf of Mrs. Keepseagle.  On behalf of Mrs. Keepseagle, OFW Law played an integral role in prompting the settlement negotiations that led to the amendments to the Settlement Agreement.  In particular, OFW Law advocated for additional direct compensation for successful claimants.  As a result of these negotiations, the parties agreed to provide approximately $77 million in additional payments to class members. OFW Law and Mrs. Keepseagle also expressed support in Indian Country for the other provisions of the Addendum, in particular, the Native American Agriculture Fund.

For the services rendered on behalf of Mrs. Keepseagle as lead class representative, OFW Law is seeking $566,537.50 in fees computed at lodestar rates.  In addition, OFW Law is seeking payment for $6,987.56 in unreimbursed expenses associated with representing Mrs. Keepseagle. In support of Mrs. Keepseagle's request for an award of fees and expenses, Marshall Matz's declaration is included as Exhibit 8.

5.   The Lodestar Award Sought Is Reasonable

Plaintiffs submit that a supplemental award of fees based on the above hours, which were reasonably expended, and the above rates, which are reasonable and appropriate, would be amply justified.  *Heller*, 832 F. Supp. 2d at 37–38 (there is a strong presumption that lodestar calculated from reasonable hours and reasonable rates is a reasonable fee).  Therefore, Plaintiffs request that $3,220,035.85 in fees be awarded to Class Counsel,[9] and Mrs. Keepseagle requests $566,537.50

---

[9] Computation of this supplemental fee award is based upon counsel's lodestar, which is compensable pursuant to the fee-shifting provisions of ECOA, rather than as a percentage of the

in fees be awarded to her counsel, OFW.

      6.    <u>Reimbursement of Plaintiffs' Additional Expenses Is Appropriate</u>

Plaintiffs also seek reimbursement of $45,656.50 in expenses, virtually all of which are for travel costs incurred in meeting with clients around the country, and for online legal research. Exs. 2-6. Mrs. Keepseagle requests reimbursement of $6,987.56 in expenses incurred by her counsel. Ex. 8.

## VI.    TERMINATION OF COURT'S JURISDICTION AND DISPOSITION OF REMAINING ACCRUED INTEREST

Pursuant to the Addendum to the Settlement Agreement, this Court's jurisdiction ends on September 22, 2018 – 180 days after the Effective Date of the Addendum on March 26, 2018. As the amounts of taxes owed on revenue generated from the invested, unclaimed funds in 2018 is unknown at this time, as is the cost of the accounting work to prepare the tax returns and any other incidental costs associated with the Trust, Plaintiffs cannot determine at this time the amount of final expenses that must be defrayed in order to discharge all obligations associated with managing the unclaimed settlement funds. As the Addendum provides, class counsel will retain the remaining accrued interest in a separate account following transfer of the principal to

---

common fund created by the settlement on which the initial fee award was based. Therefore, the size of the common fund originally created by the settlement has no relevance to award of the attorneys' fee sought here. Nor should the proportion of the common fund that was disbursed in the claims process have any bearing on the supplemental award of attorneys' fees sought here. As the Supreme Court explained in upholding an award of attorneys' fees from a common fund in *Boeing Co. v. Van Gemert*, the award of fees should be based on the total fund created, rather than the amount actually claimed, because class members' "right to share the harvest of the lawsuit . . . whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." 444 U.S. 472, 480 (1980). That is particularly true here where *all* of the funds are being expended for the benefit of the class as a whole, even though some of those benefits will flow through the cy pres awards to non-profit organizations serving Native farmers and ranchers, rather than paid directly to class members as supplemental awards of damages. None of the funds will revert to the USDA.

the Trust, until these final expenses are paid, and then transfer the remaining interest to the Trust.

See Addendum IV.C.  Plaintiffs will comply with the direction of the Addendum and any further

order of this Court in disbursing the remaining accrued interest, even after the Court's

jurisdiction ceases.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel request that the Court award $3,220,035.85

in supplemental attorneys' fees and $45,656.50 in additional expenses to be paid from interest

accrued on the unclaimed settlement funds, and Mrs. Keepseagle requests that the Court award

her counsel $566,537.50 in fees and $6,987.56 in expenses.  Following the final tax payments

and costs for accountants, Counsel will then transmit the balance of the interest earned, along

with any uncashed checks from the supplemental distribution, to the Trust.

August 3, 2018

By*/s/Joseph M. Sellers*
Joseph M. Sellers, Bar No. 318410
Christine E. Webber, Bar No. 439368
COHEN MILSTEIN SELLERS &
    TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

David J. Frantz, Bar No. 202853
CONLON, FRANTZ & PHELAN
1740 N Street, N.W.
Suite One
Washington, DC 20036-2477
Telephone: (202) 331-7050
Facsimile: (202) 331-9306

Sarah Vogel
SARAH VOGEL LAW OFFICE

Respectfully submitted,

Jessica Ring Amunson, Bar No. 497223
JENNER & BLOCK LLP
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001-4412
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Phillip L. Fraas
LAW OFFICES OF PHILLIP L. FRAAS
1455 Pennsylvania Ave., NW, Suite 400
Washington, DC, 2004
Telephone: (202) 280-2411
Facsimile (202) 355-1399

P. O. Box 385                                   phil@phillipfraaslaw.com
Bismarck, ND 58502-0385
Phone:  701 355-6521
sarahvogellaw@gmail.com


*Attorneys for Plaintiffs*